Exhibit 7

## AGREEMENT AND DECLARATION OF TRUST

### AFM and SAG-AFTRA
### Intellectual Property Rights Distribution Fund

Established
September 16, 1998

Amended and Restated
July 26, 2012

THIS AGREEMENT AND DECLARATION OF TRUST is made and entered into as of the 16th day of September, 1998, and is amended and restated as of July 26, 2012, in the City of New York, State of New York, by and between the American Federation of Musicians of the United States and Canada, AFL-CIO-CLC ("AFM") and the Screen Actors Guild - American Federation of Television and Radio Artists ("SAG-AFTRA"), hereinafter jointly known as the Unions.

### Preamble

WHEREAS, this Agreement and Declaration of Trust was originally established as of the 16th day of September, 1998, in the City of New York, State of New York, by and between the AFM and the American Federation of Television and Radio Artists ("AFTRA"); and

WHEREAS AFTRA merged with the Screen Actors Guild ("SAG") effective March 2012, and the merged unions are now constituted as SAG-AFTRA; and

WHEREAS, the Trustees now desire to amend and restate the Agreement and Declaration of Trust to reflect the merger of AFTRA into the merged union SAG-AFTRA, as well as to incorporate other amendments that the Trustees have made from time to time; and

WHEREAS, the Unions or their designated entities obtain and distribute to artists royalties and remuneration that are created by U.S. or foreign law and that are appropriate for collective administration; and

WHEREAS, the Unions have entered into a Reciprocal Agreement and an Annex for the Distribution of Record Rental Royalties Collected in Japan, pursuant to which they will receive and distribute record rental remuneration payable to non-featured instrumentalists and vocalists under the law of Japan; and

WHEREAS, the Unions have entered into other such agreements for the receipt and distribution of royalties or remuneration for the benefit of their members and other performing artists in the United States and Canada, and will continue to enter into such agreements; and

WHEREAS, to accomplish this purpose the Unions established a trust fund known as the AFM and AFTRA Intellectual Property Rights Distribution Fund for receiving and

1

# EXHIBIT A
# PLAINTIFFS' SECOND AMENDED COMPLAINT

distributing royalties and remuneration; and

WHEREAS, the trust fund formerly known as the AFM and AFTRA Intellectual Property Rights Distribution Fund shall now be known as the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; and

WHEREAS, the Unions desire to restate the terms and conditions under which the said Fund is to be established and administered;

NOW, THEREFORE, in consideration of the premises, it is mutually understood and agreed as follows:

### Article I
### Definitions

*Section 1.* UNIONS. The term "Unions" as used herein shall mean the American Federation of the Musicians of the United States and Canada, AFL-CIO-CLC, and the Screen Actors' Guild – American Federation of Television and Radio Artists.

*Section 2.* AFM. The term "AFM" as used herein shall mean the American Federation of Musicians of the United States and Canada, AFL-CIO-CLC.

*Section 3.* SAG-AFTRA. The term "SAG-AFTRA" as used herein shall mean the Screen Actors Guild – American Federation of Television and Radio Artists, or, prior to March 2012, the American Federation of Television and Radio Artists.

*Section 4.* AGREEMENT AND DECLARATION OF TRUST. The term "Agreement and Declaration of Trust" as used herein shall mean this instrument including any amendments hereto and modifications hereof.

*Section 5.* FUND. The term "Fund" as used herein shall mean the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund.

*Section 6.* AGREEMENT FOR THE RECEIPT AND DISTRIBUTION OF REMUNERATION. The term "agreement for the receipt and distribution of remuneration" as used herein shall mean any agreement entered into by the AFM, SAG-AFTRA or the Unions with a collecting society, rights organization or other appropriate entity to receive royalties or remuneration held by that entity and to distribute such royalties and remuneration to eligible artists.

*Section 7.* ARTISTS. The term "artists" as used herein shall mean instrumental musicians and vocalists.

