UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**    DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT (Dkt. 18, filed September 17, 2018)

## I.    INTRODUCTION

On June 22, 2018, plaintiff Kevin Risto, on behalf of himself and all others similarly situated (collectively, "plaintiffs"), filed this action in the Los Angeles Superior Court against defendants the Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA") and American Federation of Musicians of the United States and Canada ("AFM") (collectively, the "Unions"); Raymond M. Hair, Jr., Tino Gagliardi, Duncan Crabtree-Ireland, Stephanie Taub, Jon Joyce, and Bruce Bouton (collectively, the "Trustees"); and Does 1 through 10.  Dkt. 1-1 ("Compl.").  Plaintiffs allege that, by enacting a Service Fee agreement with the Unions, the Trustee defendants violated their fiduciary duties to their beneficiaries.  Id.  These beneficiaries include plaintiff and other non-featured performance artists.  Id.  Plaintiffs also allege claims against all defendants for (1) money had and received, (2) conversion, and (3) declaratory relief.  Id.

On August 17, 2018, defendants removed this matter to this Court, pursuant to 28 U.S.C. § 1332(d).  Dkt. 1.  On September 17, 2018, defendants filed the instant motion to dismiss, dkt. 18 ("Mot."), along with a request for judicial notice in support of the motion to dismiss, dkt. 19 ("RJN").  Plaintiffs filed an opposition to the motion to dismiss on October 8, 2018.  Dkt. 21 ("Opp'n").  Plaintiffs also opposed defendants' request for judicial notice.  Dkt. 21-1 ("RJN Opp'n").  Defendants filed their reply to both the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

motion to dismiss and the request for judicial notice on October 22, 2018.  Dkt. 23 ("Reply"); dkt. 23-1 ("RJN Reply").

The Court held a hearing on November 5, 2018.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

Plaintiffs allege the following facts.

Plaintiff Kevin Risto is a resident of Las Vegas, Nevada.  He collects royalties from the entitled the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund (the "Fund," described herein) as a non-featured artist for the song "When I See U," by Fantasia.  Compl. ¶ 27.  Risto has also written and produced songs for other artists, including but not limited to, Justin Bieber and Jennifer Lopez.  Id.  Plaintiff received a Grammy award for his work on Frank Ocean's "Channel Orange" album.  Plaintiff is not a member of an artist union.  Id.

Defendant SAG-AFTRA is a corporation organized and existing under the laws of Delaware and conducting business in the county of Los Angeles, CA.  Id. ¶ 28.  Defendant AFM is a mutual benefit corporation that is organized and existing under the laws of California, and conducts business in the County of Los Angeles, California. Id. ¶ 29.  Defendants Hair, Gagliardi, Crabtree-Ireland, Taub, Joyce, and Bouton are all residents of New York or California, and they were Trustees of the Fund, at the time the alleged misconduct occurred.  Id. ¶¶ 5, 30 – 35.

### A.    Statutory Framework

17 U.S.C. § 114 provides a statutory license that allows digital performance and reproduction of copyrighted sound recordings.  Id. ¶ 1; 17 U.S.C. § 114 (West).  As part of that license, Congress has established a specific statutory schema to distribute royalties when copyrighted songs are performed or otherwise reproduced publicly by means of a digital audio transmission.  Id.  Section 114 designates SoundExchange, an affiliate of the Recording Industry Association of America, as the sole entity to collect royalties from those digital performances.  Id.  Then, pursuant to Section 114, the royalties are distributed among the various artists, musicians, and copyright holders associated with a given song, as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

(A) 50 percent of the receipts shall be paid to the copyright owner . . .

(B) 2 ½ percent of the receipts shall be deposited in an escrow account managed by an independent administrator jointly appointed by copyright owners of sound recordings and the American Federation of Musicians (or any successor entity) to be distributed to nonfeatured musicians (whether or not members of the American Federation of Musicians) who have performed on sound recordings.

(C) 2 ½ percent of the receipts shall be deposited in an escrow account managed by an independent administrator jointly appointed by copyright owners of sound recordings and the American Federation of Television and Radio Artists (or any successor entity) to be distributed to nonfeatured vocalists (whether or not members of the American Federation of Television and Radio Artists) who have performed on sound recordings.

(D) 45 percent of the receipts shall be paid, on a per sound recording basis, to the recording artist or artists featured on such sound recording . . . .

17 U.S.C.A. § 114(g) (West); Compl. ¶ 2.  Per Section 114, the collective 5% of royalties for non-featured musicians and vocalists ("non-featured artists") must be deposited in an escrow account which is managed by an "independent administrator." 17 U.S.C.A. § 114(g).  By law, non-featured artists receive these royalties irrespective of their membership in a union.  Id.; Compl. ¶¶ 4, 6.

