PAUL R. KIESEL (State Bar No. 119854)
kiesel@kiesel.law
MARIANA A. MCCONNELL (State Bar No. 273225)
mcconnell@kiesel.law
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

NEVILLE L. JOHNSON (State Bar No. 66329)
njohnson@jjllplaw.com
JORDANNA G. THIGPEN (State Bar No. 232642)
jthigpen@jjllplaw.com
DANIEL B. LIFSCHITZ (State Bar No. 285068)
dlifschitz@jjllplaw.com
JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095

*Attorneys for Plaintiff and the Class*

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| KEVIN RISTO, on behalf of himself and all others similarly situated, | CASE NO.  2:18-cv-07241-CAS-PLA |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** |
| SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a Delaware corporation; AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA, a California nonprofit corporation; RAYMOND M. HAIR, JR, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; TINO GAGLIARDI, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; DUNCAN CRABTREE- | **(1) BREACH OF FIDUCIARY DUTY;** <br> **(2) MONEY HAD AND RECEIVED;** <br> **(3) DECLARATORY RELIEF; and** <br> **(4) CONVERSION** <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

1  IRELAND, an individual, as Trustee of
   the AFM and SAG-AFTRA Intellectual
2  Property Rights Distribution Fund;
   STEFANIE TAUB, an individual, as
3  Trustee of the AFM and SAG-AFTRA
   Intellectual Property Rights Distribution
4  Fund; JON JOYCE, an individual, as
   Trustee of the AFM and SAG-AFTRA
5  Intellectual Property Rights Distribution
   Fund; BRUCE BOUTON, an
6  individual, as Trustee of the AFM and
   SAG-AFTRA Intellectual Property
7  Rights Distribution Fund; and DOE
   DEFENDANTS 1-10,
8
            Defendants.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                    2              FIRST AMENDED CLASS ACTION

Plaintiff Kevin Risto, on behalf of himself, and all others similarly situated, alleges as follows upon personal knowledge as to Plaintiff's own conduct and on information and belief as to all other matters based on an investigation by counsel, such that each allegation has evidentiary support or is likely to have evidentiary support upon further investigation and discovery:

**FACTUAL BACKGROUND**

**A. STATUTORY FRAMEWORK**

1.      17 U.S.C. § 106 grants the owner of a copyright in a sound recording the exclusive right to perform and reproduce the sound recording publicly by means of a digital audio transmission. As a result of the Digital Performance Rights in Sound Records Act of 1995 and the Digital Millennium Copyright Act of 1998, 17 U.S.C. § 114 provides a statutory license to perform and reproduce sound recordings. SoundExchange, an affiliate and former subsidiary of the Recording Industry Association of America, is designated as the sole entity in the United States authorized to collect these royalties from statutory licenses for the digital performances of sound recordings.

2.      Under 17 U.S.C. § 114(g), 50% of digital performance royalties are payable to the copyright owners of the sound records, 45% are payable to the featured artists, 2.5% are payable to the non-featured musicians (also known as session musicians) and 2.5% are payable to the non-featured vocalists (also known as session vocalists) (collectively referred to herein as "non-featured performers").

3.      The 5% of the digital performance royalties payable to non-featured performers are sometimes collectively referred to herein as the "Royalties."

4.      The statute requires payment of the Royalties to non-featured performers regardless of their union membership in any or all of the three major unions: the American Federation of Musicians of the United States and Canada ("AFM"), or SAG-AFTRA (the surviving entity after the 2012 merger of the Screen Actors Guild ("SAG") and the American Federation of Television and Radio Artists

1  ("AFTRA").

2  **B. ESTABLISHMENT OF THE FUND**

3       5.     The AFM and SAG-AFTRA Intellectual Property Rights Distribution

4  Fund (the "Fund") is the name given to the I.R.C. § 501(c)(6) nonprofit organization

5  which oversees a trust fund created to receive and distribute Royalties or other

6  remuneration to artists from SoundExchange and other relevant collecting societies,

7  rights organizations and other appropriate entities in order to comply with the

8  statutory scheme.

9       6.     Pursuant to the statutes, the Fund is obligated to perform its duties

10  without regard to union membership.

11       7.     The Fund was established through an Agreement and Declaration of

12  Trust dated September 16, 1998 between the American Federation of Musicians of

13  the United States and Canada ("AFM") and the American Federation of Television

14  and Radio Artists ("AFTRA").

