JENNER & BLOCK LLP
Andrew J. Thomas (SBN 159533)
ajthomas@jenner.com
Andrew G. Sullivan (SBN 301122)
agsullivan@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

JENNER & BLOCK LLP
Devi M. Rao (*pro hac vice*)
drao@jenner.com
1099 New York Ave, NW, Suite 900
Washington, D.C. 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for All Defendants*

KIESEL LAW LLP
Paul R. Kiesel (SBN 119854)
kiesel@kiesel.law
Mariana A. McConnell (SBN 273225)
mcconnell@kiesel.law
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:   310-854-4444
Fax:   310-854-0812

JOHNSON & JOHNSON LLP
Neville L. Johnson (SBN 66329)
njohnson@jjllplaw.com
Douglas L. Johnson (SBN 209216)
djohnson@jjllplaw.com
Jordanna G. Thigpen (SBN 232642)
jthigpen@jjllplaw.com
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Tel:   310-975-1080
Fax:   310-975-1095

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

KEVIN RISTO, on behalf of himself and all others similarly situated,

Plaintiff,

v.

SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a Delaware corporation; AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA, a California nonprofit corporation; RAYMOND M. HAIR, JR, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; TINO GAGLIARDI, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; DUNCAN CRABTREE-IRELAND, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; STEFANIE TAUB, an individual, as

Case No. 2:18-cv-07241-CAS-PLA

CLASS ACTION

**JOINT STIPULATION RE: DEFENDANTS' MOTION TO COMPEL DISCOVERY**

Date: January 15, 2019
Time: 10:00 a.m.
Dept.:   780
Judge:   Hon. Paul L. Abrams

Discovery Cut-Off:          Not Scheduled
Pre-Trial Conference:      Not Scheduled
Trial Date:                     Not Scheduled

0055099
4-1
2950799.8

Trustee of the AFM and SAG-AFTRA
Intellectual Property Rights Distribution
Fund; JON JOYCE, an individual, as
Trustee of the AFM and SAG-AFTRA
Intellectual Property Rights Distribution
Fund; BRUCE BOUTON, an
individual, as Trustee of the AFM and
SAG-AFTRA Intellectual Property
Rights Distribution Fund; and DOE
DEFENDANTS 1-10,

Defendants.

# I.    INTRODUCTION

## A. Defendants' Introductory Statement

Plaintiff Kevin Risto ("Plaintiff" or "Mr. Risto") filed the current action on behalf of a putative class of non-featured musicians and vocalists alleging, among other causes of action, breach of fiduciary duty by the Trustees of the AFM & SAG-AFTRA Intellectual Property Rights Distribution Fund (the "Fund"), as well as conversion by AFM and SAG-AFTRA (together, the "Unions"). The crux of Plaintiff's allegations is that the Fund's Trustees acted based on a conflict of interest when they entered into a 2013 Data Purchase and Services Agreement with the Unions, pursuant to which the Fund pays a fee (the "Service Fee") to compensate the Unions for providing information that the Fund uses to locate and pay royalties to non-featured performers, and for providing other services that advance the broader interests of non-featured performers.

Absent from Mr. Risto's allegations is any reference to the individuals who appear to have orchestrated his involvement in this litigation – the Fund's former Executive Director Dennis Dreith and former Chief Operating Officer Shari Hoffman. Shortly after their less-than-amicable departures from the Fund in 2017, Mr. Dreith and Ms. Hoffman co-founded Transparence Entertainment Group ("TEG"), a business venture that directly competes with the Fund in securing performer royalties from foreign collective management organizations ("CMOs"). As explained below, this lawsuit is a grudge match, and TEG is at the center of it.

Plaintiff Kevin Risto has close ties to TEG and its executives. He is a client of the company, and he is longtime business partners with TEG Vice President Bruce Waynne. Mr. Waynne (born Waynne Nugent) and Mr. Risto (a.k.a., Dirty Swift) have

together formed a music producing duo called The MIDI Mafia since 2001.[1] Mr. Waynne was among the first executives hired by Mr. Dreith and Ms. Hoffman just a month after they founded TEG in January 2018, and Mr. Risto became a client soon after.[2]

Mr. Risto is no ordinary class member, and his unique interests and incentives do not align with those of absent class members. As noted above, he has been business partners for nearly two decades with one of the top three executives at TEG, which is a direct competitor of the Fund. TEG directly competes with the Fund with respect to securing royalties from foreign CMOs by charging fees to musicians to register their international royalty mandates with foreign CMOs instead of with the Fund. This undermines the Fund's bargaining position with foreign CMOs and increases the administrative expense burden for all Fund participants – *i.e.*, many of the very performers who make up the proposed class in this litigation.

That by itself creates a serious conflict of interest that undermines Mr. Risto's adequacy as a class representative. But TEG is no mere marketplace competitor. It is controlled by Mr. Dreith, the former chief executive of the Fund who approved of and implemented the service fee in 2013. And Mr. Dreith is no mere bystander, either. He is a critical fact witness in the case. He also has a direct, personal stake in the case: Plaintiff's counsel have advised Defendants that Mr. Dreith is ***directly participating in this matter*** as a "litigation consultant" retained by Plaintiff.[3]

These connections cannot be coincidental. The inescapable conclusion, rather,

---

[1] *See* Declaration of Andrew J. Thomas ("Thomas Decl.") at ¶ 3, Exhibit A (MIDI Mafia Wikipedia page).

