# DECLARATION OF MARIANA MCCONNELL

I, Mariana McConnell, hereby declare as follows:

1. I am an attorney at law licensed to practice before all courts of the State of California. I am a partner with Kiesel Law LLP, counsel for Plaintiff Kevin Risto in this action. If called as a witness I could and would competently testify to the following:

2. I submit this declaration in opposition to Defendants' request that Plaintiff Kevin Risto produce documents in response to Defendants' Requests for Production Nos. 7-10.

3. Attached hereto as Exhibit 1 are documents bearing bates DEFS40155, 40158, 40165, 40166, 40172 which were produced by Defendants in this litigation.

4. Attached hereto as Exhibit 2 are documents bearing bates DEFS40517-28 which were produced by Defendants in this litigation.

5. Attached hereto as Exhibit 3 is the September 23, 2019 Letter from Andrew J. Thomas concerning this discovery dispute.

6. In February of 2019, Mr. Risto sent correspondence to AFM which enclosed a Power of Attorney and Agent Designation with Transparence Entertainment Group. To my knowledge, Mr. Risto does not have any other agreements with Transparence Entertainment Group. Mr. Thomas' Letter which is attached hereto as Exhibit 3 contains a reference to this February 2019 correspondence.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed December 17, 2019, at Beverly Hills, California.

_____
Mariana McConnell

00551032-1

# Exhibit 1
# Filed Under Seal

# Exhibit 2
# Filed Under Seal

# EXHIBIT 3

633 WEST 5TH STREET SUITE 3600 LOS ANGELES, CA 90071-2054       JENNER & BLOCK LLP

September 23, 2019

Andrew J. Thomas
Tel +1 213 239 5155
AJThomas@jenner.com

VIA EMAIL AND FIRST CLASS MAIL

Mariana A. McConnell
Kiesel Law LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
mcconnell@kiesel.law

Re:   *Risto v. SAG-AFTRA*, et al.

Dear Mariana:

    We have received your letter dated August 29, 2019 regarding the discoverability of Mr. Risto's agreements and communications with Transparence Entertainment Group (TEG), Dennis Dreith, Shari Hoffman, and Bruce Waynne. As explained below, TEG is a direct competitor of the Fund and the nature of Mr. Risto's relationship with TEG and its top executives is directly relevant to the question of whether he has any conflicts of interest that affect his adequacy as a class representative.

    As a preliminary matter, none of the cases cited in your letter regarding the limits of discovery is applicable to our current discovery requests. In *Kalmbach*, the defendants were not seeking information related to an existing conflict of interest. Instead, they were seeking information about a lawsuit for fraud that the named plaintiff was involved in ten years prior to the class action lawsuit. *See Kalmbach v. Nat'l Rifle Ass'n of Am.*, 2018 WL 2411753, at *2 (W.D. Wash. May 29, 2018). Here, the named plaintiff is *currently* in a contractual relationship with former employees who are current competitors of the Fund. Your reliance on *In re Allergan, Inc. Sec. Litig.* is similarly misplaced. There, the defendants wanted information about the plaintiff's status as a putative class member in another class action in a different state. *See* 2016 WL 5922717, at *6 (C.D. Cal. Sept. 23, 2016). The court held that that information was not relevant because the defendants had not explained how plaintiff's membership in the other class created the potential for a conflict. *Id.*

    Here, we have explained that plaintiff's relationship with direct competitors and former employees of the Fund creates the potential for conflicts of interest and unusual incentives that call into question Mr. Risto's adequacy as a class representative. In *Marshall*, the defendants did not identify what specific conflicts of interest might be uncovered through discovery. They merely requested precertification discovery to see "whether there are any conflicts of interest."

Mariana A. McConnell
September 23, 2019
Page 2

*See Marshall v. Northrop Grumman Corp.*, 2017 WL 10991748, at *1 (C.D. Cal. Jan. 4, 2017). This is completely distinct from the instant situation, where defendants have identified specific contractual relationships that could create direct conflicts of interest. You also cite *Excel Fortress* for the proposition that "minimally-relevant, highly sensitive information from a competitor" is not discoverable, but in that case the requesting party was seeking information about nonparty investors who were not affiliated with the litigation. *Excel Fortress Ltd. v. Wilhelm*, 2018 WL 6067255, at *3 (D. Ariz. Nov. 20, 2018). Yet again, this case has no applicability to the current situation, where the named plaintiff is in a business relationship with direct competitors and former employees of the defendants, and where the discovery at issue does not seek trade secrets or other highly sensitive information.

In our case, the request for agreements and communications between Mr. Risto and Transparence Entertainment Group and its three top executives goes directly to Mr. Risto's adequacy as a class representative. TEG is a direct competitor of the Fund. While TEG does not provide all of the services to non-featured musicians that the Fund does, it nevertheless competes with AFM and the Fund with respect to securing royalties from foreign collective management organizations (CMOs), by charging fees to musicians to register their international mandates with foreign CMOs instead of with the Fund. This undermines the Fund's bargaining position with foreign CMOs and increases the administrative expense burden for all Fund participants. Accordingly, TEG is in competition with the Fund to represent musicians – i.e., many of the very performers who make up the proposed class in this litigation – in seeking to secure the distribution of foreign royalties.

