JENNER & BLOCK LLP
Andrew J. Thomas (Cal. Bar No. 159533)
ajthomas@jenner.com
Andrew G. Sullivan (Cal. Bar No. 301122)
agsullivan@jenner.com
Camila Connolly (Cal. Bar No. 323996)
cconnolly@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile:  (213) 239-5199

*Attorneys for All Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN RISTO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a Delaware corporation; AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA, a California nonprofit corporation; RAYMOND M. HAIR, JR., an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; TINO GAGLIARDI, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; DUNCAN CRABTREE-IRELAND, an individual, as Trustee of the AFM and SAG- | Case No. 2:18-cv-07241-CAS-PLA<br><br>Class Action<br><br>**RULE 72(A) OBJECTIONS TO MAGISTRATE JUDGE'S RULING OF JULY 8, 2020**<br><br>Date:     TBD<br>Time:    TBD<br>Judge:   Hon. Christina A. Snyder<br><br>Discovery Cut-Off:         Not Set<br>Pre-Trial Conference:    Not Set<br>Trial Date:                      Not Set |

| | |
|---|---|
| 1 | AFTRA Intellectual Property Rights Distribution Fund; STEFANIE TAUB, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; JON JOYCE, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; BRUCE BOUTON, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; and DOE DEFENDANTS 1-10, |
| | Defendants. |

**Defendants' Objections to the Magistrate Judge's July 8, 2020 Order**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Defendants Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA"), American Federation of Musicians of the United States and Canada ("AFM"), Raymond M. Hair, Jr., Tino Gagliardi, Duncan Crabtree-Ireland, Stefanie Taub, Jon Joyce, and Bruce Bouton (collectively, the "Defendants") hereby object to the July 8, 2020 Order issued by Magistrate Judge Abrams in response to the Motion to Compel filed by Plaintiff Kevin Risto.

## I. Introduction and Statement of Facts

This dispute arises out of a lawsuit challenging the administration of the AFM & SAG-AFTRA Intellectual Property Rights Distribution Fund ("the Fund"). This lawsuit has generated extensive discovery over the past year. In response to Plaintiff's voluminous requests for production, Defendants have reviewed over 100,000 documents, have produced more than 41,300 pages of documents, and ultimately delivered a privilege log to Plaintiff on April 3, 2020 that listed 49 privileged documents. Plaintiff's counsel then challenged that log, taking the extraordinary position that none of Defendants' communications with counsel are privileged and that all 49 documents should be produced.

On June 10, 2020, Plaintiff filed a motion to compel disclosure of every document listed on Defendants' privilege log, under the theory that the Fund cannot have had any privileged communications with its retained outside counsel Patricia Polach because she previously had provided legal advice to defendant AFM on unrelated matters. *See* Dkt. No. 54-1. In that motion, Plaintiff argued that, despite Ms. Polach's role as counsel for the Fund and its Trustees, she could not have engaged in privileged communications with the Fund because she was ethically barred from representing both the Fund and the Unions on unrelated matters. Plaintiff also took the remarkable position that because some Trustees of

