UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | August 20, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

Not Present                                                       Not Present

**Proceedings:**   (IN CHAMBERS) - DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S NON-DISPOSITIVE ORDER (Dkt. [59]), filed July 22, 2020.

## I.   INTRODUCTION

On June 22, 2018, plaintiff Kevin Risto, on behalf of himself and all others similarly situated (collectively, "plaintiffs"), filed this action in the Los Angeles Superior Court against defendants the Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA") and American Federation of Musicians of the United States and Canada ("AFM") (collectively, "the Unions"); Raymond M. Hair, Jr., Tino Gagliardi, Duncan Crabtree-Ireland, Stephanie Taub, Jon Joyce, and Bruce Bouton (collectively, "the Trustees"); and Does 1 through 10. Dkt. 1-1 ("Compl."). Plaintiffs allege that, by enacting a Service Fee agreement with the Unions, the Trustee defendants violated their fiduciary duties to their beneficiaries. Id. These beneficiaries include plaintiff Risto and other non-featured performance artists. Id. Plaintiffs also allege claims against all defendants for (1) money had and received, (2) conversion, and (3) declaratory relief. Id. On August 17, 2018, defendants removed this matter to this Court, pursuant to 28 U.S.C. § 1332(d). Dkt. 1.

Magistrate Judge Paul L. Abrams (the "Magistrate Judge") issued an order granting in part and denying in part plaintiffs' motion to compel discovery on July 8, 2020. Dkt. 58 ("Order"). On July 22, 2020, defendants filed the instant motion asserting objections to the Order. Dkt. 59 ("Mot."). On August 3, 2020 plaintiffs filed an opposition. Dkt. 67 ("Opp'n."). Defendants filed a reply on August 6, 2020. Dkt. 71. ("Reply").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | August 20, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.     BACKGROUND

### A. The Magistrate Judge's Order

The Trustee defendants are the Trustees of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund (the "Fund"), a non-profit royalty fund for musicians. Order at 1. The central dispute of this litigation concerns the Trustees' actions in administering the Fund. Id. Plaintiffs contend that the Trustees—each of whom held a "senior position" with one of the Unions—abused their positions at the Fund by entering into an agreement that enriched the Unions as the expense of the Fund's beneficiaries. Id. Specifically, the Union and the Fund entered into a July 22, 2013 "Services Agreement" under which the Fund agrees to pay the Unions 3% of all royalties it collects in exchange for access to the Union's membership lists. Id. Plaintiffs contend that it "costs the Unions nothing to provide" access to the membership lists, which the Unions had previously shared with the Fund for free, and, as such, the Services Agreement was entered into as a pretext to give the Unions a financial stake in the Fund's royalty pool, and not as a rational business deal. Id. Defendants contend that the Union's membership lists are expensive to maintain and to search on behalf of the Fund, which has sent "thousands of requests" for information "regarding the performers on individual song titles from representatives at the many local Union chapters." Because the rate of such requests has increased with the size of the Fund over time, defendants contend that it became necessary for the Unions to charge for the data and services. Id. at 3.

On July 8, 2020, the Magistrate Judge issued an order denying in large part plaintiffs' motion to compel discovery, but ordering defendants to produce one document listed on the privilege log. Order at 8. Plaintiffs sought to compel defendants to produce the documents listed on lines 1-49 of their privilege log.[1] Id. at 1. In moving to compel,

---

[1] According to defendants, this constituted "every document listed on Defendants' privilege log." Mot. at 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**           'O'

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | August 20, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

plaintiffs asserted that the attorney who represented the Fund in drafting the Services Agreement, Patricia Polach ("Polach"), had a "longstanding representation of [one of] the Unions," AFM, that included the time period when the Services Agreement was entered into, and thus the attorney-client privilege did not attach to any of the 49 documents listed on the privilege log. Id. at 2. Defendants contended that plaintiffs presented no evidence that a conflict existed involving Polach or that—even if such a conflict existed—any waiver of the attorney-client privilege had occurred under California law. Id. at 5. Additionally, defendants contended that even if communications between the Fund and Polach "involved the Trustees in their capacities as Union officials," those communications would be covered by California's common interest doctrine. Id. at 5-6.

