UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Nico Brancolini
Mariana McConnell
Paul Kiesel
Daniel Lifschitz
Neville Johnson

Attorneys Present for Defendants:

Andrew Thomas

**Proceedings:**   TELEPHONE HEARING ON PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION (Dkt. 56, filed June 29, 2020)

## I.    INTRODUCTION

On June 22, 2018, plaintiff Kevin Risto, on behalf of himself and all others similarly situated, filed this action in the Los Angeles Superior Court against defendants the Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA") and the American Federation of Musicians of the United States and Canada ("AFM") (collectively, the "Unions"); Raymond M. Hair, Jr., Tino Gagliardi, Duncan Crabtree-Ireland, Stephanie Taub, Jon Joyce, and Bruce Bouton (collectively, the "Trustees"); and Does 1 through 10. Dkt. 1-1 ("Compl."). On August 17, 2018, defendants removed this action to this Court, pursuant to 28 U.S.C. § 1332(d). Dkt. 1. On November 20, 2018, plaintiff filed the operative First Amended Complaint ("FAC"). Dkt. 26. The FAC alleges that that, by negotiating a service fee agreement with the Unions, the Trustee defendants violated their fiduciary duties to their beneficiaries. Id. These beneficiaries include plaintiff and other non-featured performance artists. Id. Plaintiff also alleges claims against all defendants for (1) money had and received, (2) conversion, and (3) declaratory relief. Id. Defendants answered the FAC on December 4, 2018. Dkt. 27.

On June 29, 2020, plaintiff filed the instant motion for class certification. Dkt. 56 ("Mot."). Plaintiff seeks to certify a class of all non-featured performers who have been

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

entitled to royalties under the Copyright Act after July 22, 2013.[1]  Id.  On August 3, 2020, defendants filed an opposition.  Dkt. 68 ("Opp'n").  Plaintiff filed a reply on August 28, 2020.  Dkt. 75 ("Reply").

The Court held a hearing September 14, 2020.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiff alleges the following facts.

Plaintiff Kevin Risto is a resident of Las Vegas, Nevada.  He collects royalties from the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund (the "Fund," described herein) as a non-featured artist for the song "When I See U," by Fantasia.  FAC. ¶ 27.  Risto has also written and produced songs for other artists, including, but not limited to, Justin Bieber and Jennifer Lopez.  Id.  Plaintiff received a Grammy award for his work on Frank Ocean's "Channel Orange" album.  Plaintiff is not a member of an artist union. Id.

Defendant SAG-AFTRA is a corporation organized and existing under the laws of Delaware and conducting business in the County of Los Angeles.  Id. ¶ 28.  Defendant AFM is a mutual benefit corporation that is organized and existing under the laws of California and conducts business in the County of Los Angeles.  Id. ¶ 29.  Defendants Hair, Gagliardi, Crabtree-Ireland, Taub, Joyce, and Bouton are all residents of New York or California, and they were Trustees of the Fund at the time the alleged misconduct occurred. Id. ¶¶ 5, 30 – 35.

### A.    Statutory Framework

17 U.S.C. § 114 provides for a statutory license that allows digital performance and reproduction of copyrighted sound recordings.  Id. ¶ 1; 17 U.S.C. § 114 (West).  As part of that license, Congress has established a specific statutory scheme to distribute royalties when copyrighted songs are performed or otherwise reproduced publicly by means of a digital audio transmission.  Id.  Pursuant to Section 114, the Copyright Royalty Board designated SoundExchange, an affiliate of the Recording Industry Association of America,

---

[1] The Fund and Unions entered into the Services Agreement upon which plaintiff's claims are centered on July 22, 2013.  FAC ¶ 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

as the sole entity to collect royalties for those digital performances. Id. Then, pursuant to Section 114(g)(2)(A), the royalties are distributed among the various artists, musicians, and copyright holders associated with a given song, as follows:

(A) 50 percent of the receipts shall be paid to the copyright owner . . .

(B) 2 ½ percent of the receipts shall be deposited in an escrow account managed by an independent administrator jointly appointed by copyright owners of sound recordings and the American Federation of Musicians (or any successor entity) to be distributed to nonfeatured musicians (whether or not members of the American Federation of Musicians) who have performed on sound recordings.

(C) 2 ½ percent of the receipts shall be deposited in an escrow account managed by an independent administrator jointly appointed by copyright owners of sound recordings and the American Federation of Television and Radio Artists (or any successor entity) to be distributed to nonfeatured vocalists (whether or not members of the American Federation of Television and Radio Artists) who have performed on sound recordings.

(D) 45 percent of the receipts shall be paid, on a per sound recording basis, to the recording artist or artists featured on such sound recording . . . .

17 U.S.C.A. § 114(g)(2)(A) (West); FAC ¶ 2. Pursuant to Section 114, the royalties for non-featured musicians and vocalists ("non-featured artists") must be deposited in an escrow account which is managed by an "independent administrator." 17 U.S.C.A. § 114(g)(2)(A). By law, non-featured artists are entitled to receive these royalties irrespective of their membership in a union. Id.; FAC ¶¶ 4, 6.

**B.     The AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund**

The AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund (the "Fund") was the I.R.C. §501(c)(6) nonprofit organization created pursuant to Section 114 to receive and distribute the royalties and other remuneration, received for the digital production of copyrighted songs, for non-featured artists. Id. ¶ 5. AFM and the American Federation of Television and Radio Artists ("AFTRA") established the Fund through an Agreement and Declaration of Trust (the "Trust Agreement"), dated September 16, 1998.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Id. ¶ 7.  Upon the merging of the Screen Actors Guild ("SAG") and AFTRA, the Trust Agreement was amended and restated on July 26, 2012.  Id. ¶ 8.

The Fund is managed by the Trustees, who are responsible for administering the statutory scheme, namely, collecting and distributing the royalties due to non-featured artists.  Id. ¶ 9.  By the terms of the Trust Agreement, the Trustees owe a fiduciary duty to the beneficiaries of the Fund and must protect the property held by the Fund.  Id. ¶ 10. Since 2013, there have been eight Trustees: three board members of the AFM, three board members of SAG-AFTRA, and two rank-and-file members, one from each union.  Id. ¶ 9.

### C.    Establishment of the Service Fee Agreement

On July 22, 2013, the Trustees on behalf of the Fund entered into a Data Purchase and Services Agreement (the "Services Agreement") with the Unions.  Id. ¶ 11.  The Services Agreement established that, in exchange "for providing the data and services contemplated by this Agreement," the Fund would pay the Unions "3% of the amount distributed by the Fund" for each distribution cycle (the "Service Fee").  Id.  This amounts to 3% of the 5% of the royalties which are to be paid to non-featured artists, under Section 114.  The Services Agreement further stipulated that there would "be no additional charges or expense reimbursement associated with" these services.  Id.

Plaintiff alleges that the Services Agreement was approved by the Trustee defendants, who "were acting with deep conflicts of interest to the benefit of the Unions." Id. ¶ 13.  Specifically, plaintiff contends that all of the Trustees who approved the Services Agreement have affiliations with the Unions: (1) Hair is the President of the AFM; (2) Gagliardi serves on the Executive Committee of the AFM; (3) Crabtree-Ireland is the Chief Operating Officer and General Counsel of SAG-AFTRA; (4) Taub previously served as the National Manager of Sound Recordings for SAG-AFTRA;[2] (5) Joyce is a member of SAG-AFTRA and serves on the Board of SAG-AFTRA; and (6) Bouton is a member of AFM and is the Intellectual Property Rights committee Chair of the Recording Musicians Association, which upon information and belief, plaintiff claims is an affiliated entity of the AFM.  Id. ¶¶ 13, 30 – 35.  In addition, plaintiff alleges that Patricia Polach, the general

---

[2] Plaintiff alleges that while Taub is a former Trustee of the Fund, she now serves as the Fund's Chief Executive Officer, and was one of the Trustees who approved the Services Agreement.  Id. ¶¶ 13, 33.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

counsel for the Fund, has also served as counsel for AFM, AFTRA, and SAG-AFTRA. Id. ¶ 22. Plaintiff calls this "a massive and obvious conflict of interest." Id.

Plaintiff also alleges that "no new consideration was provided by the Unions in exchange for the Service Fee" because the Unions were already performing their obligations identified by the Services Agreement. Id. ¶ 16. Additionally, plaintiff contends that the Unions' obligations under the Services Agreement do not benefit non-featured artists who are not Union members. Id. ¶ 18. Since the establishment of the Services Agreement, plaintiff further alleges that the Unions have not always fulfilled their obligations to provide the Fund with member data. Id. ¶ 17. Specifically, plaintiff claims that SAG-AFTRA has not given the Fund access to member databases, session reports and "B-forms", and other applicable data, to enable the Fund to identify non-featured artists entitled to royalties, as contemplated by the Services Agreement. Id.

Plaintiff therefore alleges that the Trustees violated their duties to the Fund and its beneficiaries. Id. ¶ 15. Plaintiff alleges that the Trustees have significant conflicts of interest, and have used the Fund for the Unions' benefit, as opposed to for the benefit of the beneficiaries. Id. ¶ 20. Upon information and belief, plaintiff alleges that in 2016 alone, the Fund paid $1,743,712 to the Unions, and the Fund continues to pay the Unions each year. Id. ¶ 21.

Plaintiff alleges that the Trustee defendants breached their fiduciary duty to the Fund by implementing the Service Fee. Id. ¶ 62. Plaintiff also states claims for (1) money had and received and (2) conversion against all defendants. Id. ¶¶ 64 – 66, 72 – 76. Plaintiff therefore seeks equitable, declaratory, and injunctive relief which requires the Unions to (1) pay back to the Fund the amounts the Unions received for the Service Fee; (2) cease the collection of Service Fees; and (3) declares the Services Agreement void and unenforceable. Id. ¶ 23.

**D.    Tolling and Estoppel**

Plaintiff seeks relief requiring the Unions to return to the Fund all Service Fee payments made by the Fund after July 22, 2013. Id. ¶ 23. The Fund would then reimburse individual class members for the amount of Service Fee that was deducted from their allocations using its business records reflecting prior royalty allocations. Mot. at 21. Plaintiff contends that "any applicable statutes of limitations that might otherwise bar any of plaintiff's claims are tolled by defendants' knowing and active concealment" of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Fund's payment of the Service Fee, which is deducted from the royalties for non-featured artists. FAC ¶ 48. Plaintiff alleges that class members had no duty to investigate the Fund's payments and that, despite defendants' duty to disclose to plaintiff and the members of the class the amount paid into the Fund, as well as the amounts paid to the Unions, defendants "kept plaintiff in the dark as to necessary information essential to the pursuit of his claims" and hid payment of the Service Fee from the beneficiaries. Id. ¶ 49. Specifically, plaintiff alleges that he was not aware of the Service Fee and had no reason to visit the Fund's websites to view the disclosures in its Annual Reports, which plaintiff further alleges did not provide clear and unambiguous notice of the existence of the Service Fee. Id. ¶¶ 50-51, 53. Plaintiff alleges that defendants sought to conceal the Service Fee by posting the Annual Reports online, stating that the Fund typically communicates with its beneficiaries via mail and, until the Service Fee was implemented in 2013, hard copies of the Fund's annual report were mailed to the beneficiaries. Id. ¶ 52. Accordingly, plaintiff contends that he "could not have reasonably discovered the substantial sum of money being diverted from the Trust to the Unions," and that defendants are estopped from relying on any statutes of limitations in defense of this action. Id. ¶ 49. Plaintiff further contends that defendants' alleged breaches of fiduciary duty constitute continuing wrongs. Id. ¶ 50. Therefore, plaintiff states that the statute of limitations on these breaches will not begin to run until the last wrongful act by the Trustees has occurred. Id.

## III.   LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Longest v. Green Tree Servicing LLC, 308 F.R.D. 310, 320 (C.D. Cal. 2015) (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions. For a suit to be maintained as a class action, the proposed class must "satisfy the criteria set forth in subdivision (a) ..., and it also must fit into one of three categories described in subdivision (b)." Shady Grove Orthopedic Assocs., P .A. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate ... compliance with the rule." Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id. at 351. However, the Supreme Court has strongly cautioned that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

"merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013).

First, plaintiff must demonstrate that the four requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 155 (1982) (quoting Califano v. Yamasaki, 442, U.S. 682, 701 (1979)). Second, if a court finds that the Rule 23(a) requirements are met, the court must consider whether the class is maintainable under one of the three alternatives set forth in Rule 23(b). Dukes, 564 U.S. at 345. Plaintiff here seeks to maintain certification under Rules 23(b)(1), (b)(2), and (b)(3).

Rule 23(b)(1) calls for a class to be certified where "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1).

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(3) requires "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). If "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then adjudication on a representative basis is appropriate. Id. Otherwise, individualized adjudication is more appropriate. Therefore, the Court must balance concerns regarding the litigation of issues common to the class as a whole with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

questions affecting individual class members. <u>Abed v. A. H. Robins Co. (In re N.D. Cal., Dalkon Shield IUD Products Liability Litig.)</u>, 693 F.2d 847, 856 (9th Cir. 1982).

In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests that members in the class have in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. <u>See</u> <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1190–1193 (9th Cir. 2001), opinion amended on denial of reh'g, 273 F.3d 1261 (9th Cir. 2011).

## IV.   DISCUSSION

Plaintiff seeks certification of the following class and the appointment of plaintiff Kevin Risto as class representative:

> All non-featured musicians and non-featured vocalists, their agents, successors in interest, assigns, heirs, executors, trustees, and administrators, entitled to royalties under the Copyright Act (17 U.S.C. § 114 (g)(2)(b-c)) after July 22, 2013.

Dkt. 56, Notice of Motion for Class Certification at 1.

### A. Overbreadth

Defendants argue that plaintiff's proposed class definition is overbroad because it includes proposed class members who have not been "financially injured" by the Service Fee, and thus lack Article III standing to pursue claims, and because it includes proposed class members whose claims are time-barred. Opp'n at 12 & 17-18. Defendants raise both overbreadth arguments as threshold questions, without reference to their impact on the Court's Rule 23 analysis for purposes of class certification. <u>Id.</u> at 11-19. "[P]ursuant to Rule 23, the court's task at certification is to ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." <u>Torres v. Mercer Canyons Inc.</u>, 835 F.3d 1125, 1138 (9th Cir. 2016). At class certification, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." <u>Amgen Inc. v. Conn. Ret. Plans</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

& Trust Funds, 568 U.S. 455, 466 (2013). As such, when a putative class definition is "reasonably co-extensive with Plaintiff['s] chosen theory of liability" a claim that some absent class members suffered no injury is "a merits dispute about the scope of liability, and is not appropriate for resolution at the class certification stage." Torres, 835 F. 3d at 1136-37. The Court addresses each overbreadth argument in turn.

### a. Article III Standing

Defendants contend that certain members of the putative class lack Article III standing because "they have not been financially impacted in any way by the implementation of the Service Fee," precluding certification of the class as defined. Opp'n at 17. Citing the Ninth Circuit's decision in Mazza v. American Honda Motor Co., defendants argue that the Court cannot certify the proposed class if any proposed member lacks standing, Opp'n at 18; 666 F.3d 581, 594 (9th Cir. 2012) ("[N]o class may be certified that contains members lacking Article III standing"). As such, defendants contend that the Court must exercise its authority to re-define the putative class to exclude proposed class members who lack standing. Id. at 19. Defendants' standing argument concerns two separate groups of proposed class members: (1) non-featured performers to whom royalties were allocated before the July 22, 2013 Services Agreement, but who were "entitled to royalties" after that date, having not yet been paid their allocated funds; and (2) non-featured performers to whom unclaimed royalties have been allocated by the Fund, including during the period when the Service Fee was deducted from those allocations, but whom the Fund has been unable to locate and thus have never been paid. Id. at 17-18.

Regarding the first group, non-featured performers whose royalty allocations pre-dated the Services Agreement and thus whose allocations were never subject to the Service Fee, defendants argue that those performers could not have experienced any financial injury attributable to the imposition of the Service Fee. Id. at 17. Defendants thus urge the Court to exercise its authority to modify the putative class definition to exclude this group of proposed class members on the grounds that they lack Article III standing. See Victorino v. FCA US LLC, 326 F.R.D. 282, 301-02 (S.D. Cal. 2018) ("[D]istrict courts have the inherent power to modify overbroad class definitions."); Mazur v. eBay Inc., 257 F.R.D. 563, 568 (N.D. Cal. 2009) ("[T]he court has the power to modify proposed class definitions."). In reply, plaintiff agrees that non-featured performers whose royalties were allocated before the Service Fee was implemented (and thus not charged the Service Fee) but paid after July 22, 2013 should not be included as members of the class. Reply at 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Plaintiff explains that his proposed class definition "intends to include all performers who were subject to the Service Fee deductions and whose entitlement (and therefore eligibility for payment) occurred after the Service Fee was implemented." Id. To avoid any ambiguity regarding the inclusion of performers whose allocations were not assessed the Service Fee, plaintiff proposes the following modified class definition in his reply brief:

> All non-featured musicians and non-featured vocalists, their agents, successors in interest, assigns, heirs, executors, trustees, and administrators, entitled to royalties under the Copyright Act (17 U.S.C. § 114 (g)(2)(b-c)) allocated for distribution for each distribution cycle after July 22, 2013.

Id. This proposed modification removes any potential ambiguity regarding performers who were allocated royalties only prior to July 22, 2013.

Defendants next focus their arguments on the second, "more substantial" group of proposed class members: those who are entitled to as yet unclaimed royalties that were subject to Service Fee deductions after July 22, 2013. Opp'n at 17-18. Defendants argue that the Fund has thus far been unable to identify and locate these individuals and thus they, by definition, have not been paid. As such, defendants argue that these proposed class members have never been charged the Service Fee and therefore have suffered no concrete injury giving rise to Article III standing. Id. at 18. Specifically, defendants contend that standing here is precluded by a line of cases finding that "a party who is charged a fee lacks standing to challenge the imposition of that fee if [he] 'never paid' it," which they argue is the situation presented for proposed class members who are entitled to distributions subject to the Service Fee, but who have not yet been paid. Id. (citing Delano Farms Co. v. Cal. Table Grape Comm'n, 546 F. Supp. 2d 859, 890 (E.D. Cal. 2008)).

In reply, plaintiff argues both that Article III standing of the absent class members is not required at the certification stage, and that—irrespective of the procedural posture—absent class members who are legally entitled to distributions that will be subject to the Service Fee possess Article III standing, regardless of whether they have been paid. In support of that position, plaintiff explains that "where the class representative has established standing and defendants argue that class certification is inappropriate because unnamed class members' claims would require individualized analysis of injury or differ too greatly from the plaintiff's, a court should analyze these arguments through Rule 23 and not by examining the Article III standing of the class representative or unnamed class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

members," citing <u>Bruno v. Quten Research Inst.</u>, LLC, 280 F.R.D. 524, 533 (C.D. Cal. 2011). Plaintiff further contends that, even if a detailed analysis of absent class member standing is relevant at this stage of the proceedings, each absent non-featured performer from whose allocated royalties the Service Fee has been deducted possesses Article III standing, irrespective of whether or not the Fund has identified and actually distributed royalties to the performer. Plaintiff explains that unlike a case in which a party lacks standing because he has not paid the fee at issue, the corpus of the Fund at issue here is ultimately the property of the performers, which the Fund has a statutory obligation to hold in trust for them. Reply at 3. As such, injury occurs when the Service Fee is deducted from funds held in trust, and not only when a performer is actually paid.

First, the Court agrees that in the absence of any challenge to the class representative's Article III standing, the question of Article III standing of absent class members need not be addressed at class certification. The Ninth Circuit's precedent is clear that for Article III purposes, "only one Plaintiff needs to have standing for a class action to proceed." <u>In re Zappos.com, Inc.</u>, 888 F.3d 1020, 1022 (9th Cir. 2018) quoting <u>Bates v. United Parcel Svc., Inc.</u>, 511 F.3d 974, 985 (9th Cir.2007), cert. denied sub nom. <u>Zappos.com, Inc. v. Stevens</u>, 139 S. Ct. 1373, 203 L. Ed. 2d 609 (2019); accord <u>Briseno v. ConAgra Foods, Inc.</u>, 844 F.3d 1121, 1131 (9th Cir. 2017). As such, because there is no challenge to plaintiff Risto's Article III standing and defendants do not contend that differences between performers who have been paid by the Fund and performers who have not yet been paid defeat certification under the Rule 23 factors, the Court concludes that the latter group is appropriately included in the putative class.

Moreover, to the extent that Article III standing is appropriately at issue on this motion for class certification, the requirements of Article III are satisfied here. Non-featured performers who are entitled by statute to royalties held by the Fund from which the Service Fee has been deducted have experienced a concrete injury giving rise to Article III standing, even if they have not yet received distributions of those royalties. "[S]tanding requires that (1) the plaintiff suffered an injury in fact ... (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." <u>Mazza v. Am. Honda Motor Co.</u>, 666 F.3d 581, 594–95 (9th Cir. 2012) (quoting <u>Bates</u>, 511 F.3d at 985). An injury in fact is an injury that is "concrete and particularized" and "actual or imminent," meaning that it is not "conjectural or hypothetical." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). In actions seeking injunctive relief, standing exists where a plaintiff can demonstrate: "a 'concrete and particularized' legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

harm, coupled with 'a sufficient likelihood that [the plaintiff] will again be wronged in a similar way.'" Bates, 511 F.3d at 985 (quoting Lujan, 504 U.S. at 560.) (internal citation omitted).

First, each of these non-featured performers has suffered an "injury in fact" that is neither conjectural nor hypothetical by virtue of their statutory entitlement to specific, allocated royalties from which the Service Fee has been deducted. The concrete injury occurs when the fee is deducted from royalties owed to a Fund beneficiary, even if the beneficiary has not yet received payment of his share of those royalties. Second, there is no dispute that deduction of the Service Fee is the cause of the harm plaintiff complains of. Third, it is likely that a favorable decision for the class members will redress their injury by enjoining Service Fee deductions from the amounts they are owed. Likewise, it is likely that class members will be "wronged again in a similar way" if payment of the Service Fee is not enjoined. See Bates, 511 F.3d at 985. Absent an injunction, the Fund will continue to pay the Service Fee to the Unions on future distribution cycles and deduct the funds necessary to pay the fee from royalties owed to non-featured performers. The Service Fee will be deducted pro-rata from all allocated royalties, regardless of whether or not the owners of those royalties are or have been paid by the Fund. Clearly, a declaration of the rights of all class members to the effect that the Service Fee may not be distributed from their royalty payments will benefit class members, not just those who have already been paid. Accordingly, the Court finds that non-featured performers whose royalty allocations have been subject to the Service Fee but who have not yet received distributions have suffered injury in fact and possess Article III standing.

### b. Equitable Tolling

Defendants further argue that the proposed class definition is overbroad because it includes members whose claims are time-barred and not properly subject to equitable tolling. Opp'n at 13. In support of this argument, defendants explain that as a matter of California law, plaintiff's claims are subject to a limitations period of not longer than four years, and, as such, the class period should not extend further back than June 22, 2014 (four years before this lawsuit was filed) Id. at 12, citing American Master Lease LLC v. Idanta Partners Ltd., 225 Cal. App. 4th 1451, 1479 (2014) (breach of fiduciary duty claims subject to either a three or four-year statute of limitations); Fabricon Prods. v. United Cal. Bank, 264 Cal. App. 2d 113, 118 (1968) (claims for money had and received and conversion subject to two-year statute of limitations). Defendants further contend that plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

claims are not subject to equitable tolling because the Service Fee was clearly disclosed in the Fund's Annual Reports and there has not been a sufficient showing that plaintiff or other class members were diligent in pursuing their rights. Opp'n at 14-16. Defendants therefore request that the Court modify the class definition to "include only those non-featured performers who received royalty distributions that were subject to the Service Fee from June 22, 2014 to present." Opp'n at 12-13.

In reply, plaintiff first contends that defendants' equitable tolling arguments reflect a merits dispute that is not appropriate for resolution at class certification. Reply at 1, citing Torres, 835 F.3d at 1136-37. Further, plaintiff raises two factual disputes regarding the content and timing of the dissemination of the Annual Reports that defendants contend disclosed the Service Fee. Plaintiff contends both (a) that the Annual Reports did not clearly disclose the existence and purpose of the Service Fee because defendants "buried" that information as a line-item and, (b) that even if the disclosure of the Service Fee should have placed plaintiff and the class on notice of the existence of the Service Fee, equitable tolling nonetheless applies because the cover letter to the Fund's 2014 and 2013 Annual Report is dated March 9, 2016, and defendants have not pointed to any earlier disclosure. Id. at 9-11; see also Dkt. 19-1, Fund March 31, 2014 and 2013 Financial Statements at 5.

The Court has previously taken judicial notice of "the annual reports, and the fact that defendants disclosed the existence of the Services Agreement within them." Dkt. 25 at 8. At that time, the Court noted specifically that the Fund's 2014 and 2013 Annual Report included the following disclosure: "In June 2013, the Fund entered into services agreements with AFM & SAG-AFTRA whereby they will provide the Fund membership data and other support services that will help facilitate distributions to performers." Id. The same section of the same 2014 and 2013 Financial Statements explains the financial terms of the Services Agreement: "The Fund will pay 3% of each distribution, split evenly between AFM & SAG-AFTRA. During the year ended March 31, 2014, the Fund paid $193,814 to both AFM & SAG-AFTRA."

The question of whether and when adequate disclosure of the Service Agreement was made is an issue which, when determined, is common to the class. Plaintiff's tolling argument raises a fact-specific merits inquiry that is subject to class-wide proof, which the Court cannot and should not resolve at the class certification stage. "A litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

circumstance stood in his way and prevented timely filing.' " Smith v. Davis, 953 F.3d 582, 590 (9th Cir. 2020) (en banc) (quoting Menominee Indian Tribe of Wis. v. United States, ―― U.S. ――, 136 S. Ct. 750, 755, 193 L.Ed.2d 652 (2016)).  For instance, "[i]f a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." Santa Maria v. Pac. Bell, 202 F.3d 1170, 1176 (9th Cir. 2000) (citation omitted), overruled on other grounds by Socop–Gonzalez v. INS, 272 F.3d 1176, 1194–96 (9th Cir. 2001) (en banc).  Defendants contend that plaintiff was on notice of the Service Fee in 2014 because it was disclosed in the Fund's 2014 and 2013 Annual Report.  Because the version of the 2014 and 2013 Fund Annual Report filed with this Court contains a cover sheet that is dated March 9, 2016, the Court is unable to determine at this stage of the proceedings whether the Service Fee was first disclosed on March 9, 2016, which could support a finding that equitable tolling applies on a class-wide basis,  or whether some other version of the Annual Report was made public in 2014.  Because that fact, as well as whether the Service Fee was adequately disclosed in the Annual Reports, are merits issues best resolved at summary judgment or at trial, the Court finds no reason to exclude non-featured performers from the class on the grounds that their claims may ultimately be found to be time-barred.[3]

    In sum, the Court concludes that the proposed class properly includes all non-featured performers who are entitled to distributions from the Fund from which the Service Fee has been deducted, irrespective of whether those distributions have been paid. In addition, the Court cannot—and need not—determine at this stage whether plaintiff can demonstrate facts sufficient to establish that equitable tolling is appropriate on a class-wide basis.  Accordingly, the class is defined as follows:

> All non-featured musicians and non-featured vocalists, their agents, successors in interest, assigns, heirs, executors, trustees, and administrators, entitled to royalties under the Copyright Act (17 U.S.C. § 114 (g)(2)(b-c)) allocated for distribution for each distribution cycle after July 22, 2013.

---

[3] To the extent that defendants argue that some class members had notice of the Service Fee earlier than the class as a whole, those are individualized defenses which do not alter the fact that notice is an issue subject to class-wide proof.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

### B. Rule 23 Requirements

#### a. Rule 23(a) Requirements

##### i. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(l). The party seeking certification "do[ es] not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity." In re Rubber Chemicals Antitrust Litig., 232 F.R.D. 346, 350 (N.D. Cal. 2005). Instead, a "court may make common sense assumptions to support a finding that joinder would be impracticable." Id. "Courts generally find that numerosity is satisfied if the class includes forty or more members." Nightingale v. U.S. Citizenship & Immigration Servs., 333 F.R.D. 449, 457 (N.D. Cal. 2019).

Plaintiff estimates that the class is made up of thousands of members. Specifically, plaintiff states that the class is made up of approximately 30,000 beneficiaries who received distributions from the Fund between July 2013 and May 2019, plus an approximately 60,000 additional beneficiaries who are eligible to receive distributions from the Fund, but who have not yet been paid. Mot. 8-9. Moreover, defendants do not dispute that the requisite numerosity exists in this case. The Court therefore concludes that plaintiff has satisfied Rule 23(a)(1)'s numerosity requirement. See Sidibe v. Sutter Health, 333 F.R.D. 463, 485 (N.D. Cal. 2019) (finding numerosity satisfied where "Sutter does not dispute numerosity.").

##### ii. Commonality

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). "Commonality is met through the existence of the 'same injury' resulting in a 'common contention' that is 'capable of classwide resolution in one stroke.'" Byorth v. USAA Cas. Ins. Co., 333 F.R.D. 519, 528 (D. Mont. 2019) (internal alteration and citation omitted). "What matters to class certification is not the raising of common ' questions'-even in droves-but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." Wal-Mart Stores. Inc. v. Dukes, 564 U.S. 338, 350 (2011) (emphasis in original) (internal alteration and citation omitted). "But even a single common question is sufficient to satisfy the requirement." Byorth, 333 F.R.D. at 528; accord Mazza v. Am. Honda Motor Co., 666

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

F.3d 581, 589 (9th Cir. 2012) ("commonality only requires a single significant question of law or fact.").

The Court finds that this action presents common questions of law and fact the answers to which will drive the resolution of all class member claims. The gravamen of the plaintiff's claims is that the Trustees breached fiduciary duties owed equally to each Fund beneficiary in agreeing to the Services Agreement, which resulted in the Unions' wrongful diversion of Fund assets. Each of the plaintiff's claims regarding the validity of the Services Agreement will turn on whether the Trustees breached their fiduciary duties to the Fund's beneficiaries—and thereby to the class—and the circumstances under which the Unions and Trustees entered into the Services Agreement. See generally FAC. Moreover, all of the conduct at issue is alleged to have been directed to the corpus of the Fund as a whole, and not towards any individual class member; if a breach occurred, every class member was injured in the same manner. Mot. at 11. As such, determining the answers to common questions including (a) whether the Trustees breached their fiduciary duties; (b) whether the Trustees wrongfully diverted assets of the Fund to the Unions; and (c) whether plaintiff is entitled to an injunction and declaratory relief regarding the validity of the Services Agreement will drive the resolution of all class member claims. See Munro v. Univ. of S. California, No. 2:16-CV-06191-VAP-EX, 2019 WL 7842551, at *4 (C.D. Cal. Dec. 20, 2019) (finding commonality satisfied where common questions regarding the fiduciary duties of ERISA plan oversight committee would be answered by "plan-level facts, and thus the same for all the Plans' participants"). Accordingly, the Court finds that the commonality requirement is satisfied.

### iii. Typicality

"Rule 23(a)(3) provides that class members may sue as representative parties only if the claims or defenses of the representative parties are typical of the claims or defenses of the class." B.K. by next friend Tinsley v. Snyder, 922 F.3d 957, 969 (9th Cir. 2019) (internal citations omitted). "The named plaintiff's representative claims are 'typical' if they are 'reasonably coextensive with those of absent class member; they need not be substantially identical." Id. at 969-970. "The test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Sandoval v. Cty. of Sonoma, 912 F.3d 509, 518 (9th Cir. 2018) (internal citation and quotation marks omitted). A "named plaintiff's motion for class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Nghiem v. Dick's Sporting Goods, Inc., 318 F.R.D. 375, 381 (C.D. Cal. 2016) (internal citation omitted). To determine whether plaintiff's has satisfied Rule 23(a)'s typicality requirement, the Court looks to plaintiff's proposed class and plaintiff's proposed class representative.

Here, Risto alleges that he is non-featured musician who is entitled to royalty distributions from the Fund based on his work on Fantasia's song "When I See U." FAC ¶ 27. Plaintiff further alleges that he has earned digital performance royalties that are or will be collected by the Fund and subject to the Service Fee, which is currently applied equally to all digital performance royalties collected and distributed by the Fund. Id. ¶ 43; Mot. at 12. Therefore, he has suffered the same alleged injury as all of the absent class members and his claims are not based on conduct or defenses unique to him. Accordingly, the typicality requirement is satisfied.

### iv. Adequacy

Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining adequacy, courts resolve two questions: "(l) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Hyundai & Kia Fuel Econ. Litig., 926 F.3d at 566.

Here, defendants do not contest adequacy. Defendants do not suggest that Risto or his counsel have any conflicts of interest with other class members. Nor do defendants appear to otherwise dispute that Risto will vigorously prosecute this action on behalf of the class. Plaintiff has therefore satisfied Rule 23(a)(4)'s adequacy requirement.

### b. Rule 23(b)(1) Requirements

Having concluded that the Rule 23(a) requirements are met, the Court turns to Rule 23(b). Rule 23(b)(1) calls for a class to be certified where "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). In matters addressing the obligations of "fiduciaries who must apply uniform standards to a large number of beneficiaries," certification of a class under Rule 23(b)(1) is "particularly appropriate." Wit v. United Behavioral Health, 317 F.R.D. 106, 132 (N.D. Cal. 2016) (certifying claims for breach of fiduciary duty brought by ERISA beneficiaries under Rule 23(b)(1)(A)). Here, it is undisputed that this class may be certified under both Rule 23(b)(1)(A) and Rule 23(b)(1)(B). Mot. at 14-16; Opp'n at 20. The Court agrees.

Certification is proper under Rule 23(b)(1)(A) "when a party is obligated by law to treat the members of a class in a like manner," Alday v. Raytheon Co., 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (citing Amchem Products Inc. v. Windsor, 521 U.S. 591, 614 (1997)). "Rule 23(b)(1)(A) prevents the prosecution of separate actions that would create the risk of inconsistent or varying adjudications ... that would establish incompatible standards of conduct for the party opposing the class." Moyle v. Liberty Mut. Ret. Ben. Plan, 823 F.3d 948, 965 (9th Cir. 2016) (internal quotation marks omitted). Plaintiff's claims here all rest on allegations that the Trustees breached their fiduciary duties as a result of a single transaction with the Unions—the Services Agreement—entered into on behalf of the Fund as a whole. As such, defendants' liability and relief flowing from that liability are dependent on legal questions regarding the alleged breaches of fiduciary duty and the validity of the Services Agreement that must be uniformly determined. "Conflicting interpretations by separate tribunals could result in countervailing directives to the [Fund Trustees]" that would make it impossible to administer the Fund consistent with judicial standards. Hurtado v. Rainbow Disposal Co., No. 817CV01605JLSDFM, 2019 WL 1771797, at *10 (C.D. Cal. Apr. 22, 2019); see also Foster v. Adams & Assocs., Inc., No. 18-CV-02723-JSC, 2019 WL 4305538, at *8 (N.D. Cal. Sept. 11, 2019) (certifying class under Rule 23(b)(1) where ERISA plaintiffs alleged fund administrators had "breached their fiduciary duties and engaged in prohibited transactions").

Rule 23(b)(1)(B) covers cases in which judgment in an individual action "inescapably will alter the substance of the rights of others having similar claims." La Mar v. H & B Novelty & Loan Co., 489 F.2d 461, 467 (9th Cir. 1973). A "classic" example of such a case is one charging "a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust." Ortiz v. Fibreboard Corp., 527 U.S. 815, 833-34 (1999) (internal citation and quotation marks omitted). In such a case, "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." Id. at 834.

Here, plaintiff seeks injunctive and declaratory relief regarding the imposition of the Service Fee that will necessarily affect the rights and interests of all other class members. "Because [the Trustees] cannot manage the [Fund] in an individualized fashion for each [Fund Beneficiary], whatever injunctive relief an individual plaintiff obtains would be applied to the [Fund] as a whole." See Hurtado, 2019 WL 1771797, at *10. The indivisible nature plaintiff's claims is apparent here because the Service Fee is paid as a percentage of the corpus of the Fund rather than as a fee charged separately to individual Fund beneficiaries when they are paid; depending on how the merits of this case are determined, the Fund will either pay the entire Service Fee or none of it. A judgment for or against any Fund beneficiary that upholds or enjoins payment of the Service Fee will plainly impact the rights of all members of the class. See Id.

Accordingly, the Court finds that the proposed class satisfies the requirements of Rules 23(b)(1)(A) and (B).

### i. Punitive Damages Claims

Despite advocating for certification of the class under Rules 23(b)(1) and 23(b)(2), plaintiff's reply briefing raises for the first time concerns that the Court "may" be obligated as a matter of due process to extend notice and opt-out rights to absent class members with respect to his claim for punitive damages, either as an exercise of discretion or through certification of a damages class under Rule 23(b)(3). Reply at 13-15. Plaintiff does not take the firm position that certification of the class under either Rule 23(b)(1) or Rule 23(b)(2) would violate the due process rights of absent class members. To the contrary, plaintiff first argues that certification of all claims is appropriate under both 23(b)(1) and 23(b)(2) because all monetary damages sought—"a return of all money taken from the class" due to the Service Fee, and punitive damages—are "incidental" to plaintiff's equitable claims and would require no individualized damages determinations. Id. at 14. Only then does plaintiff assert concerns that certification of a "hybrid" suit or certification entirely under Rule 23(b)(3) may be "required by due process," appearing to argue that the Court could conclude that punitive damages are inherently "substantial," and therefore by definition not incidental, giving rise to the right to notice and opt out rights. See Id. at 14-15 (citing Molski v. Gleich, 318 F.3d 937, 950-51 (9th Cir. 2003) (statutory treble damages

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

held to be "substantial," thus triggering notice and opt out rights), overruled on other grounds by Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010).

The Court is not persuaded that plaintiff's punitive damages claims seek monetary relief that is more than incidental to his claims for equitable relief, such that absent class members are entitled to notice and opt out rights as a matter of due process. "Classes certified under [Rules] (b)(1) or (b)(2) share the most traditional justifications for class treatment—that individual adjudications would be impossible or unworkable, as in a (b)(1) class, or that the relief sought must perforce affect the entire class at once, as in a (b)(2) class." Dukes, 564 U.S. 631-32. The indivisible nature of the relief sought by (b)(1) and (b)(2) classes is the reason that classes certified under those sections are mandatory and the basis for "[t]he rule that classes may not be certified under Rule 23(b)(1) or (2) if they seek anything *more than incidental* monetary relief." Wit v. United Behavioral Health, 317 F.R.D. 106, 133 (N.D. Cal. 2016) (emphasis added); see also Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir.2001) (class may not be certified under Rule 23(b)(1)(A) when it "primarily seeks monetary damages"). In addition, certification of punitive damages claims in a (b)(1)(B) action is "proper only when separate punitive damage claims necessarily will affect later claims." In re N. Dist. of California, Dalkon Shield IUD Prod. Liab. Litig., 693 F.2d 847, 852 (9th Cir. 1982), as amended (July 15, 1982). The question is whether the Court must resolve all damages questions for the class in one stroke; "classes whose claims will require *individualized inquiries* as to money damages 'belong in Rule 23(b)(3),' which carries the procedural protections of notice and an opportunity to opt out." Wit v. United Behavioral Health, 317 F.R.D. 106, 133 (N.D. Cal. 2016) (quoting Dukes, 564 U.S. at 362, 131 S.Ct. 2541) (emphasis added).

Here, plaintiff's punitive damages claims are properly viewed as incidental to the equitable relief he seeks and will not require the Court to engage in any individualized damages inquiries. Plaintiff's punitive damages claims are governed by California Civil Code § 3294, which authorizes punitive damages "in an action for breach of an obligation not arising from contract, if the plaintiff proves by clear and convincing evidence that defendant has been guilty of oppression, fraud, or malice." Scott v. Phoenix Sch., Inc., 175 Cal. App. 4th 702, 715, 96 Cal. Rptr. 3d 159, 169 (2009). Claims for punitive damages require an examination of the allegedly wrongful conduct at issue to determine whether "defendant's acts are reprehensible, fraudulent, or in blatant violation of law or policy." Pac. Gas & Elec. Co. v. Superior Court, 24 Cal. App. 5th 1150, 1170, 235 Cal. Rptr. 3d 228, 244 (2018), as modified on denial of reh'g (July 26, 2018), review denied (Oct. 17,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

2018). Here, any award of punitive damages must be determined on a class-wide basis because each action that plaintiff alleges could give rise to a finding of oppression, fraud, or malice was taken with respect to the Fund as a whole. Such a determination will be binding on all Fund beneficiaries in any future proceeding and will thereby necessarily impact the rights of all absent class members. Moreover, the measure of punitive damages does not take class members' individualized positions into account. Thus, even if plaintiff prevails on his claims for punitive damages, the Court will not be required to address individualized claims for damages. See Ellis, 657 F.3d at 970 (noting that "because such claims focus on the conduct of the defendant and not the individualized characteristics of the plaintiffs […] claim[s] for punitive damages d[o] not require individualized damages determinations.") (internal citations and alterations omitted). As such, "the absence of notice and an opportunity to opt out of the classes will not raise [d]ue [p]rocess concerns and the reasons for precluding certification under (b)(1) and (b)(2) where individualized inquiries as to money damages are required do not apply." Wit, 317 F.R.D. at 133 (due process concerns would not be implicated if the court ordered defendant to re-process all insurance claims at issue, without determining any individualized damages).

As such, the Court concludes that certification of a mandatory class under Rule 23(b)(1)(A) and (B) is appropriate and the Court need not extend notice and opt out rights to absent class members.

### c. Rule 23(b)(2) Requirements

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). "These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." Parsons v. Ryan, 754 F.3d 657, 688 (9th Cir. 2014) (citing Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2011)). But "class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 986 (9th Cir. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Here, the parties agree that certification is appropriate under Rule 23(b)(2). Mot. at 17; Opp'n at 20.[4]  Plaintiff primarily seeks declaratory and injunctive relief against defendants on grounds that are generally applicable to the entire putative class, all members of which have had the Service Fee deducted from their royalties held in trust by the Fund. Specifically, plaintiff seeks: (a) a declaratory judgment determining that the Services Agreement is void and unenforceable, (b) "[a]n injunction requiring the Trustees to cease collection of the Service Fee on all future distribution cycles," and (c) and injunction prohibiting any further payments from the Fund to the Unions except as authorized by law. FAC ¶ 70 & Prayer for Relief.  In each instance, plaintiff is seeking equitable relief that, if granted, would apply equally to each member of the putative class by prohibiting the Fund from paying the Service Fee to the Unions on future distribution cycles.  See In re NCAA Student-Athlete Name & Likeness Licensing Litig., No. C 09-1967 CW, 2013 WL 5979327, at *7 (N.D. Cal. Nov. 8, 2013) (certifying a class under Rule 23(b)(2) "[b]ecause an injunction would offer all class members uniform relief" from harms resulting from defendant's continued unauthorized conduct) (internal quotations omitted).

Plaintiff's additional requests for disgorgement of the Service Fee previously assessed and for punitive damages do not defeat certification under Rule 23(b)(2).  A class may not be certified under Rule 23(b)(2) if it seeks "anything *more than incidental* monetary relief."  Wit, 317 F.R.D. at 133 (emphasis added).  While declining to adopt a rule regarding the scope of appropriate incidental damages under Rule 23(b)(2), the Dukes Court relied on the 5th Circuit's holding in Alison v. Citgo Petroleum Corp. to explain the nature of "incidental" monetary relief.  The Court explained that monetary relief is generally considered "incidental" to requested injunctive or declaratory relief when it consists of "damages that flow directly from liability to the class *as a whole* on the claims forming the basis of injunctive or declaratory relief" which "should not require additional hearings […] nor entail complex individualized determinations."  Dukes, 564 U.S. at 365-66 (quoting Alison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998) (emphasis in original).  First, plaintiff's claim for disgorgement of the Service Fee as previously assessed is incidental to the requested injunctive and declaratory relief.  Plaintiff is seeking a determination that the Unions must return to the Fund all money that the Fund has paid as a result of the Service Agreement, after which the Fund must pay individual class

---

[4] Defendants do not oppose certification under Rule 23(b)(2), except to contend that some class members would be barred from receiving a refund of the Service Fee because their claims are time-barred (see discussion *supra*, Section IV.A.b).  Opp'n at 20, n. 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | ‘O’ |
|---|---|---|---|
| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

members the amounts they are owed according to its business records. Mot. at 21. Entitlement to those payments will flow directly from this Court's determination regarding appropriate equitable relief; if the Services Agreement is found to be invalid or unenforceable, all class members will be entitled to payment of the amounts previously deducted from their allocated royalties. Other than whatever accounting is required from the Fund records, no individualized determinations will be required to determine the amount owed to any individual class member. Because the Service Fee has been deducted from all royalties since its implementation, all that is required is an accounting of the amounts deducted using the Fund's own business records.

Furthermore, as discussed in detail regarding 23(b)(1) certification, plaintiff's punitive damages claims are likewise incidental to his claim for equitable relief, and thus appropriately certified under Rule 23(b)(2). Because any finding of malice sufficient to support an award of punitive damages under California law will necessarily be made on the basis of actions directed to the Fund as a whole, a punitive damages award will not raise any individualized damages questions. Due process considerations thus do not preclude certification under Rule 23(b)(2) or require the Court to extend notice and opt out rights to absent class members. See Wit, 317 F.R.D. at 133.

### d. Rule 23(b)(3) Requirements

Plaintiff contends that certification is also proper under Rule 23(b)(3). A class action may be certified under Rule 23(b)(3) if the requirements of Rule 23(a) are met and the Court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Having determined that the requirements of Rule 23(a) are met, the court analyzes grounds for certification under Rule 23(b)(3).

Plaintiff argues that the proposed class meets the requirements of Rule 23(b)(3) and, as noted above, that a (b)(3) class may be required with respect to his punitive damages claims (see discussion *supra* at Section IV.B.b.i). Mot. at 18; Reply at 15. Defendants oppose certification under Rule 23(b)(3), arguing that common issues do not predominate over individual issues and that certification under Rules 23(b)(1) and 23(b)(2), which defendants do not oppose, is superior to certification under Rule 23(b)(3) when available. Opp'n at 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                        **'O'**

| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

###### i.   Superiority

In determining superiority, the Court must consider the four factors of Rule 23(b)(3): (1) the interests that members in the class have in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190–1193 (9th Cir. 2001), opinion amended on denial of reh'g, 273 F.3d 1261 (9th Cir. 2011).

Here, having concluded that certification of all class claims is appropriate under Rules 23(b)(1) and 23(b)(2) and that extending opt out rights to absent class members is not required as a matter of due process, the Court agrees with defendants that certification under Rule 23(b)(3) is not superior to other available methods for resolving the parties' dispute.   To the contrary, certification under Rule 23(b)(3), which requires courts to direct notice and opt out rights to absent class members, would undermine the core objectives of mandatory classes certified under Rules 23(b)(1) and (b)(2) to achieve a uniform result for all class members where the class seeks indivisible relief.   See Dukes, 564 U.S. 631-32 (explaining the role of mandatory classes certified under Rule 23); see also Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1352 (11th Cir. 2001) (reversing certification of Rule 23(b)(3) class where "Rule 23(b)(1) is an available and plainly superior method for the fair and efficient adjudication of this controversy").   Certification of an opt out class in addition to the mandatory class would re-open the possibility that multiple actions brought in different courts by opt-out plaintiffs could lead to inconsistent adjudications that would render the Fund impossible to administer (as in the case of conflicting equitable relief) and impair the rights of class members not parties to the opt-out litigation.   See e.g. Munro, 2019 WL 7842551, at *10 (rejecting defendants' argument that certification under Rule 23(b)(3) would be "more appropriate" than certification under (b)(1) in ERISA fiduciary litigation because defendants could not demonstrate that "permitting those who opt out to pursue individual adjudication would not prejudice the interests of other plan participants" and "the prudent and coherent administration of the Plans is too important to permit tens or hundreds of separate adjudications to impose varying standards on Defendants").   And the class would gain no benefit from certification under (b)(3), because each of the claims asserted on behalf of the class are appropriately certified under (b)(1) and (b)(2). See Foster 2019 WL 4305538, at *8 (declining to reach alternative argument for certification under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07241-CAS(PLAx) | Date | September 14, 2020 |
| --- | --- | --- | --- |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Rule 23(b)(3) where certification under (b)(1) and (b)(2) was appropriate and would resolve all claims).  Accordingly, the Court finds that certification under Rule 23(b)(3) is not superior to other methods of resolving the same claims, which are more appropriately certified under (b)(1) and (b)(2).

In light of the lack of superiority of a Rule 23(b)(3) class, the Court does not reach the issue of predominance.

**V.     CONCLUSION**

In accordance with the foregoing, the Court **GRANTS** plaintiff's motion to certify the class under Rules 23(b)(1) and 23(b)(2), and appoints Risto as class representative and Risto's counsel as class counsel.

IT IS SO ORDERED.

|  | 00 | : | 06 |
| --- | --- | --- | --- |
| Initials of Preparer | | CMJ | |