JENNER & BLOCK LLP
Andrew J. Thomas (Cal. Bar No. 159533)
ajthomas@jenner.com
Andrew G. Sullivan (Cal. Bar No. 301122)
agsullivan@jenner.com
Anna K. Lyons (Cal. Bar No. 324090)
alyons@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile:  (213) 239-5199

*Attorneys for All Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN RISTO, on behalf of himself and all others similarly situated,<br><br>                     Plaintiff,<br><br>vs.<br><br>SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a Delaware corporation; AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA, a California nonprofit corporation; RAYMOND M. HAIR, JR., an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; TINO GAGLIARDI, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; DUNCAN CRABTREE-IRELAND, an individual, as Trustee of the AFM and SAG- | Case No. 2:18-cv-07241-CAS-PLA<br><br>Class Action<br><br>**DECLARATION OF ANDREW G. SULLIVAN IN SUPPORT OF JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL REQUEST FOR PRODUCTION NO. 40**<br><br>Date:      TBD<br>Time:      TBD<br>Judge:    Hon. Paul L. Abrams<br><br>Discovery Cut-Off:        March 1, 2021<br>Pre-Trial Conference:   July 19, 2021<br>Trial Date:                  August 17, 2021 |

AFTRA Intellectual Property Rights Distribution Fund; STEFANIE TAUB, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; JON JOYCE, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; BRUCE BOUTON, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; and DOE DEFENDANTS 1-10,

Defendants.

DECLARATION OF ANDREW G. SULLIVAN

3014822

### DECLARATION OF ANDREW G. SULLIVAN

I, Andrew G. Sullivan, declare as follows:

1.    I am admitted to practice law in the State of California and am an attorney in the law firm of Jenner & Block, LLP ("Jenner & Block"), which serves as counsel of record for Defendants Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA"), American Federation of Musicians of the United States and Canada ("AFM"), Raymond M. Hair, Jr., Tino Gagliardi, Duncan Crabtree-Ireland, Stefanie Taub, Jon Joyce, and Bruce Bouton (collectively, "Defendants").  I submit this declaration in support of Defendants' opposition to Plaintiff Kevin Risto's ("Plaintiff") motion to compel the production of transcripts of depositions taken in the *Blondell* class action lawsuit, which have been designated as confidential under the protective order in that action.  If called to testify, I could and would testify as to the following based on personal knowledge.

2.    An excerpt from SAG-AFTRA's responses to Plaintiff's First Set of Interrogatories, which includes SAG-AFTRA's response to Plaintiff's Interrogatory No. 10, is attached hereto as **Exhibit A**.

3.    An excerpt from AFM's responses to Plaintiff's First Set of Interrogatories, which includes AFM's response to Plaintiff's Interrogatory No. 10, is attached hereto as **Exhibit B**.

4.    Attached hereto as **Exhibit C** is a true and correct copy of the 2013 Data Purchase and Services Agreement.

5.    During a telephonic discussion between Plaintiff's counsel and Defendants' counsel on June 27, 2019, in which I participated, Plaintiff's counsel disclosed that Dennis Dreith has been retained as a litigation consultant on behalf of Plaintiff.

6.    Attached hereto as **Exhibit D** is a true and correct copy of Plaintiff's responses to Defendants' First Set of Interrogatories, in which Plaintiff admits that

1    Plaintiff's counsel has retained Mr. Dreith as a litigation consultant. *See* Response

2    to Interrogatory No. 15.

3          7.    Jenner & Block also served as counsel of record for all defendants in

4    the now-settled class action lawsuit captioned *Blondell et al. v. Bouton et al.*, No.

5    1:17-CV-00372 (RRM-RML) in the Eastern District of New York.  Fund Trustees

6    Duncan Crabtree-Ireland and Jon Joyce were the only two witnesses whose

7    depositions were taken in the *Blondell* matter.  Mr. Jon Joyce's deposition in the

8    *Blondell* matter took place on August 27, 2019.  Mr. Duncan Crabtree-Ireland's

9    deposition in the *Blondell* matter took place on August 29, 2019.  The deposition

10   transcripts were designated Confidential in their entirety pursuant to the Stipulated

11   Order Governing Confidentiality of Discovery in that matter.

12         8.    On September 22, 2020, Plaintiff took the deposition of Jon Joyce, one

13   of the *Blondell* deponents, in this action.  To date, Plaintiff has taken the depositions

14   of nine other witnesses in this action, including Jennifer LeBlanc on July 23, 2020,

15   Nancy Carney on September 29, 2020, Tino Gagliardi on October 9, 2020, Stefanie

16   Taub on October 20, 2020, Bruce Bouton on October 21, 2020, a Rule 30(b)(6)

17   designee of SAG-AFTRA on October 23, 2020, a Rule 30(b)(b)(6) designee of AFM

18   on October 29, 2020, Julie Sandell on December 9, 2020, and Sidney White on

19   December 9, 2020.

20         9.    On November 11, 2020, Plaintiff issued a subpoena to Roger Mandel

21   of the law firm Jeeves Mandel Law Group, P.C., counsel for the plaintiffs and the

22   class in *Blondell*.  Upon receipt of the subpoena, Defendants requested that Mr.

23   Mandel comply with his obligations pursuant to the Stipulated Order Governing

24   Confidentiality of Discovery entered in the *Blondell* action and request an extension

25   of time to respond to the subpoena.  Mr. Mandel complied with Defendants' request.

26   It is undisputed among the *Blondell* parties that the deposition transcripts are

27   Confidential pursuant to the *Blondell* protective order.

28

DECLARATION OF ANDREW G. SULLIVAN

3014822

1         10.   On December 2, 2020, I attended a meet-and-confer discussion with

2 Plaintiff's counsel in which we discussed Plaintiff's subpoena on Roger Mandel.  In

3 the course of this discussion, the parties were not able to reach an agreement

4 regarding the production of the deposition transcripts placed at issue by the

5 subpoena.  In order to avoid litigating a motion to quash the subpoena issued to Mr.

6 Mandel in the Northern District of Texas (where Mr. Mandel and his law firm are

7 located), Plaintiff and Defendants agreed during the meet-and-confer process that

8 they would seek to have the issue resolved through a Motion to Compel under FRCP

9 37 and the Local Rules of this Court.  I have subsequently communicated with Mr.

10 Mandel who has confirmed that, consistent with the terms of the protective order

11 entered in *Blondell*, he will not disclose the transcripts at issue pending the Court's

12 resolution of the current dispute.

13

14       I declare under penalty of perjury under the laws of the United States of

15 America that the foregoing is true and correct.

16       Executed this 16th day of December, 2020.

17

18 _____

19     Andrew G. Sullivan

20

21

22

23

24

25

26

27

28

DECLARATION OF ANDREW G. SULLIVAN

3014822

Exhibit A

JENNER & BLOCK LLP
Andrew J. Thomas (Cal. Bar No. 159533)
ajthomas@jenner.com
Andrew G. Sullivan (Cal. Bar No. 301122)
agsullivan@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile:  (213) 239-5199

JENNER & BLOCK LLP
Devi M. Rao (admitted *pro hac vice*)
drao@jenner.com
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001
Telephone: (202) 639-6000
Facsimile:  (202) 639-6066

*Attorneys for All Responding Party*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN RISTO, on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>vs.<br><br>SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a Delaware corporation; AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA, a California nonprofit corporation; RAYMOND M. HAIR, JR., an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; TINO GAGLIARDI, an individual, as Trustee of the AFM and SAG-AFTRA | Case No. 2:18-cv-07241-CAS-PLA<br><br>Class Action<br><br>**RESPONSES OF DEFENDANT SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

Intellectual Property Rights Distribution Fund; DUNCAN CRABTREE-IRELAND, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; STEFANIE TAUB, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; JON JOYCE, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; BRUCE BOUTON, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; and DOE RESPONDING PARTY 1-10,

Responding Party.

2

1     Consistent with federal statute and the Fund's governing documents, the Fund entered into a Data Purchase and Services Agreement with the Unions on July 22, 2013, pursuant to which the Unions are required to provide and have provided the information necessary for the Fund to locate and pay non-featured performers to whom Royalty payments have been allocated.  Given that the Fund's administration necessarily requires assistance from the Unions—which house the most exhaustive existing repository of information to identify and locate Fund recipients—reimbursement of the Unions for the valuable data and services they provide is fully consonant with the statutory framework established by Congress. To contend otherwise would require showing that Congress intended to task the Unions with time-consuming and labor-intensive duties that the Unions were expected to perform in perpetuity at no cost.

**INTERROGATORY NO. 10:**

If **YOU** contend that the **SERVICE FEE** is a reasonable charge for the services provided by the **UNIONS,** state **ALL** facts that support that contention.

**RESPONSE TO INTERROGATORY NO. 10:**

Responding Party objects to this interrogatory to the extent it calls for Responding Party to make a legal conclusion.

Without waiving and subject to the foregoing objections, Responding Party responds as follows: Pursuant to the Data Purchase and Services Agreement, the Unions are required to provide the Fund with information in their possession that is necessary to enable the Fund to identify and pay the non-featured performers (both Union members and nonmembers) to whom Royalty payments have been allocated in a given distribution cycle.  This valuable data is derived from records developed and maintained by the Unions at considerable expense, including forms obtained by the Unions from producers and/or other individuals or entities involved in the creation of a given sound recording.  Specifically, the information provided by the Unions to the Fund is derived from session reports and "B-forms" which contain

11

information necessary to identify and locate some or all of the non-featured musicians and vocalists who performed on a given sound recording.  These session reports and B-forms compile information related to both Union members and nonmembers who served as non-featured performers on a given sound recording. These records maintained by the Unions are housed across the various local affiliates of each Union, for the most part based on where the relevant sound recording took place.  Much of this information exists in records that are maintained by the Unions' local affiliates only in hard copy form.

Pursuant to the Data Purchase and Services Agreement, the Unions must coordinate with the Fund to provide the information necessary for the Fund to identify and pay non-featured performers.  The information provided by the Unions pursuant to the Data Purchase and Services Agreement is essential to the Fund's administration.  This information has been collected, compiled, and maintained as part of a large-scale effort by the Unions over the course of decades, and such efforts continue on an ongoing basis.  There is no other repository of information documenting the identities, work histories, and payment information associated with non-featured performers that is nearly as exhaustive as the repositories maintained by the Unions.  Without this data, the Fund would be significantly constrained in its ability to perform the fundamental task of identifying and locating the non-featured performer(s) for whom Royalty distributions are to be paid, and/or would be required to expend significant additional resources in order to perform this essential function, or in the alternative would have to expend substantial efforts and incur substantial costs to compile independently the information provided by the Unions.  Accordingly, the data has substantial intrinsic value and is highly valuable to the Fund in the performance of its work.

In addition, Union representatives expend considerable effort supplying the data the Unions are obligated to provide under the Data Purchase and Services

Agreement.  Researchers at the Fund have worked extensively with Union representatives in an effort to build and grow a database compiling the identities of the non-featured performers who performed on a given sound recording, as well as the information necessary to locate and pay such individuals.  This database serves as the Fund's central resource used to identify, locate, and pay Royalties to non-featured performers.  As this database has grown, the Fund has been able more efficiently to identify and locate the non-featured performers who performed on eligible sound recordings.  Currently, this database compiles information related to the non-featured performers associated with approximately 90,000 song titles.

Because the records maintained by the Unions exist in decentralized repositories dispersed across the Unions' local affiliates, the Unions satisfy their obligations under the Agreement by making numerous representatives available across these affiliates in order to field requests from the Fund.  The Fund's research team—currently staffed with eleven full-time research associates and supervisors—works extensively with representatives in various local affiliates of the Unions on a year-round basis to obtain information regarding the non-featured performers associated with thousands of song titles.  Except with respect to two local affiliates of the AFM (located in New York and Los Angeles) that maintain electronic records on a platform that Fund researchers may directly log into, in all other cases Union representatives from the local affiliates handle individual requests from Fund researchers to locate and provide information related to specific song titles and/or to verify the recent contact information for non-featured performers associated with such song title.  At local affiliates where such records exist in hard copy form, Union representatives must locate the requested document within their hard copy filing system before scanning and sending a digital copy of the record to the requestor at the Fund.  The quantity of the requests made to the Unions by the Fund vary across the respective Unions' local affiliates and fluctuate within local affiliates on a day-to-day and week-to-week basis.  It is not

13

1  uncommon for a Union representative at one local affiliate to field dozens of
2  requests from the Fund over the course of a week.  Fulfilling each such request
3  may take a Union representative anywhere from a few minutes to thirty minutes or
4  longer.

5       In addition to providing the information necessary to locate and pay non-
6  featured performers, the Unions also provide lobbying and advocacy services both
7  domestically and internationally that benefit non-featured performers (both Union
8  members and nonmembers).  These activities include meeting with members of
9  Congress, negotiating with domestic performing rights organizations (PROs), as
10  well as engaging with international PROs to negotiate better terms for the
11  collection and distribution of international royalties.  In addition to lobbying the
12  federal government for more expansive rights that would benefit all non-featured
13  performers, the Unions have negotiated and interacted with the World Intellectual
14  Property Organization (WIPO), the Societies' Council for the Collective
15  Management of Performers' Rights (SCAPR), Phonographic Performance Limited
16  (PPL), and the Musicians' Rights Organization Canada (MROC), among other
17  international organizations.  This includes efforts to expand the performance right
18  in the United States  to apply to non-digital platforms (e.g., terrestrial radio), a
19  cause which the Unions have furthered through their participation in the
20  musicFIRST coalition.  The Unions also lobby foreign governments for more
21  stringent distribution requirements for collected royalties.  These activities all inure
22  to the benefit of non-featured performers, regardless of union affiliation, as they
23  are aimed in part at increasing the scope and overall amount of the royalties paid
24  for recordings on which non-featured musicians and vocalists have performed.

25       In consideration of the inherent value of the data the Unions provide to the
26  Fund, as well as the services provided by the Unions as described above, the
27  Trustees of the Fund agreed in 2013 that each Union should be paid a fee in the
28  amount of 1.5% of the receipts distributed by the Fund in a given distribution

cycle.  This was an entirely reasonable exercise of the Trustees' broad discretion in determining the value of the information and services provided by the Unions.

**INTERROGATORY NO. 11:**

Set forth the benefits conferred upon **UNION** members as a result of the **SERVICES AGREEMENT.**

**RESPONSE TO INTERROGATORY NO. 11:**

Responding Party refers Plaintiff to Responding Party's response to Interrogatory No. 10.

**INTERROGATORY NO. 12:**

Set forth the benefits conferred upon non-**UNION** members as a result of the **SERVICES AGREEMENT.**

**RESPONSE TO INTERROGATORY NO. 12:**

Responding Party refers Plaintiff to Responding Party's response to Interrogatory No. 10, restating here the fact that the Unions provide critical identifying information for both Union members and nonmembers that is necessary for issuing Royalty payments to such individuals.

**INTERROGATORY NO. 13:**

If **YOU** contend that the **FUND** is entitled to use **ROYALTIES** to pay for the services set forth in the **SERVICES AGREEMENT,** state **ALL** facts that support that contention.

**RESPONSE TO INTERROGATORY NO. 13:**

Responding Party objects to this interrogatory to the extent it calls for a legal conclusion.  Responding Party further objects to this interrogatory on the ground that it seeks information in the possession of, known to, or otherwise equally available to Plaintiff.  Without waiving and subject to the foregoing objections, Responding Party refers Plaintiff to Responding Party's response to Interrogatory No. 9.

# Exhibit B

JENNER & BLOCK LLP
Andrew J. Thomas (Cal. Bar No. 159533)
ajthomas@jenner.com
Andrew G. Sullivan (Cal. Bar No. 301122)
agsullivan@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

JENNER & BLOCK LLP
Devi M. Rao (admitted *pro hac vice*)
drao@jenner.com
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for All Responding Party*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN RISTO, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>vs.<br><br>SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a Delaware corporation; AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA, a California nonprofit corporation; RAYMOND M. HAIR, JR., an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; TINO GAGLIARDI, an individual, as Trustee of the AFM and SAG-AFTRA | Case No. 2:18-cv-07241-CAS-PLA<br><br>Class Action<br><br>**RESPONSES OF DEFENDANT AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

Intellectual Property Rights Distribution Fund; DUNCAN CRABTREE-IRELAND, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; STEFANIE TAUB, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; JON JOYCE, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; BRUCE BOUTON, an individual, as Trustee of the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund; and DOE RESPONDING PARTY 1-10,

Responding Party.

2

1    Consistent with federal statute and the Fund's governing documents, the

2    Fund entered into a Data Purchase and Services Agreement with the Unions on

3    July 22, 2013, pursuant to which the Unions are required to provide and have

4    provided the information necessary for the Fund to locate and pay non-featured

5    performers to whom Royalty payments have been allocated.  Given that the Fund's

6    administration necessarily requires assistance from the Unions—which house the

7    most exhaustive existing repository of information to identify and locate Fund

8    recipients—reimbursement of the Unions for the valuable data and services they

9    provide is fully consonant with the statutory framework established by Congress.

10   To contend otherwise would require showing that Congress intended to task the

11   Unions with time-consuming and labor-intensive duties that the Unions were

12   expected to perform in perpetuity at no cost.

13   **INTERROGATORY NO. 10:**

14   If **YOU** contend that the **SERVICE FEE** is a reasonable charge for the

15   services provided by the **UNIONS,** state **ALL** facts that support that contention.

16   **RESPONSE TO INTERROGATORY NO. 10:**

17   Responding Party objects to this interrogatory to the extent it calls for

18   Responding Party to make a legal conclusion.

19   Without waiving and subject to the foregoing objections, Responding Party

20   responds as follows: Pursuant to the Data Purchase and Services Agreement, the

21   Unions are required to provide the Fund with information in their possession that is

22   necessary to enable the Fund to identify and pay the non-featured performers (both

23   Union members and nonmembers) to whom Royalty payments have been allocated

24   in a given distribution cycle.  This valuable data is derived from records developed

25   and maintained by the Unions at considerable expense, including forms obtained

26   by the Unions from producers and/or other individuals or entities involved in the

27   creation of a given sound recording.  Specifically, the information provided by the

28   Unions to the Fund is derived from session reports and "B-forms" which contain

11

information necessary to identify and locate some or all of the non-featured musicians and vocalists who performed on a given sound recording. These session reports and B-forms compile information related to both Union members and nonmembers who served as non-featured performers on a given sound recording. These records maintained by the Unions are housed across the various local affiliates of each Union, for the most part based on where the relevant sound recording took place. Much of this information exists in records that are maintained by the Unions' local affiliates only in hard copy form.

Pursuant to the Data Purchase and Services Agreement, the Unions must coordinate with the Fund to provide the information necessary for the Fund to identify and pay non-featured performers. The information provided by the Unions pursuant to the Data Purchase and Services Agreement is essential to the Fund's administration. This information has been collected, compiled, and maintained as part of a large-scale effort by the Unions over the course of decades, and such efforts continue on an ongoing basis. There is no other repository of information documenting the identities, work histories, and payment information associated with non-featured performers that is nearly as exhaustive as the repositories maintained by the Unions. Without this data, the Fund would be significantly constrained in its ability to perform the fundamental task of identifying and locating the non-featured performer(s) for whom Royalty distributions are to be paid, and/or would be required to expend significant additional resources in order to perform this essential function, or in the alternative would have to expend substantial efforts and incur substantial costs to compile independently the information provided by the Unions. Accordingly, the data has substantial intrinsic value and is highly valuable to the Fund in the performance of its work.

In addition, Union representatives expend considerable effort supplying the data the Unions are obligated to provide under the Data Purchase and Services

12

Agreement.  Researchers at the Fund have worked extensively with Union representatives in an effort to build and grow a database compiling the identities of the non-featured performers who performed on a given sound recording, as well as the information necessary to locate and pay such individuals.  This database serves as the Fund's central resource used to identify, locate, and pay Royalties to non-featured performers.  As this database has grown, the Fund has been able more efficiently to identify and locate the non-featured performers who performed on eligible sound recordings.  Currently, this database compiles information related to the non-featured performers associated with approximately 90,000 song titles.

Because the records maintained by the Unions exist in decentralized repositories dispersed across the Unions' local affiliates, the Unions satisfy their obligations under the Agreement by making numerous representatives available across these affiliates in order to field requests from the Fund.  The Fund's research team—currently staffed with eleven full-time research associates and supervisors—works extensively with representatives in various local affiliates of the Unions on a year-round basis to obtain information regarding the non-featured performers associated with thousands of song titles.  Except with respect to two local affiliates of the AFM (located in New York and Los Angeles) that maintain electronic records on a platform that Fund researchers may directly log into, in all other cases Union representatives from the local affiliates handle individual requests from Fund researchers to locate and provide information related to specific song titles and/or to verify the recent contact information for non-featured performers associated with such song title.  At local affiliates where such records exist in hard copy form, Union representatives must locate the requested document within their hard copy filing system before scanning and sending a digital copy of the record to the requestor at the Fund.  The quantity of the requests made to the Unions by the Fund vary across the respective Unions' local affiliates and fluctuate within local affiliates on a day-to-day and week-to-week basis.  It is not

13

1  uncommon for a Union representative at one local affiliate to field dozens of

2  requests from the Fund over the course of a week.  Fulfilling each such request

3  may take a Union representative anywhere from a few minutes to thirty minutes or

4  longer.

5      In addition to providing the information necessary to locate and pay non-

6  featured performers, the Unions also provide lobbying and advocacy services both

7  domestically and internationally that benefit non-featured performers (both Union

8  members and nonmembers).  These activities include meeting with members of

9  Congress, negotiating with domestic performing rights organizations (PROs), as

10 well as engaging with international PROs to negotiate better terms for the

11 collection and distribution of international royalties.  In addition to lobbying the

12 federal government for more expansive rights that would benefit all non-featured

13 performers, the Unions have negotiated and interacted with the World Intellectual

14 Property Organization (WIPO), the Societies' Council for the Collective

15 Management of Performers' Rights (SCAPR), Phonographic Performance Limited

16 (PPL), and the Musicians' Rights Organization Canada (MROC), among other

17 international organizations.  This includes efforts to expand the performance right

18 in the United States  to apply to non-digital platforms (e.g., terrestrial radio), a

19 cause which the Unions have furthered through their participation in the

20 musicFIRST coalition.  The Unions also lobby foreign governments for more

21 stringent distribution requirements for collected royalties.  These activities all inure

22 to the benefit of non-featured performers, regardless of union affiliation, as they

23 are aimed in part at increasing the scope and overall amount of the royalties paid

24 for recordings on which non-featured musicians and vocalists have performed.

25     In consideration of the inherent value of the data the Unions provide to the

26 Fund, as well as the services provided by the Unions as described above, the

27 Trustees of the Fund agreed in 2013 that each Union should be paid a fee in the

28 amount of 1.5% of the receipts distributed by the Fund in a given distribution

cycle.  This was an entirely reasonable exercise of the Trustees' broad discretion in determining the value of the information and services provided by the Unions.

**INTERROGATORY NO. 11:**

Set forth the benefits conferred upon **UNION** members as a result of the **SERVICES AGREEMENT.**

**RESPONSE TO INTERROGATORY NO. 11:**

Responding Party refers Plaintiff to Responding Party's response to Interrogatory No. 10.

**INTERROGATORY NO. 12:**

Set forth the benefits conferred upon non-**UNION** members as a result of the **SERVICES AGREEMENT.**

**RESPONSE TO INTERROGATORY NO. 12:**

Responding Party refers Plaintiff to Responding Party's response to Interrogatory No. 10, restating here the fact that the Unions provide critical identifying information for both Union members and nonmembers that is necessary for issuing Royalty payments to such individuals.

**INTERROGATORY NO. 13:**

If **YOU** contend that the **FUND** is entitled to use **ROYALTIES** to pay for the services set forth in the **SERVICES AGREEMENT,** state **ALL** facts that support that contention.

**RESPONSE TO INTERROGATORY NO. 13:**

Responding Party objects to this interrogatory to the extent it calls for a legal conclusion.  Responding Party further objects to this interrogatory on the ground that it seeks information in the possession of, known to, or otherwise equally available to Plaintiff.  Without waiving and subject to the foregoing objections, Responding Party refers Plaintiff to Responding Party's response to Interrogatory No. 9.

# Exhibit C

# Exhibit 8

## DATA PURCHASE AND SERVICES AGREEMENT

This Data Purchase and Services Agreement ("Agreement"), dated as of July 22, 2013, 2013 (the "Effective Date"), is made by and between the American Federation of Musicians of the United States and Canada, AFL-CIO-CLC ("AFM"), the Screen Actors Guild - American Federation of Television and Radio Artists ("SAG-AFTRA") and the AFM and SAG-AFTRA Intellectual Property Rights Distribution Fund (the "Fund"). AFM and SAG-AFTRA are sometimes referred to herein individually as a "Union" and collectively as the "Unions." AFM, SAG-AFTRA and the Fund are sometimes referred to herein individually as a "Party" and collectively as the "Parties."

WHEREAS, by an Agreement and Declaration of Trust dated September 16, 1998, as amended and restated on July 26, 2012, the Unions formed the Fund to collect and distribute certain artist royalties that are appropriate for collective administration;

WHEREAS, the Unions have in the past provided to the Fund certain data, as well as certain services of outside counsel and in-house staff to assist the Fund in its operation and administration and to represent the interests of the Fund in various external matters, without being reimbursed for their costs thereof;

WHEREAS, the Agreement and Declaration of Trust authorizes the Trustees of the Fund to purchase relevant data from the Unions (and others) and to employ assistants; and

WHEREAS, the Trustees of the Fund have determined that it is reasonable and appropriate at this time to memorialize arrangements for the provision by the Unions to the Fund of certain data and assistance in exchange for reasonable compensation to the Unions from the Fund;

NOW, THEREFORE, the Parties, intending to be legally bound, hereby agree as follows:

1.    Provision of Data.  From and after the Effective Date, each Union shall provide the Fund the following data, in a manner comparable to the way such data has been provided immediately prior to the Effective Date:

- Access to member databases to enable the Fund to obtain identifying and contact information for members.

- Access to session reports and "B-forms," or databases containing information derived therefrom, that in either case, identify the recordings made at recording sessions and provide identifying and contact information for performers (Union members and nonmembers) who performed at the session.

Each Union retains all its ownership rights in its data, and all such data shall be considered Confidential Information of the relevant Union subject to the provisions of Section 7. The Fund is authorized to, and shall, access, reproduce and use such data solely for purposes of distribution of royalties collected by the Fund to the relevant persons. In its use of such data, the Fund

further shall comply with the provisions of any applicable Union privacy policy of which such Union advises the Fund in writing from time to time.

2.      Representation of Fund Interests.  Each Union shall use commercially reasonable efforts to further the interests of the Fund and the Fund's beneficiaries through its participation in the following forums (or their successors):

- The board of SoundExchange, Inc.;

- The board of the Alliance of Artists and Record Companies;

- The musicFIRST Coalition;

- Activities under the auspices of the U.S. Copyright Office and other U.S. governmental entities; and

- Activities under the auspices of international entities such as the International Federation of Musicians, International Federation of Actors, World Intellectual Property Organization, Societies' Council for the Collective Management of Performers' Rights.

To the extent that the Fund may communicate to a Union particular interests, concerns or objectives relevant to the Unions' participation in the foregoing forums, each Union shall use commercially reasonable efforts promptly to address the Fund's requests in that regard, except to the extent the Union determines that such requests are contrary to the interests of its members.

3.      Mandates.  Each Union shall use commercially reasonable efforts to obtain from its members authorization to act as such members' representative for the purpose of collecting and distributing government-mandated or other compulsory royalties or remuneration payable to performers under U.S. or foreign law.  Each Union shall use commercially reasonable efforts to extend to the Fund the benefit of such authorizations that the Union obtains.  The Unions may fulfill the foregoing obligation by, for example, negotiating and signing together with the Fund, or authorizing the Fund to enter into, agreements with foreign collecting societies pursuant to which the Fund will be entitled to claim, and the foreign society will agree to pay to the Fund, foreign royalties owed to those U.S. performers for whom the Fund exercises a mandate on behalf of either or both Unions.

4.      Other Services.  From and after the Effective Date, it is not anticipated that either Union will provide the Fund material services in support of the Fund's operation and administration, except as specifically described above.  However, the Unions shall not unreasonably refuse to provide the Fund incidental advice and assistance as the Fund may request from time to time.

5.      Services in General.  The foregoing data and services shall be provided in accordance with any schedule agreed upon between the Fund and a Union, or in the absence of such agreement, promptly upon the Fund's request.  To the extent that a Union may provide the Fund any documents or other recorded information other than the data described in Section 1 (the Fund's rights to which are also addressed in Section 1), and subject to Section 7, such Union

hereby grants the Fund a nonexclusive, perpetual, worldwide license to reproduce, adapt, distribute, perform and display such item and authorize others to do the same for the Fund's purposes. At no time shall the Fund be deemed to be the employer of a Union's personnel providing services hereunder. Each Union, and not the Fund, shall be responsible for payment of compensation to its personnel, required payroll deductions, social security and Medicare contributions, and unemployment, disability and workers' compensation insurance, all as required under law from time to time.

6.      Payment. In consideration of the foregoing, the Fund shall pay each Union, within 30 days after the conclusion of each of the Fund's distribution cycles, 3% of the amount distributed by the Fund in such distribution cycle. Each such payment shall be accompanied by a statement setting forth the computation of the payment amount. Such payment shall constitute complete compensation of the Unions and their personnel for providing the data and services contemplated by this Agreement. There shall be no additional charges or expense reimbursement associated with the Unions' provision of the data and services contemplated by this Agreement.

7.      Confidentiality.

7.1.    "Confidential Information" means any material or information that (i) a Party (the "Disclosing Party") treats as confidential; (ii) the Disclosing Party provides to another Party (the "Receiving Party") in connection with the performance of this Agreement; and (iii) the Receiving Party reasonably should recognize as being confidential material or information of the Disclosing Party. The Receiving Party shall not use the Disclosing Party's Confidential Information for any purpose other than the performance of this Agreement or enjoyment of benefits provided under this Agreement, and shall not disclose the Disclosing Party's Confidential Information to any person other than its directors, officers, employees and contractors who have a need to know such Confidential Information and are subject to a nondisclosure obligation comparable in scope to this Section 7.

7.2.    Notwithstanding Paragraph 7.1, the Receiving Party may disclose any material or information that it can demonstrate is (i) or becomes publicly known through no fault of the Receiving Party; (ii) developed independently by the Receiving Party; (iii) known by the Receiving Party prior to its disclosure by the Disclosing Party; or (iv) rightfully obtained from a third party not obligated to preserve its confidentiality who did not receive the material or information directly or indirectly from the Receiving Party. The Receiving Party also may disclose materials or information to the extent required by a court or other governmental authority, provided that the Receiving Party (a) gives the Disclosing Party prompt notice of the disclosure, (b) uses reasonable efforts to resist disclosing the material or information, and (c) cooperates with the Disclosing Party on request to obtain a protective order or otherwise limit the disclosure.

7.3.    The receiving Party acknowledges that its breach of this Section 7 would cause the Disclosing Party irreparable injury for which it would not have an adequate remedy at law. In the event of a breach, the Disclosing Party shall be entitled to injunctive relief in addition to any other remedies it may have at law or in equity.

8.   Representations, Warranties and Covenants

      8.1    Each Party represents and warrants that it has the right, power and authority to enter into and to perform this Agreement.

      8.2    Each Union represents, warrants and covenants that the services it is to provide under this Agreement shall be provided (i) in a workmanlike manner; (ii) in accordance with the standards of care and diligence and the level of skill, knowledge and judgment normally practiced by organizations of a similar nature; and (iii) in compliance with all applicable laws and regulations.

      8.3    Each Union represents, warrants and covenants that the data, and any other documents or other recorded information it may provide to the Fund in the performance of this Agreement, will not infringe or misappropriate any patent, copyright, trade secret, or other proprietary right of any third party or otherwise conflict with the rights of any third party.

9.   Indemnity.  Each Party shall defend, indemnify and hold harmless each other Party and its directors, officers and employees from and against any third party claims to the extent relating to or resulting from any breach of this Agreement by the indemnifying Party.  The indemnifying Party shall have the right to exercise reasonable control over any litigation within the scope of this indemnity; provided, however, that the indemnified persons shall have the right to participate in any such litigation at their own expense insofar as it concerns claims against them. This indemnity shall be inapplicable to the extent that the indemnifying Party is not notified promptly of a claim and is prejudiced by the delay in notice.  All indemnified persons shall cooperate to the extent necessary in the defense of any claim within the scope of this indemnity.

10.   LIMITATION OF LIABILITY.  EXCEPT FOR A CLAIM OF INDEMNIFICATION PURSUANT TO SECTION 9, OR FOR A BREACH OF SECTION 7, IN NO EVENT SHALL ANY PARTY BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES.

11.   Term and Termination of this Agreement.  The term of this Agreement shall commence as of the Effective Date and shall continue thereafter unless terminated in accordance with this Section 11.  As between each Union and the Fund, this Agreement may be terminated (i) at will upon one year's written notice to the other Party, or (ii) if the other Party has materially breached this Agreement and failed to remedy that breach within 30 days after receiving written notice of that breach, upon further written notice by the non-breaching Party.  Termination of this Agreement as between one Union and the Fund shall not, by itself, cause this Agreement to terminate as between the other Union and the Fund.  Upon the effective date of termination, the relevant Union shall no longer be obligated to provide data or services as described in Sections 1-5.  The Fund shall pay the relevant Union in accordance with Section 6 for data or services rendered through the effective date of termination on a prorated basis over the Fund's then current distribution cycle.  The provisions of Sections 7-13 shall survive the termination of this Agreement.

12.   Notices.  All notices sent under this Agreement shall be in writing and hand delivered or delivered by prepaid overnight courier.  Notices shall be sent to the Parties at the following addresses or such other addresses as the Parties subsequently may provide:

| If to AFM: | American Federation of Musicians of the United States & Canada |
| | 1501 Broadway, Suite 600 |
| | New York, NY 10036 |
| Attention: | President Raymond M. Hair, Jr. |
| Telephone: | (212) 869-1330, ext. 212 |
| | |
| If to SAG-AFTRA: | SAG-AFTRA |
| | 5757 Wilshire Blvd., 7th Floor |
| | Los Angeles, CA 90036 |
| Attention: | Chief Administrative Officer Duncan Crabtree-Ireland |
| Telephone: | (323) 236-3259 |
| | |
| If to the Fund: | AFM & SAG-AFTRA Fund Distribution Fund |
| | 12001 Ventura Place, 5th Floor |
| | Studio City, CA 91604 |
| Attention: | Administrator Dennis Dreith |
| Telephone: | (818) 755-7777 |

13.   <u>Miscellaneous</u>.

   13.1.   <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of New York, without regard to its conflict of laws principles.

   13.2.   <u>Severability</u>.  The provisions of this Agreement are severable, and the unenforceability of any provision of this Agreement shall not affect the enforceability of the remainder of this Agreement.

   13.3.   <u>Cumulative Rights and Remedies</u>.  The rights and remedies provided in this Agreement and all other rights and remedies available to a Party at law or in equity are, to the extent permitted by law, cumulative and not exclusive of any other right or remedy now or hereafter available at law or in equity.

   13.4.   <u>Assignment</u>.  No Party may assign any of its rights or delegate any of its duties under this Agreement to any third party without the prior written consent of the other Parties, which shall not be withheld unreasonably.  This Agreement shall be binding upon and inure to the benefit of the Parties and their permitted assigns.

   13.5.   <u>Relationship of the Parties</u>.  Nothing in this Agreement shall be construed as creating a partnership, joint venture or agency relationship between the Parties, or as authorizing any Party to act as agent for the other or to enter into contracts on behalf of any other Party.

   13.6.   <u>Amendments</u>.  This Agreement may be modified or amended only by written agreement of the Parties.

   13.7.   <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties concerning the subject matter of this Agreement, and supersedes all prior agreements between the Parties concerning the subject matter of this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective duly authorized officers.

AMERICAN FEDERATION OF MUSICIANS OF
THE UNITED STATES AND CANADA, AFL-CIO-CLC

By: _____

Name: ___Raymond M. Hair, Jr._____

Title: _____President_____

Date: _____7/22/13_____


SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS

By: _____

Name: __Duncan Crabtree-Ireland____

Title: __Chief Admin Officer + General Counsel__

Date: _____7/22/13_____


AFM & SAG-AFTRA INTELLECTUAL PROPERTY RIGHTS DISTRIBUTION FUND

By: _____

Name: __Dennis Dreith_____

Title: __Administrator_____

Date: ___7/24/13_____

70441.1 version 2

# Exhibit D

1  PAUL R. KIESEL (State Bar No. 119854)
   kiesel@kiesel.law
2  MARIANA A. MCCONNELL (State Bar No. 273225)
   mcconnell@kiesel.law
3  KIESEL LAW LLP
   8648 Wilshire Boulevard
4  Beverly Hills, California 90211-2910
   Telephone: (310) 854-4444
5  Facsimile: (310) 854-0812

6  NEVILLE L. JOHNSON (State Bar No. 66329)
   njohnson@jjllplaw.com
7  DOUGLAS L. JOHNSON (State Bar No. 209216)
   djohnson@jjllplaw.com
8  JORDANNA G. THIGPEN (State Bar No. 232642)
   jthigpen@jjllplaw.com
9  DANIEL B. LIFSCHITZ (State Bar No. 285068)
   dlifschitz@jjllplaw.com
10 JOHNSON & JOHNSON LLP
   439 North Canon Drive, Suite 200
11 Beverly Hills, California 90210
   Telephone: (310) 975-1080
12 Facsimile: (310) 975-1095

13 *Attorneys for Plaintiff and the Class*

14

15          **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

16                   **COUNTY OF LOS ANGELES**

17

18 KEVIN RISTO, on behalf of himself and all          CASE NO. 2:18-cv-07241
   others similarly situated,
19                                                    **CLASS ACTION**
                     Plaintiff,
20                                                    **PLAINTIFF'S RESPONSES TO**
                     v.                               **DEFENDANTS' FIRST SET OF**
21                                                    **INTERROGATORIES**
   SCREEN ACTORS GUILD-AMERICAN
22 FEDERATION OF TELEVISION AND
   RADIO ARTISTS, a Delaware corporation;
23 AMERICAN FEDERATION OF
   MUSICIANS OF THE UNITED STATES
24 AND CANADA, a California nonprofit
   corporation; RAYMOND M. HAIR, JR, an
25 individual, as Trustee of the AFM and SAG-
   AFTRA Intellectual Property Rights
26 Distribution Fund; TINO GAGLIARDI, an
   individual, as Trustee of the AFM and SAG-
27 AFTRA Intellectual Property Rights
   Distribution Fund; DUNCAN CRABTREE-
28 IRELAND, an individual, as Trustee of the

1  AFM and SAG-AFTRA Intellectual Property
   Rights Distribution Fund; STEFANIE TAUB,
2  an individual, as Trustee of the AFM and
   SAG-AFTRA Intellectual Property Rights
3  Distribution Fund; JON JOYCE, an individual,
   as Trustee of the AFM and SAG-AFTRA
4  Intellectual Property Rights Distribution Fund;
   BRUCE BOUTON, an individual, as Trustee
5  of the AFM and SAG-AFTRA Intellectual
   Property Rights Distribution Fund; and DOE
6  DEFENDANTS 1-10,

7              Defendants.

8

9

10  **PROPOUNDING PARTY**: SCREEN ACTORS GUILD-AMERICAN FEDERATION

11                          OF TELEVISION AND RADIO ARTISTS, AMERICAN

12                          FEDERATION OF MUSICIANS OF THE UNITED

13                          STATES AND CANADA, RAYMOND M. HAIR, JR,

14                          TINO GAGLIARDI, DUNCAN CRABTREE-IRELAND,

15                          STEFANIE TAUB, JON JOYCE, and BRUCE BOUTON

16  **RESPONDING PARTY**:   KEVIN RISTO

17  **SET NO.**:            ONE

18

19       Plaintiff Kevin Risto ("Plaintiff"), by and through his undersigned counsel, hereby

20  responds and objects to the First Set of Interrogatories (the "Requests") propounded by

21  Defendants Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-

22  AFTRA"), American Federation of Musicians of the United States and Canada ("AFM"),

23  Raymond M. Hair, Jr., Tino Gagliardi, Duncan Crabtree-Ireland, Stefanie Taub, Jon Joyce, and

24  Bruce Bouton (collectively "Defendants").

25                               **GENERAL OBJECTIONS**

26       Plaintiff's general objections to the Interrogatories are set forth below. The general

27  objections are incorporated within each response as if fully set forth in such response. The

28  assertion of additional specific objections to certain individual Requests shall not be construed as

---

874807.1                              2                          4:17-cv-05343-JSW
       PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

1    waiving any general objections.

2           Neither the general objections to the Interrogatories nor the assertion of additional specific

3    objections to certain individual Requests shall waive Plaintiff's right to challenge the relevance,

4    materiality, and admissibility of the information provided or to object to the use of such

5    information in any subsequent proceeding or hearing in this action. Plaintiff makes no implied

6    admissions in his responses or objections. No response or objections set forth herein should be

7    taken to mean that Plaintiff admits the existence of any facts stated in or assumed by a Request

8    beyond those expressly admitted by Plaintiff.

9           1.      Plaintiff objects to the Interrogatories to the extent they purport to impose

10   requirements on Responding Parties beyond or inconsistent with the Federal Rules of Civil

11   Procedure, the Local Rules of the Central District of California, or any applicable rules, statutes,

12   or common law. Plaintiff is responding to the Interrogatories based on information maintained in

13   the ordinary course of business and to the extent required by the Federal Rules of Civil Procedure,

14   the Local Rules of the Central District of California, and any other applicable rules, statutes, or

15   common law.

16          2.      Plaintiff objects to the Interrogatories to the extent they seek material protected by

17   the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege,

18   doctrine, or immunity. The inadvertent production of any privileged information shall not be

19   deemed to be a waiver of any applicable privilege with respect to such information or any other

20   information, or the subject matter thereof.

21          3.      Plaintiff objects to the Interrogatories to the extent they seek material that is neither

22   relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of

23   admissible evidence of this action. By producing information or materials in response to these

24   Requests, Plaintiff does not concede that any such information or materials are admissible in

25   evidence or relevant to issues in this action. Plaintiff reserves any and all objections to the use or

26   admission of any information, materials or documents contained, identified or produced in

27   response to these Requests.

28          4.      Plaintiff does not, by responding to the Interrogatories, accept or agree with any

1   descriptions or assumptions contained in the Interrogatories.

2        5.      Plaintiff objects to the Interrogatories to the extent they seek information that is
3   already in Defendants' possession, custody or control, or that is obtainable from another source
4   that is more convenient or less burdensome or expensive.

5        6.      Plaintiff objects to the Interrogatories to the extent they seek information or
6   documents that are not within Plaintiff's possession, custody, or control.

7        7.      Plaintiff objects to the Interrogatories to the extent they are ambiguous, vague,
8   cumulative, or duplicative of other Requests or Interrogatories.

9        8.      Plaintiff has not completed his investigation, discovery, or preparation for trial.
10  Accordingly, all answers below are based only on such information and documents as are
11  currently available and known to Plaintiff. Plaintiff reserves the right to supplement, correct, or
12  amend his responses.

13                              **INTERROGATORIES**

14  **INTERROGATORY NO. 1:**

15        State all facts that support YOUR assertion that the FUND'S TRUSTEES acted based on a
16  conflict of interest in implementing the SERVICE FEE, as alleged in Paragraphs 13, 20, 44, and
17  62 of the First Amended Complaint.

18  **RESPONSE TO INTERROGATORY NO. 1:**

19        **OBJECTION:** Responding Party objects to this interrogatory on the grounds that it is
20  overbroad, unduly burdensome, and premature at this stage in this litigation.

21        **OBJECTION:** Responding Party objects that it calls for a legal opinion from a lay
22  witness.

23        Without waiving and subject to these objections, Responding Party refers Defendants to
24  paragraphs 5-23 of the First Amended Complaint filed in this action. The FUND'S TRUSTEES
25  had a fiduciary duty to Plaintiff and the Class to protect and preserve the monies received by the
26  FUND for the benefit of the performers entitled to payments therefrom. Because 75% of the
27  FUND'S TRUSTEES (*i.e.*, Defendants) are employed by the Unions, the decision by the FUND'S
28  TRUSTEES to pay the SERVICE FEE to the Unions, without regard to any of the services

1   actually rendered to the Fund by the Unions, necessarily benefitted Defendants in their capacity as
2   employees of the Unions while reducing the monies received by the FUND for the benefit of the
3   performers entitled to payments therefrom. As the amount of money recovered by the Fund grows,
4   so too does the amount of the Service Fee paid to the Unions regardless of the fact that the
5   services provided to the Fund by the Unions have no value, and in any event, do not increase in
6   value as the Fund increases in value. Plaintiff anticipates further facts in support of this assertion
7   will be developed through the discovery process.

8   **INTERROGATORY NO. 2:**

9       State all facts that support YOUR assertion that the FUND concealed the implementation
10  of the SERVICE FEE, as alleged in Paragraphs 48, 50, 51, 52, and 53 of the First Amended
11  Complaint.

12  **RESPONSE TO INTERROGATORY NO. 3:**

13      **OBJECTION:** Responding Party objects to this interrogatory on the grounds that it is
14  overbroad, unduly burdensome, and premature at this stage in this litigation.

15      Without waiving and subject to these objections, Responding Party refers Defendants to
16  paragraphs 48-54 of the First Amended Complaint filed in this action. Because Plaintiff and the
17  Class were under no duty to investigate the SERVICE FEE, Defendants (as the FUND'S
18  TRUSTEES) were obligated to effectively and continuously inform Plaintiff and the members of
19  the Class as to the SERVICE FEE's existence, substance, basis, and application. However,
20  Defendants never informed Plaintiff or the Class as to the terms of the SERVICES AGREEMENT
21  and described the SERVICE FEE as nothing more than a "Related Party Transaction" in the
22  ANNUAL REPORTS uploaded to the FUND's website. On information and belief, Defendants
23  made no further efforts to inform Plaintiff and the Class as to the SERVICE FEE's existence,
24  substance, basis, or application, even after it was raised to the Defendants that rank and file Fund
25  beneficiaries would have no basis to know of the existence of the Service Fee. Plaintiff anticipates
26  further facts in support of this assertion will be developed through the discovery process.

27  **INTERROGATORY NO. 4:**

28      State all facts that support YOUR assertion that the FUND previously distributed

1   ANNUAL REPORTS via mail prior to the implementation of the SERVICE FEE, as alleged in

2   Paragraph 52 of the First Amended Complaint.

3   **RESPONSE TO INTERROGATORY NO. 5:**

4       **OBJECTION:** Responding Party objects to this interrogatory on the grounds that it is

5   overbroad, unduly burdensome, and premature at this stage in this litigation.

6       Without waiving and subject to these objections, upon further research, Plaintiff is

7   informed and believes, and upon that basis alleges, that any and all materials sent by the Fund to

8   its beneficiaries via mail concealed the existence of the Service Fee and that any documents which

9   revealed the Service Fee, if any, were intentionally withheld or concealed from the Fund's

10   beneficiaries.

11   **INTERROGATORY NO. 6:**

12       State all facts that support YOUR assertion that the UNIONS have violated the SERVICES

13   AGREEMENT by failing to provide the FUND access to session reports and B-Forms, as alleged

14   in Paragraphs 17 and 58 of the First Amended Complaint.

15   **RESPONSE TO INTERROGATORY NO. 7:**

16       **OBJECTION:** Responding Party objects to this interrogatory on the grounds that it is

17   overbroad, unduly burdensome, and premature at this stage in this litigation.

18       **OBJECTION:** Responding Party objects that it calls for a legal opinion from a lay

19   witness.

20       Without waiving and subject to these objections, on information and belief, the UNIONS

21   failed to provide the FUND access to session reports and B-Forms, despite an obligation to do so

22   in the Data Purchase and Services Agreement dated July 22, 2013. Instead, the Fund must gather

23   this information at its own expense and on its own effort. Because the Union Defendants are not

24   actually providing this service to the Fund, the Unions are not entitled to collect a fee since the

25   Fund is not receiving a benefit. Plaintiff anticipates further facts in support of this assertion will be

26   developed through the discovery process.

27   **INTERROGATORY NO. 8:**

28       State all facts that support YOUR assertion that the UNIONS maintain no information for

1  non-union beneficiaries, as alleged in Paragraph 58 of the First Amended Complaint.

2  **RESPONSE TO INTERROGATORY NO. 9:**

3      **OBJECTION:** Responding Party objects to this interrogatory on the grounds that it is
4  overbroad, unduly burdensome, and premature at this stage in this litigation.

5      On information and belief, the UNIONS maintain no information for non-union
6  beneficiaries. Non-Union members are necessarily not part of the Unions. Therefore, the Unions
7  do not keep or maintain contact information for them. Plaintiff anticipates further facts in support
8  of this assertion will be developed through the discovery process.

9  **INTERROGATORY NO. 10:**

10     State all facts that support YOUR assertion that the UNIONS have not provided any
11 information to the Fund with regard to non-union members, as alleged in Paragraph 52 of the First
12 Amended Complaint.

13 **RESPONSE TO INTERROGATORY NO. 11:**

14     **OBJECTION:** Responding Party objects to this interrogatory on the grounds that it is
15 overbroad, unduly burdensome, and premature at this stage in this litigation.

16     On information and belief, the UNIONS maintain no information for non-union
17 beneficiaries. Non-Union members are necessarily not part of the Unions. Therefore, the Unions
18 do not keep or maintain contact information for them. On information and belief, the UNIONS
19 have not provided any information to the Fund with regard to non-union members because they do
20 not maintain any information on non-union members. Plaintiff anticipates further facts in support
21 of this assertion will be developed through the discovery process.

22 **INTERROGATORY NO. 12:**

23     State all facts that support YOUR assertion that the FUND pays the expenses of
24 TRUSTEES in violation of the SERVICES AGREEMENT, as alleged in Paragraph 19 of the First
25 Amended Complaint.

26 **RESPONSE TO INTERROGATORY NO. 13:**

27     **OBJECTION:** Responding Party objects to this interrogatory on the grounds that it is
28 overbroad, unduly burdensome, and premature at this stage in this litigation.

1   **OBJECTION:** Responding Party objects that it calls for a legal opinion from a lay

2   witness.

3       Pursuant to paragraph 6 of the SERVICES AGREEMENT, the 3% Service Fee "shall

4   constitute complete compensation of the Unions and their personnel for providing the data and

5   services contemplated by this Agreement. There shall be no additional charges or expense

6   reimbursement associated with the Unions' provision of the data and services contemplated by this

7   Agreement." On information and belief, the FUND pays the expenses of TRUSTEES for the

8   "services contemplated by this Agreement" over and above the Service Fee. Plaintiff anticipates

9   further facts in support of this assertion will be developed through the discovery process after a

10  detailed investigation of the Annual Reports in conjunction with testimony of Defendants and their

11  personnel.

12  **INTERROGATORY NO. 14:**

13      Describe in detail the nature of Dennis Dreith's involvement in the current litigation.

14  **RESPONSE TO INTERROGATORY NO. 15:**

15      **OBJECTION:** Plaintiff objects to this Interrogatory in that it seeks information that is

16  irrelevant to the claims and defenses in this lawsuit.

17      **OBJECTION:** Plaintiff also objects to this Interrogatory to the extent it requests

18  information protected by the attorney-client privilege.

19      Without waiving and subject to the foregoing objection, Plaintiff responds as follows:

20  Plaintiff's counsel has retained Dennis Dreith as a litigation consultant.

21  **INTERROGATORY NO. 16:**

22      Describe in detail the nature of the involvement of Transparence Entertainment Group in

23  the current litigation.

24  **RESPONSE TO INTERROGATORY NO. 17:**

25      **OBJECTION:** Plaintiff objects to this Interrogatory in that it seeks information that is

26  irrelevant to the claims and defenses in this lawsuit.

27      **OBJECTION:** Plaintiff also objects to this Interrogatory to the extent it requests

28  information protected by the attorney-client privilege.

1    Without waiving and subject to the foregoing objection, Plaintiff responds as follows:

2  Transparence Entertainment Group has no involvement in the current litigation.

3  **INTERROGATORY NO. 18:**

4    Describe in detail the nature of any business or financial relationship between YOU and

5  Dennis Dreith and/or Transparence Entertainment Group.

6  **RESPONSE TO INTERROGATORY NO. 19:**

7    **OBJECTION:** Plaintiff objects to this Interrogatory in that it seeks information that is

8  irrelevant to the claims and defenses in this lawsuit.

9    **OBJECTION:** Plaintiff also objects to this Interrogatory to the extent it requests

10  information protected by the attorney-client privilege.

11    Without waiving and subject to the foregoing objection, Plaintiff responds as follows:

12  Plaintiff is a client of Transparence Entertainment Group.

13

14  DATED:  July 5, 2019                Respectfully submitted,

15                          JOHNSON & JOHNSON LLP

16

17                          By: /s Daniel B. Lifschitz

18                          NEVILLE L. JOHNSON
                            JORDANNA G. THIGPEN
19                          DANIEL B. LIFSCHITZ
                            Attorneys for Plaintiff and the Class
20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

## **VERIFICATION**

I, Kevin Risto, declare:

I have read the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES** and hereby declare that the responses are true to and correct to the best of my personal knowledge, information, and belief, with the exception of those matters upon which I have relied on the investigation of counsel, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I reserve my right to supplement or revise this statement based upon any subsequently discovered documents or information.

Executed at Honolulu, HI on July 5, 2019

Kevin Risto

***PROOF OF SERVICE***
*STATE OF CALIFORNIA, COUNTY OF LOS ANGELES*

I am employed in the County of Los Angeles, State of California by JOHNSON & JOHNSON LLP, and am over the age of 18 and not a party to the within action.  My business address is 439 N. Canon Drive, Suite 200, Beverly Hills, California 90210.

On *July 5, 2019,* I served the foregoing document described as:

**PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES**

on: **SEE ATTACHED SERVICE LIST**

**METHOD OF SERVICE**

[X]    (BY U.S. MAIL) I served the document(s) by enclosing them in an envelope and placing the envelope for collecting and mailing following our ordinary business practices or by depositing the envelope directly in the United States mail with postage prepaid. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ]    (BY E-MAIL OR ELECTRONIC TRANSMISSION I enclosed the document to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed *July 5, 2019,* at Beverly Hills, California.

_____
Viktoriya Cassis

1
PROOF OF SERVICE

1

**SERVICE LIST**

2

*Kevin Risto, et. al. v. Screen Actors Guild-American Federation Of Television And Radio Artists, et. al.*; **Case No. 2:18-cv-07241-CAS-PLA**

3

4

5

Andrew J. Thomas

6

Andrew G. Sullivan

7

**JENNER & BLOCK LLP**

633 West 5th Street, Suite 3600

8

Los Angeles, CA 90071

9

Telephone: (213) 239-5100

Facsimile: (213) 239-5199

10

Emails: ajthomas@jenner.com

11

agsullivan@jenner.com

*Attorneys for All Defendants*

12

13

Devi M. Rao

14

**JENNER & BLOCK LLP**

1099 New York Ave, NW, Suite 900

15

Washington, D.C. 20001

16

Telephone: (202) 639-6000

Facsimile: (202) 639-6066

17

Email: drao@jenner.com

18

*Attorneys for All Defendants*

19

20

PAUL R. KIESEL

MARIANA A. MCCONNELL

21

KIESEL LAW LLP

8648 Wilshire Boulevard

22

Beverly Hills, California 90211-2910

Email: kiesel@kiesel.law

23

mcconnell@kiesel.law

*Attorneys for Plaintiff and the Class*

24

25

26

27

28