# Exhibit 3

```
 1                UNITED STATES DISTRICT COURT
 2                CENTRAL DISTRICT OF CALIFORNIA
 3
    KEVIN RISTO,                  )
 4                                )
                   Plaintiff,     )
 5                                )
    vs.                           )  No.
 6                                )  2:18-cv-07241-CAS-
    SCREEN ACTORS                 )  PLA
 7  GUILD-AMERICAN FEDERATION     )
    OF TELEVISION AND RADIO       )
 8  ARTISTS, et al.,              )
                                  )
 9                 Defendants.    )
    _____)
10
11
12
13         DEPOSITION OF PMK - STEFANIE TAUB
14                      Volume I
15              APPEARING REMOTELY FROM
16              GRANADA HILLS, CALIFORNIA
17            WEDNESDAY, JANUARY 20TH, 2021
18
19
20
21
22  REPORTED BY:
    MONICA LEPE-GEORG
23  CSR No. 11976
    APPEARING REMOTELY FROM CLOVERDALE, CALIFORNIA
24
    Job No. 264541
25
```

1     A.    Yeah -- yes.

2     Q.    Have you reviewed any drafts of the
3  services agreement?

4     A.    No.

5     Q.    As a nonprofit entity, the fund files
6  regular 990 disclosures, right?

7     A.    Yes.

8     Q.    The disclosures ask whether the fund has a
9  conflict-of-interest policy in effect; is that
10 correct?

11    A.    Yes.

12    Q.    What is your understanding of why the fund
13 has a conflict-of-interest policy for IRS purposes?

14          MR. THOMAS:  Objection.  Vague.  Calls for
15 a legal conclusion, but she can testify to her
16 understanding.

17          THE WITNESS:  Yeah, I mean, I really -- I
18 don't know what -- why the IRS specifically requires
19 that.  I could -- that -- that would be a guess, but
20 my understanding is the -- the purpose of -- I'm
21 sorry.  I forgot to mute my phone.

22          The purpose of the conflict-of-interest
23 policy is so that the individual trustees or key
24 staff do not have a financial conflict of interest
25 where -- where they would have individual financial

```
 1    gain based on -- based on doing business with the
 2    fund.
 3    BY MS. MCCONNELL:
 4        Q.   Have -- as CEO of the fund, have you ever
 5    spoken to any financial advisors or accountants
 6    about why the fund should have a
 7    conflict-of-interest policy?
 8        A.   Not -- not beyond my understanding.  No.
 9    No.  I mean, to me, it speaks for itself, to avoid
10    conflict of interest from -- what -- as it says in
11    the policy, so that there's no financial --
12    individual financial gain that those parties have --
13    the covered parties have, if they're -- if they're
14    doing business directly with the fund.
15        Q.   How did you develop this understanding?
16        A.   I mean, I generally know what a conflict of
17    interest is, but, you know, I've read the form, I've
18    completed them in the past as a trustee.
19             I believe I was a trustee when it -- when
20    the policy was adopted -- both policies.  So, you
21    know, I -- there was obviously discussion, at that
22    time, when they were adopted.
23        Q.   Right.  When -- when they were adopted, did
24    the fund bring in any outside consultants to inform
25    the board of why there should be a
```

```
 1   conflict-of-interest policy?
 2        A.   I don't recall.  I -- I mean, I don't
 3   believe so.  I --
 4        Q.   Who drafted the conflict-of-interest
 5   policy?
 6        A.   I -- that's why I was pausing.  I -- I --
 7   um, I believe it was Trish Polach at the time.
 8        Q.   Okay.  And --
 9        A.   So counsel did it.
10             MS. MCCONNELL:  Nico, can you send the --
11   what we'll mark as Exhibit 2, which is the 2017
12   conflict-of-interest policy and the 2014
13   conflict-of-interest policy.
14             (Exhibit 1 was marked for identification.)
15             (Exhibit 2 was marked for identification.)
16             MR. BRANCOLINI:  Do you want me to share it
17   on the screen as well?
18             MS. MCCONNELL:  Sure.
19   BY MS. MCCONNELL:
20        Q.   Ms. Polach (sic), you can look at them on
21   your own -- on your own computer with the PDF or you
22   can look on the screen, whichever is easier for you.
23             The first document is the 2014 policy,
24   which, at the bottom left, says it was adopted April
25   21, 2014.
```

 1   possible.  Yes, it's possible.

 2   BY MS. MCCONNELL:

 3       Q.   Okay.  If we use the phrase "from the

 4   fund's policy of potential conflict of interest,"

 5   would you agree that the description of

 6   Mr. Crabtree's interest, that he discloses on this

 7   form, could lead to a potential conflict of interest

 8   under the fund's policy back in 2013?

 9            MR. THOMAS:  Objection.  Lacks foundation.

10   Misstates the document.

11            THE WITNESS:  You'd get the same answer.

12   It's -- it's possible.  I don't have legal

13   expertise, particularly, to give a definitive answer

14   on that.  And -- and it -- there's a possibility.

15   And that's -- that's all I'm willing to -- to commit

16   to on that.  I -- I don't have an absolute answer.

17   BY MS. MCCONNELL:

18       Q.   As the person who's here today to testify

19   on this conflict-of-interest policy, wouldn't you

20   agree that the disclosure of Mr. Crabtree-Ireland's

21   interests would need to be made to the fund so that

22   the fund could investigate whether there was an

23   actual conflict of interest?

24            MR. THOMAS:  Objection.  Overbroad and

25   vague.

```
 1              THE WITNESS:  Well, and it's the same --
 2   again, that the trustees knew Duncan
 3   Crabtree-Ireland was the chief -- I forget exactly
 4   what -- chief administrative officer and general
 5   counsel of SAG-AFTRA and everybody knows he's on the
 6   board of Sound Exchange, so it depends on -- you
 7   know, again, to -- disclosure is -- the whole point
 8   is to give that information -- provide that
 9   information to the board when they don't know about
10   it.  If it's something they already know, whether
11   it's written on this form or not, is not -- you
12   know, it's -- it doesn't really change the -- the
13   knowledge of the people who already know the
14   position of these trustees.  And that everybody
15   knows that they're -- they're either, you know,
16   employed or have another position at the respective
17   unions.
18   BY MS. MCCONNELL:
19       Q.   Isn't -- isn't another purpose of the
20   disclosure to comply with IRS requirements?
21              MR. THOMAS:  Objection.  Lacks foundation.
22   Calls for a legal conclusion.
23              THE WITNESS:  Yeah, I -- yeah, I'm not sure
24   I -- I can speak to exactly what the -- like I said,
25   I don't know exactly what the IRS requirements are.
```

1    It's -- my understanding is that the fund have --
2    have the conflict-of-interest policy.
3    BY MS. MCCONNELL:
4        Q.   Wouldn't you agree that the purpose of the
5    conflict-of-interest policy is to protect the
6    beneficiaries of the fund?
7        A.   That's one of them -- one of the purposes,
8    sure.
9        Q.   Wouldn't you agree that disclosing the
10   conflict of interest would give information to
11   beneficiaries of the fund that there is a potential
12   conflict of interest in a transaction that the fund
13   is considering?
14           MR. THOMAS:  Objection.  Argumentative.
15   Calls for speculation.
16           THE WITNESS:  Yeah, I mean, that -- that's
17   not what the -- this conflict-of-interest policy is,
18   but I mean, again, it's the -- it's -- even that is
19   very -- it's public information.  Again, the
20   trustees are listed on our website.  People know.
21   You know, that -- that information is -- is
22   available.  It's...
23   BY MS. MCCONNELL:
24       Q.   Is there something in the
25   conflict-of-interest policy that says that the

1    trustees don't need to undergo disclosures if the

2    conflict is generally known?

3           MR. THOMAS:  Object to the form.

4    Argumentative.

5           THE WITNESS:  No, but the whole point of a

6    disclosure is to disclose information that someone

7    wouldn't already be aware of.  You're disclosing it.

8    So if I already know it, there's no -- it -- I'm not

9    saying it's not -- not something that's in the

10   policy, but I'm just saying in -- in -- in a matter

11   of just day-to-day knowledge, people are -- the --

12   the rest of the trustees already know these -- that

13   these -- that Duncan holds these positions.

14   BY MS. MCCONNELL:

15      Q.   Doesn't the disclosure of a potential

16   conflict of interest also trigger the other

17   procedures in the policy?

18          MR. THOMAS:  Same objections.

19          THE WITNESS:  Not necessarily.  I mean,

20   again, this is just listing these affiliations.  It

21   doesn't mean it -- it doesn't mean that those

22   affiliations necessarily give rise to a conflict of

23   interest that has to go through the full -- the

24   full -- all the steps in the policy.

25   ///