JENNER & BLOCK LLP
Andrew J. Thomas (Cal. Bar No. 159533)
ajthomas@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
Andrew G. Sullivan (Cal. Bar No. 301122)
agsullivan@jenner.com
Anna K. Lyons (Cal Bar No. 324090)
alyons@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

*Attorneys for All Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

KEVIN RISTO, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a Delaware corporation, et al.,

Defendants.

Case No. 2:18-cv-07241-CAS-PLA

Class Action

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS AND PLAINTIFF'S MOTION TO STRIKE THE DECLARATION OF JULIE SANDELL**

Hearing Date: June 14, 2021
Hearing Time: 10:00 a.m.
Courtroom: 8D (Telephonic)

[Defendants' Reply Memorandum of Points and Authorities, Evidentiary Objections, Response to Plaintiff's Separate Statement of Undisputed Material Facts, and Declaration of Anna K. Lyons with Exhibits 1-20, filed concurrently.]

Defendants Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA"), American Federation of Musicians of the United States and Canada ("AFM"), Raymond M. Hair, Jr., Tino Gagliardi, Duncan Crabtree-Ireland, Stefanie Taub, Jon Joyce, and Bruce Bouton (collectively, the "Defendants") hereby respond to Plaintiff Kevin Risto's evidentiary objections and motion to strike in connection with the Declarations of Julie Sandell, Duncan Crabtree-Ireland, Ray Hair, Andrew Sullivan, and Stephanie Taub submitted in support of Defendants' Motion for Summary Judgment. *See* Dkt. 111-2.

## I. <u>The Sandell Declaration Is Properly Considered In Deciding Defendants' Motion For Summary Judgment.</u>

### A. The Sandell Declaration Is Relevant In That It Rebuts Plaintiff's Assertion That The Union Data Has Little or No Value.

Throughout the course of this litigation—and most recently in opposing Defendants' motion for summary judgment—Plaintiff has repeated the baseless assertion that the session report data provided by the Unions in exchange for the Service Fee has little or no value. *See, e.g.*, Dkt. 26 ("Amended Complaint") at ¶ 58 (alleging the Unions "have nothing of value to exchange for the Service Fee"); Dkt. 111 ("MSJ Opp.") at 1 (asserting that the Union data is "information of, at best, specious significance to the Fund's operations."). According to Plaintiff, the Union data is replaceable because the same information can be derived from public sources. *See* MSJ Opp. at 7 (asserting that the data in session reports is "available via many public sources, including AllMusic, Discogs, liner notes, and self-claiming by beneficiaries").

The Declaration of Julie Sandell filed in support of the Defendants' Motion for Summary Judgment rebuts these inaccurate assertions from Plaintiff. *See* Dkt. 108 ("Sandell Declaration"). Based on her percipient knowledge gained during more than a decade at the Fund, Ms. Sandell explains in her declaration that session report data is "the most reliably accurate source of information available to the Fund

in identifying the non-featured performers who appeared on a given song title." *Id.* at ¶5.[1]

In her declaration, Ms. Sandell also rebuts Plaintiff's contention that session report data has no value by explaining a project she recently managed at the Fund. *Id.* at ¶ 2. Ms. Sandell selected 50 song titles for which accurate performer information had already been located via session reports from the Unions, and she asked Fund researchers to try to locate that same performer information using public sources only (e.g., discographies, liners notes, Internet sources). *Id.* at ¶4. The result was that Fund researchers could only locate accurate performer information from public sources for 20 of the 50 song titles examined. *Id.* at ¶ 9. In other words, the public sources touted by Plaintiff as a replacement for session report data were inaccurate with respect to 60% of the song titles examined by the Fund. *Id.*

Rather than engage with the results of this illustrative exercise, Plaintiff has instead moved the Court to strike Ms. Sandell's declaration in its entirety. *See* Dkt. 111-2 at 1. According to Plaintiff, the project managed by Ms. Sandell "attempts to draw conclusions from a statistically insignificant sample" that was selected "without proper controls." *Id.* Plaintiff also argues that Ms. Sandell lacks the "scientific, technical, or other specialized knowledge" to report the results of the project she managed. *Id.* at 3.

In making these arguments, Plaintiff ignores the fact that Ms. Sandell's declaration *simply reports the results* of the Fund's review of the 50 selected titles. Ms. Sandell's declaration *does not* attempt to use the 50 titles as a sample from which

---

[1] Ms. Sandell's knowledge is backed up by that of numerous witnesses who have provided testimony and evidence regarding the essential value of the session report data provided by the Unions. *See* Dkt. 109 ("Sullivan Decl."), Ex. 15 (Taub, October 20, 2020, Tr., 149:10-151:15, 154:2-25); Decl., Ex. 13 (Risto Tr., 128:13-128:17); Ex. 21 (Amended Responses of Defendant Stefanie Taub to Plaintiff's First Set of Interrogatories, Resp. to Interrogatory No. 10); Ex. 14 (Sandell Tr., 39:5-39:22).

to extrapolate broader conclusions about how the lack of Union data would impact a larger set of song titles.[2] Nor does Ms. Sandell attempt to engage in any analysis at all that would require specialized expertise under Fed. R. Evid. 702.[3] Furthermore, in attacking Ms. Sandell's declaration, Plaintiff fails to provide any competent expert testimony regarding statistics, sampling, or survey size.

Ms. Sandell's explanation of the Fund's 50 titles exercise—standing alone, without any further extrapolative analysis—is admissible to rebut Plaintiff's repeated assertions that the session report data has no value and can be just as easily obtained from public sources. Fed. R. Evid. 602. Defendants have provided no cognizable basis for the Court to strike Ms. Sandell's statements of personal knowledge regarding the 50-title project she managed at the Fund. At most, Plaintiff's arguments go to the weight that should be given this evidence, not to its admissibility.

---

[2] Ms. Sandell only briefly alludes to how these findings could potentially impact a larger data set, but draws no conclusions in this regard. *See* Sandell Declaration at ¶ 15 ("The rate of inaccuracy demonstrated in the above-described exercise—were it to take place in the actual course of the Fund's administration—would result in the widespread misallocation of royalties to non-featured performers."). Ms. Sandell also comments on her state of mind following the results of this exercise. *See* Sandell Declaration at ¶ 15 ("The results of this project affirmed my understanding of the essential role that Union data plays in allowing the Fund to accurately allocate royalties."). Neither of these statements constitute an improper lay opinion excludable under Fed. R. Evid. 701.

[3] It is true that Defendants' expert, David Nolte, has used the results of the Fund's 50-title analysis to draw broader conclusion about the impact of Union data on the Fund's operations. Lyons Decl. at ¶ 22. However, Mr. Nolte has not submitted a declaration in support of Defendants' motion for summary judgment, and the conclusions explained in Mr. Nolte's expert report are not otherwise placed at issue on summary judgment.

### B. Plaintiff Has Suffered No Prejudice From Defendants' Production Of Documents And Testimony.

Plaintiff has taken the extreme position that the Court should strike Ms. Sandell's declaration in its entirety – even those portions of the declaration that do not relate to the 50-title project that Ms. Sandell managed, and that instead describe Ms. Sandell's percipient knowledge gained in her decade working at the Fund regarding the Fund's operations and the value of the Union data. *See* Dkt. 108 at ¶¶ 1, 3-6. Plaintiff bases this position on a series of readily refutable arguments regarding purported prejudice suffered by Plaintiff in connection with discovery from Ms. Sandell.

First, Plaintiff asserts that Ms. Sandell's declaration should be struck in its entirety because "Defendants did not disclose Ms. Sandell in their Rule 26(a) disclosures." *See* Dkt. 111-2 at 1. In fact, Defendants *did disclose Julie Sandell* in their Rule 26(a) Initial Disclosures served on Plaintiff more than two years ago. *See* Dkt. 117, Declaration of Anna Lyons ("Lyons Decl.") at ¶ 24, Ex. 20. On February 8, 2019, Defendants served their Initial Disclosures listing Ms. Sandell as a witness likely to have discoverable information regarding "[t]he Fund's research and resources used to identify and locate non-featured performers." Lyons Decl., Ex. 20. Plaintiff's counsel deposed Ms. Sandell regarding these topics and others on December 9, 2020. Lyons Decl. at ¶ 24.

Plaintiff also takes issue with the fact that Ms. Sandell's declaration attaches a document summarizing the results of the Fund's 50-title exercise, which was produced by Defendants in conjunction with their disclosure of expert David Nolte on March 8, 2020, one week after the close of fact discovery. *See* Dkt. 111-2 at 1. Plaintiff claims prejudice because he was not able to question Ms. Sandell or other witnesses about the Fund's exercise when fact depositions were taken in the preceding months. *Id.*

Defendants did not produce the results of the Fund's exercise earlier during the fact discovery period because these results *did not exist* at the time. The Fund undertook this exercise in late-January 2021 and its results were not finalized until shortly before Defendants' produced a spreadsheet summarizing those results on March 8, 2021. Lyons Decl. at ¶21.[4] Defendants produced this spreadsheet concurrently with the disclosure of Defendants' expert David Nolte, who was involved in early discussions regarding the Fund's implementation of the exercise and whose report analyzes the results of the 50-title exercise. *Id*. Defendants have now had the results of this exercise at their disposal for more than two months, and they extensively questioned Mr. Nolte about it at his deposition on April 27, 2021. Lyons Decl. at ¶ 22, 23. Plaintiff has been provided not only with the final version of the spreadsheet summarizing the results of this exercise, but also all preliminary drafts of the spreadsheet that were prepared by the Fund in February and early-March of 2021. Lyons Decl. at ¶21. Where—as here—a document is produced in connection with expert discovery five months prior to trial, and the opposing party has an opportunity to extensively question the party's expert regarding the document at deposition, there can be no claim of prejudice or surprise that would warrant striking the document from the evidentiary record. *See, e.g.*, *Goold v. Hilton Worldwide*, 2014 WL 4629083, at *2-4 (E.D. Cal. Sept. 15, 2014) (admitting relevant documents produced after the close of discovery); *Duarte Nursery, Inc. v. U.S. Army Corps of Eng'rs*, 2017 WL 3453206, at *8-9 (E.D. Cal. Aug. 11, 2017) (same).

Aside from an extensive line of questioning at Mr. Nolte's deposition, Plaintiff has not made any attempts to obtain additional information regarding the Fund's 50-title exercise since the results of the exercise were produced on March 8,

---

[4] The spreadsheet produced to Plaintiff on March 8, 2021 has since been filed with the Court in PDF form as an attachment to Ms. Sandell's declaration in support of Defendants' Motion for Summary Judgment. *See* Dkt. 108-1.

2021. Lyons Decl. at ¶ 23. Plaintiff has not, for example, sought any late-stage discovery—such as an additional limited deposition of Ms. Sandell—in the more than two months since Defendants produced the results of the Fund's exercise in conjunction with Mr. Nolte's expert report. *Id.* Instead, Plaintiff waited until summary judgment to make the argument that the results of the Fund's project should be entirely disregarded because Plaintiff was not able to ask Ms. Sandell about the purported sampling errors in the Fund's project during her December 2020 deposition, nearly two months before Ms. Sandell undertook this exercise.

As explained above, however, the sampling errors that Plaintiff claims he should have had an opportunity to investigate at depositions *only bear on the question of whether the results of the Fund's exercise can be reliably extrapolated to draw conclusions about a broader set of data*. Ms. Sandell's declaration that Plaintiff seeks to strike *does not* attempt to draw any such conclusions. *See* Section I.A, *supra*. Again, Plaintiff has presented no basis to justify the extreme consequence of striking Ms. Sandell's declaration in its entirety.

## II. Plaintiff's Remaining Evidentiary Objections Are Without Merit.

As set forth in the chart below, each of Plaintiff's remaining evidentiary objections fail to state any viable bases for exclusion.

| ITEMS OBJECTED TO | BASIS FOR OBJECTION | RESPONSE TO OBJECTION |
|---|---|---|
| 1. Declaration of Duncan Crabtree-Ireland, ¶ 3<br>"In 2012 and early 2013, prior to the Trustees' approval of the Data Agreement, the Fund's Executive Director, Dennis Dreith, supported the | Irrelevant. Fed. R. Evid. 401, 402<br>Speculation/lack of personal knowledge. Fed. R. Evid. 602 and 701. | Mr. Crabtree-Ireland's statement is based on his personal knowledge of Mr. Dreith's stated support of the Service Fee prior to its implementation. Fed. R. Evid. 602. Mr. Dreith's statements of support are likewise documented in email communications from Mr. |

| ITEMS OBJECTED TO | BASIS FOR OBJECTION | RESPONSE TO OBJECTION |
|---|---|---|
| concept of compensating the Unions for the data and services they provided to the Fund." | | Dreith to Mr. Crabtree-Ireland. *See* Dkt. 109 ("Sullivan Decl."), Ex. 4 (Dreith Tr., 248:6-20 and Ex. 120 (Mr. Dreith describing the Service Fee as "a completely justifiable expense," and proposing to inform Fund participants that "[w]hile in the early days of the Fund's operation it was impossible to compensate the unions for their valuable service, the Fund has now grown to the point where such compensation is not only possible, but highly warranted."). |
| 2. Declaration of Duncan Crabtree-Ireland, ¶ 5<br>"the Trustees did not believe there was any meaningful conflict of interest in part because the interests of the Fund and the Unions were aligned – i.e. that it was in the best interests of the Fund and the Unions for the Fund to secure ongoing access to the session reports and other Union information the Fund | Irrelevant. Fed. R. Evid. 401, 402. Speculation/lack of personal knowledge. Fed. R. Evid. 602 and 701. Improper lay opinion as to whether there was a conflict of interest. Fed. R. Evid. 701.<br>In addition, this testimony is inconsistent with Mr. Crabtree- Ireland's testimony that he recused himself from voting on the Services Agreement | Mr. Crabtree-Ireland's statement is based on his personal knowledge of his own state of mind during the Service Fee implementation process and his contemporaneous perceptions of the state of mind of fellow Trustees. Fed. R. Evid. 602.<br>Mr. Crabtree-Ireland's statement regarding the Trustees' state of mind as to the existence of a conflict of interests is not an improper lay opinion excludable under Fed. R. Evid. 701. *See, e.g.*, *Rodriguez v. Rupf*, 2008 WL 11454790, at *17 (N.D. Cal. |

| ITEMS OBJECTED TO | BASIS FOR OBJECTION | RESPONSE TO OBJECTION |
|---|---|---|
| used to identify and locate non-featured performers by paying a reasonable fee to the Unions." | because he would be signing it on behalf of SAG-AFTRA. | Jan. 22, 2008) (rejecting Defendant's contention that Plaintiff's declaration regarding her assessment that she suffered workplace discrimination constituted improper lay opinion because "her statements signify her state of mind and what she perceived the situation to be, not a legal conclusion").<br><br>Moreover, Mr. Crabtree-Ireland's testimony is not internally inconsistent. Mr. Crabtree-Ireland explained at his deposition that his recusal was not based on his belief that a conflict of interest existed. Lyons Decl., Ex. 3 (D. Crabtree-Ireland, February 16, 2021, Dep. Tr., 164:6-166:19). |
| 3. Declaration of Ray Hair, ¶ 4<br>"The AFM advocated on behalf of musicians for the passage of the Music Modernization Act." | Irrelevant. Fed. R. Evid. 401, 402 | Mr. Hair's testimony is relevant. As explained in Defendants' prior briefing, the services provided by the Unions enumerated in the Data Agreement include legislative advocacy that benefits non-featured performers, whether or not they are Union members. *See* Dkt. 103 ("MSJ") at 7, fn. 4. The AFM's advocacy efforts in connection with the Music Modernization Act is an example of a Union activity |

| ITEMS OBJECTED TO | BASIS FOR OBJECTION | RESPONSE TO OBJECTION |
| --- | --- | --- |
| | | covered by the Data Agreement that benefits non-featured performers generally, without regard to Union membership. *Id.* This is one example (among others) of services provided by the Unions under the Data Agreement that benefit non-featured performers who are not Union members; this rebuts Plaintiff's allegation that "[n]one of the activities set forth in the [Data Agreement] are for the benefit of non-Union, non-featured performers. Dkt. 26 ("FAC") at ¶ 18. |
| 4. Declaration of Ray Hair, ¶ 5<br>"In 2012 and early 2013, prior to the Trustee's approval of the Data Agreement, the Fund's Executive Director, Dennis Dreith, supported the concept of compensating the Unions for the data and services they provided to the Fund." | Irrelevant. Fed. R. Evid. 401, 402<br>Speculation/lack of personal knowledge. Fed. R. Evid. 602 and 701. | Mr. Hair's statement is based on his personal knowledge of Mr. Dreith's stated support of the Service Fee prior to its implementation. Fed. R. Evid. 602. Mr. Dreith's statements of support are likewise documented in email communications from Mr. Dreith to Mr. Hair. *See* Dkt. 109 ("Sullivan Decl."), Ex. 4 (Dreith Tr, 248:6-20 and Ex. 120 (Mr. Dreith describing the Service Fee as "a completely justifiable expense," and proposing to inform Fund participants that "[w]hile in the early days of the Fund's operation it was impossible to |

| ITEMS OBJECTED TO | BASIS FOR OBJECTION | RESPONSE TO OBJECTION |
|---|---|---|
| | | compensate the unions for their valuable service, the Fund has now grown to the point where such compensation is not only possible, but highly warranted.”). |
| 5. Declaration of Ray Hair, ¶ 7<br>“the Trustees did not believe there was any meaningful conflict of interest in part because the interests of the Fund and the Unions were aligned – i.e. that it was in the best interests of the Fund and the Unions for the Fund to secure ongoing access to the session reports and other Union information the Fund used to identify and locate non-featured performers by paying a reasonable fee to the Unions.” | Irrelevant. Fed. R. Evid. 401, 402. Speculation/lack of personal knowledge. Fed. R. Evid. 602 and 701. Improper lay opinion as to whether there was a conflict of interest. Fed. R. Evid. 701.<br>In addition, this testimony is inconsistent with Mr. Crabtree- Ireland’s testimony that he recused himself from voting on the Services Agreement because he would be signing it on behalf of SAG-AFTRA. | Mr. Hair’s statement is based on his personal knowledge of his own state of mind during the Service Fee approval process and his contemporaneous perceptions of the state of mind of fellow Trustees. Fed. R. Evid. 602.<br>Mr. Hair’s statement regarding the Trustees’ state of mind as to the existence of a conflict of interests is not a legal or expert opinion excluded under Fed. R. Evid. 701. *See, e.g.*, *Rodriguez v. Rupf*, 2008 WL 11454790, at *17 (N.D. Cal. Jan. 22, 2008) (rejecting Defendant’s contention that Plaintiff’s declaration regarding her assessment that she suffered workplace discrimination constituted improper lay opinion because “her statements signify her state of mind and what she perceived the situation to be, not a legal conclusion”).<br>There is no inconsistency with Mr. Crabtree-Ireland’s testimony. Mr. Crabtree- |

| ITEMS OBJECTED TO | BASIS FOR OBJECTION | RESPONSE TO OBJECTION |
|---|---|---|
| | | Ireland explained at his deposition that his recusal was not based on his belief as to the existence of a conflict of interest. Lyons Decl., Ex. 3 (Crabtree-Ireland, February 16, 2021, Tr. at 190:2-191:3). |
| 6. Declaration of Julie Sandell, ¶ 2<br>"The results of this project affirmed my understanding of the essential role that Union data plays in allowing the Fund to accurately allocate royalties." | Irrelevant. Fed. R. Evid. 401, 402. Speculation/lack of personal knowledge. Fed. R. Evid. 602 and 701. Improper lay opinion as to the results of this statistically insignificant study. Fed. R. Evid. 701.<br>Ms. Sandell is not qualified to make this statement nor is this statement supported by the evidence in this case. Further, this testimony is inconsistent with Defendants' retained expert who stated that this sample was not statistically significant and he was not able to extrapolate the results with precision and confidence. Since Defendants' retained economist is not able | *See* Section I.A, *supra*. |

| ITEMS OBJECTED TO | BASIS FOR OBJECTION | RESPONSE TO OBJECTION |
|---|---|---|
| | to extrapolate with confidence, Ms. Sandell is not able to do so either. | |
| 7. Declaration of Julie Sandell, ¶ 7¬15 | Irrelevant. Fed. R. Evid. 401, 402. Speculation/lack of personal knowledge. Fed. R. Evid. 602 and 701. Improper lay opinion as to the results of this statistically insignificant study. Fed. R. Evid. 701.<br><br>This testimony is inconsistent with Defendants' retained expert who stated that this sample was not statistically significant and he was not able to extrapolate the results with precision and confidence. Since Defendants' retained economist is not able to extrapolate with confidence, Ms. Sandell is not able to do so either. | *See* Section I.A, *supra*. |
| 8. Declaration of Andrew Sullivan, ¶ 43 | Irrelevant. Fed. R. Evid. 401, 402. Speculation/lack of personal knowledge. | Mr. Sullivan's statement is based on his personal knowledge of the documents produced in this matter, the |

| ITEMS OBJECTED TO | BASIS FOR OBJECTION | RESPONSE TO OBJECTION |
|---|---|---|
| "I supervised the collection and production of documents from the Fund in response to the Plaintiff's requests for production of documents in this action. In response to Plaintiff's discovery requests, Defendants have produced in excess of 15,000 emails which reflect communications between the Fund and the Unions pertaining to requests by the Fund for data regarding non-featured performers." | Fed. R. Evid. 602 and 701.<br>Defendants have not presented any competent witnesses who went through these documents to decipher which emails were responded to with session information and which emails received nothing in response. McConnell Decl., See, e.g., Ex. 19, DEFS 00024887; DEFS 00015502; DEFS 00017045; DEFS 00018779 DEFS 00019595; DEFS 00019903; DEFS 00024966.<br>Without this information, the fact that Defendants produced "in excess of 15,000 emails" is irrelevant to show how many requests were actually answered by the Unions with useful information. For example, included in the production that forms the basis of | collection and production of which he supervised. Fed. R. Evid. 602. Plaintiff does not contend that Mr. Sullivan's statement regarding the number of emails produced in this matter is inaccurate, or that he lacks personal knowledge necessary to make this statement. Instead, Plaintiff objects to Mr. Sullivan's statement because it does not answer the question of "how many requests were actually answered by the Unions with useful information." However, Mr. Sullivan's statement does not purport to answer this question posed by Plaintiff. Rather, the documents produced in this action to which Mr. Sullivan's statement refer are evidence of the volume of email traffic between the Fund and the Unions. This volume of emails evidences the scope of the services provided by the Unions pursuant to the Data Agreement—as such services include attempts to locate session reports in response to requests from the Fund, regardless of whether such efforts yielded session report information. |

| ITEMS OBJECTED TO | BASIS FOR OBJECTION | RESPONSE TO OBJECTION |
|---|---|---|
| | counsel's statement are approximately 100 pages of photos of Kermit the Frog. Ex. 21, DEFS_00013640-13654, 00013656-13670, 00013672-13686, 00013688-13702, 00026304-26318, 00026321-26335. | |
| 9. Brief, page 12<br>"This rate of inaccuracy would have profound consequences if the Union were forced to rely solely on public, non-Union sources of information when allocating royalties. SUF 74." | Irrelevant. Fed. R. Evid. 401, 402. Speculation/lack of personal knowledge. Fed. R. Evid. 602 and 701. Improper lay opinion as to the results of this statistically insignificant study. Fed. R. Evid. 701.<br>This statement is inconsistent with Defendants' retained expert who stated that the 50-song sample was not statistically significant and he was not able to extrapolate the results with precision and confidence. Since Defendants' retained economist is not able to extrapolate with | Plaintiff's attempt to strike statements in Defendants' summary judgment memorandum is improper. *See U.S. Small Bus. Admin. v. Alto Tech Ventures, LLC,* 2008 WL 5245903, *8 (N.D. Cal. Dec. 17, 2008) (overruling objections that "improperly seek to strike arguments made by the SBA in its [summary judgment] Motion"); *see also Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc.*, 2008 WL 53665, *2 (D. Kan. Jan. 2, 2008) (denying motion to strike purportedly unsupported statements in summary judgment brief because "[t]o the extent that [defendants] disagree with [plaintiff's] characterization of the facts in the legal memorandum, that is |

| ITEMS OBJECTED TO | BASIS FOR OBJECTION | RESPONSE TO OBJECTION |
| --- | --- | --- |
| | confidence, Defendants are not able to do so either. Finally, this statement is not in the SUF. | appropriate legal argument but does not provide grounds to strike the document.”).<br><br>Regardless, Plaintiff mischaracterizes the testimony of Defendants’ expert witness David Nolte, which is not inconsistent with the statements from Defendants’ summary judgment briefing objected to by Plaintiff. Mr. Nolte testified that he *was* able to extrapolate valid conclusions from the analysis of 50 songs conducted by the Fund, notwithstanding the number of song titles and song selection process that Plaintiff argues are methodologically unsound. Lyons Decl., Ex. 12 (Nolte Tr., at 120:12-124:17). Moreover, the level of “precision and confidence” with which Mr. Nolte can extrapolate conclusions from the Fund’s 50-title analysis is *not placed at issue* by Defendants on summary judgment, either in the quoted statement from Defendants’ briefing or otherwise. *See* Section II.A, *supra*. |
| 10. Brief, page 15<br>“- a proposition as to which the Court | No request for judicial notice submitted. | Plaintiff’s attempt to strike statements in Defendants’ summary judgment |

| ITEMS OBJECTED TO | BASIS FOR OBJECTION | RESPONSE TO OBJECTION |
|---|---|---|
| readily may take judicial notice.” | Not a fact entitled to judicial notice. See FRE 201. | memorandum is improper. *See U.S. Small Bus. Admin.*, 2008 WL 5245903 at *8 (overruling objections that “improperly seek to strike arguments made by the SBA in its [summary judgment] Motion”); *see also Guang Dong Light Headgear Factory Co., Ltd.*, 2008 WL 53665 at *2 (denying motion to strike purportedly unsupported statements in summary judgment brief because “[t]o the extent that [defendants] disagree with [plaintiff's] characterization of the facts in the legal memorandum, that is appropriate legal argument but does not provide grounds to strike the document.”).<br><br>Regardless, the underlying statement at issue is self-evidently accurate: “There can be no dispute that many compensation arrangements are based on a percentage of the value of an underlying transaction—including those involving real estate agents, investment managers, talent agents, and contingency fee lawyers….” |

## III. CONCLUSION

For all of the foregoing reasons, the Court should deny Plaintiff's motion to strike the Sandell Declaration, and should disregard the remainder of Plaintiff's evidentiary objections and properly consider Defendants' evidence in support of their motion for summary judgment.

Dated: May 28, 2021 JENNER & BLOCK LLP

/s/ Andrew J. Thomas
Andrew J. Thomas
Alexander M. Smith
Andrew G. Sullivan
Anna K. Lyons

*Attorneys for All Defendants*