UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | | Date | June 14, 2021 |
|---|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Nico Brancolini | Andrew Thomas |
| Paul Kiesel | Andrew Sullivan |
| Mariana McConnell | |
| Neville Johnson | |
| Daniel Lifschitz | |

**Proceedings:**     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 103, filed April 23, 2021)

## I.    INTRODUCTION

On June 22, 2018, plaintiff Kevin Risto, on behalf of himself and all others similarly situated, filed this action in the Los Angeles Superior Court against defendants the Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA") and the American Federation of Musicians of the United States and Canada ("AFM") (collectively, the "Unions"); Raymond M. Hair, Jr., Tino Gagliardi, Duncan Crabtree-Ireland, Stephanie Taub, Jon Joyce, and Bruce Bouton (collectively, the "Trustees"); and Does 1 through 10. Dkt. 1-1 ("Compl."). On August 17, 2018, defendants removed this action to this Court, pursuant to 28 U.S.C. § 1332(d). Dkt. 1. On November 20, 2018, plaintiff filed the operative First Amended Complaint ("FAC"). Dkt. 26. The FAC alleges that, by negotiating a service fee agreement with the Unions, the Trustee defendants violated their fiduciary duties to their beneficiaries. Id. These beneficiaries include plaintiff and other non-featured performance artists. Id. Plaintiff also alleges claims against all defendants for (1) money had and received, (2) conversion, and (3) declaratory relief. Id. Defendants answered the FAC on December 4, 2018. Dkt. 27.

On June 29, 2020, plaintiff a motion for class certification. Dkt. 56 ("Mot."). On September 14, 2020, the Court granted the motion for class certification, and certified the class under Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2), defined as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

> All non-featured musicians and non-featured vocalists, their agents, successors in interest, assigns, heirs, executors, trustees, and administrators, entitled to royalties under the Copyright Act (17 U.S.C. § 114 (g)(2)(b-c)) allocated for distribution for each distribution cycle after July 22, 2013.

Dkt. 78 ("Class Cert. Order") at 14, 21, 23.

On April 23, 2021, defendants filed the instant motion for summary judgment, dkt. 103 ("Mot."), and submitted a statement of uncontroverted facts in support thereof, dkt. 104 ("SUF"). On May 14, 2021, plaintiff filed an opposition, dkt. 111 ("Opp'n"); along with a statement of genuine disputes of material facts, dkt. 111-1 at 1-114 ("GDF"); a separate statement of undisputed facts, dkt. 111-1 at 115-138 ("PSUF"); and objections to defendants' declaration evidence, including a motion to strike the Declaration of Julie Sandell,[1] dkt. 108 ("Sandell Decl."), in its entirety, dkt. 111-2 ("P Obj."). On May 28,

---

[1] Plaintiff seeks to strike the Sandell declaration on the grounds that it, in substance, reports on the results of a "50 Song Study" conducted by defendants in January and February, 2021 that was not properly disclosed to plaintiff before fact discovery closed on March 1, 2021, and that is thus inadmissible pursuant to Federal Rule of Civil Procedure 37(c). See P Obj. Under Rule 37(c), a party that fails to properly disclose evidence may not "use that information to supply evidence on a motion, at hearing, or at trial," unless the failure to disclose was "substantially justified or is harmless." Hoffman v. Constr. Protective Servs., Inc., 541 F.3d 1175, 1179 (9th Cir. 2008), as amended (Sept. 16, 2008). "In determining whether to preclude introduction of evidence pursuant to FRCP 37, courts consider (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence, and (5) the nondisclosing party's explanation for its failure to disclose the evidence." San Francisco Baykeeper v. W. Bay Sanitary Dist., 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011). Defendants explain that the study was not disclosed during fact discovery because it was finalized only shortly before it was produced on March 8, 2021, in connection with defendants' expert disclosures, and argue that plaintiffs cannot demonstrate prejudice based on that delay because they have not sought to reopen Sandell's December 9, 2020 deposition. D. Obj. Resp. at 6-7. Here, given that the Court does not rely on Sandell's declaration testimony, the failure to disclose appears harmless. As such, the Court **OVERRULES** the request to strike the Sandell declaration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

2021, defendants filed a reply, dkt. 113 ("Reply"); along with a response to plaintiff's evidentiary objections and motion to strike the Sandell declaration, dkt. 114 ("D. Obj. Resp."); a response to plaintiff's separate statement of undisputed facts, dkt. 115 ("RPSUF"); and objections to plaintiff's expert declaration evidence,[2] dkt. 116 ("D Obj.").

The Court held a hearing on June 14, 2021. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

**II.    BACKGROUND**

The following facts are not meaningfully disputed and are set forth for purposes of background. Unless otherwise noted, the Court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

**A. The Fund**

The Intellectual Property Rights Distribution Fund (the "Fund") was formed on September 16, 1998, with the execution of the Agreement and Declaration of Trust by AFM, the American Federation of Television and Radio Artists, and the Fund Trustees.

---

However, the Court grants plaintiff leave to re-open the Sandell deposition, limited to the topic of the "50 Song Study" and to no more than two (2) hours.

Plaintiff also asserts numerous other evidentiary objections to defendants' declaration evidence, including that it is irrelevant and not founded in personal knowledge. "In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." Capitol Records, LLC v. BlueBeat, Inc., 765 F. Supp. 2d 1198, 1200 (C.D. Cal. 2010). This is especially true where, as here, many of the objections are "boilerplate" and made without analysis. Id. To the extent that the Court relies on objected-to evidence, it has considered and **OVERRULED** plaintiff's evidentiary objections.

[2] Defendants object to the expert declarations of Mark Bookman, Kerry Adams, and Barrie Kessler on hearsay and relevance grounds. Because the Court does not rely on the objected-to declarations, it need not reach defendants' objections.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

SUF ¶ 1.  On July 26, 2012, AFM and SAG-AFTRA[3] entered into an amended and restated Trust Agreement.  SUF ¶ 5.

The Fund was established pursuant to the Copyright Act, 17 U.S.C. § 114, which provides for a statutory license that permits digital performance and reproduction of copyrighted sound recordings.  17 U.S.C. § 114 (West).  As part of that license, Congress has established a specific statutory scheme to distribute royalties when copyrighted songs are performed or otherwise reproduced publicly by means of a digital audio transmission. Id.  Pursuant to Section 114, the Copyright Royalty Board  designated SoundExchange, an affiliate of the Recording Industry Association of America, as the sole entity to collect royalties for those digital performances.  Id.  Then, pursuant to Section 114(g)(2), the royalties are distributed among the various artists, musicians, and copyright holders associated with a given song, as follows:

> (A)    50 percent of the receipts shall be paid to the copyright owner . . .

> (B) 2 ½ percent of the receipts shall be deposited in an escrow account managed by an independent administrator jointly appointed by copyright owners of sound recordings and the American Federation of Musicians (or any successor entity) to be distributed to nonfeatured musicians (whether or not members of the American Federation of Musicians) who have performed on sound recordings.

> (C) 2 ½ percent of the receipts shall be deposited in an escrow account managed by an independent administrator jointly appointed by copyright owners of sound recordings and the American Federation of Television and Radio Artists (or any successor entity) to be distributed to nonfeatured vocalists (whether or not members of the American Federation of Television and Radio Artists) who have performed on sound recordings.

---

[3] In 2012, the American Federation of Television and Radio Artists ("AFTRA") merged with the Screen Actors Guild ("SAG") to become SAG-AFTRA.  References to "SAG-AFTRA" in this order should be read to encompass the current union and its predecessor entities.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|----------|------------------------|------|---------------|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

> (D) 45 percent of the receipts shall be paid, on a per sound recording basis, to
> the recording artist or artists featured on such sound recording . . . .

17 U.S.C.A. § 114(g)(2)(A)-(D) (West); SUF ¶¶ 2-4. Since 1998, the Fund has operated as the "independent administrator" to receive royalties from SoundExchange and distribute those royalties to non-featured musicians and vocalists (collectively, "non-featured performers"), pursuant to this statutory scheme. SUF ¶¶ 2, 6. As the statutory "independent administrator," the fund is required to distribute royalties to non-Union non-featured performers, as well as to non-featured performers who are Union members, and may "deduct from any of its receipts, prior to the distribution of such receipts to any person or entity entitled thereto … [its] reasonable costs." SUF ¶¶ 3-4.

The Fund is a tax-exempt 501(c)(6) organization for federal tax law purposes. Id. ¶ 7. The Fund's employees are not government employees and are not paid by the federal government for their work at the Fund. SUF ¶ 9. Likewise, the Fund's officers and Trustees are not appointed by the federal government. SUF ¶ 10.

The Trust Agreement requires that three of the Fund's six Trustees be appointed by each of AFM and SAG-AFTRA. SUF ¶ 11. Under the Trust Agreement, at least one of the three Trustees appointed by each Union must be a "rank-and-file" Union member, SUF ¶ 12, and provides that the "Trustees shall not receive compensation for the performance of their duties." SUF ¶ 13; dkt. 109-1 at 59. By its own terms, the Trust Agreement empowers the Trustees to construe its terms, vests the Trustees with authority to determine the nature and amount of payments that are distributed to non-featured performers, and provides that no non-featured performer "shall have any right, title, or interest in or to the Fund" or any Fund assets except as determined by the Trustees. SUF ¶¶ 14-17. In addition, the Trust Agreement states that the Trustees are authorized to "purchase or obtain from the AFM [or] SAG-AFTRA … any data helpful for the identification and location of artists eligible for renumeration or the identification of recorded or other performances covered by an agreement for the receipt and distribution of renumeration." SUF ¶ 18.

**B. The Fund's Operations**

Every year, SoundExchange delivers to the Fund the royalties allocated to non-featured performers under the Copyright Act and a "Frequency Report" showing the royalties attributed to each track based on the frequency of performance. SUF ¶ 19. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Fund then attempts to distribute royalties to as many non-featured performers as possible, provided that the performer is entitled to an amount that is more than de minimus ($10). SUF ¶ 20. At present, the Fund maintains its own staff of researchers to identify non-featured performers to whom royalties are owed. PSUF ¶¶ 5-6.

The manner in which the Fund's distribution process is conducted varies based on whether a particular "Covered Recording" (i.e. a song for which the Fund has allocated royalties) matches any track in the Fund's own database of tracks that have been researched in prior years. SUF ¶¶ 21-22. Covered Recordings that "match" with tracks in the database are paid out without additional research conducted by the Fund, whereas other tracks must be research by the Fund's staff.[4] SUF ¶ 23. If a Covered Recording requires research, the Fund's research department looks to multiple sources to identify and locate the correct non-featured performer(s) who performed on that Covered Recording, including session reports, other information provided by the Unions, online resources, and claims received from non-featured performers. SUF ¶ 24; PSUF ¶ 6, 56. If the Fund is unable to locate a performer after research is conducted, the information about the performer that is known to the Fund is entered into an Unclaimed Royalties list that is published on the Fund's website.

Royalties associated with a Covered Recording are divided among all of the non-featured performers who can be identified as having performed on that recording. SUF ¶ 26. If no non-featured performers performed on a given Covered Recording, then the royalties associated with that track are allocated among the remaining non-featured performers who performed on other Covered Recordings, based on the frequency with which each track was played. SUF ¶ 27.

For approximately the first ten years of its existence, the Fund was staffed by one-full time employee and its Administrator, Dennis Dreith, and shared office space and resources with the Film Musicians Secondary Markets Fund. SUF ¶¶ 30, 31. During that period, the Fund collected and distributed less than $10 million annually, and no more than $5 million in each of its first five years. SUF ¶¶ 32, 33. Beginning in approximately 2010,

---

[4] The parties appear to dispute the extent to which the Fund's research and distribution of royalties is limited by staffing and resources; plaintiff contends that all performers with a track on the frequency list will be paid "once the royalty amount crosses" the threshold for non-de minimis payments specified by the fund's guidelines. See GDF ¶ 23, 28.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | | Date | June 14, 2021 |
|----------|------------------------|---|------|---------------|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | | |

the amount of statutory royalties received by the Fund from SoundExchange began to substantially increase due to the increased use of digital streaming services including Sirius XM Satellite Radio and Pandora. SUF ¶ 34. The Fund subsequently hired additional staff, made Dreith its full-time Executive Director, paid by the Fund, and acquired its own office space. <u>See</u> SUF ¶¶ 37-39. Dreith retired from the Fund in 2017. SUF ¶¶ 40-41.

**C. Services Provided by the Unions**

Since the Fund's inception, the Unions have provided the Fund with information and other services of the type that is necessary to identify and distribute royalties to non-featured performers. SUF ¶ 43. Non-featured performers represent a small percentage of each Union's membership, and approximately half of the non-featured performers who are Fund royalty participants are not members of either Union. SUF ¶ 45-47.

The performer and track information provided by the Unions is derived from records that have been collected, complied, and maintained as part of a large-scale, ongoing effort by the Unions over the course of decades. SUF ¶ 48. The Union's records are derived from session reports (also termed "B-forms"), which contain identifying information for some or all of the non-featured musicians and vocalists who performed at the sessions being reported. SUF ¶ 49. Session reports are expected to compile information related to both Union members and non-Union members.[5] SUF ¶ 50. This data and identifying information is maintained in the ordinary course of the Unions' operations because facilitate the Unions' work to ensure that listed performers are paid for their work at recorded sessions. PSUF ¶¶ 8, 17. Session reports are also sent to the Unions' pension funds, without charge, and are shared with the Film Musicians Secondary Markets Fund and Industry Sound Recordings Distribution Fund.[6] PUSF ¶¶ 18, 58.

---

[5] Plaintiff does not dispute that session reports that are completed are expected to include this information. However, he contends that session reports are prepared only for Union session recordings and that "the Union session forms are sometimes incomplete and are not even reliably completed for all Union-session recordings." GDF ¶ 50.

[6] The parties appear to dispute whether the Film Musicians Secondary Markets Fund and Industry Sound Recordings Distribution Fund receive these reports without cost, or provide compensation covering access to this data via collective bargaining agreements. <u>See</u> RPSUF ¶ 58.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                            **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Over the lifetime of the Fund, the Unions have fielded thousands of requests from the Fund for session and performer information.  SUF ¶¶ 56, 57.  Those requests are handled by Union staff, using a mix of hard copy and electronic repositories located at AMF and SAG-AFTRA chapters in New York, Los Angeles, and Nashville.  SUF ¶¶ 59-60, 62.  Fulfilling each individual data request from the fund can take a Union representative anywhere from a few minutes to half an hour or longer; in instances where the request concerns a hard copy form, the Union representative must locate and scan the requested document to be delivered to the fund electronically.  SUF ¶¶ 62, 64.

For the first 15 years of the Fund's operations, the Unions did not charge the Fund for any information or services they provided.  SUF ¶ 44.

**D. The Trustees' Approval of the Data Purchase and Service Agreement**

On July 22, 2013, the Fund entered into a Data Purchase and Services Agreement (the "Services Agreement") with the Unions.  SUF   ¶ 76.  Pursuant to the Services Agreement, the Unions agreed to provide the Fund with information from its member databases, for the purpose of enabling the Fund to obtain contact information for Union members who are entitled to receive royalties, and to provide the Fund with access to session reports and other information of the type that is necessary to identify and contact non-Union royalty recipients.  SUF   ¶ 77. In addition to the provision of data, the Service Agreement provides that each Union shall make efforts to further the interests of the Fund and its beneficiaries through participation in certain domestic and international music industry forums, and with respect to activities related to the U.S. Copyright Office and other U.S. governmental entities.[7] Dkt. 109-1 at 266; see also SUF ¶¶ 66-73.  In exchange for these data and services, the Services Agreement provides that the Unions are to receive compensation in the form of 3% of the royalty receipts allocated for distribution by the Fund in each distribution cycle, with 1.5% going to SAG-AFTRA and 1.5% going to AFM.  SUF ¶ 78.

Discussions among Fund personnel regarding the concept that the Fund should compensate the Unions for their data and services had begun at least by 2012.  SUF ¶ 79.

---

[7] The parties appear to dispute the extent to which the Unions would conduct this advocacy work as part of their own core missions, irrespective of the requirements of the Service Agreement.  See GDF ¶¶ 66-73.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|----------|------------------------|------|---------------|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Defendant Crabtree-Ireland testified at his deposition that the Trustees considered whether the Fund should conduct a study of the time and effort expended by Union personnel in providing information to the fund, prior to approval of the 3% fee, but determined not to conduct such a study "to limit the costs associated with setting up the service fee agreement."[8] Dkt. 109-1 at 32; SUF ¶ 81. Fund attorney Patricia Polach, who has also represented AFM, participated in the process of drafting the service agreement. RSUF ¶¶ 23, 28.

On May 30, 2013, Drieth (then the Fund's Executive Director) circulated an email to all of the Fund Trustees, which included materials listing "AFM & SAG-AFTRA Service fees" as an item to be considered at the upcoming board meeting. SUF ¶ 82. The Services Agreement was proposed during the Board of Trustees meeting held on June 4, 2013, and subsequently approved. SUF ¶ 83.

During the June 4, 2013 Board of Trustees Meeting, the Trustees and Dreith considered whether the 3% fee would cause the Fund's overall expense ratio to increase to a level that was out of step with the overall administrative fee charged by certain similar royalty distribution organizations, which in some cases have expense ratios in excess of 25%. SUF ¶ 84. A concern was raised during the meeting as to whether the 3% fee would impede the Fund's ability to reach bilateral agreements with those other performing rights organizations, and it was concluded that the 3% fee did not pose those risks. SUF ¶¶ 84-84. The minutes of the June 4, 2013 Board of Trustees meeting do not reflect that any concerns were raised about the Services Agreement or that anyone present stated any objections to the Services Agreement. See dkt. 109-1 at 68-69; SUF ¶¶ 86-87. Defendant Joyce did not participate in the vote on the Services Agreement because he was out of the country, PSUF ¶ 37, and defendant Crabtree-Ireland testified that he abstained from voting on the Services Agreement without "reach[ing] a conclusion about having a conflict

---

[8] Plaintiff does not dispute that Defendant Crabtree-Ireland so testified. However, he relies on the testimony of several Trustees who stated that they did not know how the 3% figure was reached to dispute whether the appropriateness of a 3% fee was in fact analyzed and whether a study to determine the reasonableness of that fee was in fact considered or raised with other Trustees. See GDF ¶ 81.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

because [he] felt it was better to not be in that position in the first place."[9]  Dkt. 111-4 at 65; see also PUSF ¶ 43.

Defendants Taub, Crabtree-Ireland, Hair, Bouton, Joyce, and Gagliardi each testified in this action that they believe the Service Fee was reasonable and justified when it was approved in 2013, citing reasons including the inherent value of the data to the Fund's mission, the Union's lobbying activities on behalf of Fund members, and the work the Unions conduct to provide data to the Fund.  See generally SUF ¶¶ 92-111.  Defendant Taub testified that she did not evaluate the reasonable cost of the services provided or have an expectation of how much money would be paid via the 3% Service Fee when voting for the Services Agreement.  Dkt. 111-4 at 647; see also PUSF ¶ 36.

Between 2014 and 2018, each of the Annual Reports issued by the Fund included a statement disclosing the Service Fee.  SUF ¶¶ 112-115. For example, the Fund's 2015 Annual Report states that "[i]n June 2013, the Fund entered into a Data Purchase and Service Agreement with the AFM and SAG-AFTRA" covering access to member information and session reports, under which "the Fund agreed to pay each union 1-1/2% of the amount distributed in each distribution. During the years ended March 31, 2015 and 2014, the Fund paid $272,845 and $193,814, respectively, to each union."  SUF ¶ 113.  To date, the Fund has paid $10,229,756 in Service Fees to the Unions.  PUMF ¶ 60.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out "specific facts showing a genuine issue for trial" in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The

---

[9] Plaintiff does not dispute that defendant Crabtree-Ireland so testified, but contends that the minutes of the June 4, 2013 board meeting do not reflect such an abstention.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

### A. Breach of Fiduciary Duty

Plaintiff asserts a claim against the Trustee defendants for breach of fiduciary duty owed to the Fund in connection with their approval and implementation of the Service Fee. SAC ¶ 56. Specifically, plaintiff alleges that all of the Trustees who approved the Services Agreement have affiliations with the Unions,[10] a "significant conflict of interest," and, as

---

[10] The trustees are allegedly affiliated with the Unions as follows: (1) Hair is the President of AFM; (2) Gagliardi serves on the Executive Committee of AFM; (3) Crabtree-Ireland is the Chief Operating Officer and General Counsel of SAG-AFTRA; (4) Taub previously served as the National Manager of Sound Recordings for SAG-AFTRA; (5) Joyce is a member of SAG-AFTRA and serves on the Board of SAG-AFTRA1; and (6) Bouton is a member of AFM and is the Intellectual Property Rights committee Chair of the AMF-affiliated Recording Musicians Association. Id. ¶¶ 30-35.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | | Date | June 14, 2021 |
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | | |

such, breached "their fiduciary duties of loyalty, reasonableness and good faith, diligence and prudence" and to act solely in the interests of Fund beneficiaries, by implementing the Service Fee.  Id. ¶ 62.

To establish a claim for breach of fiduciary duty, a plaintiff must prove: "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." Rothenberger v. Green, No. SACV 13-174-JST (JPRx), 2013 WL 12130035, at *4 (C.D. Cal. May 13, 2013) (citing Stanley v. Richmond, 35 Cal. App. 4th 1070, 1086 (1995)).  While "the existence of legal duty in the first instance and its scope are questions of law," Kirschner Bros. Oil, Inc. v. Natomas Co., 185 Cal. App. 3d 784, 790 (Ct. App. 1986) (internal citations omitted), "the determination of whether a breach of fiduciary duty occurs under a particular set of facts is mainly for the trier of facts."  O'Neal v. Stanislaus Cty. Employees' Ret. Assn., 8 Cal. App. 5th 1184, 1215, 214 Cal. Rptr. 3d 591, 612 (2017) (collecting cases).  "Breach may be resolved as a matter of law, however, if the circumstances do not permit a reasonable doubt as to whether the defendant's conduct violates the degree of care exacted to him or her."  Id.  Here, the parties do not dispute that the Trustee defendants owed a fiduciary duty to the Fund.  See Mot. at 8.

Defendants seek summary judgment on plaintiff's breach of fiduciary duty claim on the grounds that undisputed evidence demonstrates that the Trustees made a "prudent, informed and reasonable decision to approve the Service Fee", including by relying on Dreith's expertise as Fund Executive Director, and therefore did not breach their fiduciary duties owed to the Fund.  See Reply at 9; Mot. at 1-2, 11.  First, defendants argue that the undisputed evidence demonstrates that the Service Fee, assessed as 3% of allocated royalties, is reasonable and paid in exchange for session report data that is essential to the Fund's mission.  See Mot. at 11-16.  Defendants argue that plaintiff's conflict of interest theory fails as a matter of law, contending both that the Trust Agreement explicitly authorizes the Trustees to purchase "data helpful for the identification and location of artists eligible for renumeration" from the Unions, and that it is beyond dispute that the Trustees did not "benefit from the Service Fee in their personal capacities, […] or set the service fee at a rate that unfairly favors the Unions at the expense of the Fund beneficiaries."  Mot. at 16-19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Plaintiff responds that the Copyright Act and the Trust Agreement authorize the Fund to deduct only "reasonable" costs from the royalties it collects, and argue that the Services Agreement was contrived to give the Unions an equity stake in the Fund and the 3% fee "was not based on the cost or value of the services (i.e. whether said amount was reasonable")." Opp'n at 10.  Plaintiff points to evidence to demonstrate the existence of genuine factual disputes as to whether the Service Fee constitutes a "reasonable cost" in exchange for the data provided by the Unions.  Opp'n at 12. Plaintiff further argues that the Service Agreement was implemented through a process replete with conflicts of interest due to the Trustees' employment at, and leadership of, the Unions and was structured to "outstrip any reliable metric of reasonable cost or value, therefore favoring the Unions over the Fund's beneficiaries."  Opp'n at 17.  Moreover, plaintiff argues that the Trustee defendants are not entitled to rely on the business judgment rule or the language of the Trust Agreement to negate their conflicts of interest because neither absolves a conflicted fiduciary who acts in bad faith or unfairly.[11]  See Opp'n at 11 (citing F.D.I.C. v. Faigin, No. CV 12-03448 DDP CWX, 2013 WL 3389490, at *5 (C.D. Cal. July 8, 2013) (quoting Cal. Corp. Code § 309)), 17 (citing Rest. 3d of Trusts § 78 cmt. c(2) ("no matter how broad the provisions of a trust may be in conferring power to engage in self-dealing or other transactions involving a conflict of fiduciary and personal interests, a trustee violates the duty of loyalty to the beneficiaries by acting in bad faith or unfairly.")

Triable questions of fact exist that preclude the Court from granting summary judgment to the Trustee defendants.

---

[11] Plaintiff further contends that the Service Fee is prohibited by 31 U.S.C. § 9701, which provides that charges imposed by federal agencies must be fair and based on the "cost" or "value" of services provided by the agency, in light of the "public policy or interest served." At oral argument, counsel for plaintiffs requested that the Court omit its discussion of § 9701 from this order, arguing that the statute's applicability was not fully briefed on the motion for summary judgment.  Having further reviewed the parties' filings and cited authorities, however, the Court finds that § 9701 is inapposite here both because the Fund is not a federal agency and because, even assuming *arguendo* that the Fund were a federal agency, the statute applies to charges assessed by the subject agency, not fees paid by that agency.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                      **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | | Date | June 14, 2021 |
|----------|------------------------|---|------|---------------|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | | |

For example, there are triable issues of fact as to whether the Trustee defendants breached their duty of loyalty to the Fund by conceiving of and entering into the Services Agreement to benefit the Unions, while employed by the Unions. The duty of loyalty requires a trustee to "display throughout the administration of the trust complete loyalty to the interests of the beneficiary and […] exclude all selfish interest and *all consideration of the interests of third persons*." In re Northrop Grumman Corp. Erisa Litig., No. CV 06-06213 MMM (JCx), 2015 WL 10433713, at *26 (C.D. Cal. Nov. 24, 2015) (citing G. Bogert & A. Hess, The Law of Trusts and Trustees § 543 (3d ed. 2015) ) (emphasis added). Moreover, "[t]he business judgment rule does not shield actions taken without reasonable inquiry, with improper motives, or as a result of a conflict of interest." Everest Investors 8 v. McNeil Partners, 114 Cal.App.4th 411, 430, 8 Cal.Rptr.3d 31 (Cal.Ct.App.2003). Here, there is disputed evidence regarding the genesis of the Services Agreement and whether the Trustees' intended to provide a windfall to the Unions via the Service Fee. It is undisputed that the amount of statutory royalties received by the Fund has increased since 2010, due to increased use of digital streaming services such as Sirius XM Satellite Radio and Pandora. SUF ¶ 34. There is evidence, including testimony from the Trustees, that supports the conclusion that the Service Fee was implemented in 2013 because it was recognized that the Union's data was valuable to the Fund's efforts to distribute those increased royalties. See e.g. SUF ¶¶ 79-81. However, other evidence suggests that implementation of the Service Fee was motivated by Union financial interests. For example, Dreith testified that defendant Hair (then President of AFM) told him repeatedly that Hair:

> felt it was unfair that the unions had invested a great deal of time and money and energy to help pass the copyright law and establish the fund […] but yet the AFM was going through a lot of financial difficulties and didn't have the money to pay for a lot of things that he wanted to do, and he felt it was unfair that the fund had all this money, and he felt he should have some of it.

Dkt. 111-4 at 184-185. Dreith further testified that, in about 2010 or 2011, Hair rejected suggestions that the Fund should "basically compensate [the Unions] for the work they had done and reimburse them for their expenses" because Hair did not believe a reimbursement or "one-time fee" would be "fair" to the Unions. Id. at 156, 161. There is conflicting evidence as to whether defendant Crabtree-Ireland (SAG-AFTRA COO and General Counsel), who testified that he abstained from voting on the Services Agreement because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

"I didn't feel like it would be great for me to participate in that and then sign the document on behalf of SAG-AFTRA" in fact participated in a consensus approval of the service agreement. Dkt. 114-1 at 61; see also GDF 86-87. In addition, the parties dispute whether the Fund's attorney, Patricia Polach, represented both the Fund and the Unions with respect to the Services Agreement, and was therefore conflicted. Compare SUF 89, with dkt. 111-4 at 203 ("she was counsel for the fund, counsel for the AFM, and counsel for SAG-AFTRA"). These disputed questions of material fact preclude the Court from determining as a matter of law that the Trustees did not breach their duty of loyalty to the Fund.

Nor can the Court determine, at this time, whether the amount of the Service Fee, assessed as 3% of all royalties allocated to non-featured performers by the Fund, represents a "reasonable" cost. The parties agree that the Trustees have a duty to administer the Fund "diligently and in good faith, in accordance with the terms of the trust and applicable law." Rest. 3d of Trusts § 76 (2007). The record before the Court is replete with conflicting evidence regarding the value of the Unions' data and other services to the Fund, the availability of alternate data sources, and the Trustees' diligence in ascertaining the reasonableness of setting the Service Fee at 3%. For example, defendants put forward testimony stating that the Union data is "something that is not available anywhere else" and losing access to that data would impair the Fund's ability to locate and pay beneficiaries, but other evidence suggests that the Fund conducts much of its research using other records and online sources, and could purchase at least some sound recording contracts from other entities, such as the Union pension funds, at a lower price.[12] See GDF 51-54. In addition, although each of the Trustee defendants has testified in this action that they believe the amount of the Service Fee is justified, and there are communications from Dreith to the Trustee defendants stating that a Service Fee was "highly warranted," see e.g. SUF ¶¶ 80, 90, defendant Taub also testified that she did not evaluate the reasonable cost of the Union services, or the cost to the Unions in providing them, and did not "have an expectation of how much money would actually be paid from The Fund to the unions under the service agreement," prior to voting to approve the Service Agreement. Dkt. 111-4 at 647-48. In light of these factual disputes, the Court cannot determine at this stage that the Service Fee is reasonable as a matter of law. See Evanston Ins. Co. v. OEA, Inc., 566 F.3d

---

[12] Defendants contend that the contracts the Fund has previously purchased from the Union Pension Funds are not "session reports," but do not appear to dispute that the contracts are a potential source of identifying information for non-featured performers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | | Date | June 14, 2021 |
|----------|------------------------|--|------|---------------|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | | |

915, 920 (9th Cir. 2009) ("reasonableness becomes a question of law and loses its triable
character if the undisputed facts leave *no room for a reasonable difference of opinion*.)
(emphasis added).

Accordingly, the Court **DENIES** defendants' motion for summary judgment with
respect to the breach of fiduciary duty claim.

**B. Conversion**

Plaintiff asserts a claim against all defendants for conversion.  SAC ¶¶ 71-79.
Specifically, plaintiff alleges that he and the class have an ownership interest in specific
royalties held by the Fund and that the "Unions and Trustees intentionally and substantially
interfered with Plaintiff's and Class Members' rights by implementing a Service Fee which
prevented Plaintiff and the Class from accessing the full amount of their rightful property."
Id. ¶¶ 72, 74. "Conversion is the wrongful exercise of dominion over the property of
another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to
possession of the property; (2) the defendant's conversion by a wrongful act or disposition
of property rights; and (3) damages."  Lee v. Hanley, 61 Cal. 4th 1225, 1240 (2015)
(citations omitted).

Defendants seek summary judgment on plaintiff's conversion claim on the grounds
that plaintiff and members of the class do not have a property interest in the royalties
distributed by the Fund or in the amount of the Service Fee, when deducted as a "reasonable
cost." Mot. at 20-22.  Specifically, defendants argue that because the Copyright Act
requires the Fund to collect and distribute royalties to non-featured performers as a class,
but does not does not explicitly proscribe how individual distributions must occur, plaintiff
and members of the class do not have a cognizable property interest sufficient to support a
claim for conversion.  Mot. at 20.  In addition to relying on the Fund's discretion "to
distribute and allocate royalties" under the Copyright Act, defendants further contend that
the Fund's authority to deduct "reasonable costs" in furtherance of "collection, distribution
and administration of the royalties" provides "a degree of discretion inconsistent with the
existence of an enforceable property right" in the "amount of the Service Fee."  Id. at 22.

Plaintiff argues in opposition that summary judgment is not warranted on his
conversion claim because, as the Court found at the motion to dismiss stage, the Copyright
Act grants non-featured performers a cognizable property interest in the royalties held by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

the Fund. Opp'n at 19-20. Plaintiff also contends that that the "reasonable costs" provision of the Copyright Act is not inconsistent with a finding of a cognizable property interest because "[s]ection 114 does not merely entitle performers to "reasonable royalties," such that the measure is left entirely to the Fund, but to defined royalties of specified percentages, with [d]efendants' discretion cabined to only certain deductible costs." Id. at 21.

### a. Plaintiff's Property Interest In the Royalties

First, consistent with its reasoning at the motion to dismiss stage, the Court finds that the Copyright Act supports plaintiff's claimed property interest in royalties due to him via the Fund. To claim a property interest, one "must ... have a legitimate claim of entitlement to it." Bd. Of Regents v. Roth, 408 U.S. 564, 577 (1972)). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. (citing, as an example, the property interest created by welfare benefits, given the statute's clear eligibility definitions). "Whether an expectation of entitlement is sufficient to create a property interest 'will depend largely upon the extent to which the statute contains mandatory language that restricts the discretion of the [decisionmaker].'" Allen v. City of Beverly Hills, 911 F.2d 367, 370 (9th Cir. 1990) (citing Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir.1980) ). Accordingly, "a statute must contain 'particularized standards or criteria' to create a property interest." Doyle v. City of Medford, 606 F.3d 667, 673 (9th Cir. 2010) (citing Allen, 911 F.2d at 370–71). "A regulation granting broad discretion to a decision-maker does not create a property interest." Id. at 672–73.

The Court finds that the Copyright Act's requirements are sufficiently stringent to grant non-featured performers a cognizable property interest in royalties held in escrow and payable by the Fund. Section 114 states with particularized precision that "a nonprofit collective ... shall distribute [royalty receipts] as follows: ... (B) 2 ½ percent of the receipts shall be deposited in an escrow account managed by an independent administrator ... to be distributed to nonfeatured musicians ... [and] (C) 2 ½ percent of the receipts shall be deposited in an escrow account managed by an independent administrator ... to be distributed to nonfeatured vocalists." 17 U.S.C.A. § 114 (West). Pursuant to the statute, the Fund's administrators are considerably restricted in how they distribute royalties: the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                        **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Copyright Act specifically determines the percentages to which the various artists and copyright holders, including "nonfeatured musicians" and "nonfeatured vocalists" are each entitled.

The Court is unpersuaded by defendants' arguments that the degree of discretion exercised by the Fund in selecting which recordings to research, allocating royalties to performers on those royalties, or setting a "de minimus" threshold under which it will not cut checks compels a contrary conclusion or otherwise suggests that reading the Copyright Act to confer a property right would "lead to an absurd result." See Mot. at 21-22 (citing Andrews v. Sirius XM Radio Inc., 932 F.3d 1253, 1260 (9th Cir. 2019)).  As an initial matter, although the text of the Copyright Act does not in so many words entitle each non-featured performer to "his or her pro rata share" of the royalties generated by each sound recording, it entitles the non-featured musicians and vocalists appearing on the sound recording each to a specific amount: "2 ½ percent of receipts" less only "reasonable costs," even if only one non-featured musician or vocalist appears on the track.  Defendants do not point to any authority suggesting that the Fund could, for example, identify five non-featured musicians who performed on a particular sound recording, but choose to allocate the 2.5% in royalties to only two of them, and the Court finds that, given the royalties' similarity to earned but unpaid wages, such a reading of the Copyright Act would create the "absurd result" that defendants seek to avoid.  Likewise, defendants present no authority to support their argument that a finding that non-featured performers have a cognizable property interest in royalties held in escrow by the Fund would "impose a legal duty on the Fund to identify each recipient and distribute funds to him or her—whether or not it was economically sensible or administratively feasible to do so," nor is the Court aware of any such authority.[13]  See Reply at 19.

As such, summary judgment is not warranted on the grounds that plaintiff and the class lack a cognizable property interest in royalties held by the Fund.

**b.   Deduction of "Reasonable Costs"**

As noted above, defendants also contend that, even assuming plaintiff has a cognizable property interest in his royalties, the Fund's authority to deduct "reasonable

---

[13] For example, defendants would also be under no legal obligation to "boil the ocean" seeking out the owner of a book misplaced in their offices.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

costs" in furtherance of "collection, distribution and administration of the royalties" provides "a degree of discretion inconsistent with the existence of an enforceable property right" in the "amount of the Service Fee." Mot. at 22-23. As such, defendants argue that summary judgment on plaintiff's conversion claim is appropriate because the Service Fee is a "reasonable cost" within the meaning of the Copyright Act. Id. at 23.

The Court is unpersuaded that plaintiff's property interest is eliminated by the Copyright Act's "reasonable costs" provision." See 17 U.S.C. § 114(g)(3). As an initial matter, none of the cases upon which plaintiff relies to argue that the appearance of the term "reasonable" in the statute precludes a property interest addresses a fact pattern or statutory scheme that is similar to the circumstances presented here, in which the Fund acts as the "independent administrator" of an escrow account holding royalties payable to non-featured performers and may deduct *only* "reasonable costs." For example, Baumgardner v. Town of Ruston, concerns the amount of fees that a State of Washington municipal land use board may charge as a matter of Washington state law, and found plaintiffs had not "convincingly shown" a federal due process interest in the fees charged both on the grounds that the municipality possessed discretion to determine the reasonable fee, and as a matter of federal constitutional avoidance. 712 F. Supp. 2d 1180 (W.D. Wash. 2010) (quoting City of Los Angeles v. County of Kern, 581 F.3d 841, 846 (2009)). Likewise, neither the Supreme Court's holding in Town of Castle Rock v. Gonzalez that a statute directing that police "shall use every reasonable means to enforce a restraining order" does not create a property interest depriving police of their discretion in making arrests, 545 U.S. 748, 761, 125 S. Ct. 2796, 2806, 162 L. Ed. 2d 658 (2005), nor the Ninth Circuit's holding in Jacobson v. Hannifen that there is no due process right to a Nevada gaming license because the Nevada Gaming Commission has discretion to deny a license to any applicant provided that "the basis for its decisions be reasonable," 627 F.2d 177, 180 (9th Cir. 1980), stands for the proposition that a performer has no property interest in the amount of "reasonable fees" deducted from their royalties.

Moreover, a finding that plaintiff may not assert a property interest in the precise amount of "reasonable costs" assessed by the Fund would not be sufficient to support summary judgment in defendants' favor here. That is because, as the Court has identified with respect to plaintiff's breach of fiduciary duty claim, there are significant unresolved factual disputes as to whether the Service Fee is a "reasonable cost" within the meaning of the Copyright Act. See *infra* at IV.A; see also MTD Order at 9 (17 U.S.C. § 114(g)(3)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | | Date | June 14, 2021 |
|---|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | | |

"only allows the deduction of "reasonable," rightful costs"). Those disputed questions of material fact as to whether the amount of the Service Fee is unreasonable preclude the Court from determining as a matter of law that plaintiff and the class have no cognizable property interest in any of the Service Fees that have been deducted by the Fund.

For the foregoing reasons, defendants' motion for summary judgment as to plaintiff's conversion claim is **DENIED**.

### C. Money Had and Received

Plaintiff asserts a claim against all defendants for money had and received, alleging that the Trustees and the Unions have received and are currently retaining royalties that belong to plaintiff and the class, have benefited from their receipt, and are indebted to plaintiff and the class for that money. SAC ¶ 65-66. "The count for money had and received states in substance that the defendant is indebted to the plaintiff in a certain sum 'for money had and received by the defendant for the use of the plaintiff.' " 4 B.E. Witkin et al., Cal. Proc. § 561 (5th ed. 2008).

Defendants move for summary judgment on plaintiff's money had and received claim only on the grounds that "if [p]laintiff cannot establish that the decision to approve the Service Fee constituted a breach of fiduciary duty" then he necessarily cannot "establish that 'equity and good conscience' requires the return of the Service Fee, which is fatal to his claim for money had and received." Mot. at 19-20. In reply, defendants concede that "a common count for money had and received rises and falls with the underlying" claims for breach of fiduciary duty and conversion because a common count presumes that the money is owed. Reply at 9 (quoting King v. Bumble Trading, Inc., 393 F. Supp. 3d 856, 870 (N.D. Cal. 2019)).

Because the Court concludes that triable issues of fact remain with respect to plaintiff's underlying claims for breach of fiduciary duty and conversion, it cannot resolve the question of whether defendants are indebted to plaintiff and the class for any certain sum of money. Accordingly, the Court **DENIES** defendants' motion for summary judgment with respect to the money had and received claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

### D. Declaratory Relief

Plaintiff seeks declaratory relief "determining that the statutory scheme prohibits the Trustees from diverting three percent of Royalties collected to the Unions, and declar[ing] the Data Purchase and Services Agreement void and unenforceable." SAC ¶ 70.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction," any federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Declaratory Judgment Act "does not create new substantive rights, but merely expands the remedies available in federal courts" such that parties may "determine whether they have any legal obligations to their potential adversaries." Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc., 771 F.3d 632, 635 (9th Cir. 2014).

Defendants seek summary judgment as to declaratory relief only on the grounds that "if [p]laintiff lacks any 'viable underlying claim' against [d]efendants, he cannot be entitled to declaratory relief." Mot. at 20 (citing Shaterian v. Wells Fargo Bank, N.A., 829 F. Supp. 2d 873, 888 (N.D. Cal. 2011)).

Here, because the Court finds that triable issues of fact remain as to plaintiff's underlying claims, summary judgment as to his claim for declaratory relief is not warranted. Moreover, to the extent that defendants argue in reply that declaratory relief is unavailable here because it is "duplicative of [plaintiff's] remaining claims," the Court notes, as it explained at the motion to dismiss stage, that "[t]he fact that a declaratory judgment may be granted 'whether or not further relief is or could be prayed' indicates that declaratory relief is alternative or cumulative and not exclusive or extraordinary." Fed. R. Civ. P. 57 advisory committee's notes.

Accordingly, defendant's motion for summary judgment as to declaratory relief is **DENIED**.

### E. Punitive Damages

Plaintiff prays for punitive damages as to his claims for breach of fiduciary duty and conversion. SAC at Prayer for Relief (f). Plaintiff's punitive damages claims arise under California Civil Code § 3294, which authorizes punitive damages "in an action for breach

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|----------|------------------------|------|----------------|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

of an obligation not arising from contract, if the plaintiff proves by clear and convincing evidence that defendant has been guilty of oppression, fraud, or malice." Scott v. Phoenix Sch., Inc., 175 Cal. App. 4th 702, 715, 96 Cal. Rptr. 3d 159, 169 (2009). Claims for punitive damages require an examination of the allegedly wrongful conduct at issue to determine whether "defendant's acts are reprehensible, fraudulent, or in blatant violation of law or policy." Pac. Gas & Elec. Co. v. Superior Court, 24 Cal. App. 5th 1150, 1170, 235 Cal. Rptr. 3d 228, 244 (2018), as modified on denial of reh'g (July 26, 2018), review denied (Oct. 17, 2018).

Defendants move for summary judgment as to plaintiff's request for punitive damages, arguing that no evidence supports a finding that the Fund or its Trustees engaged in "despicable" conduct as is required to make a showing of "oppression, fraud, or malice." Mot. at 24, quoting In re First Alliance Mortg. Co., 471 F.3d 977, 998 (9th Cir. 2006). Further, defendants contend that "evidence of fraud, malice, or oppression […] must be supported by clear and convincing evidence, even at the summary judgment stage." Mot. at 24 (quoting Haley v. Cohen & Steers Cap. Mgmt., Inc., 871 F. Supp. 2d 944, 962 (N.D. Cal. 2012) (granting summary judgment because "a paucity of evidence establish[ed] the type of conduct that would adequately support an award of punitive damages."). In opposition, plaintiff argues that the factual record here is "rife with clear and convincing evidence that the Trustees knowingly and purposefully violated their fiduciary duties to the class," citing to evidence showing that the Trustees acted to benefit the Unions at the expense of Fund beneficiaries without regard for the appropriateness or legality of the service fee. Opp'n at 24.

"Summary judgment on the issue of punitive damages is proper only when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud, or oppression." Madrigal v. Allstate Indem. Co., No. CV 14-4242 SS, 2015 WL 12747906, at *20 (C.D. Cal. Sept. 30, 2015) (internal quotations omitted). Here, drawing inferences from the facts in a light most favorable to plaintiff, the Court concludes that a rational trier of fact could find that defendants acted with the requisite malice in breaching their core fiduciary duties to the Fund's beneficiaries. Accordingly, the Court **DENIES** defendants' motion for summary judgment as to plaintiff's prayer for punitive damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                   **'O'**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | June 14, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

## V.    CONCLUSION

In accordance with the foregoing, defendants' motion for summary judgment is **DENIED**.

IT IS SO ORDERED.

|  | 00 | : | 18 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |