JENNER & BLOCK LLP
Andrew J. Thomas (Cal. Bar No. 159533)
ajthomas@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
Andrew G. Sullivan (Cal. Bar No. 301122)
agsullivan@jenner.com
Anna K. Lyons (Cal Bar No. 324090)
alyons@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

*Attorneys for All Defendants*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KEVIN RISTO, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a Delaware corporation, et al.,

Defendants.

Case No. 2:18-cv-07241-CAS-PLA

Class Action

**OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE ANY MENTION, REFERENCE, OR EVIDENCE RELATED TO DEFENDANTS' 50-SONG RESEARCH EXERCISE**

Hearing Date: July 19, 2021
Hearing Time : 11:00 a.m.
Courtroom: 8D (Telephonic)

[Declaration of Andrew G. Sullivan, with Exhibits 1-14 filed concurrently]

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

III. ARGUMENT .......... 4

A. Ms. Sandell is Plainly Permitted to Provide Testimony Regarding the Project She Managed .......... 4

B. Plaintiff's Criticism of Mr. Nolte's Conclusions Drawn from the 50-Song Exercise Is Likewise Not a Basis for Exclusion .......... 6

C. The 50-Song Exercise is Squarely Relevant .......... 8

D. Plaintiff Has Suffered No Prejudice From Defendants' Production Of Documents And Testimony Regarding the 50-Song Exercise .......... 10

IV. CONCLUSION .......... 10

# I. INTRODUCTION

Plaintiff's Motion in Limine No. 2 asks that the Court disregard all references to a project managed by Julie Sandell, the manager of the Fund's Sound Recording Division, which illustrates the misallocation of royalties that results when Fund researchers lack access to the session reports provided by the Unions pursuant to the Data Purchase and Services Agreement. Plaintiff's arguments in support of excluding this plainly relevant evidence are uniformly meritless.

Plaintiff asserts that Ms. Sandell lacked the expertise necessary to develop the "statistical model" for this project. But he mischaracterizes her role in the project, which merely entailed selecting the 50 song titles used in the exercise (the "50-song exercise") and then supervising a team of Fund researchers as they attempted to locate non-featured performers on those titles without the assistance of session reports provided by the Unions. Ms. Sandell's selection of song titles did not require any expertise, and Plaintiff's criticisms of her methodology go, at most, to the weight accorded to the results of the 50-song exercise.

In addition to criticizing the 50-song exercise on methodological grounds, Plaintiff argues that the project is irrelevant because the rate at which the Fund misallocates royalties in the absence of Union data among the titles analyzed as part of the project (60%) does not bear on the ultimate question of whether the Fund's Trustees breached their fiduciary duties. But Plaintiff has repeatedly insisted that the session report data provided by the Unions in exchange for the Service Fee has little or no value. The results of the 50-song exercise are plainly relevant to rebut this incorrect and frequently-repeated assertion from Plaintiff.

Nor will Plaintiff suffer any prejudice if the Court considers the 50-song exercise. Defendants have produced all documents relating to the preparation of the 50-song exercise, and Plaintiff recently deposed Ms. Sandell on this subject on June 29, 2021. Dkt. 141, Declaration of Andrew G. Sullivan ("Sullivan Decl."), ¶ 16. Plaintiff also deposed Defendants' expert David Nolte regarding the

conclusions he drew from the results of the 50-song exercise managed by the Fund on April 27, 2021. *Id.*, ¶ 18. Plaintiff has stated no valid grounds to exclude the results of the 50-song exercise or the conclusions that David Nolte drew from this data – all of which are plainly relevant to rebut Plaintiff's inaccurate but oft-repeated assertion that Unions session report data has little to no value.

## II. BACKGROUND

Throughout the course of this litigation, Plaintiff has repeated the baseless assertion that the session report data provided by the Unions in exchange for the Service Fee has little or no value. *See, e.g.*, Dkt. 26 ("Amended Complaint"), ¶ 58 (alleging the Unions "have nothing of value to exchange for the Service Fee"); Dkt. 111 ("MSJ Opp.") at 1 (asserting that the Union data is "information of, at best, specious significance to the Fund's operations."). According to Plaintiff, the Union data is replaceable because the same information can be derived from public sources. *See* MSJ Opp. at 7 (asserting that the data in session reports is "available via many public sources, including AllMusic, Discogs, liner notes, and self-claiming by beneficiaries"). Plaintiff has continued to make this assertion despite repeated testimony from Fund personnel—including Julie Sandell—attesting to the fact that the session reports provided by the Unions are essential to the Fund's accurate allocation of royalties, and that there is no repository that is a substitute for this data from the Unions.[1]

During Ms. Sandell's initial deposition on December 9, 2020, Plaintiff's counsel asked whether the Fund had ever attempted to determine the usefulness of session report data by trying to "segregate whether the Fund has identified a performer due to something that the union has provided the Fund, as opposed to an online resource like Discogs or AllMusic." Sullivan Decl., Ex. 6 (Sandell Tr. 73:11-

[1] *See* Sullivan Decl., Ex. 5 (Taub, October 20, 2020, Tr. 149:10-151:15, 154:2-25); Ex. (Risto Tr. 128:13-128:17); Ex. (Resp. No. 10); Ex. 6 (Sandell Tr. 39:5-39:22); Dkt. 108, Declaration of Julie Sandell ("Sandell MSJ Decl."), ¶5.

24). Ms. Sandell responded that no such exercise had taken place, because the Fund had had no reason to do so at that point. *Id.*

In January 2021, Ms. Sandell undertook a project in connection with this litigation which was similar to the one contemplated by Plaintiff's counsel at Ms. Sandell's earlier deposition. Ms. Sandell selected 50 song titles for which accurate performer information had already been located via session reports from the Unions, and she asked Fund researchers to try to locate that same performer information using public sources only (e.g., discographies, liners notes, Internet sources). Sandell MSJ Decl., ¶ 4. The result was that Fund researchers could only locate accurate performer information from public sources for 20 of the 50 song titles examined. *Id.*, ¶ 9. In other words, the public sources that Plaintiff has touted as a replacement for session report data were inaccurate with respect to 60% of the song titles examined by the Fund. *Id.*

Rather than engage with the results of the 50-song exercise, Plaintiff has instead moved the Court to disregard any mention, reference, or evidence related to this project undertaken by the Fund. *See* Dkt. 111-2 at 1. First, Plaintiff frames the project Ms. Sandell managed in technical terms, and argues that because Ms. Sandell is not "qualified as an expert in statistical analysis" she was therefore not equipped to "prepare[] the statistical model" for the 50-song exercise. *See* Mot. at 6. Second, Plaintiff contends that—because Defendants' expert David Nolte has extrapolated conclusions from the 50-song exercise that Plaintiff has criticized—the Court should therefore disregard not just Mr. Nolte's conclusions drawn from the results of the 50-song exercise, but should also disregard the results of the 50-song exercise all together. *See id.*

Third, Plaintiff argues that the results of the 50-song exercise should be disregarded as irrelevant because they do not bear on the question of whether the Fund's Trustees committed fiduciary breach. *See id.* at 8. Finally, Plaintiff contends that he has been prejudiced by the timing of Defendants' disclosure of the

50-song exercise – arguments Plaintiff previously raised when attempting to exclude consideration of the 50-song exercise at summary judgment, and which the Court has already remedied by ordering an additional deposition of Ms. Sandell on this subject. *See id*. at 8; *see also* Dkt. 111-2; Dkt. 119.

Plaintiff's arguments are all readily refutable and,—even if accepted as true—go to the weight the fact finder should afford the 50-song exercise, not its admissibility. Plaintiff has cited no basis to exclude any mention, reference, or evidence related to this project undertaken by the Fund at trial.

## III. ARGUMENT

"Evidence is excluded on a motion in limine only if the evidence is clearly inadmissible for any purpose." *Langer v. Kiser*, 495 F. Supp. 3d 904, 909 (S.D. Cal. 2020). It is well-settled that "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). Relevant here, "the trial court's gatekeeping function is much less critical in a bench trial because there 'little danger' of prejudicing the judge". *Fed. Trade Comm'n v. DIRECTV, Inc.*, 2017 WL 412263, at *2 (N.D. Cal. Jan. 31, 2017) (citations omitted).

### A. Ms. Sandell is Plainly Permitted to Provide Testimony Regarding the Project She Managed.

Plaintiff argues that the Court should prohibit Ms. Sandell from providing testimony regarding the 50-song exercise she managed and about which Ms. Sandell has direct personal knowledge. Mot. at 4. Plaintiff bases this request on Fed. R. Evid. 701, which provides that a layperson is prohibited from providing "testimony in the form of an opinion" if the testimony is "based on scientific, technical, or other specialized knowledge," as such testimony can only be offered by an expert qualified under Fed. R. Evid. 702. *Id.* (citing Fed. R. Evid. 701).

Rule 701 is entirely inapplicable because—as Defendants have made clear—Ms. Sandell is not offering any opinions on conclusions she has drawn from the 50-

song exercise. Defendants made this explicit when opposing Plaintiff's motion to strike Ms. Sandell's declaration submitted in support of summary judgment. Dkt. 114 at 1-3. Ms. Sandell likewise testified at her deposition taken on June 29, 2021 that she was never asked to extrapolate any broader conclusions about the significance of the 50-song exercise based on the data she collected. Sullivan Decl., Ex. 7 (Sandell Rough Tr. 74:12-74:16).

Rule 701 also has no application because Ms. Sandell's testimony regarding the history and results of the 50-song exercise is not based on any "scientific, technical, or specialize knowledge." Plaintiff strains to describe the project managed by Ms. Sandell as more complicated than it actually was in order to make Ms. Sandell's role sound akin to that of an expert – describing Ms. Sandell as "the primary architect" of an undertaking developed for a "specialized technical purpose." Mot. at 3, 1. As Plaintiff tells it, Ms. Sandell "prepared the statistical model" for the 50-song exercise despite the fact that she is not "qualified as an expert in statistical analysis." *Id.* at 6.

The facts to which Ms. Sandell will testify regarding her role in managing the project are far more straightforward than Plaintiff suggests – they include her process of selecting the 50 titles at issue, her management of the team of researchers as they attempted to locate non-featured performer information, and her process of compiling the results of the project. Sandell MSJ Decl., ¶ 7, 8. She will not be offering testimony about statistical modeling or statistical inference.

The results of the 50-song exercise that Ms. Sandell will explain are likewise straightforward – they show that Fund researchers could only locate accurate performer information from public sources for 20 of the 50 song titles examined. *Id.*, ¶ 9. In other words, the public sources that Plaintiff has touted as a replacement for session report data were inaccurate with respect to 60% of the song titles examined by the Fund. *Id.*

Plaintiff—clearly unhappy with the results of the 50-song exercise—is asking the Court to prohibit Ms. Sandell from providing any fact-based, percipient testimony *at all* regarding these results. Plaintiff's argument is based on a profound misapplication of the Federal Rules of Evidence and should be disregarded. Ms. Sandell is plainly permitted to testify as to her direct knowledge of the results of the project she managed.

**B. Plaintiff's Criticism of Mr. Nolte's Conclusions Drawn from the 50-Song Exercise Is Likewise Not a Basis for Exclusion.**

Plaintiff's Motion in Limine No. 2 repeats many of the same arguments made in Plaintiff's Motion in Limine No. 1 to exclude the expert testimony of David Nolte. *Cf.* Mot. at 5-8; Dkt. 122 (Plaintiff's MIL No. 1 to Exclude Testimony and Opinions of Defendants' Expert D. Nolte) at 6-7. In both motions, Plaintiff argues that Mr. Nolte should not be permitted to draw conclusions from the results of the 50-song exercise because (i) Mr. Nolte lacked personal knowledge at his deposition regarding certain details of the project's preparation; and (ii) the 50 songs analyzed did not represent a sufficiently large or randomized sample. *Id.*

Defendants have addressed both of these arguments in concurrent briefing opposing Plaintiff's Motion in Limine No. 1. *See* Dkt. 138 (Defendants' Opposition to Plaintiff's Motion in Limine No. 1) at 6-7. It is well-settled that Mr. Nolte need not have personal knowledge of the preparation of the 50 title exercise to rely on its results.[2] Moreover, any criticisms of the size or randomness of the sample of 50 titles analyzed by the Fund would go to the weight, rather than the admissibility, of the conclusions Mr. Nolte draws from the data compiled by the Fund.[3] In assessing

---

[2] *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997) (admitting expert opinion based on research by others, even though the expert "did not personally do any of the work upon which his opinions are based").

[3] *See, e.g.*, *Abu-Lughod v. Calis*, 2015 WL 12731921, at *4 (C.D. Cal. July 1, 2015) (finding that argument about insufficient sample size went to weight, not admissibility); *Nucci v. Rite Aid Corp.*, 2020 WL 3187335, at *8 (N.D. Cal. June

the weight to afford these conclusions, the Court is entitled to balance Plaintiff's criticisms of the 50-song exercise against Mr. Nolte's explanations of the basis for his conclusions, as well as testimony from Ms. Sandell regarding her process of selecting the 50 songs reviewed by the Fund.[4]

The authority cited by Plaintiff to suggest the Court should exclude Mr. Nolte's conclusions based on the 50-song exercise is inapposite and unavailing. *See In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 984 F. Supp. 2d 1021 (C.D. Cal. 2013) (concluding that the methodology challenged by defendants, partly on the basis of inadequate sample size, was *not* a basis for exclusion, but rather that defendants' criticisms of the methodology went to the "helpfulness" of the proffered evidence); *Morita v. S. California Permanente Med. Grp.*, 541 F.2d 217 (9th Cir. 1976) (rejecting attempt by plaintiff to make prima facie case of racial discrimination based on evidence that seven of eight recently promoted employees were white, finding "the obvious fact that plaintiff's use of only eight persons in his statistical analysis is much too small to have any significant benefit to his position").

To be clear – while Mr. Nolte's conclusions drawn from the 50-song exercise are plainly admissible, Plaintiff is *not* merely arguing in MIL No. 2 that the *conclusions* drawn by Mr. Nolte should be excluded. Rather, Plaintiff seeks to exclude *any reference to the 50-song exercise at all* – by Mr. Nolte, Ms. Sandell, or

---

14, 2020) (finding that arguments that "survey responses were not randomly selected, [and] the sample size was too small" went to weight, not admissibility).

[4] Ms. Sandell has already explained her selection process in detail, both via declaration and deposition testimony. Sandell MSJ Decl., ¶ 8; Sullivan Decl., Ex. 7 (Sandell Rough Tr. 31:4-32:20). In the course of her June 29, 2021 deposition, Ms. Sandell also explained—based on her experience with the Fund's distribution process—that the 50 song sample appears to be representative of the body of song recordings as a whole on which the Fund makes distributions with the aid of session reports. *Id.* (Sandell Rough Tr. 70:3-71:6). Ms. Sandell also confirmed that her selection of the 50 titles at issue did not involve any form of cherry-picking on her part. *Id.* (Sandell Rough Tr. 77:18-78:6).

otherwise. Plaintiff has cited no authority, and has provided no logical reason why the results of the 50-song exercise should be excluded in their entirety.

**C. The 50-Song Exercise is Squarely Relevant.**

Plaintiff also attempts to convince the Court that it should exclude the 50 title project because its results are entirely irrelevant and therefore inadmissible under the Federal Rules of Evidence. Mot. at 7-9. The threshold for excluding evidence on this basis is high – evidence is relevant so long as "it has *any tendency* to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). "As the words 'any tendency' suggest, it is typically quite a 'low bar to the admissibility of evidence.'" *Id.* (citation omitted); *see also United States v. Rodriguez-Soler*, 773 F.3d 289, 293-94 (1st Cir. 2014) (finding that relevance is a "very low bar" that is "not very hard to meet"); *United States Equal Emp. Opportunity Comm'n v. Placer ARC*, 147 F. Supp. 3d 1053, 1062 (E.D. Cal. 2015) ("Relevance is not a strict test.").

Plaintiff argues the 50-song exercise "is broadly unrelated to the main issues of this case" because the exercise relates to whether "the Union data is valuable" – an inquiry that Plaintiff contends "does nothing to elucidate the evaluation or negotiation process that preceded the adoption of Services Agreement." Mot. at 8. Plaintiff argues 50-song exercise is therefore irrelevant to the ultimate question of whether the Trustees committed fiduciary breach in approving the Service Fee. *Id.*

With this argument, Plaintiff ignores that determination of the value of the session report data to the Fund (*i.e.*, the data that was the subject of the negotiation at issue) plainly sheds light on whether the Trustees were justified in incurring the Service Fee in exchange for the data. Plaintiff's argument also fails to account for the fact that the results of the 50-song exercise squarely rebut Plaintiff's frequently repeated contention that the session reports provided by the Unions have little or no value. *See, e.g.*, Amended Complaint, ¶ 58 (alleging the Unions "have nothing of

value to exchange for the Service Fee"); MSJ Opp. at 1 (asserting Union data is "information of, at best, specious significance to the Fund's operations.").

Indeed, as discussed above, Plaintiff's counsel even asked Ms. Sandell during her December 2020 deposition whether the Fund had ever attempted to determine the usefulness of session report data by trying to "segregate whether the Fund has identified a performer due to something that the union has provided the Fund, as opposed to an online resource like Discogs or AllMusic." Sullivan Decl., Ex. 6 (Sandell Tr. 73:11-24). Now that the Fund has undertaken this precise line of inquiry first suggested by Plaintiff—and the results have clearly called into question Plaintiff's prior assertion that the Union data has little value—Plaintiff now claims that the results of such an exercise are entirely irrelevant and should be disregarded.

Plaintiff also contends the 50-song exercise should be excluded as irrelevant because it should have been designed differently. Mot. at 8-9. According to Plaintiff, Fund researchers should have been looking not only at whether data from Union session reports could be retrieved from "free publicly available" sources, but also whether the data could be accessed from "other sources," such as the AFM Pension Fund and Lexis-Nexis. *Id.* To be clear – the publicly-available sources examined in the 50-song exercise are *precisely the sources of information that Plaintiff has previously touted as viable substitutes for Union data*. *See* MSJ Opp. at 7 (asserting that the data in session reports is "available via many public sources, including AllMusic, Discogs, liner notes, and self-claiming by beneficiaries").

Regardless, Defendants' witnesses have consistently testified that there is no "other source" of information that could serve as a substitute for the session reports provided by the Unions. *See* Section II, *supra*. Indeed, Ms. Sandell testified to this fact at her recent deposition, and also clearly explained why the organizations that Plaintiff pointed to in his current motion as supposed alternative sources of information (the AFM Pension Fund, Lexis-Nexis) are not viable substitutes for the data from the Unions. Sullivan Decl., Ex. 7 (Sandell Rough Tr. 74:21-77:9).

Moreover, even if it were a valid criticism that Fund researchers failed to check certain other sources when conducting the 50-song exercise—which is not the case—this criticism would go to the weight, not the admissibility, of the evidence. *See Obrey v. Johnso*n, 400 F.3d 691, 695 (9th Cir. 2005) ("[O]bjections to a study's completeness generally go to 'the weight, not the admissibility of the statistical evidence,' and should be addressed by rebuttal, not exclusion.").

### D. Plaintiff Has Suffered No Prejudice From Defendants' Production Of Documents And Testimony Regarding the 50-Song Exercise.

Plaintiff continues to insist he will be prejudiced by the admission of evidence related to the 50-song exercise at trial. He continues to take this position despite the fact that: (i) Defendants produced the results of this exercise on March 6, 2021, and Plaintiff has had the results of the exercise for four months; (ii) Plaintiff had the opportunity to depose David Nolte at length regarding the 50-song exercise and the conclusions he drew from it at his deposition taken April 27, 2021; (iii) Defendants have produced all documents related to the preparation of the 50-song exercise and related materials, totaling more than 400 documents; and (iv) the Court has now ordered, and Defendants have completed on June 29, 2021, a second deposition of Julie Sandell on the subject of the 50-song exercise. Sullivan Decl., ¶¶ 16-18. Any complaint of prejudice from Plaintiff has been definitively mooted by the quantity of discovery ordered by the Court and produced by Defendants.

## IV. CONCLUSION

This Court should deny Plaintiff's MIL No. 2 and properly admit testimony related to the 50-song exercise.

Dated: July 2, 2021

JENNER & BLOCK LLP

/s/ Andrew J. Thomas

Andrew J. Thomas
Alexander M. Smith
Andrew G. Sullivan
Anna K. Lyons

*Attorneys for All Defendants*