JENNER & BLOCK LLP
Andrew J. Thomas (Cal. Bar No. 159533)
ajthomas@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
Andrew G. Sullivan (Cal. Bar No. 301122)
agsullivan@jenner.com
Anna K. Lyons (Cal Bar No. 324090)
alyons@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile:  (213) 239-5199

*Attorneys for All Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN RISTO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a Delaware corporation, et al.,<br><br>Defendants. | Case No. 2:18-cv-07241-CAS-PLA<br><br>Class Action<br><br>**OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3 (STATE OF MIND)**<br><br>Hearing Date:   July 19, 2021<br>Hearing Time :   11:00 a.m.<br>Courtroom:   8D (Telephonic)<br><br>[Declaration of Andrew G. Sullivan, with Exhibits 1-14, filed concurrently] |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  BACKGROUND ............................................................................................ 2

III. ARGUMENT .................................................................................................. 4

  A. Defendants' State of Mind Does Not Implicate Privileged Matters ....................................................................................................... 4

  B. Plaintiff's Cited Authorities Do Not Compel a Different Result ........ 7

IV.  CONCLUSION ............................................................................................ 10

## I. INTRODUCTION

The Fund Trustees do not dispute that they consulted with the Fund's attorney, Patricia Polach, in the course of their deliberations regarding the Data Purchase and Services Agreement (the "Data Agreement"). Defendants properly withheld privileged communications with Ms. Polach from Plaintiff in discovery. Defendants have not asserted an advice-of-counsel defense in this case and have not offered those privileged communications as evidence of their belief that the Service Fee was lawful or reasonable, nor do they intend to do so at trial

But Plaintiff does not simply seek an order barring the Trustee Defendants from offering evidence regarding the substance of their *communications* with Ms. Polach or any *advice* they received from her. Instead, Plaintiff argues that Defendants cannot "testify at trial regarding their state of mind" because they did not "open up discovery to everything that informed that state of mind, including privileged matters." Dkt. 124 ("Mot.") at 1. To that end, Plaintiff asks the Court to preclude Defendants from offering *any* "evidence of their state of mind regarding (1) their purported beliefs in the lawfulness of their conduct; (2) the reasons or basis for their decision to accept a three percent 'Service Fee' on the Fund's distributions; or (3) the matters or issues considered by them in deciding to pass the Service Fee." *Id.* at 1. Plaintiff's motion is meritless and should be denied.

It is well-established that a party can seek to establish its *own* good faith or state of mind "without resort to its attorneys' communications." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1327 (9th Cir. 1995). That is precisely what the Trustee Defendants have done here and what they intend to do at trial. While Plaintiff speculates that Defendants' state of mind necessarily reflects the advice they received from Ms. Polach, California law makes clear that a party does not place its attorneys' advice in issue merely by providing evidence of its own state of mind as a defense. While Plaintiff invokes the principle that a party cannot use the privilege as a sword and a shield, that rule does not apply here because

1
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3

Defendants have not sought to rely on any attorney-client communications and accordingly have not used the privilege as a metaphorical sword.

California law draws a clear line between relying on one's own state of mind and placing an attorney's advice at issue. Plaintiff's motion does not simply blur that line; it stampedes across it. Plaintiff's interpretation of the law would make it impossible for *any* defendant to assert that he acted in good faith if he *ever* consulted with an attorney. California law does not require this absurd and illogical result, and this Court should deny Plaintiff's motion in limine.

## II. BACKGROUND

The AFM & SAG-AFTRA Intellectual Property Rights Distribution Fund (the "Fund"), the American Foundation of Musicians ("AFM"), and the Screen Actors Guild-American Federation of Radio and Television Artists ("SAG-AFTRA") entered into the Data Agreement in 2013. The Data Agreement requires the Unions to provide the Fund with information that the Fund uses to locate and pay the non-featured performers that have been allocated certain statutory royalties pursuant to Section 114(g) of the Copyright Act. In exchange, the Data Agreement requires the Fund to pay the Unions a "Service Fee" equivalent to 3% of the aggregate amount of those royalties, which is deducted from those royalties.

Defendants do not dispute that Patricia Polach, an attorney at the Washington, D.C. law firm Bredhoff & Kaiser PLLC, represented the Fund and provided legal advice to the executives and trustees of the Fund. The Trustee Defendants and the Fund have consistently (and correctly) maintained that their communications with Ms. Polach and her Bredhoff colleagues are privileged, and they accordingly have refused to disclose them to Plaintiff in discovery.[1] In light

---

[1] To be clear, Defendants will object to any attempt by Plaintiff to introduce testimony from Dennis Dreith, former Fund trustee Thomas Lee, or other former Fund personnel or trustees regarding communications with Ms. Polach containing legal advice. The attorney-client privilege is held by the Fund and has not been waived, and neither Mr. Dreith nor Mr. Lee is authorized to waive it.

of their assertion of the attorney-client privilege, the Trustee Defendants elected *not* to defend themselves in this action by asserting that they relied on the advice of counsel in approving the Data Agreement.

Without relying on any advice from or communications with Ms. Polach, however, the Trustees *have* asserted that they acted reasonably and in good faith when they considered and approved the Data Agreement. Consistent with that position, and despite Plaintiff's suggestion to the contrary, Defendants have provided ample discovery regarding the Trustees' *own* reasoning and state of mind. The three examples Plaintiff identifies in his motion illustrate this point:

<u>First</u>, Plaintiff notes that Defendants objected to "an interrogatory seeking all facts supporting their contention that the Service Fee is reasonable" on the basis that it sought a legal conclusion. Mot. at 2. But Plaintiff fails to mention that Defendants then provided a three-and-a-half page response outlining the reasons they concluded the Service Fee is reasonable. *See* Dkt. 141, Declaration of Andrew G. Sullivan ("Sullivan Decl."), Ex. 5 (Resp. to Interrog. 10).

<u>Second</u>, Plaintiff notes that Defendants objected to various requests for production, including a request seeking "all documents that set forth any analysis of the services provided by the Unions to the Fund under the Services Agreement," to the extent they sought privileged materials. Mot. at 3-4 But Defendants have produced tens of thousands of pages of non-privileged documents that reflect their analysis of the services provided by the Unions, the basis for their understanding that the Service Fee is reasonable, and the basis for their belief that the Fund is permitted to deduct the Service Fee. In contrast, Defendants withheld only 49 documents on the basis of privilege (only some of which related to the Data Agreement). *See* Sullivan Decl., Ex. 8.

<u>Third</u>, Plaintiffs note that Defendants objected to several questions during the depositions of Fund Trustees Duncan Crabtree-Ireland and Ray Hair that concerned the substance of the legal advice Ms. Polach rendered. *See* Mot. at 2-3. But Mr.

1. Crabtree-Ireland and Mr. Hair provided extensive testimony regarding their own belief that the Service Fee was reasonable. For example, Mr. Crabtree-Ireland explained that he "gave thought" to whether the Service Fee should be structured as a percentage fee before concluding that it was the "most appropriate way" to compensate the Unions for the data and services they agreed to provide. Sullivan Decl., Ex. 9 (Crabtree-Ireland Tr. 110:20-111:15). And Mr. Hair discussed at length how he and Dennis Dreith, the Fund's Executive Director, concluded that a 3% Service Fee was the appropriate number. *Id.*, Ex. 10 (Hair Tr. 163:24-165:16).

Although the Trustees repeatedly attempted to draw a line between their *own* mental state and the advice they received from Ms. Polach, Plaintiff repeatedly attempted to pierce the attorney-client privilege. He initially sought to invalidate Defendants' assertion of the privilege based on the theory that Ms. Polach could not ethically represent the Fund and the Unions at the same time—an argument the Magistrate Judge rejected. *See* Dkt. No. 58. Plaintiff then attempted to subpoena Ms. Polach and her law firm, demanding sweeping categories of documents and deposition testimony having nothing to do with the Data Agreement. *See* Sullivan Decl., Exs. 11, 12. When Defendants resisted that effort, Plaintiff sent a letter in which he asserted that the Trustees had waived the privilege and insisted that their communications with Ms. Polach were discoverable. *See id.*, Ex. 13.

Nonetheless, Plaintiff ultimately did not to move to compel Ms. Polach or Bredhoff to comply with his subpoena. Instead, he chose to take the position that Defendants' assertion of the privilege precludes them from testifying as to their *own* state of mind. The law does not support that absurd and illogical outcome.

### III.   ARGUMENT

**A.   Defendants' State of Mind Does Not Implicate Privileged Matters.**

The premise of Plaintiff's motion is that "[t]he attorney-client privilege … cannot be used both a sword and a shield." Mot. at 1. This principle has no application to this case because Defendants do not seek to use the privilege as a

4
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3

sword. To the contrary, the Trustees seek to testify regarding their *own* state of mind—*without* relying on any privileged communications with their attorneys.

California law draws a clear distinction between relying on the advice of counsel and relying on one's own state of mind. While "the deliberate injection of the advice of counsel into a case waives the attorney-client privilege as to communications and documents relating to the advice," a party "does not waive the attorney-client privilege where it is not defending itself on the basis of the advice it received" from its attorney." *Transamerica Title Ins. Co. v. Superior Court*, 188 Cal. App. 3d 1047, 1053 (1987); *accord Home Indem. Co.*, *supra*, 43 F.3d at 1327 (noting that a party can establish its own good faith or state of mind "without resort to its attorneys' communications"). And to that end, California "courts have found that the attorney-client privilege applies even though the communications were relevant to [the defendant's] state of mind." *Aetna Cas. & Sur. Co. v. Superior Court*, 153 Cal. App. 3d 467, 477 (1984).

*Southern California Gas Co. v. Public Utilities Commission*, 50 Cal. 3d 31 (1990), is illustrative. There, Southern California Gas Company ("SoCalGas") initiated a proceeding before the Public Utilities Commission ("PUC") to confirm that its buyout of a contract was "prudent and reasonable." *Id.* at 35. The PUC sought to obtain several documents that reflected SoCalGas's analysis of this decision, and SoCalGas asserted that they were privileged. *Id.* at 36. Even though SoCalGas "stated that it would not rely on advice of counsel as a decision to buy out the … contract," the PUC overruled its privilege objections and ordered it to produce these documents, finding that SoCal Gas had impliedly waived the privilege by placing the reasonableness of its buyout at issue. *Id.* at 36-37.

The California Supreme Court reversed. In so holding, the Court emphasized that SoCalGas had not "state[d] that it intends to rely on its attorneys' advice or state of mind to demonstrate that it acted reasonably" and had expressly disclaimed any intention of relying on the advice of counsel. *Id.* at 42. Instead, the Court

5
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3

explained, "SoCalGas has represented that it will demonstrate that its buyout was reasonable based on an examination of the contract itself, the economic analysis it relied on to arrive at its decision, and testimony from appropriate witnesses." *Id.* at 43-44. And while the PUC argued that it required these privileged communications so it could "ascertain whether SoCalGas's expenses are reasonable," the Court emphasized that "this effort does not have to come at the unnecessary expense of trampling on SoCalGas's attorney-client privilege." *Id.* at 44.

That reasoning applies with equal force here. Plaintiff claims that Defendants cannot assert that they acted reasonably or in good faith without placing Ms. Polach's advice at issue, as that advice was "relevant to determining their good faith and their intent and state of mind." Mot. at 7. But California law makes clear that "[p]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation." *Schlumberger Ltd. v. Superior Court*, 115 Cal. App. 3d 386, 393 (1981). And for that reason, numerous courts in California "have declined to find implied waiver of the attorney-client privilege simply because a defendant asserted a good faith affirmative defense." *Ludlow v. Flowers Foods, Inc.*, 2019 WL 6252926, at *16 (S.D. Cal. Nov. 22, 2019). Instead, a defendant "must support its good faith defense *by citing the advice of counsel* in order to put it in issue." *McKeen-Champlin v. Provident Savings Bank, FSB*, 2015 WL 502967, at *9 (E.D. Cal. Feb. 5, 2015) (emphasis added). Because Defendants have not placed Ms. Polach's *advice* at issue, California law squarely permits them to assert that they acted reasonably, in good faith, and without improper motives without implicating their assertion of the attorney-client privilege.

Taken to its logical extension, Plaintiff's position would effectively deprive parties of the privilege in *any* case in which their state of mind is at issue. Indeed, Plaintiff all but admits that, under his view of the law, a party cannot "show that [it] acted in good faith or did not act with oppression, fraud, malice, or a conscious disregard of the rights of the class" unless it "disclose[s] everything (namely, legal

advice and analysis) that influenced or informed [its] state of mind." Mot. at 5. As the California Supreme Court made clear in the *SoCalGas* case, that holding would effectively nullify the privilege in any case where "legal advice might be one source of information [a party] considered." 50 Cal. 3d at 45; *see also Aetna*, 153 Cal. App. 3d at 476-77 ("If we were to adopt such a rule the attorney-client privilege would have no application in a myriad of actions where state of mind is an issue or could easily be made one."). There is no reason for the Court to endorse that result.

### B. Plaintiff's Cited Authorities Do Not Compel a Different Result.

Although Plaintiff claims that "firmly settled law" requires the Court to bar Defendants from testifying as to their state of mind (Mot. at 10), he does not cite a *single* case that applies California law to reach this conclusion—even though there is no dispute that California law governs the privilege in this case. And the federal authorities Plaintiff cites do not support his position.

*Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001), and *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992), are distinguishable because they involved parties who asserted an advice-of-counsel defense.[2] In *Columbia Pictures*, the Ninth Circuit held that the district court was "within its discretion in precluding [a defendant] from invoking the advice of counsel defense" when he "sought to argue that he continued his infringing activities based on the advice of his attorney, while at the same time refusing to answer questions regarding relevant communications with counsel until

---

[2] The three California district court cases Plaintiff cites are distinguishable for the same reason: they all involved parties who placed the advice of counsel at issue. *See Arenson v. Broadcom Corp.*, 2005 WL 1403516, at *2 (C.D. Cal. Feb. 10, 2005) ("This proposed testimony unequivocally puts in issue reliance upon counsel as a defense …"); *Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182, 1183 (E.D. Cal. 2001) ("One of the defenses raised in the instant litigation … is advice of counsel."); *SNK Corp. of Am. v. Atlus Dream Entm't Co.*, 188 F.R.D. 566, 571 (N.D. Cal. 1999) ("The parties do not dispute that Atlus's reliance on its advice of counsel waives applicable attorney-client privilege …").

the 'eleventh hour.'" 259 F.3d at 1196. Likewise, in *Chevron*, the defendant (Pennzoil) sought to defend itself by asserting that its "position [was] 'reasonable' according to advice given by tax counsel." 974 F.2d at 1162. By doing so, the Ninth Circuit held that Pennzoil had "waived the privilege by using advice of counsel as a sword to defeat Chevron's tax arguments, and as a shield to protect against the disclosure of the basis for Pennzoil's affirmative defense." *Id.*

In other words, *Chevron* and *Columbia Pictures* stand for the unremarkable proposition that a party cannot assert an advice-of-counsel defense if it withholds its communications with counsel. Here, however, the Trustee Defendants are *not* asserting an advice-of-counsel defense and do *not* seek to rely on their communications with Ms. Polach. Instead, they seek to offer evidence of their *own* state of mind—which neither *Chevron* nor *Columbia Pictures* forbid.

Plaintiff also relies on *Kaiser Foundation Health Plan, Inc. v. Abbott Laboratories, Inc.*, 552 F.3d 1033 (9th Cir. 2009), but that case actually undermines his position. There, the plaintiff sought to discover privileged communications between a defendant and its attorneys "in order to counter what Kaiser portrayed as [the defendant's] advice of counsel defense." *Id.* at 1042. The Ninth Circuit agreed that if the defendant's "defense was based on the advice of its attorneys, [the plaintiff] should have had access to those otherwise privileged attorney-client communications." *Id.* at 1042-43. But the Ninth Circuit nonetheless "agree[d] with the district court" that the defendant "did not actually rely on an advice-of-counsel defense at trial" and affirmed the district court's denial of the plaintiff's motion to compel the production of those communications. In other words, the Ninth Circuit saw through the plaintiff's attempt to mischaracterize the defendant's position as an advice-of-counsel defense—precisely as this Court should do here.

Unable to cite any controlling California authority that supports his position, or even any persuasive authority from the Ninth Circuit or federal district courts in California, Plaintiff hitches his argument to a series of out-of-circuit cases. He

relies principally on two cases—*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) and *Cox v. Administrator*, 17 F.3d 1386 (11th Cir. 1994).  Neither case applies California law, and both cases are distinguishable.

In *Bilzerian*, the defendant sought to defend himself against securities fraud charges by arguing that he "believed the financing structure of the transactions … would allow him legally to avoid disclosure regarding other investors, and that describing the source of his funds as 'personal' was lawful." 926 F.2d at 1291.  The Second Circuit held that this was, in essence, an advice-of-counsel defense, as "Bilzerian's testimony that he thought his actions were legal would put his knowledge of the law and the basis for his understanding of what the law required in issue," such that "[h]is conversations with counsel regarding the legality of his schemes would have been directly relevant."  *Id.* at 1292; *see also In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000) (agreeing that the defendant in *Bilzerian* "raised the advice-of-counsel defense").  For that reason, many federal courts in California have limited *Bilzerian* to cases involving an advice-of-counsel defense.[3]  This Court should decline to extend *Bilzerian* beyond that context.

*Cox* is also distinguishable.  There, the Eleventh Circuit held that a pension fund administrator had waived the privilege by asserting, as an affirmative defense, that it believed that its changes to the pension fund's policy were legal.  *See* 17 F.3d at 1418.  The court agreed that the defendant "could have denied criminal intent without affirmatively asserting that it believed its change in pension fund policy was legal."  *Id.* at 1419.  But the court concluded that the defendant, by going "beyond mere denial" and affirmatively asserting that it believed its conduct to be

---

[3] *See, e.g.*, *Loop AI Labs Inc. v. Gatti*, 2017 WL 111591, at *3 n.3 (N.D. Cal. Jan. 11, 2017) (emphasizing the "inapplicability of *Bilzerian* in this case, where the … Defendants have not raised an advice of counsel defense"); *Sasser v. Amen*, 2001 WL 764953, at *4 (N.D. Cal. July 2, 2001) (deeming *Bilzerian* "inapposite" because "defendants have not injected the advice of counsel into the case as a defense").

legal, "injected the issue of its knowledge of the law into the case and thereby waived the attorney-client privilege." *Id.*

Here, in contrast to *Cox*, Defendants have not affirmatively injected their knowledge of the law into this case. While Defendants' Second Affirmative Defense states that "the implementation of the Service Fee complies with 17 U.S.C. § 114(g) and other applicable laws," that defense is more accurately characterized as a denial of illegality than as an affirmative assertion that Defendants *believed* their conduct to be legal. And many courts in the Eleventh Circuit have construed *Cox* to hold that a defendant's "contention that its actions were made in 'good faith' and were 'lawful'" does not, standing alone, "transform the[e] case into one in which advice of counsel is at issue." *Butterworth v. Lab. Corp. of Am. Holdings*, 2010 WL 11470895, at *5 n.7 (M.D. Fla. Dec. 2, 2010); *see also, e.g.*, *Centennial Bank v. ServisFirst Bank, Inc.*, 2010 WL 1061450, at *5 (M.D. Fla. Mar. 4, 2020) (distinguishing *Cox* and holding that defendant's denial of intent to interfere with agreements between the plaintiff and other parties did not place its privileged communications at issue). Even if *Cox* were the law in California (which it is not), the Trustees' assertion that they believed their conduct to be reasonable and in good faith does not implicate the advice they received from the Fund's counsel.

At most, Plaintiff's authorities suggest that Defendants cannot defend themselves by affirmatively relying on the advice of counsel. But Plaintiff has not cited a *single case*—let alone one applying California law—that holds that a defendant cannot testify as to its state of mind without placing its attorney-client communications at issue. This Court should not be the first to reach that unprecedented conclusion.

## IV. <u>CONCLUSION</u>

This Court should deny Plaintiff's motion in limine.

10
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3

1 | Dated: July 2, 2021 | JENNER & BLOCK LLP

/s/ Andrew J. Thomas
Andrew J. Thomas
Alexander M. Smith
Andrew G. Sullivan
Anna K. Lyons

*Attorneys for All Defendants*