# EXHIBIT 13



Mariana McConnell, Esq.
mcconnell@kiesel.law

December 24, 2020

**Via E-Mail Only**

Andrew J. Thomas
Andrew G. Sullivan
Anna K. Lyons
Jenner & Block
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
E-Mail: ajthomas@jenner.com
E-Mail: agsullivan@jenner.com
E-mail: alyons@jenner.com

   **RE:**  **_Risto v. SAG-AFTRA, et al._ – Meet and Confer re Bredhoff Parties' Objections to Subpoenas**

Counsel,

  Please find this letter in response to non-parties Bredhoff & Kaiser's and Patricia Polach's (collectively, the "Bredhoff Parties") November 20, 2020 correspondence[1] ("BK Objections") refusing to respond to each and every request for production made by Plaintiff Kevin Risto ("Plaintiff" or "Risto") pursuant to Fed. R. Civ. Proc. 45 in the matter of *Kevin Risto v. Screen Actors Guild - American Federation of Television and Radio Artists et al,* Case No. 2:18-cv-07241-CAS-PLA (C.D. Cal.) (the "*Risto* Litigation") on privilege and relevance grounds.

  **I.**  **Defendants Used Their Own Lawyer to Take Advantage of the Fund**

  The Bredhoff Parties are inextricably intertwined with the facts underlying the *Risto* Litigation, having played a central role in facilitating the breaches of fiduciary duty committed by Defendants Screen Actors Guild - American Federation of Television and Radio Artists ("SAG-AFTRA") and the American Federation of Musicians ("AFM") (collectively "Defendants") while in the process violating the rules of professional conduct governing the Bredhoff Parties' legal engagements.

  To begin with, the Bredhoff Parties' overlapping allegiances throughout the years are beyond dispute, and Defendants have no qualms admitting the same. Indeed, Defendants have conceded that "Ms. Polach acted as outside counsel to the [AFM & SAG-AFTRA Intellectual Property Rights Distribution] Fund [(the "Fund")]…until her retirement in April 2018." (Joint Stipulation re Mot to Compel Discovery, 16). Defendants also admit that the Bredhoff Parties have a long history representing AFM, SAG-AFTRA, and the Fund as separate entities. (BK Objections, 4).

---

[1] Since Defendants sent correspondence on that same date joining the Bredhoff Parties' objections to each and every individual request and deposition topic based on privilege grounds and indicated that they were not waiving whatever privileges they held, this letter will address that correspondence as well.

00581992-1

Exhibit 13
Page 149



December 24, 2020
Page 2

In a prior deposition, AFM President Ray Hair referred to Bredhoff & Kaiser as AFM's attorneys for more than 40 years. (Hair Dep., 251:15—252:9 in *Snitzer v. Bd. of Trs. of the Am. Fed'n of Musicians & Employers' Pension Fund*, No. 1:17-cv-05361-VEC (S.D.N.Y. Nov. 29, 2018).) One of the Trustee Defendants in this case, Bruce Bouton, testified under oath that Ms. Polach was AFM's attorney, not the Fund's. (Bouton Dep., 94:14-21)

The Bredhoff Parties' long history representing the Unions created an inherent conflict of interest in any representation of the Fund against the Unions, and the Bredhoff Parties should have been disqualified from representing the Fund in connection with the Data Purchase and Services Agreement between (the "Services Agreement") accordingly. Instead, Defendants ensured that the Bredhoff Parties were the Fund's sole counsel in those negotiations, guaranteeing that Defendants' usurpation of the Fund's assets would be papered without objection. Absent true independent counsel, the Fund was made to accept whatever deal the Unions and the Trustees desired. This tainted process is plainly relevant to any judicial examination of whether Defendants' conduct comported with the fiduciary duties owed to the certified class in the *Risto* Litigation.

Clearly aware of the foregoing, Defendants have tried three approaches to sanitize both their conduct and that of the Bredhoff Parties. As will be shown, none stand up to scrutiny.

*First*, Defendants posited that Ms. Polach acted solely on behalf of the Fund while the Services Agreement was negotiated, claiming "[t]here is no evidence in the record that Ms. Polach participated on behalf of either Union in the determination of any material term of the Agreement in a manner that was adverse to the Fund, or conversely, that she participated on behalf of the Fund in the determination of any material term of the Agreement in a manner adverse to either Union." (Joint Stipulation re Mot to Compel Discovery, 21). If true, Defendants would be conceding that the Services Agreement by which the Fund agreed to forfeit 3% of all monies collected in exchange for services of indeterminate value was not seriously negotiated between the Fund and the Unions.

*Second*, Defendants suggested that Ms. Polach acted as a mere scrivener to memorialize the Services Agreement after its material terms were already agreed upon by the signatories. (Joint Stipulation re Mot to Compel Discovery, 21-22). This, of course, is contradicted by the fact that Jenner & Block were charged with actually drafting the Services Agreement, calling into question what role the Bredhoff Parties could have possibly played if not acting in an advisory capacity.

*Third*, abandoning the charade presented by their first two propositions, Defendants argued that joint representation of the Fund and Unions would not be a violation of the rules of professional conduct because of an alleged "common interest" between the parties in reaching the Services Agreement. (Joint Stipulation re Mot to Compel Discovery, 22-23). This was the theory actually pursued by Defendants in motion practice before the Court, where it was decisively rejected.

The failure of Defendants' arguments should not come as a surprise. The rules of professional conduct in every state where Ms. Bredhoff practiced law unambiguously prohibit the activities in which she was engaged. As Defendants admit, "a lawyer shall not advance two or

00581992-1

8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910
310-854-4444 · Fax: 310-854-0812
www.kiesel.law

Exhibit 13
Page 150



December 24, 2020
Page 3

more adverse positions in the same matter." D.C. Rule of Professional Conduct 1.7(a) (Joint Stipulation re Mot to Compel Discovery, 19). New York and California have the same prohibitions. *See* Cal. Rules of Prof. Conduct, Rule 1.7(a); New York Rules of Professional Conduct, Rule 1.7(a)(1)[2].

The concurrent conflict of interest presented by representing both the Unions and the Fund in connection with the Services Agreement was not a conflict that could have been waived under the California Rules of Professional Conduct, *Woods v. Superior Court,* 149 Cal. App. 3d 931 (1983), and although D. C. Rules of Professional Conduct, Rule 1.8(a)(1)-(3) permit such a waiver where (1) the terms are fully disclosed in writing and transmitted to the client; (2) the client is given a reasonable opportunity to seek the advice of independent counsel and (3) the client gives informed consent in writing. Defendants admit that the Bredhoff Parties do not have any conflict of interest waivers (BK Objections, FN 1), nor is there any evidence that the Fund was given a reasonable opportunity to seek the advice of independent counsel. Therefore, regardless of which state's law applies, the concurrent conflict of interest could not be (or, in the alternative, was not) waived.

## II.     The Court Has Made Significant Rulings with Regard to the Bredhoff Parties

For the avoidance of doubt, the propriety of Plaintiff's subpoena is firmly anchored in the law of the case and supported by concrete evidence extracted from Defendants through motion practice.

Critically, the Court has already ruled that the Fund and the Unions lacked any "common interest" in negotiating the Services Agreement sufficient to invoke privilege (Minutes re Mot to Compel, 7). This is because a shared interest to see the same outcome "is insufficient to entitle defendants to protection under the common interest doctrine. While the common goal may have been to arrive at an agreement to compensate the Unions for various tasks, the Unions and the Fund arguably have competing interests with respect to the amount of that compensation." Because no common interest existed between the parties to the Services Agreement, any concurrent representation by the Bredhoff Parties' of the Fund and Unions in connection with the Services Agreement was inherently adverse, conflicted, and either unwaived or unwaivable, violating the rules of professional conduct in any relevant jurisdiction where the aforementioned conduct took place.

Furthermore, as part of its ruling, the Court ordered the compelled disclosure of an e-mail from Ms. Polach regarding the Services Agreement (DEFS_00041341-47) which unambiguously negates all three of Defendants' contentions regarding the Bredhoff Parties' representation. In black and white, Ms. Polach states that Dennis Dreith was seeking her legal advice on behalf of the Fund "and Ray on behalf of AFM," meaning Ms. Polach was participating in the negotiation and creation of the Services Agreement on behalf of *both* the Unions and the Fund with a concurrent, unwaivable (and unwaived) conflict of interest. Ms. Polach additionally confirms that

---

[2] According to the BK Objections and Defendants' filings in this case, the Bredhoff Parties represented the AFM, a New York entity and the Fund, a California entity.

00581992-1

8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910
310-854-4444 · Fax: 310-854-0812
www.kiesel.law

Exhibit 13
Page 151



December 24, 2020
Page 4

she was not merely a scrivener of the parties, but rather was tasked with "explor[ing] whether, and how, the AFM and SAG-AFTRA could enter into a service agreement with the Fund" in the first instance. This puts the lie to any denial that Ms. Polach was not concurrently and separately providing legal advice to the Unions as well as the Fund regarding the Services Agreement.

    III.    **More Evidence is Necessary to Determine if the Privilege Applies, To Which Entity, For What Scope, and To Which Documents**

While the Bredhoff Parties and Defendants claim that the attorney-client privilege bars any and all discovery from the Bredhoff Parties, Defendants have not even established which individuals or entities hold this privilege by dint of an established attorney-client relationship with the Bredhoff Parties, during what timeframe, or for what purpose. None of the Defendants who have been deposed to date know when Bredhoff & Kaiser was first retained by the Fund or the scope of that retention. The Bredhoff Parties' objection letter further muddies the water by claiming to have "represented AFM, SAG-AFTRA, *and* the Fund, as separate entities, for well more than ten years." (BK Objections, 4, emphasis added). Defendants cannot cloak everything related to the Bredhoff Parties in secrecy by simply failing to provide the precise boundaries of their representation.

If Defendants cannot meet their burden of showing that the Bredhoff Parties were in fact counsel for the Fund and providing legal advice to the Fund, then there is no privilege to be claimed. *D. I. Chadbourne, Inc. v. Superior Court of San Francisco*, 60 Cal. 2d 723 (1964) (the party claiming privilege carries the burden of showing that the evidence sought is actually privileged). Similarly, the Bredhoff Parties have the burden of showing that any communications with the Unions are privileged. Even if all three of the entitles were in attorney-client relationships with the Bredhoff Parties during the applicable time periods, the privilege between a lawyer and client has limits. The privilege only applies if a client retains a lawyer for securing a "legal service or advice." It is incumbent on the party asserting privilege to make a sufficient showing that the privilege exists, and that the lawyer was retained for the purpose of securing legal service or advice. *Id.*

If the Bredhoff Parties are able to show that a privileged relationship exists, and establishes the scope of the retention, the communications sought to be withheld must additionally relate to the matter on which the lawyer was retained. The California Supreme Court has held that the attorney-client privilege attaches only where the communication is made in confidence pursuant to a client-attorney relationship <u>with respect to the particular matter</u>. *Holm v. Superior Court of San Francisco,* 42 Cal. 2d 500, 507 (1954). Furthermore, "[t]o make the communication privileged the dominant purpose must be for transmittal to an attorney in the course of professional employment." *Id.* (internal quotes and citation omitted), *disapproved on other grounds, Suezaki v. Superior Court of Santa Clara Cty.,* 58 Cal. 2d 166, 176 (1962); see also 31 Cal. Jur.3d, Evidence, § 496.

The Bredhoff Parties cannot use the mere existence of an attorney-client relationship to shield all communications and documents between the parties to that relationship. Otherwise routine,

00581992-1

8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910
310-854-4444 · Fax: 310-854-0812
www.kiesel.law

Exhibit 13
Page 152



December 24, 2020
Page 5

nonprivileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is "copied in" on correspondence or memoranda. *Doe 2 v. Superior Court,* 132 Cal. App. 4th 1504, 1521-22 (2005) (document not privileged at inception cannot be made privileged by subsequent delivery to counsel); *Wellpoint Health Networks, Inc. v. Superior Court,* 59 Cal. App. 4th 110, 119 (1995) (same). Nor may Defendants and the Bredhoff Parties shield relevant facts, as opposed to communications, from discovery merely because they are incorporated into communications involving an attorney. *Upjohn Co. v. U.S.,* 449 U.S. 383, 395-96 (1981). "Clients cannot create a privilege for information which, by its nature, is *nonconfidential* in character simply by turning it over to an attorney 'in confidence.'" William E. Wegner *et al.*, California Practice Guide: Civil Trials & Evidence § 8:2042 (The Rutter Group 2020) (citation omitted, emphasis in original).

The objections served by the Bredhoff Parties do not set forth any of the necessary elements to establish an attorney-client relationship, such as the date and scope of retention, much less tether the withheld documents to any resulting privilege. Indeed, to take Defendants' argument that the Bredhoff Parties were mere scriveners of a deal negotiated by the Fund and the Unions at face value would mean that <u>there is no privilege to invoke</u>. *See Olender v. United States*, 210 F.2d 795, 806 (9th Cir. 1954) (citing *Pollock v. United States*, 202 F.2d 281, 286 (5th Cir. 1953)).

The fact that some of Ms. Polach's communications may have involved strategy decisions does not mean that *the dominant purpose* of the communications was of a legal nature. *Costco Wholesale Corp. v. Superior Court,* 47 Cal. 4th 725, 742 (2005); *Montebello Rose Co. v. Agricultural Labor Relations Bd.* 119 Cal. App. 3d 1, 32 (1981); 31 Cal. Jur.3d, Evidence, § 496, ("privilege does not extend to communications made to an attorney … who is transacting business that might have been transacted by another agent.") Since Defendants contend that Ms. Polach's role could have been conducted by a non-attorney – further evidenced by the fact that Jenner & Block performed the actual legal drafting – her communications relating to the negotiation of the Services Agreement are not privileged. "It is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent." *Zurich American Ins. Co. v. Superior Court,* 155 Cal. App. 4th 1485, 1504 (2007) (citing *Aetna Casualty & Surety Co. v. Superior Court,* 153 Cal. App. 3d 467, 475 (1984)); *accord Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 742 (2009).

The Bredhoff Parties' objections to the subpoenas do not even attempt to substantively justify the withholding of documents. Instead, Defendants argue that the subpoenas should be withdrawn in their entirety. Based on a review of the applicable case law, there are several ways for responsive documents to fall outside of the claimed privilege. Absent further information regarding the scope of the Bredhoff Parties' representation of the Fund and the Unions, and without an accurate privilege log on which the privilege assertions can be evaluated, the objections are not well taken.

**IV.     The Trustees Have Waived Privilege Over the Bredhoff Parties' Communications**

00581992-1

8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910
310-854-4444 · Fax: 310-854-0812
www.kiesel.law

Exhibit 13
Page 153



December 24, 2020
Page 6

As part of their defense in this case, Defendants have repeatedly claimed that their actions in implementing the Services Agreement were undertaken in good faith, and that the Unions are entitled to the Service Fee based on their interpretation of the Copyright Act and the Trust Agreement. See Def. AFM's Resp. to Pltff's First Set of Interrogatories, No. 9, 13 and 14. Defendants have pled "Compliance with Applicable Laws" as their Second Affirmative Defense, stating that "Plaintiff's claims are barred, in whole or in part, because implementation of the Service Fee complies with 17 U.S.C. 114(g) and other applicable laws." Answer to First Amended Complaint, p. 8. Similarly, Defendants claim as their Sixth Affirmative Defense that "[n]either Plaintiff nor the putative class is entitled to recover punitive or exemplary damages because Plaintiff … cannot establish facts sufficient to show that Defendants are guilty of oppression, fraud or malice within the meaning of Section 3294 of the California Civil Code." *Id.* at p. 9.

Despite asserting that their conduct was undertaken in good faith, without malice, fraud, or oppression, and consistent with their understanding of relevant law and fiduciary duties, Defendants have repeatedly asserted attorney-client privilege to block inquiry into their state of mind. Defendants now seek to block the Bredhoff Subpoenas seeking that same information.

Defendants objected to Plaintiff's interrogatories asking them to set forth all authority that supports their contention that the Fund was entitled to enter into the Services Agreement, stating that it calls for a legal conclusion. Def. AFM's Resp. to Pltff's First Set of Interrogatories, No. 14. The Fund asserted privilege over any documents assessing the Service Fee. Fund's Resp. to Subpoena, No. 13. Defendants refused, based on a privilege assertion, to produce all documents supporting their contention that the Service Fee was authorized. Def. Unions' Resp. to Req. for Production, No. 8. Not surprisingly, Ms. Polach was identified as an individual responsible for the negotiation of the Services and Trust Agreements, the same documents that the Defendants rely on as a basis for the Service Fee. Def. Ray Hair's Resp. to Pltff's First Set of Interrogatories, No. 15 and 16.

To advance claims that the Services Agreement "complied with applicable laws" (including the Trust Agreement) and lacked "malice, fraud, or oppression," Defendants will necessarily have to testify as to their state of mind at the time they approved the Services Agreement. However, Defendants have failed to disclose everything (namely, the legal advice and analysis) that influenced and informed their state of mind. *United States v. Bilzerian*, 926 F.2d 1285, 1293 (2d Cir. 1991) (the attorney-client privilege cannot be at once used as a shield and a sword").

A party waives the attorney-client privilege by placing its attorney's advice at issue during the course of litigation. *Oakley, Inc. v. Bugaboos Eyewear Corp.*, 2010 WL 4117223, at *2 (S.D. Cal. Oct. 15, 2010). A party typically places the advice of counsel at issue in two circumstances: (1) explicitly, by asserting that its behavior was "reasonable because it was based on advice of counsel," *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992); or (2) implicitly, by going beyond mere denial of intent and affirmatively asserting good faith, *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994). As courts have made clear, a party "cannot be permitted, on the one hand, to argue that it acted in good faith and without an improper motive

00581992-1

8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910
310-854-4444 · Fax: 310-854-0812
www.kiesel.law

Exhibit 13
Page 154



December 24, 2020
Page 7

and then, on the other hand, to deny… access to the advice given by counsel where that advice… played a substantial and significant role in formulating the actions taken by [the defendant]." *Pereira v. United Jersey Bank*, 1997 WL 773716, at *6 (S.D.N.Y. Dec. 11, 1997).

In *Bilzerian*, the defendant was attempting to assert a good faith defense to securities fraud charges. He filed a motion in limine seeking a ruling that would permit him to testify regarding his belief in the lawfulness of his actions without being subjected to cross-examination on communications he had with his attorney on this subject. *Bilzerian*, 926 F.2d at 1291. The district court held that if the defendant testified concerning his good faith regarding the legality of his conduct, it would open the door to cross-examination with respect to the basis for his belief, and that such cross-examination would allow inquiry into communications with his attorney. *Id.* The Second Circuit affirmed the district court's holding that the defendant's proposed testimony about his good faith belief in the legality of his actions would necessarily implicate his communications with counsel, and that the government was entitled to cross-examination regarding those communications:

> Bilzerian's testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue. His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent.
> *Id.* at 1292.

Thus, if the defendant has "asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal." *Id.* at 1294. *See also Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 173138, at *4 (S.D.N.Y. Apr. 12, 1996) (under *Bilzerian*, "touchstone" is that a party's claim that he "thought his actions were legal put his knowledge of the law and the basis for his understanding of what the law required in issue.").

Critically, an "advice of counsel" defense is not required to implicate *Bilzerian*. Courts have made clear that asserting advice of counsel as a defense is *but one way* to place matters covered by the attorney-client privilege at issue in a case. *See, e.g., Sims. v. Blot*, 534 F. 3d 117, 132 (2d Cir. 2008) (distinguishing "[t]he quintessential example [of] the defendant who asserts an advice-of-counsel defense" from a separate instance where "the holder of the privilege may assert[] a claim that in fairness requires examination of protected communications.") (quotes and internal citations omitted); *Cary Oil Co. v. MG Ref. & Mktg.*, 257 F. Supp. 2d 751, 761 (S.D.N.Y. 2003) (specifically noting that while the court was "prepared to exclude any testimony or evidentiary presentations by the Defendants at trial if that same testimony or evidence was withheld from Plaintiffs during discovery based on attorney-client privilege… the Court is not dealing with the side issue of an advice of counsel defense and its explicit guidelines."). Thus, "when the record shows that attorney-client advice played a significant role in formulating a party's subjective beliefs on central issues in the case, the adversaries are entitled to disclosure of the otherwise

00581992-1

8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910
310-854-4444 · Fax: 310-854-0812
www.kiesel.law

Exhibit 13
Page 155



December 24, 2020
Page 8

privileged material to test the credibility of those subjective beliefs[,]" even if the party "assert[s] that the attorney-client advice was irrelevant to those subjective beliefs." *In re Lidoderm Antitrust Litig.*, No. 14-md- 02521-WHO, 2016 U.S. Dist. LEXIS 105619, at *36 (N.D. Cal. Aug. 9, 2016).

In sum, Defendants will not be entitled to testify as to their purported state of mind while at the same time relying on a record that is improperly cleansed through invoking the attorney-client privilege. *Bilzerian*, 926 F.2d at 1292. Defendants are not allowed to argue that the Services Agreement complied with applicable law, that the Fund was entitled to enter into the Services Agreement, that the Fund has appropriately assessed and valued the services provided by the Defendants, and that Defendants did not act with malice, fraud, or oppression, after blocking inquiry into the advice and assessments that it received from counsel. *See Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 513 (D. Del. 2005) ("it is unfair to allow a party to 'disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position…'") (quoting *Hercules, Inc. v. Exxon Corp.,* 434 F. Supp. 136, 156 (D. Del. 1977)); *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1418 (11th Cir. 1994) ("it would be inequitable, to allow [defendant] to present evidence tending to show that it intended to comply with the law, while allowing it to cloak in privilege those documents tending to show it might have known its actions did not conform to the law.").

Therefore, putting aside the Bredhoff Parties' failure to, at the most basic level, meet their burden in establishing the existence of an attorney-client relationship sufficient to shield them from the Bredhoff Subpoenas, Defendants have waived privilege by relying on the Bredhoff Parties' advice to form their state of mind. On multiple occasions, in response to discovery and in statements to the Court, Defendants have relied on a legal analysis to defend their actions. This legal analysis necessarily came from the Bredhoff Parties. *See also* Def. Ray Hair's Resp. to Pltff's First Set of Interrogatories, No. 15 and 16; DEFS_00041341-47; Answer to First Amended Complaint. If this information is not produced, Defendants will invariably be barred from testifying as to any aspect of their state of mind going forward. *See Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001); *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 (KMW), 2011 U.S. Dist. LEXIS 42881, at *4-5 (S.D.N.Y. Apr. 14, 2011).

    **V.**    **Subpoenas to the Bredhoff Parties**

   a.  Requests for Retainer Agreements (RFP 1-6)

Fed. Rule of Civ. Proc. 45(e)(2) states that a person withholding subpoenaed information under a claim that it is privileged must: 1) expressly make the claim and 2) describe the nature of the withheld documents, communications or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim. The Bredhoff Parties have not stated whether they possess documents responsive to Requests 1-6, or if they even exist. As stated previously, Defendants have not indicated if the Bredhoff Parties, at any relevant time, represented the Fund, SAG-AFTRA, and/or the AFM, when such representation began and

00581992-1

8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910
310-854-4444 • Fax: 310-854-0812
www.kiesel.law

Exhibit 13
Page 156



December 24, 2020
Page 9

ended, or the scope of such representation. All of these factors would be relevant in determining whether a privileged relationship exists and are part of the Bredhoff Parties'/Defendants' burden in asserting the privilege. If no responsive documents exist, the Bredhoff Parties should so state.

 b. <u>Requests Related to the Trustees Obligations (RFP 15)</u>

In addition to the Bredhoff Parties'/Defendants' failure to meet their burden with regard to their privilege objections, Defendants have pled that their actions "compli[ed] with applicable laws" and were undertaken without malice, fraud, or oppression under the California Civil Code, as more fully set forth above. The Trustee Defendants have therefore waived any privilege over documents they received from counsel which outlined their legal duties and obligations. See *Bilzerian*, 926 F.2d at 1292 ("conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent.")

 c. <u>Requests Specifically Related to The Service Fee and Services Agreement (RFP 16-20)</u>

The Bredhoff Parties and Defendants cannot dispute that documents responsive to Request Nos. 16-20 (relating to the amount of the Service Fee or the drafting of the Service Agreement) are highly relevant. Certainly, the majority of documents responsive to this request would not be privileged. For example, since the common interest doctrine does not apply and (according to Defendants' theory) Ms. Polach represented the Fund only, her communications with the Unions about these topics would not be privileged. Ms. Polach's communications with the Fund or the Trustees in which third parties were included and those communications which were forwarded to third parties would not be privileged. If Defendants contend that Ms. Polach was not acting as an attorney but as a mere scrivener of the Services Agreement, her communications would not be privileged. If Ms. Polach was acting solely as a negotiator or was providing business advice, her communications would not be privileged. Ms. Polach's admission that Jenner & Block performed the actual drafting of the Services Agreement is further support for the theory that Ms. Polach was only providing business advice, whereas Jenner & Block was performing the only actual attorney services. Defendants and the Bredhoff Parties have not provided enough information to assess the privilege assertion. Additionally, Defendants have waived privilege over documents responsive to RFP 16-20 pursuant to the *Bilzarian* line of authority. Defendants should consider the authority set forth herein. If Defendants decide not to produce the documents pursuant to *Bilzarian*, a privilege log must be prepared so that the documents can be assessed for privilege, line by line.

 d. <u>Requests Related to Communications (RFP 20-23)</u>

Again, because Defendants have not established when the Bredhoff Parties were representing each individual and/or entity at issue in this case, it is impossible for Plaintiff to determine whether any privileges would apply to Request for Production Nos. 20-23 (calling for communications between the Bredhoff Parties and Mr. Hair, Ms. Gardner and AFM). The Bredhoff Parties feign exasperation at these requests but have refused to provide any concrete information necessary for

00581992-1

8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910
310-854-4444 - Fax: 310-854-0812
www.kiesel.law

Exhibit 13
Page 157



December 24, 2020
Page 10

Plaintiff to assess their privilege claims. Defendants have provided no information in this case to establish when the Bredhoff Parties' relationship with the Unions commenced, when it ended, and the scope thereof, all of which is relevant to determine if the Bredhoff Parties complied with relevant rules of professional conduct governing simultaneous representation of conflicted parties.

Plaintiff is not interested in reviewing documents that have no relevance to this case. However, Plaintiff is entitled to relevant documents bearing on whether the Defendants and Bredhoff Parties acted in bad faith and contrary to applicable law. Given the Bredhoff Parties' conflicted role and Defendants' inability to rely on the common interest doctrine, none of the documents called for in these requests would be privileged, and the BK Objections do not attempt to argue otherwise. Defendants have also waived privilege, if any, based on the *Bilzarian* line of authority set forth herein, and will be made to live with the consequences of failing to permit production accordingly.

Documents responsive to these four requests may be included in response to Request Nos. 16 or 17, but to the extent that Request Nos. 20-23 require an additional search, Plaintiff agrees to limit the scope to communications related to the Fund, the Services Agreement, and/or the Service Fee.

## VI. **Conclusion**

Defendants asked Plaintiff to abandon the subpoenas to the Bredhoff Parties in exchange for an agreement to pursue additional relevant depositions of Defendants' employees. This request was apparently made for no other purpose than to shield the Bredhoff Parties and Defendants from directly addressing the conflicted role of Ms. Polach and her apparent breach of the rules of professional conduct in representing the two adverse parties to the Services Agreement.

As set out fully herein, the Bredhoff Parties cannot shirk their obligations to respond to the requests set forth in the Subpoenas for at least two reasons: (1) attorney client privilege does not wholesale block discovery into these issues without a detailed analysis of the identity of the client, scope of the representation, and a line by line analysis of whether the privilege applies; and (2) Defendants have waived privilege, if any, over communications that discuss or relate to Defendants' compliance with laws or legal advice which factored into their subjective intent, per *Bilzerian*.

Because this discovery is central to the case, we ask that the Bredhoff Parties and Defendants indicate by January 11, 2021, whether Plaintiff's counsel will receive the information requested herein or whether we should immediately tee this issue up for the Court's determination.

With regard to the place of compliance, Rule 45(c)(2)(A) states that the place of compliance must be "within 100 miles of where the person resides, is employed, **or regularly transacts business in person**." Defendants and the Bredhoff Parties have alleged that the Bredhoff Parties regularly represent their clients, the Fund and SAG-AFTRA, in the County of Los Angeles. Therefore, my office in Beverly Hills is an appropriate location for production of documents

00581992-1

8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910
310-854-4444 · Fax: 310-854-0812
www.kiesel.law

Exhibit 13
Page 158



December 24, 2020
Page 11

according to the Code. In the spirit of compromise, if you indicate that the Bredhoff Parties will comply with the subpoenas, we can agree to a mutually agreeable place of compliance in the District of Columbia, although we anticipate that production can and will be made electronically.

With kind regards,

KIESEL LAW LLP

By: _____
Mariana A. McConnell

cc: Neville Johnson
Daniel Lifschitz
Paul Kiesel
Nicholas Brancolini

00581992-1

8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910
310-854-4444 - Fax: 310-854-0812
www.kiesel.law

Exhibit 13
Page 159