| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | JENNER & BLOCK LLP<br>Andrew J. Thomas (Cal. Bar No. 159533)<br>ajthomas@jenner.com<br>Alexander M. Smith (Cal. Bar No. 295187)<br>asmith@jenner.com<br>Andrew G. Sullivan (Cal. Bar No. 301122)<br>agsullivan@jenner.com<br>Anna K. Lyons (Cal Bar No. 324090)<br>alyons@jenner.com<br>633 West 5th Street, Suite 3600<br>Los Angeles, CA 90071<br>Telephone: (213) 239-5100<br>Facsimile:  (213) 239-5199 |
| 8 | *Attorneys for All Defendants* |

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN RISTO, on behalf of himself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a Delaware corporation, et al.,<br><br>　　　　　　Defendants. | Case No. 2:18-cv-07241-CAS-PLA<br><br>Class Action<br><br>**REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF MARK BOOKMAN**<br><br>Hearing Date:　July 19, 2021<br>Hearing Time :　11:00 a.m.<br>Courtroom:　　8D (Telephonic) |

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT ................................................................................................. 1

    A.   Mr. Bookman's Legal Opinions Are Improper. ................................... 1

    B.   Mr. Bookman's Opinion Amounts to Inadmissible *Ipse Dixit*. ................................................................................................... 4

III. CONCLUSION .............................................................................................. 5

# I. INTRODUCTION

In his opposition brief, Plaintiff argues that his expert, Mark Bookman, can opine about the law purportedly applicable to this case because that law forms part of the "applicable standards" of non-profit governance. Opp. at 1. But Mr. Bookman's decision to couch his legal opinions in the guise of expert testimony about standards of "good governance" does not render those opinions admissible. And the general principle that experts can refer to the law as a backdrop for their opinions about applicable industry standards does not permit Mr. Bookman to pontificate at length about the law—let alone apply the law to the facts of this case.

Mr. Bookman's failure to assess the economic value of the data the Unions provided—and the absence of any subject-matter expertise that would qualify him to do so—are independently fatal to his opinion. Whether or not the Fund analyzed the economic value of the data it agreed to purchase is irrelevant: Mr. Bookman cannot second-guess the reasonableness of that decision without analyzing the value of the data, and Mr. Bookman has not even *attempted* to do so. His *ipse dixit* opinion that non-profits are limited to paying for only the "augmented costs" of data or other services falls woefully short of *Daubert*, and this Court should exclude it.

# II. ARGUMENT

## A. Mr. Bookman's Legal Opinions Are Improper.

Plaintiff does not—and cannot—dispute the general principle that "[e]xpert testimony is not proper for issues of law." *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996). He nonetheless argues that experts like Mr. Bookman can testify as to "industry standards," even where those standards overlap with the applicable law. *See* Opp. at 2-7. That argument mischaracterizes the law.

The Ninth Circuit has held that "it is *sometimes* impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard." *United States v. Diaz*, 876 F.3d 1194, 1198 (9th Cir. 2017) (emphasis added). Thus, for example, an expert can testify that a doctor's

1
REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF MARK BOOKMAN

1  pattern of prescribing opiates fell "outside the usual course of medical practice" and
2  had no "legitimate medical purpose," even though these opinions overlap with the
3  elements of a criminal statute. *Id.* at 1199-1200. An expert can testify that an
4  insurer's processing of disability claims "departed from insurance industry norms,"
5  at least so long as he does not opine on the "ultimate issue of bad faith." *Hangarter*
6  *v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004). And an
7  expert can "testify regarding the standards that ordinarily apply to commercial
8  trucks," so long as he does not testify that the defendant violated the law. *Navarro*
9  *v. Hamilton*, 2019 WL 351873, at *3 (C.D. Cal. Jan. 28, 2019) (Snyder, J.).

10  But despite Plaintiff's suggestion to the contrary (Opp. at 2), the law does not
11  give experts *carte blanche* to render inherently legal opinions, or opine that a party's
12  conduct violated applicable legal rules, so long as the experts occasionally make
13  fig-leaf references to "industry standards." Rather, the Ninth Circuit has endorsed
14  the narrow and uncontroversial rule that "if the terms used by an expert witness [1]
15  do not have a specialized meaning in law and [2] do not represent an attempt to
16  instruct the jury on the law, or how to apply the law to the facts of the case, the
17  testimony is not an impermissible legal conclusion." *Diaz*, 876 F.3d at 1198-99.
18  Mr. Bookman's testimony satisfies neither of these requirements.

19  To begin with, Mr. Bookman's opinions rely extensively on specialized legal
20  concepts. His report devotes pages to discussing the Copyright Act, the
21  Independent Offices Appropriation Act, the Internal Revenue Code, and California,
22  New York, and Delaware trust law. Dkt. 146, Declaration of Andrew G. Sullivan
23  ("Sullivan Decl."), Ex. 1 at 11-22. He freely admitted that "the procedures and
24  protocols that govern nonprofit operation are specifically keyed to the requirements
25  of nonprofit law." Sullivan Decl., Ex. 2 at 1. Indeed, he openly criticized
26  Defendants' expert, David Nolte, for failing to "consider[] the law to come to his
27  conclusions." *Id.* at 1. This case is not like *Hangarter*, in which the expert's
28  references to "California statutory provisions" were "ancillary" to his opinion

regarding insurance industry norms. 373 F.3d at 1017. Here, the law forms the crux of Mr. Bookman's opinions.

Moreover, Mr. Bookman's report not only purports to lay out the law (in a section titled "Standards Applicable to Non-Profit Corporations and Laws Specifically Applicable to the Fund," no less), but also attempts to *apply* the law. He opines that Defendants' adoption of the Service Fee violated the fiduciary duties of loyalty, impartiality, and care—which is the ultimate issue at the heart of this lawsuit. *See* Sullivan Decl., Ex. 1 at 25-33. He broadly opines that Defendants' conduct "rais[es] numerous significant legal concerns," *id.* at 33, concludes that the Service Fee "appear[s] to contravene" both "normative law" and "specialized restrictions" imposed by the Copyright Act, *id.*, and pontificates about what Defendants would need to do "in order to comport with governing law," *id.* at 34.[1]

Despite Plaintiff's suggestion to the contrary, Mr. Bookman goes far beyond opining about "industry norms" or "standards of good governance" in the non-profit sector. Instead, he opines that Defendants breached their fiduciary duties—which is the precise sort of testimony that the Ninth Circuit and this Court have forbidden.[2]

In other words, while an expert may be able to testify as to industry norms, he cannot testify as to "[w]hether … officers and directors breached their fiduciary

---

[1] Indeed, the entire Report is organized under headings that say "Federal Law – IRC Sec. 501(c)(6)," "State Law – Nonprofit Corporations and Trusts," "Trust Law – California and New York," "Delaware Corporation "Law," "Law of the Case," "Legal Considerations," and "Continued Breaches of Fiduciary Duties." *See* Ex. 1 at 11, 12, 15, 19, 22, 30, 33.

[2] *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008) (holding that an expert witness cannot opine as to "legal explanations and conclusions"); *Navarro*, 2019 WL 351873 (holding that an expert "invade[d] the province of the jury and the Court" because his "expert report regularly draws conclusions concerning the proper construction of laws and regulations"). Plaintiff cites both *Nationwide* and *Navarro* to argue that an expert can testify as to applicable industry standards (*see* Opp. at 2, 5), but both cases held that the expert's testimony included improper legal opinions that were *not* admissible.

duties," as such testimony is "a legal opinion and inadmissible." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). Although Plaintiff notes that *Askanase* is an out-of-circuit case, he does not articulate how its reasoning is inconsistent with Ninth Circuit law, and many courts—including those in the Ninth Circuit—have reached the same conclusion.[3] And while Plaintiff argues that this Court need not exclude Mr. Bookman's testimony because "the gatekeeper and the factfinder are the same in a bench trial" (Opp. at 3), there is no reason for the Court to admit testimony—even on a provisional basis—that consists of improper legal conclusions and would serve only to lengthen and complicate the trial.[4]

### B. Mr. Bookman's Opinion Amounts to Inadmissible *Ipse Dixit*.

Mr. Bookman's testimony is independently inadmissible because it is not based on "sufficient facts or data." Fed. R. Evid. 702(b). Neither Plaintiff nor Mr. Bookman disputes that the Fund was entitled to pay *something* for the data it agreed to purchase from the Unions. But Mr. Bookman made zero attempt to calculate the value of the data the Fund agreed to purchase—as would be required to opine that the amount the Fund agreed to pay was unreasonable, that Defendants breached their fiduciary duties by agreeing to the Service Fee, or that the adoption of the Service Fee fell below prevailing standards of good governance.

Plaintiff attempts to sidestep this fatal flaw by rehashing his arguments on the merits—all of which fail. While he argues that the Copyright Act "limits the

---

[3] *See, e.g.*, *Youngevity Int'l, Inc. v. Smith*, 2018 WL 893810, at *2 (S.D. Cal. Feb. 13, 2018); *Wichansky v. Zowine*, 2016 WL 6818945, at *6 (D. Ariz. Mar. 22, 2016). Plaintiff attempts to distinguish *Wichansky* by arguing that the expert in that case "was simply retained to testify that the defendants breached their fiduciary duties." Opp. at 6. But even though Mr. Bookman purports to testify about "corporate governance" issues, his report commits the exact same error.

[4] Notably, neither *United States v. Flores*, 901 F.3d 1150 (9th Cir. 2018) nor *FTC v. BurnLounge, Inc.*, 753 F.3d 878 (9th Cir. 2014), involved experts who offered improper legal opinions. They also do not suggest that a district court *should* provisionally admit questionable expert testimony in a bench trial; instead, they hold only that it is not a *per se* abuse of discretion for a district court to do so.

fund to the deduction of 'reasonable costs' not 'reasonable value'" (Opp. at 7), one cannot assess the reasonableness of a cost without comparing it to the value received in exchange. Even if Plaintiff were correct that there might be "more economical ways" for the Fund to obtain the data it purchases from the Unions (*id.*), that does not establish that the price it pays is so unreasonable as to render Defendants liable for breaching their fiduciary duties. And while Plaintiff complains that "the Trustees never considered the value to the Fund when they passed the Services Agreement" (*id.*), his criticisms of the *process* whereby the Fund approved the Services Agreement do not establish that the amount it agreed to pay is unreasonable. In any case, none of these arguments establish that Mr. Bookman can opine on the reasonableness of the Fund's conduct without calculating the value of the data it agreed to purchase from the Unions. That is because he cannot.

Nor is Mr. Bookman's invocation of the magic words "augmented costs" sufficient to satisfy *Daubert*. Aside from his self-serving testimony that the "standards in the industry" require nonprofits to charge only "augmented costs" for the services they provide (Opp. at 7-8), Mr. Bookman identifies no authority supporting his view that nonprofits are limited to charging augmented costs. And in any event, even if Mr. Bookman were correct, he admittedly performed no calculation of the "augmented costs" associated with purchasing data from the Unions. For example, he never calculated the Unions' fully allocated overhead expenses or the amortization of the historical costs incurred by the Unions in creating and maintaining their session reports over many decades—even though he agreed in his deposition that these costs could properly constitute "augmented costs." *See* Sullivan Decl., Ex. 3 (Bookman Tr. 86:21-89:16). Absent *any* attempt to assess the economic value of the data provided by the Unions, Mr. Bookman's testimony is nothing more than inadmissible *ipse dixit*.

### III.  CONCLUSION

This Court should exclude Mr. Bookman's testimony at trial.

Dated: July 12, 2021

JENNER & BLOCK LLP

/s/ Andrew J. Thomas
Andrew J. Thomas
Alexander M. Smith
Andrew G. Sullivan
Anna K. Lyons

*Attorneys for All Defendants*