JENNER & BLOCK LLP
Andrew J. Thomas (Cal. Bar No. 159533)
ajthomas@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
Andrew G. Sullivan (Cal. Bar No. 301122)
agsullivan@jenner.com
Anna K. Lyons (Cal Bar No. 324090)
alyons@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

*Attorneys for All Defendants*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN RISTO, on behalf of himself and all others similarly situated, | Case No. 2:18-cv-07241-CAS-PLA |
| Plaintiff, | Class Action |
| vs. | **REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF BARRIE KESSLER** |
| SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a Delaware corporation, et al., | |
| Defendants. | Hearing Date:   July 19, 2021 <br> Hearing Time :   11:00am <br> Courtroom:   8D (Telephonic) |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION ............................................................................................. 1

II.    ARGUMENT ................................................................................................... 1

    A.    Ms. Kessler Does Not Qualify As an Expert On Any Subject ............................................................................................. 1

    B.    Ms. Kessler's Testimony Is Irrelevant. ................................................. 4

III.    CONCLUSION ................................................................................................ 5

REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF BARRIE KESSLER

# I.    INTRODUCTION

In his opposition brief, Plaintiff argues that his rebuttal expert, Barrie Kessler, can opine on whether the Service Fee, which compensates the Unions for the data and services they provide to the Fund, constitutes a "reasonable cost" within the meaning of Section 114(g) of the Copyright Act.  Opp. at 1.  This type of opinion testimony on data valuation and appraisal, however, requires specialized knowledge in economics and accounting that Ms. Kessler admittedly does not have.  While Plaintiff asserts that she may opine as an "industry expert" based on her former employment at SoundExchange (as a computer programmer), her report contains economic analyses and conclusions that she is plainly not qualified to offer.

Ms. Kessler's testimony is independently inadmissible because her entire report rests on the inaccurate premise that, because SoundExchange would not have entered into the Service Fee arrangement, it was not reasonable for the Fund to do so either.  *Daubert* does not permit Plaintiff to submit irrelevant testimony about a fundamentally different organization from the Fund, that has an entirely different mission, simply because such an inapposite comparison may be helpful to Plaintiff.

# II.    ARGUMENT

## A.    Ms. Kessler Does Not Qualify As an Expert On Any Subject.

Plaintiff does not dispute that Ms. Kessler lacks formal training in economics, accounting, or appraisal procedures, or in any other subject that would provide the requisite foundation for her expert opinions.  Instead, Plaintiff claims that Ms. Kessler is being offered as an "industry expert" based on her former employment at SoundExchange.  Opp. at 1-2.  Plaintiff doubles down on this justification in proclaiming that "Ms. Kessler is not an academic," and therefore she should not be expected to define the economic terms she used in her own report in "a strictly academic sense."  *Id.* at 6.  There are two problems with this approach.

*First*, based on Plaintiff's own restrictive characterization of Ms. Kessler as "an industry expert," she can only opine on industry standards and practices and

does not have the economic expertise to provide testimony that would require a valuation of the Union data or a critique of the valuation analysis of the Defendants' highly qualified appraisal expert.  Yet Ms. Kessler does not offer any opinions on the "standards and practices" of *any* industry, and she does not limit her testimony to her area of industry experience, which consists of being a software consultant for small businesses.  Dkt. 146, Declaration of Andrew G. Sullivan ("Sullivan Decl."), Ex. 4 at 1; Ex. 5 (Kessler Tr. 19:5-21:16).[1]  Instead, she offers percipient witness testimony—after the discovery cut-off—about the practices of *one* entity (SoundExchange), which is not acceptable "custom and practice" testimony at all. *See, e.g.*, *Chuck Olsen Co. v. F.P.D., Inc.*, 2014 WL 12558273, at *3 (C.D. Cal. Sept. 17, 2014) ("Extrapolating an entire industry's practice from one's personal experience with one business clearly does not meet Rule 702's reliable reasoning or methodology requirement.").

    *Second*, to say that Ms. Kessler did not define economic terms in a "strictly academic sense" is a gross understatement: her testimony made clear that she had no idea what the concepts she cited in her report actually meant.[2]  This is not a

---

[1] As Ms. Kessler testified, she was hired when SoundExchange was a fledgling entity with no money to design a computer system to distribute royalties to copyright owners and featured artists – a system that became totally overwhelmed and useless several years later, once the amount of royalties that SoundExchange had to distribute became significant.  *Id.*, Ex. 5 (Kessler Tr. 51:10-52:6).

[2] Plaintiff also takes umbrage at Defendants' observation that Ms. Kessler did not write any of her expert report herself.  Opp. at 8.  But the cited testimony confirms that Ms. Kessler orally communicated her thoughts to Plaintiff's counsel, who then drafted the *entirety* of her report.  *Id.* at 8-9.  When asked whether she made any changes or added language to counsel's draft, she responded that she only did so "once or twice."  Sullivan Decl., Ex. 5 (Kessler Tr. 128:19-129:8).

Tellingly, many of the same catch-phrases that crop up in Ms. Kessler's expert report—including references to granting an "equity stake in" royalty distributions, the Data Agreement's "ersatz" percentage metric, and the need for Unions to "eschew" commercial considerations—also all appear in Mr. Bookman's reports, which he also testified were written in substantial part by Plaintiff's counsel.  *See*

REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF BARRIE KESSLER

matter of mere quibbling over definitions.  Ms. Kessler purported to opine that "the payment of music royalties is a fixed-cost business" and that "the Fund's expenses are readily quantifiable as a fixed cost" (*Id.*, Ex. 6 at 2, 8), but she then gave deposition testimony that made painfully clear that she has no clue what a "fixed cost" actually is.  *See* Mot. at 7-8; Sullivan Decl., Ex. 5 (Kessler Tr. 82:14-83:2).

The Ninth Circuit has held that within *certain* industries, courts may find expert testimony reliable based on knowledge and experience alone.  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004); *see also* Fed. R. Evid. 702 advisory committee's note ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.").  The Ninth Circuit has permitted such expert testimony, however, only where the opinions are "not contingent upon a particular methodology or technical framework."  *Hangarter*, 373 F.3d at 108.[3]  It follows that the case law Plaintiff cites discusses industries that do not typically require academic expertise nor technical analyses to arrive at the opinions.  *See id.* (permitting an expert to testify on industry standards and practices in the insurance industry); *Kanellakopoulos v. Unimerica Life Ins. Co.*, 2018 WL 984826, at *2 (N.D. Cal. Feb. 20, 2018) (similar); *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994) (permitting an experienced longshoreman to opine on the features of a vessel).

Despite Plaintiff's suggestion to the contrary, Plaintiff has not proffered Ms. Kessler in the limited capacity of an "industry expert."  As noted above, she does not purport to offer testimony about the custom and practice of any industry.

_____

*id.*, Ex. 6 at 2, 4, 5, 6, 7); Ex. 1 at 25, 29; Ex. 2 at 2; *see also* Ex. 3 (Bookman Tr. 82:8-17, 113:21-114:5, 139:14-140:11).

[3] *See also Samuels v. Holland Am. Line-USA Inc.*, 656 F.3d 948, 953 (9th Cir. 2011) (excluding  opinions of travel industry expert about the customs of cruise line business, due to lack of specific experience in the cruise line industry); *Mullins v. Premier Nutr. Corp.*, 178 F. Supp. 3d 867, 900 (N.D. Cal. 2016) (excluding opinions requiring review and understanding of scientific literature beyond his expertise).

Instead, Plaintiff seeks to use Ms. Kessler as a de facto economics expert. Her report is chock-full of technical economic terms and critiques of the methodology and conclusions of Defendants' economist and appraisal expert, David Nolte. For example, in her expert report Ms. Kessler ventures to opine that: (i) the Service Agreement does not reflect a "reasonable cost approach," Sullivan Decl., Ex. 6 at 3; (ii) the purpose of a percentage fee is to incentivize performance in a "profit-sharing venture" where the size of profits is contingent upon the strength of the performance, *id.* at 4; (iii) the Unions are not in the business of "commercial data brokerage," which is reliant on "monopolization", "selective disclosure", and "restrictive use," *id.*; (iv) the Unions' comparative "rent-seeking" is inexplicable in the face of their heightened duties and core mission statements,[4] *id.* at 5; (v) the Unions are similarly bound by obligations to their members, including a "duty of fair representation," *id.*; and (vi) the multifactor *Georgia-Pacific* analysis used by Mr. Nolte is intended for "wildly disparate intangible property," *id.* at 6.

Far from the facts in *GSI Tech., Inc. v. Cypress Semiconductor Corp.*, 2015 WL 364796, at *2 (N.D. Cal. Jan. 27, 2015), where Plaintiff's expert sparingly used economic terms in her report and testimony, Ms. Kessler's report is rife with technical terms and conclusions that would fall within the ambit of a trained economics expert. Because Ms. Kessler lacks the economic expertise necessary to reach those conclusions, this Court should exclude her report.

**B.    Ms. Kessler's Testimony Is Irrelevant.**

Ms. Kessler's testimony is also inadmissible because it is not relevant to the disputed issue – whether or not it is reasonable for the Fund to compensate the Unions for the data it provided on *non-featured* performers. Before admitting expert testimony, the Court must "ensure that [it] is relevant to the task at hand, *i.e.*, that it logically advances a material aspect of the proposing party's case." *Daubert*

---

[4] Nothing in Ms. Kessler's educational background or work history qualifies her in any way to opine on the practices, motivations, or legal obligations of any union.

*v. Merrell Dow Pharm, Inc*., 43 F.3d 1311, 1315 (9th Cir. 1995) (citation omitted). This standard is not "merely a reiteration of the general relevancy requirement of Rule 402." *Id.* at 1321 n.17.  Rather, it requires the Court to exclude testimony that does not "speak[] clearly and directly to an issue in dispute in the case." *Id.*

At the core of her report, Ms. Kessler's argues that "SoundExchange would never have acceded to an arrangement such as the Services Agreement," and thus the Service Fee could not have been reasonably incurred by the Fund.  Sullivan Decl., Ex. 6 at 5.  But this comparison is irrelevant.  Contrary to Plaintiff's assertion that SoundExchange is "the Fund's closest possible analog" (Opp. at 2), SoundExchange performs an entirely different function from the Fund. SoundExchange distributes royalties to copyright owners and *featured* performers – who, by definition, can be readily identified from public information.[5]  Ms. Kessler testified that she did not believe SoundExchange has conducted *any* independent research to identify copyright owners. *See id.*, Ex. 5 (Kessler Tr. 41:2-7).  The Fund, on the other hand, is tasked with identifying the *non-featured performers* who appear in the background of covered recordings and who frequently cannot be identified via public sources.[6]  Ms. Kessler's opinion that SoundExchange would not pay a percentage-based fee for performer data is irrelevant, as SoundExchange does not engage in research efforts that are even remotely comparable to those undertaken by the Fund.

### III.   CONCLUSION

This Court should exclude Ms. Kessler's testimony at trial.

---

[5] Ms. Kessler has explained that major record labels (who typically receive 50% of the royalties collected by SoundExchange) regularly identify themselves to SoundExchange, and that SoundExchange's efforts to identify "independent labels" are limited to "outreach" efforts. *Id.*, Ex. 6 at 2, Ex. 5 (Kessler Tr., 39:10-41:1).

[6] Unlike SoundExchange, the Fund employs ten full-time researchers who work to identify performers on tens of thousands of tracks each year. *See id.*, Ex. 7 (Taub Tr., 118:13-119:12 and Ex. 1 at ¶ 5); Dkt. 107, Decl. of Stefanie Taub, ¶ 5, 8.

Dated:    July 12, 2021                    JENNER & BLOCK LLP


                                           /s/ Andrew J. Thomas
                                           Andrew J. Thomas
                                           Alexander M. Smith
                                           Andrew G. Sullivan
                                           Anna K. Lyons

                                           *Attorneys for All Defendants*

REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF BARRIE KESSLER