UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
Nico Brancolini
Paul Kiesel
Mariana McConnell
Neville Johnson
Daniel Lifschitz

Attorneys Present for Defendants:
Andrew Thomas
Andrew Sullivan
Julia Hirata

**Proceedings:** PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE THE TESTIMONY AND OPINIONS OF DEFENDANT'S EXPERT DAVID NOLTE PURSUANT TO <u>DAUBERT</u> (Dkt. 122, filed June 21, 2021)

PLAINTIFF'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE ANY MENTION, REFERENCE, OR EVIDENCE RELATED TO DEFENDANTS' 50 SONG STUDY (Dkt. 123, filed June 21, 2021)

PLAINTIFF'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE DEFENDANTS FROM OFFERING EVIDENCE OR ARGUMENT AS TO THEIR STATE OF MIND (Dkt. 124, filed June 21, 2021)

DEFENDANTS' <u>DAUBERT</u> MOTION TO EXCLUDE THE TESTIMONY OF MARK BOOKMAN (Dkt. 125, filed June 21, 2021)

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF BARRIE KESSLER (Dkt. 126, filed June 21, 2021)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

## I. INTRODUCTION

On June 22, 2018, plaintiff Kevin Risto, on behalf of himself and all others similarly situated, filed this action in the Los Angeles Superior Court against defendants the Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA") and the American Federation of Musicians of the United States and Canada ("AFM") (collectively, the "Unions"); Raymond M. Hair, Jr., Tino Gagliardi, Duncan Crabtree-Ireland, Stephanie Taub, Jon Joyce, and Bruce Bouton (collectively, the "Trustees"); and Does 1 through 10. Dkt. 1-1 ("Compl."). On August 17, 2018, defendants removed this action to this Court, pursuant to 28 U.S.C. § 1332(d). Dkt. 1. On November 20, 2018, plaintiff filed the operative First Amended Complaint ("FAC"). Dkt. 26. The FAC alleges that, by negotiating a service fee agreement with the Unions, the Trustee defendants violated their fiduciary duties to their beneficiaries. Id. These beneficiaries include plaintiff and other non-featured performance artists. Id. Plaintiff also alleges claims against all defendants for (1) money had and received, (2) conversion, and (3) declaratory relief. Id. Defendants answered the FAC on December 4, 2018. Dkt. 27.

On September 14, 2020, the Court granted plaintiff's motion for class certification, and certified the class under Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2). Dkt. 78. A bench trial is currently set to commence on August 17, 2021.

On June 21, 2021, plaintiffs filed three motions *in limine*, dkts. 122, 123, 124, and defendants filed two motions to exclude expert testimony, dkts. 125, 126. The parties filed their respective oppositions to those motions on July 2, 2021. Dkts. 136, 137, 138, 139, 140. On July 13, 2021, the parties filed their respective replies. Dkts. 144, 145, 147, 148, 149.

The Court held a hearing on July 19, 2021. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. LEGAL STANDARDS

### A. Motions in Limine

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009). "[M]otions in limine must identify the evidence at issue and state with specificity why such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

evidence is inadmissible." Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc., No. 08-cv-08525-PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). The "failure to specify the evidence" that a motion in limine "seek[s] to exclude constitutes a sufficient basis upon which to deny th[e] motion." Bullard v. Wastequip Mfg. Co. LLC, No. 14-cv-01309-MMM, 2015 WL 13757143, at *7 (C.D. Cal. May 4, 2015).

"Trial courts have broad discretion when ruling on motions in limine." Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc., No. 2:16-cv-0084-FMO-AJW, 2017 WL 2929377, at *1 (C.D. Cal. May 14, 2017). Such rulings are "not binding on the trial judge, and the judge may always change his mind during the course of a trial." Ohler v. United States, 529 U.S. 753, 758 (2000). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." Matrix Int'l Textile, 2017 WL 2929377, at *1 (citation omitted).

### B.    Federal Rule of Evidence 702

Federal Rule of Evidence 702 allows for expert testimony, subject to certain requirements and conditions:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Rule 702 inquiry "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592–93 (1993). The district court must also "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. . . . Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." United States v. Finley, 301 F.3d 1000, 1008 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Cir. 2002) (citing Daubert, 509 U.S. at 591–93). Daubert's "gatekeeping obligation" "applies not only to testimony based on 'scientific' knowledge but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Company v. Carmichael, 526 U.S. 137, 141 (1999). "[I]n considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).

In acting as the gatekeeper, the trial court has broad discretion in deciding whether to admit or exclude expert testimony. See e.g., General Elec. Co. Joiner, 522 U.S. 136, 142 (1997); United States v. Espinosa, 827 F.2d 604, 611 (9th Cir.1987) ("The decision to admit expert testimony is committed to the discretion of the district court and will not be disturbed unless manifestly erroneous."). When the district court sits as the finder of fact, there is less need for gatekeeping because "there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion in a bench trial," such that "the district court is able to 'make its reliability determination during, rather than in advance of, trial." United States v. Flores, 901 F.3d 1150, 1165 (9th Cir. 2018); see also F.T.C. v. BurnLounge, Inc., 753 F.3d 878, 888 (9th Cir. 2014) (same). "Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." Flores, F.3d at 1165. The Court thus addresses the parties' motions *in limine* to exclude expert testimony in light of the relaxed gatekeeping obligations placed on the Court in connection with a bench trial.

### III. DISCUSSION

#### A. Plaintiff's Motion *in Limine* No. 1

Plaintiff moves *in limine* to exclude the expert testimony of defendants' appraisal and economics expert, David Nolte. Dkt. 122. Plaintiff argues that Nolte's testimony and opinions should be excluded in their entirety because Nolte's opinions do not derive from any valid methodology or from Nolte's accounting expertise. Id. at 4. Defendants oppose. Dkt. 138.

Specifically, plaintiff anticipates that Nolte will testify that:

1) Businesses charge significant sums of money for data;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

2) The fund would not have the ability to make payments to participants that are as accurate and complete as what is now occurring without access to the Unions' data;

3) The 3% Service Fee was reasonable; and

4) The Unions appropriately have a royalty stake in the Fund.

See Dkt. 122. Defendants contend that Nolte's testimony will assist the Court in evaluating the value of the Unions' data to the Fund, and thereby in evaluating the reasonableness of the 3% Service Fee. Dkt. 138 at 1-2. Nolte is a qualified accountant and his opinions are based on more than 40 years of experience as an appraiser, accountant and auditor, during which time he has specialized in valuing businesses, intangible business assets, and intellectual property. Id. The Court finds Nolte's qualifications to be adequate.

The Court next turns to the substance of Nolte's opinions. Plaintiff first contends that Nolte's opinion that businesses charge significant sums for access to data is flawed because Nolte's analysis considered only for-profit businesses, rather than "a nonprofit who was in the business of selling data," and did not consider subscription data services such as IMDbPro or baseball-reference.com. Id. at 4. Defendants respond that Nolte's analysis of the data licensing market is admissible to contextualize the Fund's agreement with the Unions and argue that plaintiff's arguments regarding Nolte's selection of businesses for comparison and failure to consider IMDbPro and baseball-reference.com are inapposite and at most go to the weight of his testimony. Dkt. 138 at 3, 5.

The Court agrees with defendants. Here, plaintiff objects not to the method Nolte applied to survey companies in the business of selling data, but rather to the completeness of the universe that Nolte considered. Such concerns that a survey "fails to address the correct universe" or considers an incomplete sample are the "sort[] of technical considerations that affect only the weight, and not the admissibility," of the expert's opinion. See PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd., No. C 10-00544 JW, 2011 WL 5417090, at *5 (N.D. Cal. Oct. 27, 2011); accord Obrey v. Johnson, 400 F.3d 691, 695 (9th Cir. 2005) ("objections to a study's completeness" generally go to weight, not admissibility). To the extent that plaintiff believes that other data licensing business models are relevant to Nolte's conclusions, he may draw that out on cross-examination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Plaintiff further argues Nolte should be precluded from opining that Fund would not be as able to make complete and accurate payments absent access to the Unions' data because his opinion relies on inappropriate extrapolations from a non-statistically significant "50 Song Study" conducted by the Fund without Nolte's participation,[1] because his analysis relies on Fund evidence regarding allocations "supported by Union data," and because Nolte conceded at deposition that his analysis of record company market share data "could be removed from his report." Id. at 5-7; dkt. 147 at 4. Defendants respond that it is well established that an expert may rely on factual investigations conducted by others informing his opinions. Dkt. 138 at 6 (citing Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1142 (9th Cir. 1997) (citing Fed. R Evid. 703). Defendants contend that plaintiff's argument that Nolte's extrapolations from the 50 Song Study are "statistically invalid" and therefore must be excluded are misplaced, because "Nolte does not purport to express his opinions" using inferential statistics, but rather opined that "it is appropriate to extrapolate from small, technically non-random samples when a high rate of consistency appears across the data set." Dkt. 138 at 7. Defendants further argue that Nolte's understanding of the Fund's evidence regarding allocations "supported by Union data" is reliable because it is accurate, as confirmed at deposition by Fund manager Julie Sandell. Id. at 8.

Plaintiff's challenges to the helpfulness and reliability of Nolte's extrapolations from the 50 Song Study and analysis of other Fund data are not baseless, but go to the weight of the evidence, rather than its admissibility. The Court recognizes that questions remain regarding the composition of the 50 Song Study sample, as discussed in more detail infra at Section III.B. However, whether or not an expert's extrapolation from a small and purportedly non-representative data set is persuasive and credible evidence is a question for the trier of fact and properly a subject for cross examination. See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 970 (9th Cir. 2013) (district court did not abuse discretion in admitting challenged "extrapola[tion] from Juneau market to the entire Alaska market" because Daubert does not task courts with "exclude[ing] opinions merely because they are impeachable"). To the extent that plaintiff contends that Nolte's analysis of the Fund's data regarding allocations supported by data acquired from the unions is unreliable, that is likewise a subject for cross-examination. In addition, although not central to the question of defendants' performance of their fiduciary duties, Nolte's

---

[1] See infra at Section III.B for a more detailed discussion of the 50 Song Study.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

conclusion that the Fund's performance in compensating non-featured performers would be worse without the benefit of the Union's data is relevant to the ongoing value of the data, which plaintiff disputes. Accordingly, at this stage, the Court finds no basis for an exclusion *in limine*. The Court will receive Nolte's testimony regarding the Fund's ability to make complete and accurate payments, subject to a motion to strike being brought at trial.

Plaintiff further argues that Nolte's opinion that the 3% Service Fee is reasonable should be excluded because it is based on an application of the factors laid out in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970), which plaintiff contends "has no application to this case" and is inapposite given that Nolte had insufficient information to apply several of its factors. Dkt. 122 at 9. In opposition, defendants argue that the Georgia-Pacific framework "provides a widely accepted methodology to value intellectual property of all types based on hypothetical negotiation" and that courts have recognized that it is "probative" in a variety of royalty contexts, even when some factors are inapplicable.[2] Dkt. 138 at 9-10. Although this case does not involve intellectual property rights, it appears possible that an analysis framed in terms of the Georgia-Pacific factors could assist the Court in evaluating the reasonableness of the decision to enter into the Services Agreement. Accordingly, the Court will receive Nolte's testimony on this topic, subject to a motion to strike being brought at trial.

Plaintiff contends that that "[a]lthough it is not clearly stated, Mr. Nolte's Conclusion #4 is essentially that the Unions have an appropriate royalty stake in the Fund" and argues that conclusion, so stated, should be excluded because it "is not helpful to the trier of fact, and it is not based in any sort of expertise, let alone accounting expertise." Dkt. 122 at 10. The Court has reviewed Nolte's expert report, and disagrees with plaintiff

---

[2] Plaintiff cites to F.O.B. Instruments, Ltd. v. Krown Mfg., No. AW-06-1412, 2008 U.S. Dist. LEXIS 105158, at *5 (D. Md. May 19, 2008), in which a District of Maryland court precluded expert testimony from Nolte based on his failure to apply all of the Georgia-Pacific factors. Notably, F.O.B. Instruments involved a patent dispute, and the district court appears to have concluded that Nolte *should have* had access to relevant data with respect to each factor. As such, it is inapposite here, where certain of the Georgia Pacific factors (i.e. rates paid to license comparable patents) would be impossible to apply.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

that Conclusion #4 must be read to stand for the proposition that the "Unions have an appropriate royalty stake in the fund."[3] This argument thus provides no basis for exclusion.

Accordingly, Plaintiff's motion to exclude Nolte is **DENIED**, without prejudice to its being renewed as a motion to strike at trial.

### B. Plaintiff's Motion *in Limine* No. 2

Plaintiff moves *in limine* to exclude all evidence related to the Fund's 50 Song Study on the grounds that: (1) the 50 Song Study is unreliable and Federal Rules of Evidence 701-703 bar testimony regarding it by Sandell and Nolte; and (2) that the 50 Song Study is irrelevant to the process by which the service fee was adopted and defendants' alleged breach of fiduciary duties, and to the reasonableness of the Service Fee amount.[4] Dkt. 123. Defendants oppose, arguing that Sandell is qualified to provide fact, rather than expert, testimony regarding the 50 Song Study, and that Nolte's conclusions regarding the 50 Song Study should not be excluded for the reasons addressed in defendant's motion in limine No. 1. Dkt. 139; see also *supra* at Section III.A. Defendants also argue that the 50 Song Study is relevant because it "sheds light on whether the Trustees were justified in incurring the Service Fee in exchange for data," particularly in light of plaintiff's contention that "the session reports provided by the Union have little or no value." Dkt. 139 at 8.

The parties agree that the Fund conducted the 50 Song Study in January and February of 2021, and that the project was managed by Sandell. Dkt. 123 at 3; Dkt. 139 at 3. In connection with defendants' motion for summary judgment, Sandell submitted a declaration explaining that "the project involved analyzing a sample of Covered Recordings [i.e. recordings for which the Fund has previously paid royalties] for which session report data had been made available by the Unions," and tasking the Fund's researchers with conducting new research on those recordings without the use of Union

---

[3] Nolte's Conclusion #4 states, in full, "Amounts paid to the Unions for their information need not occur (and should not be expected to occur) based on when the underly information was obtained, or the underlying work occurred." Dkt. 141-1 at 27.

[4] To the extent that plaintiff continues to assert that he is prejudiced by defendants' failure to disclose the 50 Song Study prior to the close of fact discovery, the Court notes that its order denying defendants' motion for summary judgment granted plaintiff leave to re-open Sandell's deposition on this topic.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

data, to "determine[] how royalties would have been allocated differently if Fund researchers had *not* had access to the Union session report data, but instead relied solely on public sources of information to identify the non-featured performers." Dkt. 108 at ¶ 7. Sandell states that to identify the 50 songs for review, she generated a list of 5,992 Covered Recordings that "(i) were subject to royalty distributions in 2020; and (2) had Union session reports available" and "selected a random title approximately halfway through the list, and then selected the largest 50 or the next 100 sequential titles for inclusion in the sample." Id. at ¶ 8. At her June 29, 2021 deposition, Sandell clarified that the list from which songs were selected was organized in descending order and that the songs selected and researched were in the "top 350." See Dkt. 148 at 5. Defendants anticipate offering testimony that results of the 50 Song Study demonstrate that the available non-union data sources "were inaccurate with respect to 60% of the song titles examined by the Fund." Dkt. 139 at 5; see also Dkt. 123 at 36.

Plaintiff argues that the 50 Song Study is unreliable because defendants have not "provided any evidence that they determined 50 titles was large enough to be reliable or predictive" and that Sandell's deposition testimony undermines defendants' assertions that "the 50 songs are random and otherwise representative of their larger pool of song recordings." Dkt. 123 at 5; dkt. 148 at 4. Plaintiff does not appear to otherwise contend that the process followed by Sandell and the Fund's researchers in conducting the study using the 50 selected songs was methodologically flawed. See generally Dkt. 123.

The Court finds that it is not necessary to exclude this evidence on an *in limine* basis. Although it is unclear how the 50 Song Study, conducted in 2021, is relevant to the question of the Trustees' reasonableness in approving the Services Agreement, it does appear relevant to rebut plaintiff's broader assertion that the data provided by the Unions has been of little value to the Fund and continues to be overpriced. See Dkt. 123 at 8 (questioning the "supposed intrinsic value of the data"); Dkt. 148 ("the amount the Fund has paid the Unions has no connection to the reasonable cost of the data."). Plaintiff's articulated concerns regarding the size and selection of the sample reviewed by the 50 Song Study are not without merit, but go to its weight, rather than its admissibility. See Alaska Rent-A-Car, 738 F.3d at 970; see also Abu-Lughod v. Calis, No. CV132792DMGGJSX, 2015 WL 12731921, at *4 (C.D. Cal. July 1, 2015) (argument expert "used such small sample sizes that her analysis" was unreliable went "to the weight of [the] analysis, but [was] insufficient to make her opinion inadmissible").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

In addition, the Court agrees with defendants that Sandell may appropriately testify as a percipient witness regarding her management of the 50 Song Study, including the steps she took to select the 50 song titles and directing the research team, because such testimony is not based on any "scientific, technical, or specialized knowledge" and Sandell will not "offer[] any opinions on conclusions she has drawn from the 50-song exercise." See Fed. R. Evid. 701, 702. Likewise, for the reasons stated *supra* at Section III.A., the Court will not exclude Nolte's testimony on this topic at this juncture.

The Court will therefore receive this testimony and evidence related to the 50 Song Study, subject to a motion to strike being brought at trial.

Accordingly, plaintiff's second motion *in limine* is **DENIED**, without prejudice to its being renewed as a motion to strike at trial.

### C. Plaintiff's Motion *in Limine* No. 3

Plaintiff moves *in limine* to preclude defendants from testifying as to any aspect of their state of mind when entering into the Services Agreement, on the ground that defendants have invoked the attorney-client privilege to block inquiry into legal advice they received in connection with that decision. Dkt. 124 at 1. Relying on United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991), plaintiff contends that defendants may not use the privilege as both "sword and shield," and so if defendants "wanted to testify at trial regarding their state of mind (such as their purported belief in the lawfulness of their conduct), they were required to open up discovery to everything that informed their state of mind, including privileged matters," irrespective of whether defendants assert advice of counsel as a defense. Id. In opposition, defendants argue that that they intend to offer testimony that seeks to establish their own good faith or state of mind, without reliance on their attorney's communications, and which is therefore permissible. Dkt. 140 at 1. Defendants argue that under California law, which the parties agree governs the privilege in this dispute, "a party does not place its attorneys' advice at issue merely by providing evidence of its own state of mind as a defense" and explain that, here, "[d]efendants have not sought to rely on any attorney-client communications" or asserted an advice of counsel defense, and will not offer testimony that "[d]efendants believed their conduct to be legal." Id. at 2, 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

"The privilege which protects attorney-client communications may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992) (holding that Penzoil placed privileged communications at issue "to the extent that Penzoil claims that its tax position is reasonable because it was based on advice of counsel") (citing Bilzerian, 926 F.3d at 1292). The Ninth Circuit has explained that when a party's defense is "based on the advice of its attorneys, [the opposing party] should have access to [] otherwise privileged attorney-client communications." Kaiser Found. Health Plan, Inc. v. Abbott Lab'ys, Inc., 552 F.3d 1033, 1042 (9th Cir. 2009). A district court is within its discretion to preclude a defendant from presenting evidence of reliance on attorney advice "at the eleventh hour" when the proponent has previously "refuse[d] to answer questions regarding relevant communications with counsel." Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1196 (9th Cir. 2001). On the other hand, if the defendant "does not actually rely on an advice-of-counsel defense at trial" or otherwise contend that it acted "based on" privileged legal advice, there is no implied waiver. Kaiser, 552 F.3d at 1042; see also S. Cal. Gas Co. v. Pub. Utilities Com., 50 Cal. 3d 31, 42, 784 P.2d 1373 (1990) (reversing order compelling production of privileged communications noting that "several [California] appellate courts have rejected the argument that a client places his attorney's communications at issue whenever the client's state of mind is at issue").

Here, the Court concludes that, at this stage, it need not bar defendants from offering testimony as to their state of mind when approving the Service Fee on the ground that defendants have invoked the privilege and withheld certain attorney communications from production. Defendants have neither asserted an advice of counsel defense in this case, nor put forward privileged communications as evidence of their belief that their conduct in approving the Service Fee was reasonable and in good faith. See dkt. 140 at 1, 10. Defendants argue that their testimony at trial will "assert that they acted reasonably, in good faith, and without improper motives" in approving the Service Fee, without placing the legal advice they received at issue. Compare Loop AI Labs Inc v. Gatti, No. 15-CV-00798-HSG(DMR), 2017 WL 111591, at *3 n. 3 (N.D. Cal. Jan. 11, 2017) (distinguishing Bilzerian and finding no implicit waiver of attorney-client privilege where defendants made "repeated assertions that they reasonably believed that [a hiring decision] was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

lawful" but did not "raise[] an advice of counsel defense") with In re Lidoderm Antitrust Litig., No. 14-MD-02521-WHO, 2016 WL 4191612, at *6 (N.D. Cal. Aug. 9, 2016) ("unique circumstances" required production of privileged documents because defendants' subjective beliefs regarding reasons for attorney-negotiated settlement resolving patent litigation necessarily implicated attorney advice). Moreover, to the extent that defendants' subjective beliefs regarding the legality of the Service Fee implicates advice of counsel, that question is appropriately resolved on a case-by-case basis at trial, rather than via an *in limine* determination that defendants may present no testimony as to their state of mind.[5] The Court will revisit this conclusion if and when circumstances so require.

Accordingly, plaintiff's third motion *in limine* is **DENIED**.

### D. Defendants' Motion *in Limine* to Exclude Bookman

In their first motion *in limine*, defendants move to exclude the testimony of plaintiff's expert Mark Bookman on the ground Bookman's testimony regarding the "prevailing standards of good governance" in the non-profit sector is "laden with thinly veiled legal conclusions" that are not the appropriate subject of expert testimony. Dkt. 125 at 4. Defendants also argue that Bookman's testimony is "independently inadmissible" as *ipse dixit* because he "barely even attempts to assess the value of the data" acquired from the Unions, which defendants contend should "preclude[] him from opining that

---

[5] At oral argument, plaintiff's counsel cited to Flo & Eddie, Inc. v. Sirius XM Radio Inc. et al., No. 2:13-cv-05693-PSG-GJS, dkt. 641 (C.D. Cal., 2016) for the proposition that Bilzerian bars testimony as to state of mind in every instance where a party has asserted the privilege as to any legal advice that could have contributed to its state of mind. Because it is unclear whether the court in Flo & Eddie, Inc. granted the motion *in limine* on relevance grounds, based on the fact the court had made a liability finding against Sirius XM at summary judgment and only damages were at issue at trial, that case is distinguishable from the present action. See Case No. 2:13-cv-05693 at dkts. 600, 641. Indeed, the factual circumstances here are not like those presented in Flo & Eddie, Inc. for two reasons: both because defendants' liability is at issue here and because, unlike in this case, there was testimony from Sirius XM's Federal Rule of Civil Procedure 30(b)(6) witness that the disputed licensing decision was "based solely on Sirius XM's legal analysis" and that nothing "else [was] involved in the decision other than what the applicable law [was]." See Case No. 2:13-cv-05693 at dkt. 449 at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Defendants' implementation of the service fee was unreasonable, that it amounts to a breach of fiduciary duty, or that it falls short of 'prevailing standards of good governance.'" Id. at 7. Plaintiff responds that Bookman's opinion that the decision to implement the Service Fee was inconsistent with the standards of good non-profit governance is based on the rules, guidelines, and laws that inform the industry, but is not itself a legal conclusion. Dkt. 136 at 1. Plaintiff further argues that Bookman's testimony regarding the reasonableness of the Service Fee is not based on an economic analysis of the data, but rather on his opinion that "parent-child non-profits are limited to the charge of augmented costs" and that a percentage fee applying the "concept of inflated value" is an inappropriate way for the Unions to charge the Fund for this data. Id.

Pursuant to Federal Rule of Evidence 704(a), "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, the Ninth Circuit "has repeatedly affirmed that 'an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.'" United States v. Diaz, 876 F.3d 1194, 1197 (9th Cir. 2017) (citing Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004)). Notwithstanding this limit on expert testimony, the Ninth Circuit has recognized that "[a]lthough the value of expert testimony lies in the specialized knowledge that an expert brings to bear on an issue in dispute, ... it is sometimes impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard." Diaz, 876 F.3d at 1198. Accordingly, at times, an expert "may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." Hangarter, 373 F.3d at 1017 (admitting expert testimony that referenced California statutory provisions) (quoting Specht v. Jensen, 853 F.2d 805, 809 (10th Cir.1988)); see also Diaz, 876 F.3d at 1199 ( "if the terms used by an expert witness do not have a specialized meaning in law and do not represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion.").

The Court has reviewed Bookman's expert report, dkt. 127-6 ("Bookman Report"), and his April 30, 2021 deposition, dkt. 127-5. The Court finds that, at times, Bookman's analysis invades the province of the Court by drawing impermissible legal conclusions concerning the proper construction of laws and the appropriate application of the law to the facts of this case. See Diaz 876 F.3d at 1197 (recognizing "prohibition of opinion testimony on an ultimate issue of the law" because such testimony "attempts to substitute

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

the expert's judgment for" the finder of fact's). For example, Bookman opines that defendants engaged in "continued breaches of fiduciary duty," Bookman Report at 32, and that "the Service Fee appear[s] to contravene […] normative law on tax-exempt entities" and the "specialized restrictions" placed on the Fund "pursuant to an act of Congress [the Copyright Act]," id. at 33. Likewise, Bookman states that the advocacy services contemplated by the Services Agreement are "not part of the reimbursable expenditures enumerated by Congress in the Copyright Act," id. at 7, and that "Services Agreement was not an arms-length transaction between disinterested parties, but rather a product of the Trustees prioritizing the Unions, to which they had an employment relationship, over the Fund's beneficiaries, to whom they had a fiduciary relationship." Id. at 6-7. Such statements—and any analogous testimony advancing a conclusion regarding the scope of the law and its application to the facts—constitute impermissible legal conclusions that must be excluded.

However, Bookman may testify regarding the prevailing standards for good governance of a non-profit entity and, to the extent that federal and state laws and regulations inform that standard, may discuss those relevant statues and regulations in his testimony. Hangarter, 373 F.3d at 1017. Bookman may also provide his professional opinion as to whether defendant's conduct comported with the standards of good governance. See Diaz, 876 F.3d at 1197 (permitting expert testimony that defendant's conduct fell "outside the course of professional practice"); United Energy Trading, LLC v. Pac. Gas & Elec. Co., No. 15-CV-02383-RS, 2018 WL 5013580, at *3 (N.D. Cal. Oct. 16, 2018) (permitting expert testimony as to expert's "professional opinion about whether PG&E's conduct acted in conformance with its understanding of the Gas Rules," but prohibiting expert from "opin[ing] that PG&E did not violate federal law, for that remains a question for the jury to determine.").

With respect to defendants' remaining objections to Bookman's testimony regarding the reasonableness of the service fee, the parties appear to dispute whether, to be helpful to the Court, Bookman's analysis must address an economic valuation of the Services Agreement, rather than the question of the appropriate structure of the Services Agreement consistent with good nonprofit governance. See dkt. 136 at 6-7. That question goes to the appropriate weight given to Bookman's testimony, rather than to its admissibility. As such, the Court will not exclude Bookman's testimony regarding the Service Agreement's cost structure at this juncture.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

Accordingly, defendant's motion to exclude Bookman is **GRANTED in part**, and **DENIED in part**.

### E. Defendants' Motion *in Limine* to Exclude Kessler

In their second motion *in limine*, defendants also seek to exclude the expert testimony of Barrie Kessler, the former Chief Operating Officer of SoundExchange. Dkt. 126 at 1. Pursuant to Section 114, SoundExchange has been designated by the Copyright Royalty Board as the sole entity to collect royalties for songs performed by means of a digital audio transmission, and is responsible for distributing the shares of those royalties payable to the copyright owner and to the featured recording artists. See 17 U.S.C. § 114(g)(2)(A); dkt. 78 at 2-3.

Defendants seek to exclude Kessler's testimony that "the Services Agreement does not reflect a reasonable cost approach to the valuation and licensing of data for nonprofit royalty distribution" and "would not have been acceptable at Sound Exchange" on the ground that it "is not relevant to any issue in this case" because SoundExchange only distributes royalties to *featured* performers and copyright owners, who, unlike *non-featured* performers, are not difficult to contact. Dkt. 126 at 5. Defendants further contend that Kessler should not be accepted as an expert witness, arguing that she lacks expertise in economics and accounting, as evidenced by what defendants contend is a misuse of certain terms of art in her expert report. Id. at 6-7. In response, plaintiff explains that Kessler is put forward as "an expert to be qualified by their particular industry experience" and not an economics expert, and, as such, should not be held to a "strictly academic" use of economics terms. Dkt. 137 at 5-6 (quoting Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004)). Plaintiff further argues that Kessler's testimony that the Service Fee is improperly constructed is relevant and supported by Kessler's decades of experience with "norms in the data brokerage industry and music royalty industry" and that differences between SoundExchange and the Fund are a basis for cross-examination, not for exclusion. Dkt. 137 at 5.

The Court finds that Kessler satisfies the requirements of Rule 702 and Daubert. Kessler's decades of experience in the music royalty industry, including as SoundExchange's Senior Director of Data Operations from 1999-2001 and Chief Operating Officer from 2001-2010, provide specialized knowledge that qualifies her to provide expert testimony regarding data brokerage and royalty arrangements in the music

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | 2:18-cv-07241-CAS-PLAx | Date | July 19, 2021 |
|---|---|---|---|
| Title | KEVIN RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, ET AL. | | |

industry. See Dkt. 127-8 at 2; Longoria v. Kodiak Concepts LLC, No. CV-18-02334-PHX-DWL, 2021 WL 1100373, at *7 (D. Ariz. Mar. 23, 2021) (reliability of non-scientific expert testimony is evaluated based on the "knowledge and experience of the expert"). Of note, SoundExchange and the Fund are the only two royalty distribution entities authorized by Section 114 of the Copyright Act. As such, it is difficult to conceive of a witness who has never been employed by the Fund with more experience distributing royalties pursuant to Section 114 than Kessler. The Court agrees with plaintiff that defendants' arguments that SoundExchange and the Fund are insufficiently similar for Kessler's testimony to be relevant go to the weight the Court should afford Kessler's expert testimony, rather than its admissibility, and are appropriately the subject of cross-examination. Accordingly, defendants' second motion in limine is **DENIED**.

## V.     CONCLUSION

In accordance with the foregoing, the Court **DENIES** in part and **GRANTS** in part the parties' motions, as set forth in this order.

IT IS SO ORDERED.

|  | 00 : 23 |
|---|---|
| Initials of Preparer | CMJ |