### Article II
### Creation of Fund

*Section 1.* ESTABLISHMENT OF FUND. The AFM and AFTRA Intellectual Property Rights Distribution Fund, which was established on September 16, 1998. is hereby amended and restated as the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund, to be used for the

2

purpose set forth in this Agreement and Declaration of Trust.

*Section 2.*  GENERAL PURPOSE.  The Fund shall be a trust fund and shall be used for the purpose of receiving and distributing royalties or remuneration to artists in accordance with such agreements for receipt and distribution of remuneration as are entered into by the Unions with the relevant collecting societies, rights organizations or other appropriate entities. The Fund shall further provide the means for financing the expenses of the Trustees and the operation and administration of the Fund, in accordance with this Agreement and Declaration of Trust. The Fund is intended to satisfy the requirements of section 501(c)(6) of the Internal Revenue Code and shall be construed in all respects consistently with section 501(c)(6).

**Article III**
**Trustees**

*Section 1.*  AFM AND SAG-AFTRA TRUSTEES.  The operation and administration of the Fund shall be the joint responsibility of six Trustees, three appointed by the AFM, of which no fewer than one shall be a rank-and-file representative, and three appointed by SAG-AFTRA, of which no fewer than one shall be a rank-and-file representative.

*Section 2.*  TERM OF TRUSTEES.  Each Trustee shall continue to serve as such until his or her death, incapacity, resignation, or removal by the appointing Union. Each Union may remove or replace its Trustee at will.

*Section 3.*  SUCCESSOR TRUSTEES.  Each Union shall appoint its successor Trustees.

*Section 4.*  FORM OF NOTIFICATION.  In case any Trustee shall be removed, replaced, or succeeded, a statement in writing by the relevant Union shall be sufficient evidence of its action, when forwarded to the Fund and to the remaining Trustees. Any resignation shall be evidenced in writing and forwarded by registered mail to the Fund and the remaining Trustees, and shall not be effective for two months following the date of mailing unless a successor Trustee has been appointed.

**Article IV**
**Powers, Duties and Obligations of Trustees**

*Section 1.*  PROPERTY AND ASSISTANCE.  The Trustees are authorized and empowered to lease or purchase such premises, materials, supplies and equipment, and to hire, employ and retain such legal counsel, investment advisor, administrative, accounting, actuarial, clerical and other assistants or employees as in their discretion they may find necessary or appropriate in the performance of their duties.

*Section 2.*  CONSTRUCTION OF AGREEMENT.  The Trustees shall have power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein, and any construction adopted by the Trustees in good faith shall be binding upon the AFM, SAG-AFTRA, and artists claiming benefits under the Fund.

*Section 3.*  GENERAL POWERS.  The Trustees are hereby empowered, in addition to other such powers as are set forth herein or conferred by law:

3

A.   To establish and administer the Fund on behalf of artists who may be entitled to payments pursuant to agreements for the receipt and distribution of remuneration entered into by the AFM, SAG-AFTRA or the Unions and determined by the Trustees to be appropriate for administration by the Fund.

B.   As to each agreement for the receipt and distribution of remuneration recommended by the AFM, SAG-AFTRA or the Unions, to decide whether or not to administer the agreement through the Fund.

C.   As to each agreement for the receipt and distribution of remuneration which is to be administered through the Fund, to establish governing rules and procedures for the distribution that are consistent with the relevant agreement.

D.   As to each agreement for the receipt and distribution of remuneration which is to be administered through the Fund, to pay all expenses necessary to the establishment, administration and operation of the agreement out of the receipts generated by the agreement.

E.   To enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Fund and do all acts as they, in their discretion, may deem necessary and advisable.

F.   To compromise, settle, arbitrate, and release claims or demands in favor of or against the Fund or the Trustees on such terms and conditions as the Trustees may deem advisable.

G.   To establish and accumulate as part of the Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purposes of the Fund.

H.   To pay out of the Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Fund or any money, property, or securities forming a part thereof.

I.   To make appropriate allocations of common administrative expenses and disbursements shared or to be shared with any other Plan or Fund, or among the various agreements for the receipt and distribution of remuneration.

J.   To receive contributions, payments, distributions or transfers from any source whatsoever to the extent permitted by law.

K.   To establish advisory committees composed of AFM and SAG-AFTRA representatives and/or other artists or artists' representatives, and to set forth the duties and functions of the members of such advisory committees.

L.   To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder.

4

M.    To establish such bank account or accounts as the Trustees deem necessary in their discretion, including escrow accounts pending the adoption of distribution rules governing the administration of an agreement for the receipt and distribution of remuneration.

N.    To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objective of distributing remuneration to eligible artists in the most efficient and economical manner.

O.    To purchase or obtain from the AFM, SAG-AFTRA, the AFM and Employers' Pension Fund, the AFTRA Health and Retirement Funds, the Phonograph Manufacturers' Special Payments Fund, the Motion Picture Special Payments Fund or any commercial source any data helpful for the identification and location of artists eligible for remuneration or the identification of recorded or other performances covered by an agreement for the receipt and distribution of remuneration.

P.    To invest the assets of the Fund with care, skill, prudence and diligence under circumstances then prevailing that a prudent person, acting in a like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character and with such aims, without regard to state law restrictions on investments.

*Section 4.* COMPENSATION. The Trustees shall not receive compensation for the performance of their duties.

*Section 5.* PERSONAL LIABILITY. Neither the Trustees nor any individual or successor Trustee shall be personally answerable or personally liable for any liabilities or debts of the Fund contracted by them as Trustees, or for the non-fulfillment of contracts, but the same shall be paid out of the Fund and the Fund is hereby charged with a first lien in favor of such Trustee for indemnification for any amounts paid out by any such Trustee for any such liability and for indemnification against any liability of any kind which the Trustees or any of them may incur hereunder; provided, however, that nothing herein shall exempt any Trustee from liability arising out of his own willful misconduct, bad faith or gross negligence, or entitle such Trustee to indemnification for any amounts paid or incurred as a result thereof.

The Trustees and each individual Trustee shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of their duties so long as they act in good faith and without gross negligence; nor shall any Trustee, in the absence of his own willful misconduct, bad faith or gross negligence, be personally liable for the acts or omissions (whether performed at the request of the Trustees or not) of any other Trustee, or of any agent or attorney elected or appointed by or acting for the Trustees.

The Trustees shall be fully protected in acting upon any instrument, certificate, or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements contained therein.

5

Neither the AFM nor SAG-AFTRA shall in any way be liable in any respect for any of the acts, omissions or obligations of the Trustees, individually or collectively.

The Trustees may from time to time consult with legal counsel and shall be fully protected in acting upon such advice of counsel to the Fund as respects legal questions.

*Section 6.* BOOKS OF ACCOUNT. The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be audited at least annually by a certified public accountant selected by the Trustees. Such audits shall be available at all times for inspection by the AFM and SAG-AFTRA.

*Section 7.* EXECUTION OF DOCUMENTS. The Trustees may authorize and designate an employee or agent of the Fund to execute any notice or other instrument in writing.

*Section 8.* DEPOSIT AND WITHDRAWAL OF FUNDS. All moneys received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose, and all withdrawals of moneys from such account or accounts shall be made only by checks signed by the Trustees, except that the Trustees may, in their discretion, designate and authorize an employee or agent of the Fund to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for such purpose.

*Section 9.* SURETY BONDS. The Trustees and any employees of the Trustees who are empowered and authorized to sign checks as aforesaid shall each be bonded by a duly authorized surety company in such amounts as may be determined from time to time by the Trustees. Each such employee employed by the Trustees who may be engaged in handling moneys of the Trust Fund shall also be bonded by a duly authorized surety company in the same manner. The cost of the premium on such bonds shall be paid out of the Fund.

### Article V
### Selection of Remuneration Systems to Be Administered by the Fund

*Section 1.* ACCEPTANCE FOR ADMINISTRATION THROUGH THE FUND. As to each agreement for the receipt and distribution of remuneration entered into by the AFM, SAG-AFTRA, or the Unions jointly, and referred by one of them to the Trustees for their consideration, the Trustees, in their sole discretion, may decide whether or not the agreement is appropriate for administration through the Fund. An agreement will be accepted for administration through the Fund only if the Trustees, voting in accordance with Article VII, Section 3, agree to accept it. The refusal of the AFM or SAG-AFTRA to accept an agreement for administration by the Fund shall not be subject to arbitration. The acceptance of an agreement for administration by the Fund shall be in writing.

*Section 2.* HOLDING MONEY PENDING ACCEPTANCE FOR ADMINISTRATION. The Fund may hold moneys received pursuant to an agreement for the receipt and distribution of remuneration in an escrow account pending the Trustees' decision whether to accept the agreement for administration through the Fund. If the Trustees refuse acceptance, the moneys will be returned with any interest accumulated thereon and minus any administrative costs incurred to the AFM, SAG-AFTRA or the Unions jointly in accordance with the agreement for the receipt and distribution of remuneration.

6

*Section 3.* CONTINUATION OF ADMINISTRATION. Once an agreement for the receipt and distribution of remuneration has been accepted for administration through the Fund, it shall continue to be administered through the Fund until such time as the Trustees, voting in accordance with Article VII, Section 3, agree that such administration is no longer appropriate. If the Trustees, voting in accordance with Article VII, Section 3, disagree over whether continued administration is appropriate, they will attempt to resolve their difference on the matter. If they cannot resolve their difference on the matter, they agree to submit the dispute to mediation administered by the American Arbitration Association. If mediation fails to resolve the dispute, the agreement for the receipt and distribution of remuneration shall be discontinued for administration through the Fund upon the vote of the Trustees for one Union, voting in accordance with Article VII, Section 3.

### Article VI
### Plan of Payments and Distributions

*Section 1.* PAYMENTS. The Trustees shall have full authority to determine all questions of the nature and amount of payments to be provided to artists consistent with the relevant agreements for the receipt and distribution of remuneration.

*Section 2.* ELIGIBILITY FOR PAYMENTS. The Trustees shall have full authority to determine eligibility requirements for payments, consistent with the relevant agreements for the receipt and distribution of remuneration, and to adopt rules and regulations setting forth the same, which shall be binding on the artists.

*Section 3.* METHOD OF PROVIDING PAYMENTS. The payments shall be provided and maintained by such means as the Trustees in their sole discretion shall determine.

*Section 4.* WRITTEN PLAN OF PAYMENTS AND DISTRIBUTIONS. The detailed basis upon which payments are to be made pursuant to each agreement for the receipt and distribution of remuneration shall be specified in writing by appropriate action of the Trustees subject, however, to such changes or modifications by the Trustees from time to time as they in their discretion may determine. All such changes or modifications shall similarly be specified in writing by appropriate resolution of the Trustees.

*Section 5.* DETERMINING CLAIMS FOR PAYMENTS. The Trustees shall have full authority to determine all claims for payments, provided that they may delegate to the duly designated administrators of the Fund authority to determine such claims initially. The administrators' initial determination shall be submitted to the Trustees for final determination. An individual who believes that he or she has been adversely affected by the administrators' or Trustees' determinations regarding payment of benefits may submit a written appeal to the Trustees. The decision of the Trustees shall be final.

### Article VII
### Meetings and Decision of Trustees

*Section 1.* MEETING OF TRUSTEES. Meetings of the Trustees shall be held at such place or places as may be agreed upon by the Trustees.

7

*Section 2.* ACTION BY TRUSTEES WITHOUT MEETING. The Trustees may also take action in writing without a meeting.

*Section 3.* AGREEMENT OF THE TRUSTEES. All actions of the Trustees shall be by agreement, with the AFM Trustees casting one vote, and the SAG-AFTRA Trustees casting one vote. In the event that any matter presented for decision cannot be decided because of a failure of agreement, the matter may be submitted for arbitration in accordance with Article VIII.

*Section 4.* MINUTES OF MEETINGS. The Trustees shall keep minutes of all meetings but such minutes need not be verbatim.

### Article VIII
### Arbitration

*Section I.* APPLICATION OF THIS ARTICLE. A Trustee may apply to the American Arbitration Association in the area where the Fund maintains its principal office for the designation of an arbitrator who will decide any disputes between the Trustees or any other matter submitted to arbitration in accordance with the provisions of Article VII, Section 3. The decision of the arbitrator shall be final and binding. Decisions to accept an agreement for the receipt and distribution of remuneration for administration through the Fund, pursuant to Article V, Section 1, shall not be subject to arbitration.

*Section 2.* EXPENSES OF ARBITRATION. The cost and expense incidental to any arbitration proceeding, including the fee, if any, of the impartial arbitrator, shall be a proper charge against the Fund and the Trustees are authorized and directed to pay such charges.

### Article IX
### Execution of Trust Agreement

*Section 1.* COUNTERPARTS. This Trust Agreement may be execute in counterparts.

### Article X
### Amendment to Trust Agreement

*Section 1.* AMENDMENT BY TRUSTEES. This Agreement and Declaration of Trust may be amended in any respect from time to time by the Trustees, provided that each amendment shall be duly executed in writing by the Trustees and annexed hereto. The Trustees shall have full discretion to fix the effective date of any amendment.

### Article XI
### Termination of Trust

*Section 1.* BY THE TRUSTEES. This Agreement and Declaration of Trust may be terminated by an instrument in writing executed by the Trustees when there is no longer in force and effect an agreement for the receipt and distribution of remuneration which is accepted for administration by the Fund.

*Section 2.* PROCEDURE ON TERMINATION. In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall apply the Fund to pay or to provide for the payment

8

of any and all obligations of the Fund and shall distribute and apply any remaining surplus in such a manner as will in their opinion best effectuate the purpose of the Fund; provided, however, that no part of the corpus or income of said Fund shall be used for or diverted to purposes other than for the benefit of the artists eligible for benefits under the agreements for the receipt and distribution of remuneration administered by the Fund, or the administrative expenses of the Fund or other payments in accordance with the provisions of the Fund.

*Section* 3.  NOTIFICATION OF TERMINATION.  Upon termination of the Fund, the Trustees shall notify each necessary party, and the Trustees shall continue as Trustees for the purpose of winding up the affairs of the Trust.

### Article XII
### Miscellaneous Provisions

*Section 1.*  GOVERNING LAW.  This Agreement and Declaration of Trust shall be construed under the laws of the State of New York applicable to contracts made and to be performed within the County and State of New York (without regard to any conflict of laws provision), and venue for any dispute arising under this Agreement and Declaration of Trust shall be in New York.

*Section 2.*  NOTIFICATION TO TRUSTEES.  The address of each of the Trustees shall be that stated on the signature page of this Agreement and Declaration of Trust. Any change of address shall be effected by written notice to the Trustees.

*Section 3.*  SEVERABILITY.  Should any provision in this Trust Agreement or in the rules and regulations adopted thereunder be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the provisions contained therein unless such illegality shall make impossible or impractical the functioning of the Trust and the Plan, and in such case the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

*Section 4.*  VESTED RIGHTS.  No artist or any person claiming by or through such artist, including the artist's family, dependents, beneficiary and/or legal representative, shall have any right, title or interest in or to the Fund or any property of the Fund or any part thereof except as may be specifically determined by the Trustees.

*Section 5.*  ENCUMBRANCE OF PAYMENTS.  No moneys, property or equity, of any nature whatsoever, in the Fund, or policies or benefits or moneys payable therefrom, shall be subject in any manner by any artist or person claiming through such artist to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null and void.

*Section 6.*  EXPENSES OF THE TRUSTEES.  All expenses of the Trustees incurred in the performance of their duties may be chargeable to the Fund at the discretion of the Trustees. All other expenses incurred pursuant to Article IV hereof shall be paid by the Fund.

*Section 7.*  NO EMPLOYER CONTRIBUTIONS PERMITTED.  The Fund shall not accept contributions from any employer or association of employers who employ artists represented by the AFM or SAG-AFTRA, and shall not enter into agreements for the receipt and distribution of remuneration with

9

such employers or associations of employers.

IN WITNESS HEREOF, in accordance with Article X, the Trustees sign this Agreement and Declaration of Trust, which amends and restates the original agreement and declaration of trust. The Trustees, by affixing their signatures at the end of this Agreement and Declaration of Trust, agree to accept the trusteeship and act in their capacity strictly in accordance with the provisions of this Agreement and Declaration of Trust.

| | |
|---|---|
| Raymond M. Hair, Jr., AFM          Date<br>1501 Broadway, Suite 600<br>New York, NY  10036 | Duncan Crabtree-Ireland, SAG-AFTRA   Date<br>5757 Wilshire Boulevard, 7th Floor<br>Los Angeles, CA  90036 |
| Sam Folio, AFM          Date<br>1501 Broadway, Suite 600<br>New York, NY  10036 | Stefanie Taub, SAG-AFTRA          Date<br>5757 Wilshire Boulevard, 7th Floor<br>Los Angeles, CA  90036 |
| Bruce Bouton, AFM          Date<br>1501 Broadway, Suite 600<br>New York, NY  10036 | Jon Joyce, SAG-AFTRA          Date<br>5757 Wilshire Boulevard, 7th Floor<br>Los Angeles, CA  90036 |

10

such employers or associations of employers.

IN WITNESS HEREOF, in accordance with Article X, the Trustees sign this Agreement and Declaration of Trust, which amends and restates the original agreement and declaration of trust. The Trustees, by affixing their signatures at the end of this Agreement and Declaration of Trust, agree to accept the trusteeship and act in their capacity strictly in accordance with the provisions of this Agreement and Declaration of Trust.

_____     Date
Raymond M. Hair, Jr., AFM
1501 Broadway, Suite 600
New York, NY 10036


_____     Date
Sam Folio, AFM
1501 Broadway, Suite 600
New York, NY 10036


_____     Date
Bruce Bouton, AFM
1501 Broadway, Suite 600
New York, NY 10036


_____     Date
Duncan Crabtree-Ireland, SAG-AFTRA
5757 Wilshire Boulevard, 7th Floor
Los Angeles, CA 90036


_____     11/13/12
Stefanie Taub, SAG-AFTRA              Date
5757 Wilshire Boulevard, 7th Floor
Los Angeles, CA 90036


_____     Date
Jon Joyce, SAG-AFTRA
5757 Wilshire Boulevard, 7th Floor
Los Angeles, CA 90036

10

such employers or associations of employers.

IN WITNESS HEREOF, in accordance with Article X, the Trustees sign this Agreement and Declaration of Trust, which amends and restates the original agreement and declaration of trust. The Trustees, by affixing their signatures at the end of this Agreement and Declaration of Trust, agree to accept the trusteeship and act in their capacity strictly in accordance with the provisions of this Agreement and Declaration of Trust.

_____
Raymond M. Hair, Jr., AFM      Date
1501 Broadway, Suite 600        11/15/12
New York, NY  10036

_____
Sam Folio, AFM                  Date
1501 Broadway, Suite 600
New York, NY  10036

_____
Bruce Bouton, AFM               Date
1501 Broadway, Suite 600
New York, NY  10036

_____
Duncan Crabtree-Ireland, SAG-AFTRA   Date   1/18/13
5757 Wilshire Boulevard, 7th Floor
Los Angeles, CA  90036

_____
Stefanie Taub, SAG-AFTRA             Date
5757 Wilshire Boulevard, 7th Floor
Los Angeles, CA  90036

_____
Jon Joyce, SAG-AFTRA                 Date
5757 Wilshire Boulevard, 7th Floor
Los Angeles, CA  90036

10