## B.     The AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund

The AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund (the "Fund") was the I.R.C. §501(c)(6) nonprofit organization created, pursuant to Section 114, to receive and distribute the royalties and other remuneration, received from the digital production of copyrighted songs, for non-feature artists.  Id. ¶ 5.  AFM and the American Federation of Television and Radio Artists ("AFTRA") established the Fund through an Agreement and Declaration of Trust (the "Trust Agreement"), dated September 16, 1998.  Id. ¶ 7.  Upon the merging of the Screen Actors Guild ("SAG") and AFTRA, the Agreement was amended and restated on July 26, 2012.  Id. ¶ 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

The Fund is managed by Trustees, who are responsible for implementing the statutory rights, namely by collecting and distributing the royalties due to non-featured artists.  Id. ¶ 9.  By the terms of the Agreement, the trustees owe a fiduciary duty to the beneficiaries, and must protect the property held by the Fund.  Id. ¶ 10.  Since 2013, there have been eight Trustees: three board members of the AFM union, three board members of the SAG-AFTRA union, and two rank-and-file members, one from each union.  Id. ¶ 9.

C.      **Establishment of the Service Fee Agreement**

On July 22, 2013, the Fund entered into a Data Purchase and Services Agreement (the "Services Agreement") with the Union defendants.  Id. ¶ 11.  The Services Agreement established that, in exchange "for providing the data and services contemplated by this Agreement," the Fund would pay the Unions "3% of the amount distributed by the Fund" for each distribution cycle (the "Service Fee").  Id.  This amounts to 3% of the 5% of the royalties which are to be paid to non-feature artists, under Section 114.  The Agreement further stipulated that there would "be no additional charges or expense reimbursement associated with" these services.  Id.

Plaintiffs allege that the Service Fee agreement was approved by the Trustee defendants, who "were acting with deep conflicts of interest to the benefit of the Unions."  Id. ¶ 13.  Specifically, plaintiffs contend that all of the Trustees who approved the Services Agreement have affiliations with the Unions: (1) Hair is the President of AFM; (2) Gagliardi serves on the Executive Committee of AFM; (3) Crabtree-Ireland is the Chief Operating Officer and General Counsel of SAG-AFTRA; (4) Taub previously served as the National Manager of Sound Recordings for SAG-AFTRA; (5) Joyce is a member of SAG-AFTRA and serves on the Board of SAG-AFTRA[1]; and (6) Bouton is a member of AFM and is the Intellectual Property Rights committee Chair of the Recording Musicians Association, which upon information and belief, plaintiffs claim is an affiliated entity of AFM.  Id. ¶¶ 13, 30 – 35.  In addition, plaintiffs allege that Patricia Polach, the general counsel for the Fund, has also served as counsel for AFM, AFTRA,

---

[1] Plaintiffs allege that while Taub is a former Trustee of the Fund, who now serves as the Fund's Chief Executive Officer, she was one of the Trustees who approved the Service Fee.  Id. ¶¶ 13, 33.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

and SAG-AFTRA.  Id. ¶ 22.  Plaintiffs call this "a massive and obvious conflict of interest."  Id.

Plaintiffs also allege that "no new consideration was provided by the Unions in exchange for the Service Fee" because the Unions were already performing the obligations identified by the Services Agreement.  Id. ¶ 16.  Additionally, plaintiffs contend that the Union's obligations under the Services Agreement do not benefit the non-featured artists who are not Union members.  Id. ¶ 18.  Since the establishment of the Services Agreement, plaintiffs further allege that the Unions have not always fulfilled their obligations.  Id. ¶ 17.  Specifically, plaintiffs claim that SAG-AFTRA has not given the Fund access to member databases, session reports, and other applicable data, which enables the Fund to identify the non-featured artists entitled to royalties, as contemplated by the Services Agreement.  Id.

Plaintiffs therefore allege that the Trustees violated their duties to the Trust and its beneficiaries.  Id. ¶ 15.  Plaintiffs allege that the Trustees have significant conflicts of interest, and have used the Fund for the Unions' benefit, as opposed to for the benefit of the beneficiaries.  Id.  ¶ 20.  Upon information and belief, plaintiffs allege that in 2016 alone, the Fund paid $1,743,712 to the Unions, and the Fund continues to pay the Unions each year.  Id. ¶ 21.

Plaintiffs allege that the Trustee defendants breached their fiduciary duty to the Fund by implementing the Service Fee.  Id. ¶ 56.  Plaintiffs also state a claim for (1) money had and received and (2) conversion against all defendants.  Id. ¶¶ 58 – 60, 66 – 70.  Plaintiffs therefore seek equitable, declaratory, and injunctive relief which require the Trustees to (1) revert back to the Fund the 3% Service Fee; (2) cease the collection of the 3% Service Fee; and (3) declare the Services Agreement void and unenforceable.  Id. ¶ 23.

### D.    Tolling and Estoppel

Plaintiffs seek repayment for all distributions following the establishment of the Service Fee on July 22, 2013.  Id. ¶ 23.  Plaintiffs contend that "any applicable statutes of limitations that might otherwise bar any of Plaintiffs' claims are tolled by Defendants' knowing and active concealment" of the Fund's payment of the 3% Service Fee, which is deducted from the royalties for non-featured artists.  Id. ¶ 48.  Plaintiffs specifically

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

allege that, despite defendants' duty to disclose to plaintiffs the amount of funds collected by the Trust, as well as the sum diverted to the Unions, defendants "kept plaintiff[s] in the dark as to necessary information essential to the pursuit of [their] claims" and hid payment of the Service Fee from the beneficiaries. Id. ¶ 49. Accordingly, plaintiffs contend that they "could not have reasonably discovered the substantial sum of money being diverted from the Trust to the Unions," and that defendants are estopped from relying on any statutes of limitations in defense of this action. Id. Plaintiffs further contend that defendants' alleged breaches of fiduciary duty constitute continuing wrongs. Id. ¶ 50. Therefore, plaintiffs state that the statute of limitations on these breaches will not begin to run until the commission of the last wrongful act by the Trustees. Id.

## III. LEGAL STANDARDS

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). "If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." Lee, 250 F.3d at 688. Per Rule 201, a court may take judicial notice of a fact that "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. However, "accuracy is only part of the inquiry under Rule 201(b). A court must also consider—and identify—which fact or facts it is noticing from [a document]. Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

## IV.   DISCUSSION

### A.   Judicial Notice

Defendants request judicial notice of the following:  (1) three annual reports, all of which are publicly available on the Fund's website, which cover the periods ending on March 31, 2014, March 31, 2015, and March 31, 2016; (2) the Sound Recording Distribution Guidelines, as well as the Symphonic Recording Distribution Guidelines, both of which are published on the Fund's website; (3) the Agreement and Declaration of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

Trust dated September 16, 1998, as well as the amended and restated Agreement and Declaration of Trust, dated July 26, 2012; and (4) the Data Purchase and Services Agreement, dated July 22, 2013.  RJN at 1 – 2.

Defendants seek judicial notice of the annual reports in order for the Court to judicially notice that the Fund disclosed the existence of the Data Agreement, beginning with the March 31, 2014 annual report.  Mot. at 7.  Defendants argue that the Court may take judicial notice of the annual reports because the documents are all publicly available on the Fund's website, and because "they are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" RJN at 2 (quoting Fed. R. Evid. 201(b)(2)).  Defendants cite numerous cases that permit judicial notice of annual reports.  RJN at 3; see, e.g., In re Am. Apparel, Inc. S'holder Derivative Litig., No. CV 10-06576 MMM RCX, 2012 WL 9506072, at *18 (C.D. Cal. July 31, 2012) (citing Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1064 n.7 (9th Cir. 2008)) ("Courts can consider securities offerings and corporate disclosure documents that are publicly available.").  Plaintiffs contest judicial notice of the reports, questioning their reliability, and arguing that "[t]he fact that the documents are published on a public website . . . does not make them 'public records' for purposes of the judicial notice rules."  RJN Opp'n at 4.

The Court agrees with defendants.  It therefore judicially notices the annual reports, and the fact that defendants disclosed the existence of the Services Agreement within them.  As defendants noted, annual reports are readily noticeable, and in these particular reports, a party cannot contest that the disclosure occurred.  See RJN, Ex. 1 at 12 (stating that, "In June 2013, the Fund entered into services agreements with AFM & SAG-AFTRA whereby they will provide the Fund membership data and other support services that will help facilitate distributions to performers.").

Defendants also ask the Court to judicially notice the underlying Trust Agreement, as well as the Services Agreement. RJN at 3.  Plaintiffs respond that they do not object to judicial notice "of the *existence*" of the documents, but that they "object [to] the court tak[ing] judicial notice of the truth of the assertions contained" within the Agreements. RJN Opp'n at 1.  The Court finds that these agreements are all appropriately subject to judicial notice because plaintiffs reference them repeatedly throughout their complaint. See, e.g., Compl. ¶¶ 7 – 8, 11.  With regard to defendants' request for judicial notice of the Sound Recording and Symphonic Recording Distribution Guidelines, the Court need

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

not decide whether to judicially notice these documents, as the Court need not rely on them for the present motion.

### B. 12(b)(6) Motion to Dismiss

#### 1. Breach of Fiduciary Duty

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." Rothenberger v. Green, No. SACV 13-174-JST (JPRx), 2013 WL 12130035, at *4 (C.D. Cal. May 13, 2013) (citing Stanley v. Richmond, 35 Cal. App. 4th 1070, 1086 (1995)). "While breach of fiduciary duty is a question of fact, the existence of legal duty in the first instance and its scope are questions of law." Kirschner Bros. Oil, Inc. v. Natomas Co., 185 Cal. App. 3d 784, 790 (Ct. App. 1986) (internal citations omitted). Plaintiffs claim that the Trustee defendants breached their fiduciary duty to their beneficiaries by entering into the Services Agreement with the Unions because conflicts of interest existed between the Trustees and the Unions, and because the Fund received no consideration in return for the Service Fee. Plaintiffs also allege that the Trustees have violated their duty of impartiality to the Fund's beneficiaries because the Services Agreement does not benefit beneficiaries who are not Union members. Defendants move to dismiss these claims.

#### a. Duty of Loyalty

The duty of loyalty is the "most stringent duty imposed by the law of trusts." O'Neal v. Stanislaus Cty. Employees' Ret. Assn., 8 Cal. App. 5th 1184, 1209 (Ct. App. 2017), review denied (May 10, 2017). It requires that, "[e]xcept as otherwise provided in the terms of the trust, a trustee has a duty to administer the trust solely in the interest of the beneficiaries, or solely in furtherance of its charitable purpose." Rest. 3d Trusts § 78 (2007). Moreover, "[e]xcept in discrete circumstances, the trustee is strictly prohibited from engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests." Id.

Plaintiffs claim that the Trustee defendants breached their duty of loyalty by entering the Fund into the Services Agreement with the Unions, to the benefit of the Unions, despite the fact that the Trustees were employed by the Unions. Compl. ¶¶ 13,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

20, 56. Plaintiffs also allege that the Fund and the Union defendants share the same lawyer, Patricia Polach, which creates another conflict of interest. Id. at 22. Defendants argue that "plaintiff[s] do[] not back up [their] bald accusation with any facts to suggest the Trustees were conflicted when they implemented the Service Fee." Mot. at 15. Defendants add that plaintiffs do not allege that the Trustees would personally benefit from the implementation of the Service Fee. Id. Defendants further argue that plaintiffs' allegations about the Fund's and the Unions' shared lawyer is "pure speculation" because plaintiffs do "not allege that Ms. Polach ever served as a Fund trustee and thus had decision-making authority as to the Service Fee." Id. at 16 n.10.

The Court finds that plaintiffs properly allege a breach of fiduciary duty, based on an alleged breach of the duty of loyalty. Defendants understate the scope of the duty of loyalty. The duty of loyalty does not solely apply to instances where the Trustee stands to personally benefit. Instead,

> [a]lthough this duty is frequently invoked as a protection against creating conflicts between a trustee's fiduciary duties and personal interests, it is also understood to protect against improper influence generally. Thus, actions by a trustee may be considered improper if they are taken "either for the purpose of benefiting a third person (whether or not a party to the transaction) rather than the trust estate or for the purpose of advancing an objective other than the purposes of the trust.

O'Neal, 8 Cal. App. 5th at 1209 (citing Rest. 3d Trusts, § 78, com. f, p. 109; accord, Prob. Code, § 16004, subd. (a)). As another court has explained, "Perhaps the most fundamental duty of a trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the beneficiary and must exclude all selfish interest *and all consideration of the interests of third persons*." In re Northrop Grumman Corp. Erisa Litig., No. CV 06-06213 MMM (JCx), 2015 WL 10433713, at *26 (C.D. Cal. Nov. 24, 2015) (citing G. Bogert & A. Hess, The Law of Trusts and Trustees § 543 (3d ed. 2015)) (emphasis added). By establishing the Service Fee, plaintiffs allege that defendants acted not with "complete loyalty" to the interests of the Fund's beneficiaries, but with loyalty to a third party—the Unions who employ the Trustees. Compl. ¶ 55. Plaintiffs claim that the Unions benefited from the transaction, to the detriment of the beneficiaries. Id. ¶ 20. This conduct, if true, would constitute a breach of the duty of loyalty under well-settled law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

Defendants' argument that Section 114 provides for the Unions to appoint the Trustees does change the Court's conclusion. As a primary matter, plaintiffs do not allege a conflict of interest because the Trustees were appointed by the Unions; plaintiffs claim that the conflict exists because the Trustees are employed by the Unions. Compl. ¶ 13. Additionally, even with the appointments provision, Section 114 stipulates that an "Independent Administrator" will oversee the Fund. 17 U.S.C. § 114(g)(2) (West). The Court also acknowledges, as defendants argue, that Section 114 permits nonprofit entities to deduct "reasonable costs" for "the administration of the collection, distribution, and calculation of the royalties," as well as other needs. 17 U.S.C.A. § 114(g)(3) (West). However, plaintiffs' claim is premised not on the payment of a fee in a vacuum, but on the payment of a specific service fee to the Unions and which was allegedly negotiated and implemented solely by Union members, employees, and potentially even a shared attorney. Compl. ¶¶ 13, 20, 22.

Accordingly, the Court finds that plaintiffs state a claim for breach of fiduciary duty, based on the alleged breach of the duty of loyalty. Defendants' motion to dismiss is **DENIED** on this basis.

### b.      Duty of Impartiality

"A trustee has a duty to administer the trust in a manner that is impartial with respect to the various beneficiaries of the trust. . . ." Rest. 3d of Trusts § 79 (2007). This requires that, "in investing, protecting, and distributing the trust estate, and in other administrative functions, the trustee must act impartially and with due regard for the diverse beneficial interests created by the terms of the trust." Id.

Plaintiffs claim that the Trustee defendants violated their duty of impartiality by establishing the Services Agreement because "none of the activities set forth in the Services Agreement are for the benefit of non-Union, non-featured performers." Compl. ¶ 18. Plaintiffs also allege that, "[i]n some instances, the Unions have not fulfilled their obligations under the Services Agreement. For example, SAG-AFTRA has declined to provide access to member databases, session reports and 'B-forms,' or other similar databases." Id. ¶ 17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

The Court has judicially noticed the Services Agreement because it is referenced in the complaint, and the Court finds that the express terms of the Services Agreement contradict plaintiffs' allegation. The Services Agreement specifically identifies obligations that confer benefit on non-Union members: the Unions must provide access to session reports, "B-forms," etc. for non-Union members. RJN, Ex. 8 ("Services Agreement") § 1 (the Services Agreement provides that the Union shall give the Fund "access to session reports and 'B-forms' . . . for performers (Union members and nonmembers)"). In addition, while plaintiffs also allege that the Unions have not performed some of their obligations under the Services Agreement, compl. ¶ 17, this allegation does not claim that the Unions have only failed to perform services for non-Union beneficiaries. For example, the complaint alleges that the Union is not providing "member databases." Additionally, the *Unions'* alleged failure to perform certain contractual obligations does not necessarily give rise to plaintiffs' claim that the *Trustees* violated their duty of impartiality.[2]

Accordingly, because the Court finds that the activities set forth in the Services Agreement are not exclusively for the benefit of Union members, the Court **DISMISSES** *with leave to amend* the Trustee defendants' alleged breach of the duty of impartiality basis.

### c.    Duties of Prudence, Diligence, and Good Faith

The parties agree that (1) a trustee has a duty to administer the trust as a prudent person would, in light of the purposes, terms, and other circumstances of the trust and (2) that this duty requires the exercise of reasonable care, skill, and caution. See Mot. at 10; Opp'n at 7 (citing Rest. 3d of Trusts § 77 (2007)). The parties add that, a "trustee has a duty to administer the trust, diligently and in good faith, in accordance with the terms of the trust and applicable law." Rest. 3d of Trusts § 76 (2007). Plaintiffs claim that "the Trustees unreasonably (and in bad faith) not only approved *and paid* purported 'costs,'

---

[2] In their opposition papers, plaintiffs add that "[t]he Unions only maintain contact data for their members. This means that the non-union members are not getting anything of value from the Unions in exchange for the payment of the Service Fee." Opp'n at 9. This claim is not alleged in the complaint and is accordingly not relevant for this motion to dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

but also approved *and paid* the Service Fee to essentially skim 3% of the trust corpus to the benefit of the Unions." Opp'n at 8; compl. ¶ ¶ 19, 56 (emphasis in original). Plaintiffs add that defendants received no consideration for the Agreement. Compl. ¶ 16.

Pointing to both Section 114 and the Trust Agreement, defendants argue that the Trustees were entitled to enter fee agreements. As mentioned, Section 114 provides that "[a] nonprofit collective designated by the Copyright Royalty Judges to distribute receipts from the licensing of transmissions. . . may deduct from any of its receipts, prior to the distribution of such receipts . . . the reasonable costs of such collective" for specified purposes, including "the administration of the collection, distribution, and calculation of the royalties." 17 U.S.C.A. § 114 (g)(3) (West). The Trust Agreement expressly states that Trustees may purchase or obtain data from the Unions. RJN, Ex. 7 ("Trust Agreement") Art. IV, §3(O). Defendants therefore contend that plaintiffs do "not offer any facts that would support" a breach of fiduciary duty claim, because plaintiffs' "vague breach accusations are based solely on the fact that the Trustees agreed to pay *anything at all* in exchange for the information and services the Unions provide." Mot. at 11, 12 (emphasis in original).

The Court finds that plaintiffs adequately plead breaches of the duty of prudence, diligence, and good faith. As defendants note, Section 114 and the Trust Agreement both allow for the payment of certain reasonable costs. However, plaintiffs allege that the specific Services Agreement that the Trustee defendants entered into was unnecessary. Plaintiffs allege that the Unions already provided those services, that the Trustees received no additional benefit from the agreement, and that the agreement was entered into solely for the benefit for the Unions. Compl. ¶¶ 15, 16, 55–56. Accordingly, in enacting the Services Agreement, plaintiffs allege that the Trustee defendants acted unreasonably, in bad faith, and without prudence—in violation of Section 114, the Trust Agreement, and the duties generally imposed on trustees. While defendants contend that entering into the agreement was reasonable, given the expenses incurred by the Unions to provide the data, mot. at 2, that is a question of fact for the factfinder—not a ground for dismissal.

Accordingly, the Court finds that plaintiffs adequately state a claim for breach of the Trustees' fiduciary duty on the basis of the Trustees' duties of reasonableness and good faith, diligence, and prudence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

### 2.  Money had and Received and Conversion

Plaintiffs allege claims for (1) money had and received and (2) conversion.  "The count for money had and received states in substance that the defendant is indebted to the plaintiff in a certain sum 'for money had and received by the defendant for the use of the plaintiff.'" 4 B.E. Witkin et al., Cal. Proc. § 561 (5ᵗʰ ed. 2008).  "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  Lee v. Hanley, 61 Cal. 4th 1225, 1240 (2015) (citations omitted).

Defendants seek to dismiss plaintiffs' claims for (1) money had and received and (2) conversion on the grounds that plaintiffs do not have a property interest in the Service Fees.  Mot. at 19.  Defendants cite the Trust Agreement and Section 114, which state that Trustees may pay certain administrative expenses related to the distribution of royalties, to support their argument that "the Services Fees do not 'belong' to the Fund beneficiaries."  Mot. at 19; see Trust Agreement, Article IV § 3; § 114(g)(3).  Defendants further assert that the Trustees have discretion to determine the royalties to be distributed, based on eligibility.  Mot. at 17, 19.  The Trust Agreement itself provides that "No artist or any person claiming by or through such artist . . . shall have any right, title or interest in or to the Fund or any property of the Fund or any part thereof except as may be specifically determined by the Trustees."  Trust Agreement, Art. XII, § 4.  In response, plaintiffs argue that they have a property interest because Section 114 establishes "a legitimate claim of entitlement to" the Service Fee, and the Fund more generally.  Opp'n at 12 (citing Bd. Of Regents v. Roth, 408 U.S. 564, 577 (1972)).  Plaintiffs assert that "the Copyright Act itself, which clearly confers property rights to Plaintiff, prevails over Defendants' bad faith attempts to write it out of their trust administration."  Opp'n at 12.

To claim a property interest, one "must . . . have a legitimate claim of entitlement to it."  Roth, 408 U.S. at 577.  Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Id. (citing, as an example, the property interest created by welfare benefits, given the statute's clear eligibility definitions).  "Whether an expectation of entitlement is sufficient to create a property interest 'will depend largely

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

upon the extent to which the statute contains mandatory language that restricts the discretion of the [decisionmaker].'" Allen v. City of Beverly Hills, 911 F.2d 367, 370 (9th Cir. 1990) (citing Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir.1980)). Accordingly, "a statute must contain 'particularized standards or criteria' to create a property interest." Doyle v. City of Medford, 606 F.3d 667, 673 (9th Cir. 2010) (citing Allen, 911 F.2d at 370–71). "A regulation granting broad discretion to a decision-maker does not create a property interest." Id. at 672–73.

The Court finds that plaintiffs have adequately alleged a property interest in a percentage of Fund receipts, as provided by 17 U.S.C. § 114. As plaintiffs argue, § 114 states with particularized precision that "a nonprofit collective . . . shall distribute [royalty receipts] as follows: . . . (B) 2 ½ percent of the receipts shall be deposited in an escrow account managed by an independent administrator . . . to be distributed to nonfeatured musicians . . . [and] (C) 2 ½ percent of the receipts shall be deposited in an escrow account managed by an independent administrator . . . to be distributed to nonfeatured vocalists." 17 U.S.C.A. § 114 (West). Pursuant to the statute, the Fund's administrators are considerably restricted in how they distribute royalties: the Copyright Act specifically determines the percentages to which the various artists and copyright holders are each entitled.

To the extent that the language of the Trust Agreement, entered into by the Unions, may be contrary to Congress' statutory regime, § 114 prevails. In re Dixon's Estate, 143 Cal. 511, 514 (1904); Rest. 3d of Trusts § 29 (2003). Additionally, while § 114 may permit Trustees to deduct "reasonable costs" and expenses—including for the "administration of the collection, distribution, and calculation of the royalties"—this only allows the deduction of "reasonable," rightful costs. 17 U.S.C. § 114 (g)(3) (West). The provision would not necessarily foreclose a beneficiaries' property interest in Fund receipts where, as here, plaintiff beneficiaries allege that fees have been wrongfully paid.

Accordingly, the Court finds that plaintiffs adequately state claims for conversion and for money had and received.

### 3.    Declaratory Relief

Plaintiffs request declaratory relief "determining that the statutory scheme prohibits the Trustees from diverting three percent of the Royalties collected to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

Unions, and declare the Data Purchase and Services Agreement void and unenforceable." Compl. ¶ 64. Defendants argue that plaintiffs improperly seek declaratory relief because "the issue in controversy will be resolved by the Court's determination of Plaintiff's other claims." Mot. at 20. To this effect, defendants contend that plaintiffs' request for declaratory relief is redundant and unnecessary, since plaintiffs' other claims will determine whether the Services Agreement is proper. Reply at 18 – 19. However, "[t]he fact that a declaratory judgment may be granted 'whether or not further relief is or could be prayed' indicates that declaratory relief is alternative or cumulative and not exclusive or extraordinary." Fed. R. Civ. P. 57 advisory committee's notes. In addition, while defendants cite to a California practice guide which explains that "it is within a court's discretion to dismiss a declaratory relief action where another form of relief is available and adequate," mot. at 20 (citing Michael Paul Thomas et al., Cal. Civ. Prac. Torts § 39:18 (Nov. 2018 ed.), this is still a discretionary determination.

Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiffs' declaratory relief claim.

### 4.    Equitable Tolling

Plaintiffs allege that "[a]ny applicable statute of limitations that might otherwise bar any of Plaintiff[s'] claims are tolled by [d]efendants' knowing and active concealment of the wrongful diversion of monies from the corpus of the Trust to the Unions." Compl. ¶ 48. Defendants move to dismiss or strike these allegations. First, defendants argue that, given the active concealment claim, plaintiffs' allegations here must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Mot. at 22. Defendants further argue that the annual reports definitively demonstrate that the Trustees did not actively conceal the Service Fee, because the reports "repeatedly and explicitly explained in detail the implementation of the Service Fee." Id. at 23 (emphasis omitted). Given that plaintiffs were on notice of the Service Fees, defendants add that plaintiffs did not allege that they exercised reasonable diligence in investigating issues related Services Agreement. Id.

Plaintiffs respond that defendants prematurely seek to address factual issues, and that plaintiffs were not, necessarily, under a duty to investigate the Service Fee, even despite notice. Opp'n at 17 – 18. Citing California courts, plaintiffs argue that, "Where a fiduciary relationship exists, facts which ordinarily require investigation may not incite

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

suspicion and do not give rise to a duty of inquiry. Where there is a fiduciary relationship, the usual duty of diligence to discover facts does not exist." Id. (quoting Hobbs v. Bateman Eichler, Hill Richards, Inc., 164 Cal. App. 3d 174, 201–02 (Ct. App. 1985) (internal quotations and citations omitted).  Plaintiffs therefore argue that a fact-finder must decide what duty of diligence applies, which makes this issue inappropriate on a motion to dismiss.  Opp'n at 18.  Defendants reply that plaintiffs still have "a duty to investigate *even where a fiduciary relationship exists* when [they have] notice of facts sufficient to arouse the suspicions of a reasonable man." Reply at 20 (citing Graham-Sult v. Clainos, 756 F.3d 724, 743 (9th Cir. 2014) (quoting Elec. Equip. Express, Inc. v. Donald H. Seiler & Co., 122 Cal. App. 3d 834, 855 (Ct. App. 1981))(emphasis added).

The Court finds that plaintiffs' equitable tolling allegation must be dismissed. Plaintiffs claim that equitable tolling applies because defendants "active[ly] conceal[ed]" the Services Agreement and fees.  Compl. ¶ 48.  Specifically, plaintiffs claim that, "[b]ecause of [d]efendants' cover-up, proposed Class members could not have reasonably discovered the substantial sum of money being diverted from the Trust to the Unions. . . ." Id. ¶ 49.  However, the annual reports that defendants produced, and which the Court has judicially noticed, contradict this allegation.  They demonstrate that defendants annually disclosed the existence of the Services Agreement, along with the sums paid to the Unions, following the establishment of the Services Agreement.  See RJN, Ex. 1– 3.  Plaintiffs' allegations, in their opposition brief, that plaintiffs were under no duty to investigate the Fund's payment of sums will not be considered at this time because plaintiffs do not so allege this basis in their complaint.

Accordingly, plaintiffs' tolling and estoppel claims are **DISMISSED**, *with leave to amend*.[3]

---

[3] Plaintiffs do not address defendants' argument that plaintiffs' active concealment claim must satisfy Rule 9(b).  The Court does not reach this issue because, irrespective of whether Rule 8 or Rule 9(b) applies to this analysis, the outcome is the same: the Fund's publicly-available annual reports demonstrate that defendants did not actively conceal the Services Agreement, or the fees paid.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

### 5.     Punitive Damages

Plaintiffs allege that defendants' misconduct "was done . . . with the intent to vex, annoy, and/or harass [plaintiffs] and to unjustly profit at [plaintiffs'] expense."  Compl. ¶ 57.  Plaintiffs therefore seek punitive damages pursuant to California Civil Code § 3294.  Defendants move to dismiss plaintiffs' claim for punitive damages on the basis that "plaintiff's rote recitation of the Section 3294 elements is not sufficient to plead the availability of punitive damages."  Mot. at 24 (citing Brousseau v. Jarrett, 73 Cal. App. 3d 864, 872 (Ct. App. 1977); Smith v. Superior Court, 10 Cal. App. 4th 1033, 1042 (Ct. App. 1992)).

The Court finds that plaintiffs adequately plead punitive damages.  As a preliminary matter, federal law determines the pleading standard for plaintiffs' claims, even as they arise out of California substantive law.  See Watkinson v. MortgageIT, Inc., No. 10-CV-327-IEG (BLM), 2010 WL 2196083, at *10 (S.D. Cal. June 1, 2010) ("[W]hile Section 3294 governs Plaintiff's substantive claim for punitive damages, the Federal Rules of Civil Procedure govern the punitive damages claim procedurally with respect to the adequacy of pleadings." (emphasis omitted)); Clark v. State Farm Mut. Auto. Ins. Co., 231 F.R.D. 405, 406 (C.D. Cal. 2005) (accord).  Numerous courts in this district and others have found that, "a plaintiff bringing an action in federal court 'may include a "short and plain" prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent.'" Clark, 231 F.R.D. at 406; see also Bobrick Washroom Equip., Inc. v. Am. Specialties Inc., No. CV 10-6938-SVW (PLAx), 2010 WL 11462854, at *4 (C.D. Cal. Dec. 15, 2010); Price v. Kawasaki Motors Corp., USA, No. SACV 10-01074-JVS, 2011 WL 10948588, at *7 (C.D. Cal. Jan. 24, 2011); but see Diaz v. Bank of Am. Home Loan Servicing, L.P., No. CV 09-9286 PSG (MANx), 2011 WL 13046844, at *5 (C.D. Cal. July 8, 2011) (finding that plaintiff did not allege sufficient facts to substantiate its punitive damages claim).

This Court adopts the position of many other courts in this district that "[p]laintiff only needs to provide notice pleading pursuant to Rule 8(a) with regards to its claim for punitive damages; conclusory pleading is sufficient." Access Holdings Corp. v. Ball, No. CV 10-04329 SJO (DTBx), 2010 WL 11552872, at *5 (C.D. Cal. Dec. 14, 2010).  Accordingly, defendants' motion to dismiss plaintiffs' punitive damages claim is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLA | Date | November 6, 2018 |
|---|---|---|---|
| Title | KEVIN RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL. | | |

**V.    CONCLUSION**

The Court **DENIES** defendants' motion to dismiss claim 1, for breach of fiduciary duty, on the basis of the duty of loyalty and the duties of prudence, diligence and good faith.  The Court **DISMISSES** *with leave to amend* claim 1 to the extent that it is premised on the duty of impartiality.

The Court **DENIES** defendants' motion to dismiss claim 2 (money had and received), claim 3 (declaratory relief), and claim 4 (conversion).

The Court **DENIES** defendants' motion to dismiss plaintiffs' claim for punitive damages.

The Court **DISMISSES** *with leave to amend* plaintiffs' allegations in support of equitable tolling.


IT IS SO ORDERED.

| | Initials of Preparer | SMO |
|---|---|---|