15       8.     The Agreement and Declaration of Trust dated September 16, 1998 was

16  amended and restated on July 26, 2012 after the merger of the Screen Actors Guild

17  ("SAG") and AFTRA. The AFM and SAG-AFTRA are collectively referred to

18  herein as "Unions."

19       9.     As of 2013, the Fund's Trustees consist of three board members of the

20  AFM union and three board members of the SAG-AFTRA union, as well as two

21  rank-and-file members, one from each Union. The Trustees are not compensated by

22  the Fund for the performance of their duties. The Trustees are responsible for

23  implementing the statutory rights of the non-featured performers, collecting the

24  Royalties due to non-featured performers and making payment to the non-featured

25  performers.

26       10.    Pursuant to the Agreement and Declaration of Trust, the Trustees owe a

27  fiduciary duty to the beneficiaries of the Fund and are obligated to protect the

28  property held by the Fund.

## C. IMPLEMENTATION OF THE SERVICE FEE FOR THE BENEFIT OF THE UNIONS

11.     The Fund entered into a Data Purchase and Services Agreement dated July 22, 2013 (the "Services Agreement") with the Unions. Pursuant to the Services Agreement, "the Fund shall pay each Union, within 30 days after the conclusion of each of the Fund's distribution cycles, 3% of the amount distributed by the Fund in such distribution cycle…. Such payment shall constitute complete compensation of the Unions and their personnel for providing the data and services contemplated by this Agreement. There shall be no additional charges or expense reimbursement associated with the Unions' provision of the data and services contemplated by this Agreement."

12.     This 3% service fee shall be referred to herein as the "Service Fee."

13.     The Service Fee was approved by the Defendants named herein. These Defendants were Trustees of the Fund but were acting with deep conflicts of interest to the benefit of the Unions, by which they are employed.

14.     This Service Fee reduces the amount of capital in the Fund and therefore reduces the amount of money available to the beneficiaries of the Fund.

15.     Defendants violated their duties to the Trust when authorizing the Service Fee and diverting funds away from the Fund and to the Unions.

16.     The Service Fee is purportedly paid to the Unions for the provision of certain data and representation of "Fund interests." However, all of the obligations conferred on the Unions in the Service Agreement were activities that the Unions were already performing as a benefit to its members.  No new consideration was provided by the Unions in exchange for the Service Fee.  The Unions even provide the exact same information to other entities, including but not limited to the AFM and Employers Pension Fund, the Film Musicians Secondary Market Fund, and the Sound Recording Special Payments Fund, at no charge.  The Unions only maintain data regarding their members, which makes the Service Fee particularly egregious

as to non-union members.  At no time has any cost accounting been done to ensure that the Service Fee is justified, reasonable, or rightful.

17.    In some instances, the Unions have not even fulfilled their obligations under the self-serving Services Agreement. For example, despite what the Services Agreement states, SAG-AFTRA has declined to provide access to member databases, session reports and "B-forms," or other similar databases.  The Trustees have not taken action to address SAG-AFTRA's non-compliance.

18.    None of the activities set forth in the Services Agreement are for the benefit of non-Union, non-featured performers.

19.    In addition to the Service Fee, and contrary to the terms of the Service Agreement, the Trust pays the expenses of the Defendant Trustees.

20.    The Trustees of the Fund have significant conflicts of interest with the beneficiaries of the Fund and have used the Fund to benefit the Unions instead of the beneficiaries it was intended to represent.

21.    Plaintiff is informed and believes, and thereon alleges, that in 2016 alone, the Fund paid $1,743,712.00 to the Unions, and the amount continues to increase each year as the Service Fee is collected as a continuing violation.

22.    Of note, the general counsel for the Fund, Patricia Polach, has simultaneously served as counsel for (1) the Fund; (2) AFM and AFTRA; and (3) SAG-AFTRA, creating a massive and obvious conflict of interest.  Ms. Polach's role in the creation of the Fund and implementation of the Service Fee will be thoroughly investigated by Plaintiff in connection with this Action.

23.    Plaintiff and the Class seek equitable, declaratory, and injunctive relief against the Trustees requiring them to: (1) revert back to the Fund the 3% Service Fee for the distribution cycles following July 22, 2013; (2) cease the collection of the 3% Service Fee on all future distribution cycles; and (3) declare the Data Purchase and Services Agreement void and unenforceable.

1

**JURISDICTION AND VENUE**

2      24.     This Court has jurisdiction over this action. The Fund is located in

3 Valley Village, California, and a substantial part of the acts and events giving rise to

4 Plaintiff's and the Class' claims occurred in Los Angeles County, in that the

5 Trustees and the Unions have diverted funds from the Fund in this County, and

6 because upon information and belief, all meetings, decisions, and accountings are

7 held and performed in this County.

8      25.     Further, SAG-AFTRA is a Delaware corporation authorized to conduct

9 business and conducting business in the County of Los Angeles, State of California.

10 Defendant AFM is a mutual benefit corporation (also known as a nonprofit

11 corporation) that is organized and existing under the laws of the State of California

12 and is authorized to conduct business and is conducting business, in the County of

13 Los Angeles, State of California.

14      26.     Venue is proper in this Court because a substantial part of the acts

15 giving rise to Plaintiff's claims occurred in this venue.

16

**PARTIES**

17      27.     Plaintiff Kevin Risto ("Plaintiff") is a resident of Las Vegas, Nevada.

18 Mr. Risto is not a Union member, but collects from the Fund as a non-featured

19 musician on artist Fantasia's "When I See U."  Plaintiff has written and produced

20 songs for Justin Bieber, Frank Ocean, 50 Cent, Jennifer Lopez, and many other

21 award-winning artists.  Plaintiff received a Grammy award, the music industry's

22 highest honor, for his work on Frank Ocean's "Channel Orange" album.

23      28.     Defendant SAG-AFTRA is a corporation organized and existing under

24 the laws of the state of Delaware and is authorized to conduct business and is

25 conducting business in the County of Los Angeles, State of California.

26      29.     Defendant AFM is a mutual benefit corporation (also known as a

27 nonprofit corporation) that is organized and existing under the laws of the State of

28 California and is authorized to conduct business and is conducting business, in the

1 | County of Los Angeles, State of California.

2 | 30. Defendant Raymond M. Hair, Jr. is a resident of the State of New York

3 | and a Trustee of the AFM and SAG-AFTRA Intellectual Property Rights

4 | Distribution Fund. Defendant Raymond M. Hair, Jr. is also the President of the

5 | American Federation of Musicians ("AFM").

6 | 31. Defendant Augustino Gagliardi is a resident of the State of New York

7 | and a Trustee of the AFM and SAG-AFTRA Intellectual Property Rights

8 | Distribution Fund. Mr. Gagliardi serves on the Executive Committee of the

9 | American Federation of Musicians ("AFM").

10 | 32. Defendant Duncan Crabtree-Ireland is a resident of the City of Los

11 | Angeles, State of California and a Trustee of the AFM and SAG-AFTRA

12 | Intellectual Property Rights Distribution Fund. Mr. Crabtree-Ireland is the Chief

13 | Operating Officer and General Counsel of SAG-AFTRA.

14 | 33. Defendant Stefanie Taub is a resident of the City of Los Angeles, State

15 | of California.  She is a former Trustee of the Fund and now serves as its Chief

16 | Executive Officer. Ms. Taub also previously served as the National Manager of

17 | Sound Recordings for SAG-AFTRA.

18 | 34. Defendant Jon Joyce is a resident of the State of California and serves

19 | as the rank-and-file SAG-AFTRA Trustee of the Fund. Mr. Joyce is on the Board of

20 | the SAG-AFTRA Foundation.

21 | 35. Defendant Bruce Bouton is a resident of the State of California and

22 | serves as the rank-and-file AFM Trustee of the Fund. Mr. Boulton is on the

23 | Electronic Media Oversight Committee of the AFM and is the Intellectual Property

24 | Rights Committee Chair of the Recording Musicians Association, which, upon

25 | information and belief, is an affiliated entity of the AFM.

26 | 36. The individual defendants shall be referred to collectively as the

27 | "Trustee Defendants."  The entity defendants shall be referred to as the "Union

28 | Defendants."

8                    FIRST AMENDED CLASS ACTION

37. The names and capacities of DOE Defendants 1-10 are currently unknown to Plaintiff. Each of the DOE Defendants is legally responsible for the unlawful acts alleged herein.

38. At all relevant times, each defendant was acting as an agent or employee of each of the other and was acting within the course or scope of the agency with knowledge and consent of the other defendants. Each of the acts and omissions complained of were made known to, and ratified by, each of the other defendants.

## CLASS ACTION ALLEGATIONS

39. Pursuant to California Code of Civil Procedure § 382, Plaintiff brings this action individually and on behalf of the following proposed class of persons, initially defined as:

**Nationwide Class:**

All persons and entities, their agents, successors in interest, assigns, heirs, executors, trustees, and administrators who are and/or were non-featured musicians and non-featured vocalists.

40. The Class does not include Defendants; any successor or assign of Defendants; or any judge to whom this case is assigned and any member of his or her immediate family.

41. Numerosity. The Class is comprised of thousands of persons, making joinder of such cases impracticable. Disposition of the claims in a class action context will provide substantial benefits to the parties and the Court.

42. Existence and predominance of common questions. Common questions of law and fact exist as to all members of the proposed Class and predominate over questions affecting only individual Class members. These common questions include, but are not limited to, the following, answers to which are apt to drive the resolution of this litigation:

a. Whether the Trustees breached their fiduciary duties to the

9                                                    FIRST AMENDED CLASS ACTION

1  Plaintiff and the Class;

2          b.      Whether the Trustees wrongfully withheld and benefitted from

3  money due to Plaintiff and the Class;

4          c.      Whether the Trustees converted funds due to Plaintiff and the

5  Class by diverting the funds to the Unions;

6          d.      Whether the Trustees wrongfully retained money due to the

7  Fund;

8          e.      Whether the Trustees should be enjoined from diverting the

9  Service Fee in the future;

10         f.      Whether the Data Purchase and Services Agreement is void

11  and/or unenforceable in whole or in part.

12     43.   Typicality.  Plaintiff's claims are typical of the claims of the proposed

13  Class.  Plaintiff and the Class members he proposes to represent are all non-featured

14  musicians and non-featured vocalists as all such non-featured artists have or may

15  earn digital performance royalties that are or will be collected by the Fund and

16  subject to the 3% Service Fee, giving rise to substantially the same claims.

17     44.   Adequacy.  Plaintiff will fairly and adequately represent and protect the

18  interests of the proposed Class.  Plaintiff has no interests that are antagonistic to or

19  that irreconcilably conflict with those of the other Class members he seeks to

20  represent.  Plaintiff has retained counsel competent and experienced in the

21  prosecution of class action litigation and intends to prosecute this action vigorously.

22     45.   Superiority.  A class action is superior to all other available methods for

23  the fair and efficient adjudication of this controversy.  This litigation involves issues

24  that will require substantial and targeted discovery of sophisticated defendants and

25  could not practically be taken on by individual litigants.  In addition, individual

26  litigation of Class members' claims would be unduly burdensome to the court

27  system and has potential to lead to repetitious litigation with inconsistent results.  A

28  class action would achieve substantial economies of time, effort and expense, and

1  would assure uniformity of decision as to persons similarly situated without

2  sacrificing procedural fairness.

3       46.    Class certification is also appropriate because Defendants have acted or

4  refused to act on grounds generally applicable to the Class, thereby making final

5  injunctive relief or corresponding declaratory relief appropriate with respect to the

6  Class as a whole.

7       47.    The nature of notice to the proposed Class is contemplated to be by

8  direct mail or, if such notice is not practicable, by the best notice practicable under

9  the circumstance including email, publication in major newspapers and/or on the

10  Internet.

11  **TOLLING AND ESTOPPEL**

12       48.    Any applicable statutes of limitations that might otherwise bar any of

13  Plaintiff's claims are tolled by Defendants' knowing and active concealment of the

14  wrongful diversion of monies from the corpus of the Trust to the Unions.

15       49.    Defendants, as the Trustees of the Trust are therefore in a superior

16  position to know of the material issues, were under a continuous duty to disclose to

17  Plaintiff and members of the Class the true amount of funds collected by the Trust

18  and expenditures made at each distribution cycle, and the sum of money being

19  diverted to the Unions at every cycle. Plaintiffs and the members of the Class were

20  under no duty to investigate the Fund's payment of sums and had no reason to

21  believe that the Fund's Trustees would authorize a gratuitous, unjustified payment

22  of their money to the Unions.  The Unions prevented the Trust from informing the

23  beneficiaries of the terms of the Data Purchase and Sales Agreement and hid the

24  Service Fee from the beneficiaries. Defendants kept Plaintiff in the dark as to

25  necessary information essential to the pursuit of his claims. Because of Defendants'

26  cover-up, proposed Class members could not have reasonably discovered the

27  substantial sum of money being diverted from the Trust to the Unions at every

28  distribution cycle.  Defendants are therefore estopped from relying on any statutes

1    of limitations in defense of this action.

2         50.    Plaintiff was not aware of the Service Fee or the terms of the Data

3    Purchase and Sales Agreement because of Defendants' active concealment.

4    Defendants did not mail to the Plaintiff, or the members of the Class, notice of the

5    implementation of the Service Fee or the Data Purchase and Sales Agreement.

6    Instead, Defendants implemented the Service Fee unilaterally, without notice, and

7    then failed to provide clear, unambiguous notice of the Service Fee in their annual

8    reports posted to the Fund's website.

9         51.    Plaintiff and the members of the Class have no reason to visit the

10   Fund's website, as the Fund typically communicates with its beneficiaries through

11   the mail.  Defendants chose not to mail notice of the Service Fee and the Data

12   Purchase and Sales Agreement to Plaintiff and Class members' physical addresses

13   in order to conceal their breach of fiduciary duty.

14        52.    Prior to 2013, the year the Service Fee was implemented, hard copies

15   of the Annual Report were mailed to beneficiaries.  Once the Service Fee was

16   implemented, and the Defendants sought to keep the Beneficiaries in the dark, the

17   Annual Reports were concealed on the Fund's website and hard copies were no

18   longer mailed.

19        53.    Even if the alleged publication in a corner of Defendant's website is

20   taken into account, the Annual Reports themselves also cannot constitute "notice" of

21   the Service Fee in any event.  The Annual Reports contain "statements of assets,

22   liabilities, and net assets."  Instead of labeling the Service Fee as such on the

23   statements, the Fund describes the Service Fee as a "Related Party Transaction," and

24   the existence of the Service Fee is not clearly stated.  Plaintiff and the members of

25   the Class did not and would not understand that these "Related Party Transactions"

26   are based on a set percentage of the Fund corpus and not in exchange for services

27   actually rendered.  There is no accounting for the Service Fee, or any other

28   explanation of the specific expenses, charges, or work done that would justify or

explain the Service Fee to the beneficiaries in any manner whatsoever.  This concealment of the Service Fee and the Data Purchase and Sales Agreement was done to inure to the benefit of the Unions and Trustee Defendants, and to conceal the true facts from Plaintiff and members of the Class.  Plaintiff and the Class Members were entitled to rely on the Trustees as their fiduciaries, particularly when the Trustees informed Plaintiff of financial matters and information which only the Trustees controlled.

54.     In addition, the Trustees' breaches of their fiduciary duties as described herein constitute continuing wrongs such that the statute of limitations on these breaches of fiduciary duty claims of Plaintiff and the Class has been tolled and will not begin to run until the commission of the last wrongful act of the Trustees.

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty for Implementing Service Fee

(Against the Trustee Defendants On Behalf of Plaintiff and the Class)

55.     Plaintiff incorporates the preceding and subsequent allegations as if fully set forth herein.

56.     The Trustees are fiduciaries with regard to the Fund pursuant to, among other authorities, the Agreement and Declaration of Trust dated September 16, 1998 as amended and restated July 26, 2012, and the statutory framework proscribing their authority. As fiduciaries, the Trustees owe to Plaintiff and the Class, as beneficiaries, fiduciary duties of loyalty, reasonableness and good faith, diligence and prudence, to act solely in the interests of Plaintiff and the Class and to treat the Union and non-union members of the Class equally and impartially.

57.     The Trustees have a duty to deal impartially with the Union beneficiaries and non-Union beneficiaries. The non-Union beneficiaries have elected not to become members of the Unions. Despite this election, the Defendants implemented the Service Fee which wrongfully takes a large percentage of funds due to non-Union beneficiaries, and transfers it to the Unions to which they have no

1 connection.

2     58.    Defendants have further violated their duty of impartiality to non-union

3 members of the Class, including Plaintiff, because the Unions maintain no

4 information for non-union beneficiaries and therefore have nothing of value to

5 exchange for the Service Fee. Therefore, on its face, the Data Purchase and Sales

6 Agreement violates the Defendants' duties to non-union members because the

7 Unions maintain no information for non-union members and therefore have no

8 information to sell to the Fund. The Unions have not provided any information to

9 the Fund with regard to non-union members, and the Trustees knew that the Unions

10 would have no information to provide regarding non-Union members, including

11 failing to provide access to session reports and B-forms or other similar databases.

12     59.    The Trustees control substantial Royalties that are owed by statute, the

13 implementing regulations, the Trust Agreement, and applicable law to Plaintiff and

14 the Class. This money belongs to Plaintiff and the Class, not to the Fund or the

15 Trustees. Furthermore, Plaintiff and the Class reasonably expect that the Trustees

16 will in the future collect additional Royalties owed to them and the Trustees will

17 likewise fail to distribute those Royalties to them.

18     60.    As set forth above, by implementing the Service Fee, the Trustees have

19 effectively refused to pay to Plaintiff and the Class the full amount of money owed

20 to them.

21     61.    The Trustees implemented the Service Fee to benefit the Unions to

22 which they are employed and receive financial benefit from.

23     62.    The implementation of the Service Fee constitutes breach by the

24 Trustees of their fiduciary duties of loyalty, reasonableness and good faith, diligence

25 and prudence, and to act solely in the interests of Plaintiff and the Class, who are

26 beneficiaries of the Fund. The Trustees' conduct is under significant conflict of

27 interest and damages the interests of the Union and non-union non-featured

28 performers. The conduct of the Trustees in implementing the Service Fee also

breaches their fiduciary duty to treat all members impartially without regard to union membership. The Trustees' breaches of their fiduciary duties have proximately caused damages to Plaintiff and the Class in the amount of the Royalties owed to but not paid to them, which upon information and belief, exceeds millions of dollars to date and continues to accrue to Plaintiff's and the Class's detriment.

63.     Defendants' conduct as described herein was done with a conscious disregard of the rights of Plaintiff and Class Members, with the intent to vex, annoy, and/or harass them and to unjustly profit at their expense. Such conduct was unauthorized and constitutes oppression, fraud, and/or malice under California Civil Code § 3294, entitling Plaintiff and the Class Members to an award of punitive damages in an amount to punish or set an example of the Defendants in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### Money Had and Received

(Against All Defendants On Behalf of Plaintiff and the Class)

64.     Plaintiff incorporates the preceding and subsequent allegations as if fully set forth herein.

65.     As stated above, in their official capacities, the Trustees and the Unions have received and currently retain Royalties belonging to Plaintiff and the Class which, upon information and belief, is in excess of $5,000,000.00 million and continues to accrue. The Trustees and the Unions have benefitted from receipt of that money. The Royalties collected belong to Plaintiff and the Class, not to the Unions.

66.     The Trustees and the Unions are indebted to Plaintiff and the Class for their rightful share of the money had and received by the Trustees and the Unions for the benefit and use of Plaintiff and the Class.

FIRST AMENDED CLASS ACTION

## THIRD CAUSE OF ACTION

### Declaratory Relief

(Against All Defendants On Behalf of Plaintiff and the Class)

67.     Plaintiff incorporates the preceding and subsequent allegations as if fully set forth herein.

68.     The Trustees are obligated to distribute 100% of the Royalties received to beneficiaries of the Trust except for provable and substantiated "reasonable costs" necessarily incurred under 17 U.S.C. § 114(g)(3). Instead, the Trustees have unreasonably and wrongfully diverted three percent of the funds to the Unions to the detriment of Plaintiff and the Class.

69.     Plaintiff and the Class have no adequate remedy at law.

70.     By reason of the foregoing, there is a present and existing controversy by and between Plaintiff and the Class, on one hand, and the Unions and the Trustees, on the other hand, with respect to which this Court should enter a declaratory judgment determining that the statutory scheme prohibits the Trustees from diverting three percent of the Royalties collected to the Unions, and declare the Data Purchase and Services Agreement void and unenforceable.

## FOURTH CAUSE OF ACTION

### Conversion

(Against All Defendants On Behalf of Plaintiff and the Class)

71.     Plaintiff incorporates the preceding and subsequent allegations as if fully set forth herein.

72.     At all relevant times, Plaintiff and the Class had ownership rights in, or the right to possess, specific sums of the Fund's collections. These specific sums are capable of identification through an accounting of the Fund's records.

73.     The Unions and the Trustees of the Fund have wrongfully exercised control over Plaintiff and Class Members' rights in the Fund.

74.     The Unions and the Trustees intentionally and substantially interfered

with Plaintiff's and Class Members' rights by implementing a Service Fee which prevented Plaintiff and the Class from accessing the full amount of their rightful property. This is especially true for non-Union Class Members who receive no benefits from Union membership.

75. Plaintiff and the Class did not consent to the Defendants' actions as described above.

76. Plaintiff and the Class suffered harm through the Defendants' actions.

77. The Defendants' conduct was a substantial factor in causing Plaintiff's and Class Members' harm.

78. By reason of the foregoing, Plaintiff and Class Members have suffered damages in an amount to be determined at trial. Plaintiff and Class members are entitled to actual damages sustained as a result of the Trustee's wrongful acts, including an award sufficient to compensate Plaintiff and Class Members for all harm suffered as a result of the Defendants' conduct, and punitive damages.

79. Defendants' conduct as described herein was done with a conscious disregard of the rights of Plaintiff and Class Members, with the intent to vex, annoy, and/or harass them and to unjustly profit at their expense. Such conduct was unauthorized and constitutes oppression, fraud, and/or malice under California Civil Code § 3294, entitling Plaintiff and the Class Members to an award of punitive damages in an amount to punish or set an example of the Defendants in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a. For an order certifying this action as a class action pursuant California Code of Civil Procedure § 382 and appointing Plaintiff as the representative of the Class and his counsel as Class Counsel;

b. A declaration that Defendants are financially responsible for notifying all Class Members that the Service Fee was unauthorized;

1            c.      An injunction requiring the Trustees to cease collection of the

2    Service Fee on all future distribution cycles;

3            d.      An injunction prohibiting any further dissemination of monies

4    from the Fund to the Unions for the Service Fee or any other purpose unless

5    specifically authorized by law;

6            e.      An award to Plaintiff and the Class of damages in an amount to

7    be proven at trial;

8            f.      An award of punitive damages on the Breach of Fiduciary Duty

9    and Conversion causes of action;

10           g.      Judgment against the Trustees in their individual capacities

11   requiring them to reimburse the Fund for any of its assets they used in

12   unsuccessfully defending the breach of fiduciary claims against them;

13           h.      Judgment awarding Plaintiff's counsel reimbursement of their

14   costs and expenses and reasonable attorneys' fees;

15           i.      For an order awarding Plaintiff's pre-judgment and post-

16   judgment interest;

17           j.      For an order awarding Plaintiff's reasonable attorney fees and

18   costs of suit, including expert witness fees, as allowed by law; and

19           k.      For an order awarding such other and further relief as this Court

20   may deem just and proper.

21

22   DATED:  November 19, 2018      Respectfully submitted,

23

24                               **KIESEL LAW LLP**

25

26                       By: /s/ Paul R. Kiesel

27                         PAUL R. KIESEL
                           MARIANA A. MCCONNELL

28                         *Attorneys for Plaintiff and the Class*

1

2 **JOHNSON & JOHNSON LLP**

3

4 By: /s/ Neville L. Johnson
          NEVILLE L. JOHNSON
5          JORDANNA G. THIGPEN
          DANIEL B. LIFSCHITZ
6          *Attorneys for Plaintiff and the Class*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

DATED:  November 19, 2018          Respectfully submitted,


**KIESEL LAW LLP**


By: /s/ Paul R. Kiesel
            PAUL R. KIESEL
            MARIANA A. MCCONNELL
            *Attorneys for Plaintiff and the Class*


**JOHNSON & JOHNSON LLP**


By: /s/ Neville L. Johnson
            NEVILLE L. JOHNSON
            JORDANNA G. THIGPEN
            DANIEL B. LIFSHITZ
            *Attorneys for Plaintiff and the Class*

FIRST AMENDED CLASS ACTION