[2] *See* Thomas Decl. at ¶ 3, Exhibit B (Plaintiff's Response to Defendants' Interrogatory No. 19).

[3] *See* Thomas Decl. at ¶ 4, Exhibit B (Plaintiff's Response to Defendants' Interrogatory No. 15).

is that Dennis Dreith, likely with the involvement of Ms. Hoffman and Mr. Waynne, enlisted Mr. Risto to bring this lawsuit as payback after the Fund parted ways with Mr. Dreith and Ms. Hoffman in 2017.   TEG's owners thus have incentives and motivations for bringing this litigation that almost certainly differ from those of the potential class of non-featured performers.  And their instigation of this lawsuit almost certainly has more to do with their settling old scores than it does with securing the best outcome for absent members of the putative class.

Based on the foregoing, **Defendants' Requests for Production Nos. 7-10 ask for any agreements between and among Plaintiff Kevin Risto, on the one hand, and TEG and its top three executives (Mr. Dreith, Ms. Hoffman, and Mr. Waynne), on the other**. Plaintiff objected to these requests as unduly burdensome and not relevant to any party's claim or defense.  Following the exchange of multiple letters regarding this dispute, the parties' counsel attempted unsuccessfully to resolve their disputes during an in-person meeting held on November 13, 2019.

Contrary to Plaintiffs' assertions, the agreements Defendants seek are directly relevant to Mr. Risto's adequacy as a class representative.  These requests are aimed at uncovering the legal and economic relationships between Mr. Risto and several highly conflicted individuals who appear to have arranged for his designation as lead plaintiff.  It is well-settled that where—as here—grounds exist to believe that a class representative's loyalties may be in some way conflicted, discovery into the adequacy of their representation of the class is warranted.

Furthermore, Mr. Dreith's assistance in the prosecution of this lawsuit as a "consultant" is presumably in exchange for some kind of compensation or stake in the litigation.  The agreements that Defendants seek likely will reveal that Mr. Dreith and Ms. Hoffman are seeking to profit from a lawsuit that attacks the very Service Fee that they personally implemented, administered and supported as former top officers of the Fund and that, if successful, would result in a judgment that Mr. Dreith


1 and Ms. Hoffman ***breached their own fiduciary duties*** as executives of the Fund. *See*

2 Dkt. 26 at ¶ 62 (First Amended Complaint).[4]

3      Pursuant to Fed. R. Civ. P. 37 and L.R. 37-1 and 37-2, Defendants therefore

4 respectfully request an order compelling Plaintiff's production of the agreements

5 requested in Defendants' Requests for Production Nos. 7-10.

## B. Plaintiff's Introductory Statement

7      Defendants' Introductory Statement is little more than an overlong conspiracy

8 theory, one completely removed from the operative facts of this case. The AFM &

9 SAG-AFTRA Intellectual Property Rights Distribution Fund (the "Fund") is a

10 501(c)(6) not-for-profit organization which was created to collect royalties to entitled

11 singers and musicians without regard to union membership. In 2013, the Trustees of

12 the Fund, acting purely for the benefit of their Union employers, implemented a

13 Service Fee which increases year over year and has diverted millions of dollars from

14 the beneficiaries of the Fund and to the Union coffers. The implementation of the

15 Service Fee was, and annually is, a breach of the fiduciary duties owed by the Trustees

16 to the Fund's beneficiaries and constitutes a conversion.

17      The implementation of the Service Fee, and its amount, was decided

18 unilaterally by the Trustees and concealed from the Fund's beneficiaries. Indeed,

19 Dennis Dreith, the former Executive Director, documented his concerns about the

20 Service Fee, the amount of the Service Fee, and the Trustees' failure to disclose the

21 Service Fee to the Fund's beneficiaries.[5] The Union Trustees ignored Mr. Dreith's

22

23 _____

24 [4] Defendants are likewise seeking non-party discovery on these subjects from TEG,

25 Mr. Dreith, and Ms. Hoffman.  Defendants served document subpoenas on these parties on December 3-4, 2019, and responses are due December 17. Defendants are

26 also in the process of attempting to serve a document subpoena on Mr. Waynne.

27 [5] *See* Declaration of Mariana A. McConnell ("McConnell Decl.") at ¶ 3, Exhibit 1

28

concerns and moved forward with the Service Fee, which has resulted in millions of dollars being diverted to the Unions.[6] Documents produced in this case confirm that the Unions provided no benefit to the Fund in return for the exorbitant Service Fee. As the Fund becomes more adept at securing royalties on behalf of its beneficiaries, the Service Fee paid to the Unions increases exponentially. Yet, the Unions continue to provide no value in exchange for the monies received.

Because the Trustees and the Union Defendants have no justification for the Service Fee and cannot avoid liability for the implementation of the Service Fee, the Defendants have turned to question the class representative's incentives. Yet Defendants base their contentions of a "conflict" on pure speculation about the interests of various *non*-plaintiffs and *non*-class members. Plaintiff Kevin Risto is a non-Union, non-featured performer who stands in the exact same position as any other non-featured performer when it comes to receiving royalties from the Fund. Mr. Risto is also a client of Transparence Entertainment Group ("TEG"), which collects and distributes worldwide digital performance, audio-visual, private copy, and exclusive license royalties on behalf of recording artists, master right holders, producers, publishers, and DIY music creators. TEG's services exceed those that are provided by the Fund and TEG does not consider itself to be a competitor of the Fund, least of all because the Fund has an exclusive Congressional mandate to collect and administer the royalties at issue in this case. *See* 17 U.S.C. § 114(g)(2)(B)-(C). Mr. Risto has no financial interest in TEG, while TEG is not a party to this litigation and does not stand to benefit from this litigation.

(DEFS40155, 40158, 40165, 40166, 40172).

[6] McConnell Decl. at ¶ 4, Exhibit 2 (DEFS40517-28).

In meet and confer correspondence, Defendants alleged, without any basis, that Mr. Risto was a "principal of TEG.[7]" Defendants made this argument without regard to its falsity because it supported the narrative that they want to advance – that Mr. Risto himself is a competitor to the Fund and seeks to benefit from the Fund's demise when, in fact, he simply wishes to increase the amount of royalties he (and similarly-situated performers) receive from the Fund. Defendants' narrative is not supported by the facts, which is why they appear to have abandoned the false argument that Mr. Risto is a "principal of TEG." The undisputed facts show that Mr. Risto stands in the same place as other Fund beneficiaries, as all of the Fund's beneficiaries are harmed by the Service Fee, and Defendants have failed to explain how his recovery in this case would be any different from that of absent class members (beyond a typical class representative's incentive award). The fact that Mr. Risto has asked TEG to collect royalties in areas where the Fund does not have an exclusive Congressional mandate is eminently reasonable considering his awareness of the breach of fiduciary duties of the Fund's Trustees. This does not create a conflict between Mr. Risto and other members of the class, as it is likely that other class members would do the same. Mr. Risto and the absent class members have the same incentive in this litigation: to have the Service Fees returned to the beneficiaries of the Fund who have earned and are entitled to those royalties.

The fact that Mr. Risto and Mr. Waynne (one of the principles of TEG) are both music producers who provide services under the group The MIDI Mafia, has no consequence to this litigation or the allegations made against the Defendants. The MIDI Mafia is a creative endeavor that has nothing to do with collecting and reporting royalties to performers. Defendants have not and cannot relate The MIDI Mafia's

---

[7] McConnell Decl. at ¶ 5, Exhibit 3 (September 23, 2019 Letter from Andrew J. Thomas, page 2).

business to any of the issues in this case. The fact that Dennis Dreith is a litigation consultant for the Plaintiffs is also of no consequence. Mr. Dreith is not the class representative and is not being compensated by Mr. Risto. Mr. Risto is not a principal of TEG and does not stand to profit off TEG obtaining more clients.

Defendants seek this discovery of TEG not because of any purported conflict of interest, but because they consider TEG to be a competitor and because if other non-featured performers become clients of TEG, the Fund **and therefore the Unions** stand to lose income. A desire to obtain information for commercial benefit is not adequate justification to seek discovery in this case. Defendants' true motive for seeking this discovery is likewise apparent from the overbroad non-party subpoenas that were served on TEG, Mr. Dreith, Ms. Hoffman, and Mr. Waynne.

Discovery has limits, and Defendants have exceeded those limits in seeking to compel further responses to RFP Nos. 7-10.

## II.   ISSUES IN DISPUTE

### A. Request for Production No. 7

### Defendants' Request for Production No. 7:

All AGREEMENTS between [Kevin Risto] and the Transparence Entertainment Group.

### Plaintiff's Response to Request for Production No. 7:

OBJECTION: Plaintiff objects to Defendants' request as it is not relevant to any party's claim or defense and not proportional to the needs of the case, the burden and expense of the proposed discovery outweighs its likely benefit, the discovery has no bearing on the issues at stake in the action, and there is no importance of this discovery in resolving the issues.

OBJECTION: Plaintiff objects to Defendants' request as being overbroad, unduly burdensome, oppressive, vexatious and harassing in that it is not reasonably limited as to scope.

**<u>Defendants' Position Regarding Plaintiff's Response to RFP No. 7:</u>**

Plaintiff's refusal to produce any agreements between himself and TEG is legally indefensible.  Setting aside Plaintiff's objection that the production of such agreements would be "unduly burdensome"—which is unsupported and plainly without merit—Defendants' request for agreements between Mr. Risto and TEG is directly relevant to Mr. Risto's adequacy as a class representative.  *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (the adequate representation inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent"); *Lyon v. State of Ariz.*, 80 F.R.D. 665, 669 (D. Ariz. 1978) (holding that class representatives must disclose potential conflicts and that "the appearance of impropriety is sufficient to justify the dismissal of the class allegations").

As previously discussed, Mr. Risto has close ties to TEG, and TEG executives appear to have been involved in positioning Mr. Risto as lead plaintiff in this action. Moreover, the interests of TEG and its executives are almost certainly divergent from those of class members, given that TEG's business model is premised on diverting the responsibility for foreign royalty distribution from the Fund to foreign CMOs – which has the effect of reducing the Fund's negotiating leverage with foreign CMOs and increasing the Fund's administrative expenses, to the detriment of the Fund beneficiaries comprising the putative class.

Mr. Risto's relationship with these direct competitors and former employees of the Fund creates the potential for conflicts of interest and unusual incentives that call into question Mr. Risto's adequacy as a class representative.  In short, the nature of Mr. Risto's relationship with TEG and its executives is directly relevant to his adequacy as a class representative because of the potential for conflicts of interest. *See, e.g., Lim v. Citizens Sav. & Loan Ass'n*, 430 F. Supp. 802, 811 (N.D. Cal. 1976) (courts "must consider not only actual but also potential conflicts of interest which might arise between named plaintiff and her class during the course of the litigation");

1   *Lyon v. State of Ariz.*, 80 F.R.D. 665, 669 (D. Ariz. 1978) (named plaintiffs must

2   disclose conflicts of interest); *Kamean v. Local 363, Int'l Bhd. of Teamsters,*

3   *Chauffeurs, Warehousemen & Helpers of Am.*, 109 F.R.D. 391, 395 (S.D.N.Y. 1986)

4   (holding that the named plaintiffs relationship with competitor created a conflict of

5   interest and granted competitors unfair access to confidential information).

6       In correspondence preceding this filing, Plaintiff's counsel argued that

7   Defendants have failed to identify a conflict of interest that would warrant production

8   of the requested agreement.  In support of their position, they pointed to cases in which

9   courts have denied requests for discovery regarding potential conflicts of interest

10  where there were no facts to suggest such a conflict existed. *See Marshall v. Northrop*

11  *Grumman Corp.*, 2017 WL 10991748, at *1 (C.D. Cal. Jan. 4, 2017) (defendants did

12  not identify what specific conflicts of interest might be uncovered through discovery

13  but merely requested precertification discovery to see "whether there are any conflicts

14  of interest").  This is entirely distinct from the instant situation, where defendants have

15  requested documentation of specific contractual relationships that could create direct

16  conflicts of interest.[8]

17

18

19  [8] Plaintiffs have also cited *Kalmbach* v. *Natl Rifle Ass'n*, 2018 WL 2411753, at *2

20  (W.D. Wash. May 29, 2018), as an instance in which a court denied discovery

21  regarding a potential conflict of interest.  In *Kalmbach*, however, the defendants were

    not seeking information related to an existing conflict of interest.  Instead, they sought

22  information about a lawsuit for fraud that the named plaintiff was involved in ten

23  years prior to the class action lawsuit. *Id.* at *2.  Here, the named plaintiff is *currently*

    in a contractual relationship with former employees who are current competitors of

24  the Fund.  Plaintiff's reliance on *In re Allergan, Inc. Sec. Litig.*, 2016 WL 5922717,

25  at *6 (C.D. Cal. Sept. 23, 2016), is similarly misplaced.  There, the defendants wanted

    information about the plaintiff's status as a putative class member in another class

26  action in a different state.  The court held the information was not relevant because

27  the defendants had not explained how plaintiff's membership in the other class created

    the potential for a conflict. *See id.* at *6.

28

In short, Defendants have a clear basis to request Mr. Risto's agreements with TEG. Without seeing the requested agreements and communications between and among Mr. Risto and TEG and/or TEG executives, Defendants cannot confirm whether the apparent conflicts exist and the extent to which they affect Mr. Risto's adequacy as a class representative.

**Plaintiff's Response to Defendants' Position on RFP No. 7:**

Defendants' position throughout this Joint Stipulation suffers from a fatal logical deficiency: that Mr. Risto's business relationships unrelated to the Fund and its Service Fee somehow have any bearing on the legality of the Service Fee and the Fund's decision to implement it. The only thing Mr. Risto needs to be qualified as a class representative in this case is to have an entitlement to receive royalties against which Defendants have levied the Service Fee; the remainder of the case turns on facts (regarding Defendants' overall decision to implement the Service Fee) and general legal principles (regarding the propriety of Defendants' decision to implement the Service Fee) that are not specifically tethered to Mr. Risto or any other class members. Despite this, Defendants now seek to disqualify Mr. Risto based purely on the speculative downstream effect his efforts in this litigation may have on non-plaintiffs and non-class members (*i.e.,* TEG and its principals), which has nothing whatsoever to do with Mr. Risto's adequacy under Rule 23.

Under Rule 23, a class representative is adequate when his interests are not antagonistic to the class. *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 667 (C.D. Cal. 2005). Mr. Risto's interests, as relevant to this case, are to increase the royalties enjoyed by himself and the rest of the class through elimination of the unjustified Service Fee. Defendants have not identified a single hypothetical scenario in which Mr. Risto would somehow be incentivized by his relationship with TEG to seek *lesser* relief on behalf of the class – indeed, their argument appears to be that Mr. Risto is *too* motivated to return the illegally-levied Service Fees to the class based on his

interests allegedly aligning with those of TEG, which Defendants' own cited authority holds to be a *positive*. See *Lim v. Citizens Sav. & Loan Ass'n*, 430 F. Supp. 802, 812 (N.D. Cal. 1976) ("Indeed, the vengeance of an aggrieved person more often engenders the zealous prosecution essential to a class action than the over-zealous prosecution which may threaten to strangle a class action.").

Ultimately, however, Defendants' wild conjecture is belied by the anodyne reality of the situation: Mr. Risto is but a normal client of TEG, having no special arrangement with any third party whatsoever related to this litigation. As stated above, Defendants seek Mr. Risto's agreements with TEG for their own commercial purposes, not because of any valid concerns about a conflict of interest. Notwithstanding the absence of any relevance of these documents, the Fund is actually already in possession of the two documents that would be responsive to this request: a power of attorney and agent designation which were attached to the February 2019 correspondence which counsel for Defendants has previously acknowledged. There are no other documents that are responsive to this Request.

Nothing about TEG's work for Plaintiff could possibly affect the operative legal or factual questions relevant to this case. Instead, Defendants make conclusory arguments based on pure speculation that the agreements may reveal "conflicts of interest" affecting Plaintiff's adequacy as a class representative. As noted above, it is not explained what form such a conflict might take, or how TEG's work for Plaintiff could somehow place Mr. Risto "at odds" with the remaining class members. See *Kalmbach v. NRA of Am.*, No. C17-399-RSM, 2018 U.S. Dist. LEXIS 89266, at *7 (W.D. Wash. May 29, 2018) (finding defendant's discovery requests irrelevant to the issue of adequacy and noting that "[a]lthough the fitness of a class representative is a relevant topic of discovery… there is a limit."); *In re Allergan, Inc. Sec. Litig.*, No. 14-cv-02004-DOC (KES), 2016 U.S. Dist. LEXIS 186537, at *15-16 (C.D. Cal. Sep. 14, 2016) ("Pershing has failed to articulate how the discovery it seeks will help it to

develop a record that would reveal [] a conflict."); *Marshall v. Northrop Grumman Corp.*, No. CV 16-06794-AB (JCx), 2017 U.S. Dist. LEXIS 222861, at *5 (C.D. Cal. Jan. 4, 2017) ("Defendants do not provide any specific or substantive basis that would suggest Plaintiffs have not satisfied the Rule 23 requirements. Nor have they shown discovery is likely to produce evidence that would destroy the class allegations or disqualify the named Plaintiffs.").

Defendants' marshalled authority betrays just how far afield they are from identifying anything resembling a genuine conflict of interest in this case:

- In *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997), "named parties with diverse medical conditions sought to act on behalf of a single giant class" whose interests were unaligned "rather than on behalf of discrete subclasses." *Amchem*, 521 U.S. at 597. Here, Defendants assessed the Service Fee uniformly against all performers, fully aligning their interests.

- In *Lyon v. State of Ariz.*, 80 F.R.D. 665 (D. Ariz. 1978), class counsel had failed to disclose his wife was a class member (incentivizing him to structure relief designed to unduly benefit her) and an employee of the defendant (allowing him to have her obtain evidence outside proper discovery). *Lyon*, 80 F.R.D. at 668-69. Class counsel have no personal relationship with Mr. Risto, no incentive to seek anything other than uniform relief (by eliminating the Service Fee), and no risk of "abusing" Mr. Risto's relationship as a passive royalty recipient with Defendants.

- *Lim v. Citizens Sav. & Loan Ass'n*, 430 F. Supp. 802 (N.D. Cal. 1976) concerned a defendant's entitlement "to discover the nature of a plaintiff's agreement with counsel concerning the payment of litigation expenses." *Lim*, 430 F. Supp. at 813. The ethical issues of a plaintiff not bearing the ultimate cost of litigation losses is a distinct concern for courts, one which has no analogue in any of the information Defendants now seek.

- In *Kamean v. Local 363, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 109 F.R.D. 391 (S.D.N.Y. 1986), "[t]he loyalty of two of the named plaintiffs to their present [non-defendant] union … conflict[ed] directly with the interests of those class members, a majority, who have retained their affiliation with [the defendant union]." *Kamean*, 109 F.R.D. at 395. However, this case does not present a scenario in which "the named plaintiffs have no stake whatsoever in the continued economic viability of [the defendant.]" *Id.* In contrast to *Kamean*, where class members could freely select their representative union, Defendants have an exclusive right granted by Congress to collect and administer the royalties against which they assess the Service Fee. *See* 17 U.S.C. § 114(g)(2)(B)-(C). Thus, Mr. Risto remains dependent, as do all class members, on a solvent Fund to remit these royalties to him.

Given the foregoing, it would appear Defendants' demand is not geared towards attempting to root out a genuine conflict of interest, but rather a desire to investigate an entity which they have repeatedly (albeit misguidedly) identified as "a direct competitor of the Fund and the Unions[.]" Defendants' attempt to weaponize the discovery process for this end, which has nothing to do with the merits of the instant litigation, is an abuse of process. *Excel Fortress Ltd. v. Wilhelm*, No. CV-17-04297-PHX-DWL, 2018 U.S. Dist. LEXIS 197737, at *9 (D. Ariz. Nov. 20, 2018) (rejecting discovery request as overbroad where "[t]he relevance of such information is not apparent, and the Court is mindful of the potential for abuse that may arise when one business seeks to use the discovery process to obtain minimally-relevant, highly-sensitive information from a competitor.").

It is worth noting that for Defendants' conflict of interest allegations to have any merit, they must argue that Mr. Risto, not Mr. Dreith, has a conflict with members of the class. Mr. Risto is a non-featured, non-union performer with no financial

1  interest in TEG, making TEG's personal services rendered for him irrelevant to the
2  case and only of interest to Defendants due to their competitive instincts. Neither TEG
3  nor Mr. Dreith are named class representatives and have no financial interest in this
4  case. Nothing about Mr. Risto's status as a client of TEG makes him an inadequate
5  class representative under Federal Rule 23(a).

6  **B. Request for Production No. 8**

7  **Defendants' Request for Production No. 8:**

8  All AGREEMENTS to which [Kevin Risto] and Dennis Dreith are parties.

9  **Plaintiff's Response to Request for Production No. 8:**

10  OBJECTION: Plaintiff objects to Defendants' request as it is not relevant to
11  any party's claim or defense and not proportional to the needs of the case, the burden
12  and expense of the proposed discovery outweighs its likely benefit, the discovery has
13  no bearing on the issues at stake in the action, and there is no importance of this
14  discovery in resolving the issues.

15  OBJECTION: Plaintiff objects to Defendants' request as being overbroad,
16  unduly burdensome, oppressive, vexatious and harassing in that it is not reasonably
17  limited as to scope.

18  **Defendants' Position Regarding Plaintiff's Response to RFP No. 8:**

19  Defendants' arguments above in support of their request for an order
20  compelling production of agreements in response to Defendants' RFP No. 7 apply in
21  equal force to Defendants' RFP No. 8, which requests all agreements to which
22  Plaintiff and Dennis Dreith are parties.

23  Since the outset of this litigation, Defendants have known to a near certainty
24  that the suit was being brought with the assistance of the Fund's former Executive
25  Director Dennis Dreith, who left the Fund in 2017 and promptly started a competing
26  venture just months before this litigation was filed. Defendants' expectation was

27
28

1  confirmed when Plaintiff's counsel disclosed Mr. Dreith as a "litigation consultant"

2  in the course of discovery.[9]

3         The fact that Plaintiff is a client of Mr. Dreith's company, and is a longtime

4  producing partner of Mr. Dreith's deputy at TEG, Bruce Waynne, demonstrates that

5  Mr. Risto was not chosen at random among tens of thousands of potential class

6  representatives"—nor chosen, for that matter, based purely on considerations of

7  traditional Rule 23 "adequacy" criteria.  Rather, Mr. Dreith likely sought to install an

8  individual whose interests would align with those of himself and TEG, interests

9  which—as discussed previously—are potentially adverse to those of absent class

10  members.  In short, Defendants' discovery into potential conflicts of interest created

11  by contractual relationships involving Mr. Dreith and Mr. Risto is therefore highly

12  relevant to the question of Mr. Risto's adequacy as a class representative.  *See, e.g.,*

13  *Lim*, 430 F. Supp. at 811; *cf. Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 960 (9th

14  Cir. 2009) (incentive agreements between named plaintiff and class counsel create

15  conflicts of interest).

16         Furthermore, the extraordinary circumstances of Mr. Dreith's direct

17  participation in the case as a "litigation consultant" to Mr. Risto and the putative class

18  should not be ignored.  Mr. Risto is purporting to challenge the propriety of the

19  Service Fee implemented pursuant to the 2013 Data Purchase and Services

20  Agreement.  Plaintiff's Amended Complaint alleges that the Trustees of the Fund

21  breached their fiduciary duties in approving and maintaining the Service Fee, which

22  Plaintiff describes as a "wrongful diversion" of money from class members. Dkt. 26

23  at ¶ 48 (First Amended Complaint).  However, this Agreement was entered into by

24  the Fund and the Unions while Mr. Dreith was the Fund Administrator and Shari

25  Hoffman was the Fund's Chief Operating Officer.  Both Mr. Dreith and Ms. Hoffman

---

[9] *See* Declaration of Andrew J. Thomas (A. Thomas Decl.) at ¶ 4.

were present at the Board of Trustees meeting where the Service Fee was approved in June 2013. The fee was then paid to the Unions for several years under Mr. Dreith's executive direction and with his approval. In other words, Mr. Dreith is assisting in prosecuting a lawsuit attacking the very Service Fee that he personally implemented, administered, and supported.

As officers of the Fund, Mr. Dreith and Ms. Hoffman owed fiduciary duties to the Fund and its beneficiaries. *See, e.g., In re AWTR Liquidation Inc.*, 548 B.R. 300, 305 (Bankr. C.D. Cal. 2016) (under California law, corporate executives have "the duty to exercise their business judgment in an informed, good faith effort to preserve and grow the corporation's value"); *Roberts v. Gainsforth*, 2015 WL 12765021, at *4 (C.D. Cal. Apr. 28, 2015) ("Under California corporate law, corporate officers and directors owe fiduciary duties to the corporation and its stockholders."). Even as former executives, their relationship to the Fund necessarily creates a conflict of interest. *Cf. Yates v. Applied Performance Techs., Inc.*, 209 F.R.D. 143, 152 (S.D. Ohio 2002) (attorney cannot simultaneously represent putative class and former executive of defendant company even on unrelated matters).

The agreements that Defendants seek from Dennis Dreith—both through discovery directed to Plaintiff and non-party discovery directed to Mr. Dreith—will show how Mr. Dreith is being compensated for his role in this litigation, and potentially how some portion of that compensation is being redistributed to Mr. Risto. Such agreements may show that Mr. Dreith and Ms. Hoffman, as former officers of the Fund, are now seeking to profit from a lawsuit that, if successful, paradoxically would result in a judgment that Mr. Dreith and Ms. Hoffman breached their own respective fiduciary duties as executives of the Fund by actively superintending the Trustees' alleged misappropriation of millions of dollars from the Fund. *See* Dkt. 26 at ¶ 62 (First Amended Complaint). Thus, Mr. Risto is working with former executives of the Fund to help them bring a lawsuit predicated on their own alleged

1  misconduct.  Mr. Dreith cannot use Mr. Risto as a pawn to benefit from his own

2  purported wrongdoing. *See Intamin, Ltd. v. Magnetar Techs. Corp.*, 623 F. Supp. 2d

3  1055, 1078 (C.D. Cal. 2009), *aff'd*, 404 F. App'x 496 (Fed. Cir. 2010) (the doctrine

4  of unclean hands prevents parties from benefitting from their own misconduct).

5  Discovery into the contractual agreements setting forth how Mr. Dreith may stand to

6  benefit from the lawsuit is therefore plainly justified.

7  **Plaintiff's Response to Defendants' Position on RFP No. 8:**

8  Having been exposed to the public as violating their fiduciary duties to the

9  class, Defendants are seeking to make lemonade out of lemons by weaponizing the

10  discovery process in this case against a non-litigant in an effort to (a) punish him for

11  helping to reveal their conduct and (b) somehow make him a *de facto* party to this

12  case, despite the fact that he is not a non-featured performer and therefore would never

13  see any recovery. Whatever claims Defendants believe they have against Mr. Dreith,

14  have nothing to do with the claims brought by Mr. Risto, and their remedy is not

15  discovery abuse. As stated above, Mr. Dreith is neither class counsel, class

16  representative, nor class member, rendering his alleged "conflicts" with Defendants

17  immaterial to the instant proceedings. There is no relevance to any agreements

18  between Mr. Risto and Mr. Dreith, which concern royalty collecting unrelated to the

19  Fund's statutory mandate. Defendants' position set forth above is replete with

20  allegations based on pure speculation with no factual support. Defendants' fail to

21  explain how Mr. Risto being class representative benefits Mr. Dreith any more than a

22  non-TEG performer in the role would, as each had the Service Fee assessed against

23  their earnings, and the relief sought by any one of them as a class representative would

24  be identical: eliminating or curtailing the Service Fee.

25  The balance of Defendants' argument is simply misguided invective, accusing

26  Mr. Dreith of having "supported" the Service Fee when Defendants' own documents

27  confirm that the Service Fee was implemented without Mr. Dreith's approval. The

28

1    evidence shows that Mr. Dreith objected to the Service Fee and implored the Trustees

2    to disclose the Service Fee to the Fund's beneficiaries. The Trustees and the Union

3    refused to do so. Defendants now appear to chide Mr. Dreith for failing to more

4    vociferously oppose the Trustees' own conduct before revealing it to the world.

5    However, this palace intrigue has nothing to do with the propriety of the Fund

6    continuing to assess the Service Fee or Mr. Risto's ability to challenge the same.

7    There is no basis for Defendants to allege that Mr. Dreith is being "compensated for

8    his role in this litigation," and neither are Defendants entitled to discovery to embark

9    on this fishing expedition, which is only intended to root out information of interest

10    to Defendants personally, not as relevant to this case.

11       Notwithstanding Defendants' failure to make a colorable argument to support

12    this request, other than those documents described in the RFP No. 7 section above,

13    there are no documents responsive to this request.

14    **C. Request for Production No. 9**

15    **Defendants' Request for Production No. 9:**

16    All AGREEMENTS to which [Kevin Risto] and Shari Hoffman are parties.

17    **Plaintiff's Response to Request for Production No. 9:**

18    <u>OBJECTION</u>: Plaintiff objects to Defendants' request as it is not relevant to

19    any party's claim or defense and not proportional to the needs of the case, the burden

20    and expense of the proposed discovery outweighs its likely benefit, the discovery has

21    no bearing on the issues at stake in the action, and there is no importance of this

22    discovery in resolving the issues.

23    <u>OBJECTION</u>: Plaintiff objects to Defendants' request as being overbroad,

24    unduly burdensome, oppressive, vexatious and harassing in that it is not reasonably

25    limited as to scope.

26    **Defendants' Position Regarding Plaintiff's Response to RFP No. 9:**

27

28

Defendants' arguments above in support of their request for an order compelling production of agreements in response to Defendants' RFP No. 8 apply in equal force to Defendants' RFP No. 9, which requests all agreements to which Plaintiff and Shari Hoffman are parties.

As previously explained, Ms. Hoffman is the Fund's former Chief Operating Officer who, one month after her departure from the Fund, teamed with Dennis Dreith to co-found TEG, a venture that directly competes with the Fund. Ms. Hoffman appears to be operating in tandem with Mr. Dreith following her departure from the Fund, just as she did under his leadership at the Fund. Given her close relationship with Mr. Dreith, it is highly likely that she is playing a direct or indirect role in supporting this litigation.

As previously discussed, Ms. Hoffman and Mr. Dreith's involvement with this litigation implicates conflict-of-interest concerns given that they both stand to profit from a lawsuit that, if it were to result in a judgment in Plaintiff's favor, necessarily would require a finding that the two violated their own respective fiduciary duties to the Fund. In other words, Mr. Risto is working with former executives of the Fund to help them bring a lawsuit predicated on their own alleged misconduct. Like Mr. Dreith, Ms. Hoffman cannot use Mr. Risto as a pawn to benefit from her own purported wrongdoing. *See Intamin, Ltd.*, 623 F. Supp. 2d at 1078. Discovery into the contractual agreements setting forth how Ms. Hoffman may stand to benefit from the lawsuit is therefore plainly justified.

**Plaintiff's Response to Defendants' Position on RFP No. 9:**

As stated above, there is no relevance to any agreements between Mr. Risto and Ms. Hoffman and Defendants' arguments in support of this discovery are not supported by the law. Defendants' position set forth above is replete with speculative allegations with no factual support. There is no evidence that Ms. Hoffman or Mr. Dreith would profit from this lawsuit. If Defendants feel so strongly that TEG's

1   principals have somehow wronged them, their remedy is an independent action

2   permitting them to seek discovery relevant to their claims therein, not to hijack

3   discovery in a proceeding where the information is utterly irrelevant to the class

4   claims. Notwithstanding the foregoing, other than those documents described in the

5   RFP No. 7 section above, there are no documents responsive to this request.

6   **D. Request for Production No. 10**

7   **Defendants' Request for Production No. 10:**

8   All AGREEMENTS to which YOU and Bruce Waynne are parties.

9   **Plaintiff's Response to Defendants' Request for Production No. 10:**

10   OBJECTION: Plaintiff objects to Defendants' request as it is not relevant to

11   any party's claim or defense and not proportional to the needs of the case, the burden

12   and expense of the proposed discovery outweighs its likely benefit, the discovery has

13   no bearing on the issues at stake in the action, and there is no importance of this

14   discovery in resolving the issues.

15   OBJECTION: Plaintiff objects to Defendants' request as being overbroad,

16   unduly burdensome, oppressive, vexatious and harassing in that it is not reasonably

17   limited as to scope.

18   **Defendants' Position Regarding Plaintiff's Response to RFP No. 10:**

19   Defendants' arguments above in support of their request for an order

20   compelling production of agreements in response to Defendants' RFP Nos. 8 and 9

21   apply to Defendants' RFP No. 10, which requests all agreements to which Plaintiff

22   and Bruce Waynne are parties.

23   Bruce Waynne has been Mr. Risto's producing partner for nearly two decades,

24   and in his role as TEG Vice President he also directly competes with the Fund.  In

25   addition, Mr. Waynne has had agreements with the Fund related to individuals on the

26   Fund's unclaimed royalty list.  This creates additional potential conflicts, particularly

27   if he is assisting Mr. Risto in any way in this litigation, due to confidentiality

28

restrictions in those agreements.  Therefore, the agreements including Mr. Risto and Mr. Waynne are relevant to conflicts of interest both because of Mr. Waynne's current connection to TEG and his prior involvement with the Fund.

**Plaintiff's Response to Defendants' Position on RFP No. 10:**

As stated above, there is no relevance to any agreements between Mr. Risto and Mr. Waynne and Defendants' arguments in support of this discovery are not supported by the law. Defendants' position set forth above is replete with speculative allegations with no factual support and, as with Defendants' previous requests, has nothing to do with Mr. Risto's adequacy to represent the class.

Defendants cannot allege that Mr. Risto and Mr. Waynne's music production company has any relevance to the issues in dispute in this case. The MIDI Mafia is a creative endeavor that has nothing to do with collecting and reporting royalties to performers. Defendants have not and cannot relate The MIDI Mafia's business to any of the issues in this case. It is additionally unclear what Defendants are referring to with regard to "agreements with the Fund related to individuals on the Fund's unclaimed royalty list." However, agreements that Mr. Waynne has with other unnamed class members would not be responsive to this Request.

DATED: December 17, 2019          JENNER & BLOCK LLP


By: _____
    Andrew J. Thomas
    Andrew G. Sullivan

    JENNER & BLOCK LLP
    Devi M. Rao (*pro hac vice*)

    *Attorneys for All Defendants*

1 | DATED: December 18, 2019          KIESEL LAW LLP

2

3                                                   By: _____

4                                                        Paul R. Kiesel
                                                         Mariana A. McConnell

5                                                   JOHNSON & JOHNSON LLP
                                                    Neville L. Johnson
6                                                   Douglas L. Johnson
                                                    Jordanna G. Thigpen
7

8                                                   *Attorneys for Plaintiff and the Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## ATTESTATION UNDER LOCAL RULE 5-4.3.4

2

3       I, Andrew J. Thomas, am the ECF User whose ID and password are being used

4   to file this Stipulation. In compliance with Local Rules 5-4.3.4(a)(2), I hereby attest

5   that Mariana A. McConnell and Jordanna Thigpen have concurred with this filing.

6

7   Dated: December 23. 2019                    JENNER & BLOCK LLP

8                                               By:  _/s/ Andrew J. Thomas_____
                                                     Andrew J. Thomas

9                                               *Attorneys for All Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28