As competitors of the Fund, TEG and its executives have incentives and motivations for bringing and prosecuting this litigation that almost certainly differ from those of the potential class of non-featured performers. Indeed, Mr. Risto already has highlighted that his incentives and motives diverge sharply from those of other non-featured performers who may be members of the class. In February 2019, Mr. Risto sent correspondence to AFM demanding that AFM release the mandates that it held allowing AFM to collect royalties from international CMOs on Mr. Risto's behalf – a move that serve only to advance his interests as a principal of TEG in seeking to undermine the mission of AFM and the Fund to obtain the cooperation of foreign CMOs in obtaining and distributing royalties to U.S. non-featured performers. Without seeing the requested agreements and communications between and among Mr. Risto and TEG and/or TEG executives, defendants cannot assess whether and to what extent conflicts exist and the extent to which they affect Mr. Risto's adequacy as a class representative.

Furthermore, your August 29 letter ignores the extraordinary circumstances of Dennis Dreith's direct participation in the case as a "litigation consultant" to Mr. Risto and the putative class. Mr. Risto is purporting to challenge the propriety of the Service Fee implemented pursuant to the 2013 Data Purchase and Services Agreement. The Amended Complaint alleges that the Trustees of the Fund breached their fiduciary duties in approving and maintaining the

Mariana A. McConnell
September 23, 2019
Page 3

Service Fee, and you have described the Fund's conduct as a "misappropriation" of money from class members. As you know, this Agreement was entered into by the Fund and the Unions while Mr. Dreith was the CEO of the Fund and Shari Hoffman was the Fund's Chief Operating Officer. The fee was paid to the Unions for several years under Mr. Dreith's executive direction and with his approval. As officers of the Fund, Mr. Dreith and Ms. Hoffman owed fiduciary duties to the Fund and its beneficiaries. *See, e.g.*, *In re AWTR Liquidation Inc.*, 548 B.R. 300, 305 (Bankr. C.D. Cal. 2016) (under California law, corporate executives have "the duty to exercise their business judgment in an informed, good faith effort to preserve and grow the corporation's value"); *Roberts v. Gainsforth*, 2015 WL 12765021, at *4 (C.D. Cal. Apr. 28, 2015) ("Under California corporate law, corporate officers and directors owe fiduciary duties to the corporation and its stockholders."). Even as former executives, their relationship to the fund necessarily creates a conflict of interest. *Cf. Yates v. Applied Performance Techs., Inc.*, 209 F.R.D. 143, 152 (S.D. Ohio 2002) (attorney cannot simultaneously represent putative class and former executive of defendant company even on unrelated matters).

You have now informed us that – in addition to being Mr. Risto's business partner in TEG – Mr. Dreith is assisting in the prosecution of this lawsuit as a "consultant," which means that he is helping to attack the Service Fee that he himself approved and administered – presumably in exchange for some kind of compensation or stake in the litigation. The agreements and communications that the defendants seek may well reveal that Mr. Dreith and Ms. Hoffman, as former officers of the Fund, are now seeking to profit from a lawsuit that, if successful, would result in a judgment that Mr. Dreith and Ms. Hoffman breached their own fiduciary duties and actively superintended the alleged "misappropriation" of millions of dollars from non-featured performers. This raises serious concerns regarding potential conflicts of interest and, accordingly, Mr. Risto's adequacy as a class representative. Mr. Dreith's business ties to the both the plaintiff and the defendants, his litigation consulting arrangement, and his financial stake in a lawsuit that attacks his own conduct as administrator of the Fund are all highly relevant to Mr. Risto's potential conflicts of interest and adequacy as a class representative.

Finally, in regard to Bruce Waynne specifically, he is also a business partner with Mr. Risto and Mr. Dreith in TEG, a direct competitor of the Fund. In addition, Mr. Waynne has had agreements with the Fund related to individuals on the Fund's unclaimed royalty list. This creates additional potential conflicts, particularly if he is assisting Mr. Risto in any way in this litigation. Therefore, the agreements between Mr. Risto and Mr. Waynne are relevant to conflicts of interest both because of Mr. Waynne's current connection to Transparence and his prior involvement with the Fund.

In order to evaluate these conflicts, it is imperative that defendants have access to all agreements and pertinent communications between Mr. Risto and Transparence as well as between Mr. Risto and TEG executives. While we would prefer to resolve this discovery dispute

Mariana A. McConnell
September 23, 2019
Page 4

amicably, if you continue to refuse to produce the requested material we will have no choice but to file a motion to compel production pursuant to FRCP 37 and Local Rules 37-1 and 37-2.

    We look forward to hearing from you soon.

                              Sincerely,

                              Andrew J. Thomas

2932949.5