1
RULE 72 OBJECTIONS TO MAGISTRATE'S RULING

1  the Fund also work for the Unions, the Fund has waived privilege as to all
2  otherwise privileged communications that include the Fund's own Trustees. *Id.*
3       Defendants countered that Ms. Polach was not ethically barred from
4  representing the Fund simply because she had also done work for one of the
5  Unions on unrelated matters. Ms. Polach was at all relevant times representing the
6  Fund in its efforts to memorialize the Services Agreement with the Unions.
7  Furthermore, the attorney-client privilege was not destroyed merely because some
8  of the Trustees had dual roles as Fund Trustees and as senior officials in their
9  respective Unions – a circumstance contemplated by the Trust Agreement
10 establishing the Fund. It would be nearly impossible for the Fund to have any
11 meaningful privileged communications with outside counsel if the inclusion of its
12 own trustees waived the privilege. Defendants further argued that to the extent that
13 any of Ms. Polach's work relating to the Services Agreement could be considered
14 legal work for the Unions, those communications were protected by the common
15 interest doctrine under California law.
16      On July 8, 2020, Magistrate Judge Abrams issued a ruling denying
17 Plaintiff's motion to compel as to all abut one of the privilege log documents. As a
18 threshold matter, Judge Abrams concluded that the mere fact that some Fund
19 trustees had dual roles as Union employees did *not* waive the attorney-client
20 privilege held by the Fund. Dkt. No. 58 at 8. Judge Abrams noted that Plaintiff
21 did not provide "any persuasive authority that the attorney-client privilege may be
22 waived simply by virtue of the fact that an individual with a dual role—in this case
23 as a Trustee for the Fund, while concurrently holding a position in the Union—
24 initiated or received the attorney-client privileged communications." *Id.* Based on
25 these legal conclusions, Magistrate Judge Abrams ruled that all 49 documents on
26 the Defendants' privilege log were "attorney-client privileged communications."
27 *Id.* at 7. Judge Abrams further found that Plaintiff "has failed to demonstrate that
28 *any* waiver of the attorney-client privilege has taken place for any reason." *Id*.

1    Notwithstanding these clear and correct conclusions, Judge Abrams
2 proceeded to consider an argument not raised by any party—namely, that one
3 document on the privilege log, Item 2, constituted a waiver of the privilege because
4 it was an email in which Fund Trustee Ray Hair, who is also President of AFM,
5 took a privileged email from Patricia Polach and forwarded it to Jennifer Garner,
6 an in-house lawyer for AFM.  *See* Dkt No. 58 at 8.  For the reasons set forth below,
7 this ruling was manifestly incorrect and foreclosed by clear statutory authority
8 directly on point.  *See* Cal. Evid. Code § 912 ("A disclosure that is itself privileged
9 is not a waiver of any privilege.").[1]

10   Judge Abrams also concluded that the common interest doctrine did not
11 apply to the joint efforts by the Unions and the Fund to memorialize their data
12 sharing agreement in writing.  He found that to the extent there was a shared
13 interest among the Unions and the Fund with regard to the preparation of the
14 services agreement, it was a "commercial" interest.  *Id.*  For the reasons set forth
15 below, this ruling was also incorrect as a matter of law in that it was based on an
16 overly narrow construction of the common interest doctrine under California law.

---

[1] It is undisputed that California law governs all privilege issues in this case, since the underlying class action claims arise under California law.  *See In re California Pub. Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989) ("In diversity actions, questions of privilege are controlled by state law."); *Lawson v. GrubHub, Inc.*, 2017 WL 1684964, at *1 (N.D. Cal. May 3, 2017) (state privilege law applies to cases based in diversity under the Class Action Fairness Act).

  This result is grounded in Rule 501 of the Federal Rules of Evidence, which provides in relevant part that "in civil actions and proceedings with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness … shall be determined in accordance with state law."  Here, all of the claims in Plaintiff's amended complaint arise under state law.  *See* Dkt. No. 5 (Complaint).  The Fund is based in California, and Plaintiff and Defendants have agreed that the claims are governed by California law.  *See* Dkt Nos. 18, 21 (Motion to Dismiss briefing).

Based on these legal conclusions, Judge Abrams then ordered the disclosure of Item 2 on the privilege log, the email in which Defendant Ray Hair, a trustee of the Fund and the president of AFM, forwarded advice from Ms. Polach on to attorney Jennifer Garner, who was counsel for AFM. Defendants now object to that ordered disclosure, which violates well established principles of attorney-client privilege.

## II. Argument

Defendants object to this court-ordered disclosure of a privileged document on two grounds. ***First***, both emails in this chain are independently privileged, which means that no waiver occurred as a matter of law. The document at issue is an email thread containing two communications. The first communication is legal advice sent by Fund attorney Patricia Polach to Fund representatives, including then president of the fund Dennis Dreith, trustee Ray Hair, and Ms. Polach's law firm colleague, attorney Jeff Freund. The email relates to the preparation of the Services Agreement and is clearly privileged, as the Magistrate Judge found. *See* Dkt. No. 58 at 8 ("Therefore, as a threshold matter, the Court finds that documents 1-49 on the privilege log are attorney-client privileged communications."). Mr. Hair, Fund trustee and president of AFM, then forwarded that email to AFM counsel Jennifer Garner. Under California law, Mr. Hair did not waive privilege when he, a Fund trustee and president of AFM, forwarded the email to AFM's legal counsel. *See* Cal. Evid. Code § 912.

***Second***, this entire email thread is protected by the common interest doctrine because the Fund and AFM had a shared goal of memorializing their information sharing endeavor and they both relied Ms. Polach to provide legal guidance and draft the Services Agreement. The Magistrate erred when he ruled that the common interest doctrine did not apply merely because the preparation of the Services Agreement reflected the shared commercial interest of the parties. This is simply not the law in California, where the common interest doctrine has been held

to apply in the transactional context.  Thus, Defendants object to the Magistrate's legal determinations and respectfully request that the Court modify the ruling to protect the privileged communications at issue.

### A. Standard of Review

Under Rule 72(a), parties may file objections to a magistrate judge's ruling on non-dispositive matters within fourteen days. When parties object under Rule 72(a), the district court judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).  "[T]he 'contrary to law' standard permits independent review of purely legal determinations by a magistrate judge.  Thus, the district court must exercise its independent judgment with respect to a magistrate judge's legal conclusions." *Baker v. Ensign*, 2014 WL 4055353, at *2 (S.D. Cal. Aug. 14, 2014) (internal citations omitted).  "A decision may be contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *United States v. Cathcart*, , 2009 WL 1764642, at *2 (N.D. Cal. June 18, 2009).  Here, defendants object to the magistrate judge's ruling on purely legal grounds.  Therefore, the Court should independently review the legal conclusions contained in the July 8 minute order.

### B. Both Emails in the "Item 2" Thread Are Independently Privileged.

Both emails in the document at issue—the original legal advice email from Ms. Polach and the forwarding email to AFM counsel—are independently privileged communications.  It is undisputed that Ms. Garner was working as counsel for AFM when Mr. Hair forwarded the email to her.  Thus, the email from Mr. Hair to Ms. Garner forwarding Ms. Polach's legal advice is independently privileged and does not waive privilege on behalf of the Fund.  *See* Cal. Evid. Code § 912 ("A disclosure that is itself privileged is not a waiver of any privilege."); *Motown Record Corp. v. Superior Court*, 155 Cal. App. 3d 482, 492 (1984) ("In California privileges are created by statute … and the means by which

privilege may be waived are also controlled by statute."); *Dawe v. Corr. USA*, 263 F.R.D. 613, 620 (E.D. Cal. 2009) ("Communications between a lawyer and client which are intended to be confidential are protected from disclosure pursuant to the attorney-client privilege.").

Disclosure waives privilege only "when the holder of the privilege, without coercion, *and in a nonconfidential context*, discloses a significant part of the communication or consents to such disclosure by anyone." *Motown Record Corp*, 155 Cal. App. 3d at 492 (emphasis added). Here, Mr. Hair forwarded the email to AFM's in-house attorney. Thus, this was a confidential communication that he, as president of AFM, reasonably should have expected would be privileged. *See Upjohn Co. v. United States,* 449 U.S. 383, 394 (1981); *United States v. Graf*, 610 F.3d 1148, 1159 (9th Cir. 2010) (communications between employees and counsel for corporation are privileged). Therefore, Defendants should not have to produce this document to Plaintiff in violation of the well-established principles of California attorney-client privilege law.

### C. In the Alternative, the Entire "Item 2" Email Thread Is Protected Under the Common Interest Doctrine.

The common interest doctrine protects privileged communications among multiple parties and their shared counsel when the parties have retained the same counsel in furtherance of a common interest. *See, e.g.¸ Seahaus La Jolla Owners Assn. v. Superior Court*, 224 Cal. App. 4th 754, 771 (2014). Under the doctrine, the parties do not waive privilege by disclosing information to their shared counsel and to each other. *Id.* That protection is not lost merely because the common interest relates to a business transaction. To the contrary, California courts consistently apply the common interest doctrine when parties to a transaction retain shared counsel to memorialize an agreement. *See Buehler*, 34 Cal. App. 4th at 1540; *Moxley v. Robertson*, 169 Cal. App. 2d 72, 75 (1959) (noting that there is no conflict when "two plaintiffs sought to accomplish a common end result and

engaged the services of a single attorney to implement their joint plan."). In the transactional context, courts have held that "[t]here is nothing improper in representing more than one party to a transaction, so long as the attorney discloses the consequences of the joint representation." *In re Wilde Horse Enters., Inc*., 136 B.R. 830, 845 (Bankr. C.D. Cal. 1991) (applying California law).

Here, the Magistrate Judge found that the communications among the Unions, the Fund, and Ms. Polach relating to the preparation of the Services Agreement were not protected by the common interest doctrine because any shared interest in drafting the Services Agreement was a "common commercial, rather than a common legal, interest." Dkt. No. 58 at 7. But California law explicitly permits attorneys to represent both parties to a commercial transaction by memorializing their joint commercial interests. *See, e.g.*, *Buehler*, 34 Cal. App. 4th at 1540. California courts do not disregard the sanctity of the attorney-client relationship merely because the legal services were furnished in furtherance of a commercial agenda rather than a litigation objective. *See Zurich Am. Ins. Co. v. Superior Court*, 155 Cal. App. 4th 1485, 1495 (2007) ("The attorney-client privilege covers all forms of communication, including transactional advice…"). Indeed, assistance with contract formation is one of the oldest and most quintessential legal services provided by attorneys.

Here, the email thread at issue contains two communications. The first is a communication from Ms. Polach to then president of the fund Dennis Dreith, trustee Ray Hair, and Ms. Polach's colleague, attorney Jeff Freund. The email relates to the preparation of the Services Agreement and is clearly privileged. Mr. Hair then forwards that email to AFM counsel Jennifer Garner. Defendants' response to Plaintiff's motion to compel noted that the Services Agreement "memorialized an arrangement whereby the Fund would compensate the Unions for locating and providing identifying information necessary for the Fund to pay royalties to non-featured performers, and for their lobbying, outreach, and other

activities beneficial to non-featured performers." Because AFM and the Fund had a common legal interest in obtaining Ms. Polach's legal services to draft the Services Agreement, communications among Ms. Polach, Fund representatives, and AFM representatives are protected by the common interest doctrine.

Consequently, the Court could not properly conclude that the common interest doctrine was inapplicable, merely because there was a shared underlying commercial interest among the parties. "Evidentiary privileges are creatures of statute" and the courts "are powerless to judicially carve out exceptions." *Zurich Am. Ins. Co. v. Superior Court*, 155 Cal. App. 4th 1485, 1494 (2007). The common interest doctrine acts as a non-waiver doctrine when privileged communications are shared among multiple parties in furtherance of a common goal. *See Seahaus*, 224 Cal. App. 4th at 771. Refusing to apply the doctrine would create an exception to the attorney-client privilege that does not exist under California law. Ms. Polach's legal assistance with contract drafting would ordinarily be privileged and that privilege does not disappear merely because multiple parties share a common interest and retain a single attorney to draft their agreement.

Accordingly, because communications among the Fund, the Unions, and Ms. Polach relating to the preparation of the Services Agreement are protected under the common interest doctrine, this doctrine provides a second, independent basis for concluding that Mr. Hair did not waive the attorney-client privilege by including Ms. Garner in the communication as a Union representative.

### III. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court modify the July 8, 2020 ruling to recognize the privileged status of Item No. 2 on Defendants' privilege log.

| | | |
|---|---|---|
| Dated: | July 20, 2020 | JENNER & BLOCK LLP |

/s/ Andrew J. Thomas
Andrew J. Thomas
Andrew G. Sullivan
Camila Connolly

*Attorneys for All Defendants*