The Magistrate Judge found that plaintiffs have "failed to demonstrate that *any* waiver of the attorney-client privilege ha[d] taken place for any reason." Id. at 8. The Magistrate Judge also rejected defendants' contention that the common interest doctrine applies to communications between the Fund and the Unions because defendants failed to demonstrate that those entities shared a common interest. The Magistrate Judge further found that even if the Fund and Unions held a shared interest in "seeing the same outcome […] to arrive at an agreement to compensate the Unions for various tasks" and retained Polach for purposes of memorializing that agreement, the Unions and Fund nevertheless could be said to possess "competing interests with respect to the *amount* of that compensation" that would prevent application of the common interest doctrine. Id. at 7.

As such, the Magistrate Judge denied plaintiffs' motion to compel production of privilege log items 1-49.

### B. Privilege Log Entry Number 2

The instant objections concern the Magistrate Judge's ruling that the Fund waived privilege as to entry number 2 on the privilege log ("Entry Number 2") when Fund Trustee Ray Hair ("Hair"), who also serves as AFM's President, forwarded an attorney-client privileged email he received from Polach to AMF in-house attorney Jennifer Garner ("Garner"). Id. at 8. The log describes Entry Number 2 as an email with the subject line "FW: Data Purchase and Service Agreement – AFM & SAG-AFTRA Fund" that was sent from Hair to Garner "forwarding legal advice from outside counsel (P. Polach) regarding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | August 20, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

draft services agreement; attaches draft services agreement prepared by outside counsel." Id.; Dkt. 54-2, McConnell Decl. Ex.1. The Magistrate Judge determined that, because the common interest doctrine did not apply, Hair's action in forwarding Polach's attorney-client privileged email—which he received in his capacity as a Fund Trustee—to Garner, an attorney for AFM, "waived the attorney client privilege with respect to that communication." Order at 8. As such, defendants were ordered to produce Entry Number 2.

Plaintiffs filed the instant objections to the Magistrate Judge's determinations regarding Entry Number 2 on the privilege log on July 22, 2020. Mot. at 1.

### III.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 72(a), a party may file objections to a magistrate judge's non-dispositive order within fourteen days. The party shall file a motion for review by the assigned district judge "designating the specific portions of the ruling objected to and stating the grounds for the objection." Local Rule 72–2.1. Under this rule, the district judge will not modify or set aside a magistrate judge's ruling unless the objecting party shows that the ruling was "clearly erroneous or contrary to law." 28 U.S.C. § 626(b)(1)(A). "The 'clearly erroneous' standard applies to the magistrate judge's factual determinations and discretionary decisions, including orders imposing discovery sanctions." Computer Econ., Inc. v. Gartner Grp., Inc., 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Concrete Pipe & Prods. Of California, Inc. v. Constr. Laborers Pension Tr. for S. California, 508 U.S. 602, 623 (1993). The "contrary to law" standard allows "independent, plenary review of purely legal determinations" by the magistrate judge. Jadwin v. Cty. of Kern, No. CV-F-07-026 OWW/TAG, 2008 WL 4217742, at *1 (E.D. Cal. Sept. 11, 2008). An order is "contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Id.

### IV.   DISCUSSION

Defendants object to the magistrate's determination that Hair waived the attorney-client privilege with respect to Entry Number 2 when he forwarded the email he had

Case 2:18-cv-07241-CAS-PLA Document 72 Filed 08/20/20 Page 5 of 10 Page ID #:1102

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | August 20, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

received from Polach to Garner. Defendants contend both that Hair's forwarding communication did not waive the privilege because it was itself privileged and, in the alternative, that the common interest doctrine protects communications between the Unions, the Fund, and Polach regarding the Services Agreement and thus prevents waiver with respect to Entry Number 2.

### A. Waiver of Privilege

Defendants argue that the Magistrate Judge's finding that Hair's forwarding email to Garner waived any privilege with respect to Entry Number 2 was contrary to California law. Under California Law, Cal. Evid. Code § 912 is the "exclusive means by which the attorney/client relationship may be waived" and provides that waiver occurs in two circumstances: "(1) when the holder of the privilege, without coercion, and in a nonconfidential context, discloses a significant part of the communication or consents to such disclosure by anyone, and (2) when there is a failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to do so." Motown Record Corp. v. Superior Court, 155 Cal. App. 3d 482, 492, 202 Cal. Rptr. 227 (Ct. App. 1984). Section 912 (c) further instructs that "[a] disclosure that is itself privileged is not a waiver of any privilege." Cal. Evid. Code § 912 (c).

Defendants contend that because Hair arguably had separate attorney client relationships with Polach (in his capacity as a Fund Trustee) and Garner (in his capacity as President of AFM), his forwarding of Polach's email to Garner in Entry Number 2 was a "disclosure that is itself privileged" within the meaning of the Section 912 (c) and therefore the forwarding email was "not a waiver of any privilege." Mot. at 5. In support of that conclusion, the Reply cites to the California Law Revision Commission, which has explained that under Section 912(c) "a person does not waive the lawyer-client relationship as to a communication by relating it to another attorney in the course of a separate relationship." Reply at 2; Recommendation Proposing an Evidence Code (January 1965) 7 Cal. Law Revision Com., at p. 162. Defendants acknowledge that Section 912(c) has force when otherwise privileged communications are shared with another party "by the *client*" (i.e. the privilege holder). Reply at 2. But defendants do not cite—and this Court cannot otherwise identify—any authority that stands for the proposition that an individual who acts in separate official capacities for separate organizations acts as the same person

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | August 20, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

(or, privilege holder) for purposes of Section 912(c), such that privilege protection is carried between two entirely separate attorney-client relationships in which the attorneys at issue do not share the same client. To the contrary, the California Senate Committee on Judiciary's comments regarding Section 912(c) suggest the opposite conclusion, explaining that the rule preventing waiver when the revelation of a privileged matter takes place in another privileged communication "does not apply unless the revelation was within the scope of the relationship in which it was made." Cal. Evid. Code § 912 (West) (Senate Committee on Judiciary comments regarding Subdivision (c)); see also *Insurance Co. of North America v. Superior Court,* 108 Cal. App. 3d 758, 766 (1980) (attorney-client privilege is waived when disclosure is made to an entity that "possesses interests adverse to the client" or that is otherwise a "stranger[] to the attorney-client consultation"). [2]

Here, defendants appear to argue that because Hair is same *individual* regardless of whether he is acting as a Fund Trustee or as President of AFM, he can carry the privilege between his official capacities such that no waiver occurs when an email sent by the Fund's counsel to a Fund Trustee is forwarded by the Union's President to counsel for the Union. But, for purposes of maintaining the attorney-client privilege, Hair can neither act in both official capacities simultaneously nor carry the attorney-client privilege with him when switching between his capacity as a Fund Trustee and his capacity as President of AFM. Hair the Fund Trustee has no attorney-client relationship with Garner, and Hair the President of AFM cannot reveal the Fund's privileged information to Garner and claim attorney-client protection within the scope of Garner's representation of the Union. To the contrary, in forwarding Polach's email to Garner, Hair shared privileged information with

---

[2] Defendants further contend that a finding that Cal. Evid. Code § 912(c) does not apply to Entry Number 2 would improperly read subsection (c) out of the statute because "if the communication is forwarded within the same chain to another attorney working on the same matter, or to another employee of the same company, there would be no potential waiver to begin with and Section 912(c) would serve no purpose." Reply at 3. That concern is misplaced, given that Section 912(c) plainly protects a client's right to share privileged communications with his counsel in one matter with the same client's separate counsel in an unrelated matter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | August 20, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

a "stranger[] to [a Fund Trustee's] attorney-client consultation," an attorney for AFM, thus waiving the privilege. See Insurance Co. of North America, 108 Cal. App. 3d. at 766.

The Magistrate Judge concluded that "Mr. Hair's action waived the attorney client privilege with respect to" Entry Number 2 when "Mr. Hair, a Fund Trustee who is affiliated with AFM, apparently shared Ms. Polach's legal advice and draft services agreement with counsel for AFM." For the reasons stated above, the Court finds nothing clearly erroneous nor contrary to law in the Magistrate Judge's ruling. Defendant's objections are OVERRULED.

### B. Common Interest Doctrine

In the alternative, defendants contend that Entry Number 2 is protected by attorney-client privilege in its entirety, arguing that California's common interest doctrine applies to protect communications among the Unions, the Fund, and Polach because "AFM and the Fund had a common legal interest in obtaining Ms. Polach's legal services to draft the Services Agreement." Mot. at 6 & 8. The common interest doctrine applies where: "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc., No. C11-5200 JSC, 2012 WL 3062294, at *5 (N.D. Cal. July 26, 2012) (quoting United States v. Bergonzi, 216 F.R.D. 487, 495 (N.D.Cal.2003)). California Courts apply the common interest doctrine "as a nonwaiver doctrine" that prevents waiver in circumstances where "a confidential communication took place between parties who purportedly share a common interest" and disclosure of the communication for which privilege is sought was "reasonably necessary for the accomplishment of the purpose for which the lawyer … was consulted" within the meaning of Cal. Evid. Code §912(d). OXY Res. California LLC v. Superior Court, 115 Cal. App. 4th 874, 890, 9 Cal. Rptr. 3d 621, 636 (2004), as modified (Mar. 4, 2004). In analyzing the common interest doctrine, most California courts "insist that the two parties have in common an interest in securing legal advice related to the same matter—and that the communications be made to advance their shared interest in securing legal advice on that common matter." OXY Res. California LLC, 115 Cal. App. 4th at 891 (quoting First Pac. Networks, Inc. v. Atl. Mut. Ins. Co., 163 F.R.D. 574, 581 (N.D. Cal. 1995)). The common interest doctrine does not prevent waiver

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | August 20, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

in circumstances where the parties claiming protection possess interests that are "fundamentally divergent" and thus "cannot be considered to be advancing any shared interest when they share legal advice." See Citizens for Ceres v. Superior Court, 217 Cal. App. 4th 889, 898, 159 Cal. Rptr. 3d 789, 792 (2013) (holding that common interest doctrine could not protect communications between developer and state agency regarding a project at the pre-approval stage because the developer and state agency possessed divergent interests regarding the terms of the final approval.) To "determine the scope" of the common interest privilege, California courts "look to the content of the subject communications, as well as the circumstances" for indications on whether the communications will "advance the common interests in the representation by counsel." Seahaus La Jolla Owners Assn. v. Superior Court, 224 Cal. App. 4th 754, 775, 169 Cal. Rptr. 3d 390, 405 (2014).

The Magistrate Judge found that defendants had failed to demonstrate that the common interest doctrine applied to any of the 49 privilege log entries, including Entry Number 2. Order at 7. The order identified several issues that prevented application of the doctrine to communications between the Fund, the Unions, and Polach: First, the Magistrate Judge concluded on the record before him that defendants had not demonstrated that the Fund and Unions shared any common interest, because they "never specifically identified the purported common interest in the matter," whether commercial or legal. Id. Having concluded that defendants had demonstrated no common interest that would support application of the doctrine, the Magistrate Judge further reasoned that to the extent any common interest did exist, that common interest "appears to relate at best to a common commercial, rather than a common legal interest." Id. Further, the Magistrate Judge found that the Unions and Fund arguably possessed competing interests with respect to an important component of the Services Agreement: the "amount of [] compensation" that would be agreed to. Id. The Magistrate Judge also concluded that defendants had failed to demonstrate that Polach's only role was to jointly advise the Unions and Fund in connection with memorializing an existing agreement because defendants statements implied that Polach was "also providing legal advice" to the Fund regarding the Services Agreement. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | August 20, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

    Defendants object to these findings, focusing specifically on the Magistrate Judge's observation that, at most, the parties may have possessed a "common commercial, rather than a common legal, interest" and contending that such a finding is contrary to California law that permits "attorneys to represent both parties to a commercial transaction by memorializing their joint commercial interests." Mot. at 7. In support of that position, defendants rely on certain California cases addressing the limited circumstances under which an attorney may represent multiple parties to a transaction, each of which makes clear that such a representation is inappropriate when the parties possess conflicting interests. See In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 845 (Bankr. C.D. Cal. 1991) (interpreting California law and explaining that while there is nothing inherently "improper in representing more than one party to a transaction" so long as the consequences of a joint representation are disclosed, "an attorney should not represent parties whose interests are adverse"); Moxley v. Robertson, 169 Cal. App. 2d 72, 75, 336 P.2d 992 (1959) (finding no conflict where parties "engaged the services of a single attorney to implement their [pre-existing] joint plan" as distinguished from an instance where "[t]he ultimate interests and objectives of the two defendants were in conflict, and the attorneys should not have suggested they represent both."); Buehler v. Sbardellati, 34 Cal. App. 4th 1527, 1538, 41 Cal. Rptr. 2d 104 (1995), as modified (June 19, 1995) (finding no conflict where partners jointly engaged an attorney in "drafting the already agreed-upon terms" of a partnership agreement and the parties understood that the attorney "could not participate in any negotiation or representation of one partner contrary to another.").

    Nothing in the cases suggests that the Magistrate Judge erred in finding that the common interest doctrine does not protect communications between the Fund, the Unions, and Polach regarding the draft Services Agreement. Here, in contrast to the cases cited by defendants, the Magistrate Judge determined that the parties had not established that they retained joint counsel only to memorialize previously agreed-upon contract terms. Order at 7. The record also does not reflect that Polach made any disclosure—written or otherwise—regarding the impact of her separate legal advice to the Fund regarding any such joint arrangement or otherwise refrained from providing separate legal advice to the Fund. Id. To the contrary, the Magistrate Judge noted that defendants themselves argued that Polach provided separate legal advice regarding the Services Agreement to her client, the Fund. Id. Moreover, even to the extent that defendants can demonstrate that the Unions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | August 20, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

and Fund possessed a shared legal interest in memorializing the Services Agreement, the Magistrate Judge correctly determined that defendants failed to demonstrate that their positions prior to execution of the Services Agreement were not in direct conflict as to price, which precludes application of the common interest doctrine under California law. Id.; see Citizens for Ceres, 217 Cal. App. 4th 898.

As such, the Court cannot conclude that the Magistrate Judge's determination that the common interest doctrine does not apply was "clearly erroneous or contrary to law." See Fed. R. Civ. P. 72(a). The Court finds that the Magistrate Judge did not err in determining that defendants have not demonstrated a common interest in achieving a legal outcome that was not subsumed by the parties potentially adversarial negotiating positions. Likewise, the Magistrate did not err in finding that defendants failed to demonstrate that Polach's role was only to memorialize pre-existing contract terms, rather than to provide substantive legal advice to one party to the transaction.

As such, defendants' objections to the Magistrate Judge's determination that the common interest doctrine does not apply are **OVERRULED**.

## V.  CONCLUSION

Accordingly, the Court **DENIES** defendants' motion for reconsideration and lifts the stay imposed on the Magistrate Judge's July 8, 2020 order.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |